# Exhibit 6

# REGULAR UTILITY

Form PTO-436
(Rev. 8/78)

4428194

| SERIAL NUMBER (series of 1979) | PATENT DATE | | PATENT NUMBER |
|---|---|---|---|
| 424674 | | | |

| SERIAL NUMBER | FILING DATE | CLASS | SUBCLASS | GROUP ART UI. | EXAMINER |
|---|---|---|---|---|---|
| 06/424,674 | 09/27/82 RULE 60 | 060 | 21.1— | 343 | Ca... |

APPLICANTS: RICHARD F. STOKES, PHOENIX, AZ; JAMES D. TIMM, TEMPE, AZ; STEPHEN R. LA CROIX, SCOTTSDALE, AZ; MILTON R. ADAMS, TEMPE, AZ.

```
**CONTINUING DATA********************
    VERIFIED         THIS APPLN IS A DIV OF   06/235,794 02/19/81
                                              (Patent No. 4,380,893)
```

```
**FOREIGN/PCT APPLICATIONS***********
    VERIFIED
    --------
```

| Foreign priority claimed ☐ yes ☒ no 35 USC 119 conditions met ☐ yes ☐ no | AS FILED → | STATE OR COUNTRY | SHEETS DRWGS. | TOTAL CLAIMS | INDEP. CLAIMS | FILING FEE RECEIVED | ATTORNEY'S DOCKET NO. |
|---|---|---|---|---|---|---|---|
| Verified and Acknowledged   Examiner's Initials | | 47 | 2 | 12 | 3 | $ 89.00 | TE-4086-DI |

PATENT DEPT. 04/301 15
THE GARRETT CORP.    HCA
111 SOUTH 34TH STREET, P. O. BOX 5217
PHOENIX, AZ 85010
5

9851 Sepulveda Boulevard
P.O. Box 92048
Los Angeles, CA 90009

COMPRESSOR BLEED AIR CONTROL APPARATUS AND METHODS

U.S. DEPT. of COMM.-Pat. & TM Office — PTO-436L (rev. 10-78)

HSB 401518

| PARTS OF APPLICATION FILED SEPARATELY | | PREPARED FOR ISSUE 9-13-8: |
|---|---|---|
| | | (Assistant Examiner)   (Docket Clerk) |

| AT ALLOWANCE | | | | | EXAMINED AND PASSED FOR ISSUE S. J. CASAREGOLA EXAMINER ART UNIT 343 |
|---|---|---|---|---|---|
| SHEETS DRWGS. | FIGURES DRWGS. | CLAIMS | CLASS | SUBCLASS | (Primary Examiner)   (Art Unit) |
| 2 | 6 | 4 | 60 | 34.02 | |

| | Estimate of printed pages | Issue fee due (est.) |
|---|---|---|
| | Drawing(s)   Spec(s) | # 500.00 |

Notice of allowance and issue fee due (est.)

| Date mailed | Date paid |
|---|---|
| 9/13/83 | 11/21/83 |

S68

RETENTION LABEL

REMAND PTX 1003

124874

## CONTENTS

| | | |
|---|---|---|
| Entered | | |
| | 1. Applications ............ papers. | |
| | 2. Rejection (3) | AUG 18 1983  4/29 |
| ✓ | 3. ........ | .... |
| | 4. Exch Unit | SEP 13 1983  9/13 |
| | 5. Change of address | Jan. 19, 1987 |
| | 6. | |
| | 7. | |
| | 8. | |
| | 9. | |
| | 10. | |
| | 11. | |
| | 12. | |
| | 13. | |
| | 14. | |
| | 15. | |
| | 16. | |
| | 17. | |
| | 18. | |
| | 19. | |
| | 20. | |
| | 21. | |
| | 22. | |
| | 23. | |
| | 24. | |
| | 25. | |
| | 26. | |
| | 27. | |
| | 28. | |
| | 29. | |
| | 30. | |
| | 31. | |
| | 32. | |

241-97-186
4J
4-49-51-7

HSB 401519

✩ U.S. GOVERNMENT PRINTING OFFICE: 1981-349-868



TE-4086

COMPRESSOR BLEED AIR CONTROL APPARATUS AND METHODS

BACKGROUND OF THE INVENTION

5       The present invention relates generally to apparatus and
methods for regulating the flow rate of gas discharged from a
compressor, and more particularly to a novel bleed air control
system adapted to assure a constant minimum discharge flow rate
in a compressor used to power pneumatically-operated aircraft
accessory systems and the like.

10       In addition to their traditional propulsion functions, gas
turbine engines are often used as accessory power units (APU's)
to supply mechanical and/or pneumatic power to a wide variety of
aircraft accessory devices and systems.  Accessory system pneu-
matic power is typically provided by forcing bleed air from the
15  APU compressor section through a main bleed duct to the accessory
system's supply inlet via a branch supply duct connected to and
defining a terminal portion of the main duct.  In order to prevent
surge of the APU compressor used to power the pneumatic accessory
system, it is necessary to maintain a certain minimum flow rate
20  through the main bleed duct.

P9216 02/26/81  235794    07-0145 2 101    65.00CH
                         07-0145 2 102   164.00CH

HSB 401520

However, the APU-supplied accessory system normally has a widely fluctuating compressed air requirement and is automatically controlled to correspondingly regulate the amount of bleed air it receives from the compressor by modulation of an accessory valve positioned in the branch supply duct.

To accommodate a decrease in accessory air demand, and maintain the compressor through flow above its surge leve, a surge bleed duct is typically connected to the main bleed duct to provide an alternate outlet flow path for the compressor bleed air as flow through the branch supply duct is diminished by a closing of the accessory system valve.  Flow through the surge bleed duct is regulated by modulating a surge bleed valve positioned therein.

Conventional bleed air control systems employ mechanical devices, such as diaphragm controllers, to proportionally operate the surge bleed valve in response to deviations in main duct flow rate from a desired value thereof.  More specifically, as the main duct flow rate begins to deviate from a predetermined value, an error signal is generated and the control system responsively modulates the surge bleed valve to a degree directly proportional to the magnitude of the error signal.

Such conventional control of the surge bleed valve requires that the valve be initially opened at a total compressor bleed air level substantially higher than the minimum flow level (i.e., a flow level exceeding the surge level by a reasonable margin of safety) required to prevent surge of the compressor.  The early surge valve opening, necessitated by the steady-state droop

- 2 -

HSB 401521

characteristics of proportional control which cause the surge valve operating line to be angled relative to the compressor surge line, results in a sizable amount of excess surge bleed air being dumped to atmosphere as the surge valve is moved toward its fully open position. This heretofore unavoidable excess surge bleed air causes increased APU fuel consumption, results in increased surge bleed noise, decreases total power available from the APU, and limits the maximum supply pressure available to the pneumatically powered accessory system.

## SUMMARY OF THE INVENTION

Accordingly, it is an object of the present invention to provide an improved compressor system, and a bleed air control system and methods therefor, which eliminates or minimizes the above-mentioned excess surge bleed air flow as well as other problems and disadvantages.

The present invention provides an electronic bleed air control system which senses a flow-related control parameter within the main compressor bleed duct and responsively generates an error signal indicative of the difference between the sensed value of the parameter and a desired value thereof. The error signal is converted to two signals, one of which is proportional to the error signal and the other of which represents the integral, as a function of time, of the error signal. These two control signals are used simultaneously to modulate the surge bleed valve.

- 3 -

HSB 401522

This unique combination of integral and proportional control
of the surge bleed valve yields a valve operating or control line
which is essentially parallel to the compressor surge line, thus
allowing the initial surge valve opening to be delayed until the
compressor bleed flow rate is only slightly above its surge rate.
Because of the greatly improved surge valve control characteristics
afforded by the present invention, the only excess surge bleed
air required is that needed to provide a reasonable safety margin
above the surge flow rate, and is essentially constant for all
positions of the surge valve.

In a preferred embodiment of the present invention, the
electronic control system is used in conjunction with a gas turbine
engine accessory power unit (APU) to supply compressed air to
a pneumatically-operated accessory system having a variable air
demand.  The APU has a load compressor which is provided with
adjustable inlet guide vanes.  Connected to the compressor is a
main bleed air duct having a branch supply duct interconnecting
the main duct with the accessory system, and a surge bleed duct
(and associated surge bleed valve) for dumping bleed air to
atmosphere as the accessory system air demand diminishes.

In this preferred embodiment, the electronic control system
comprises flow sensor means for sensing within the main bleed
duct the value of the flow-related parameter $(P_t-P_s)/P_t$, $P_t$
being the total pressure within the main duct, and $P_s$ being the
static pressure therein.  Means are provided for comparing the
sensed value of such parameter to a desired value thereof and
responsively generating a error signal representing the difference

- 4 -

HSB 401523

between the sensed and desired parameter values.  The error signal
is transmitted in parallel to a proportional controller and an
integral controller whose outputs are combined by a summing device
to form the combined proportional-and-integral control signal
5    which ultimately regulates the position of the surge bleed valve.

Additionally, means are provided for automatically resetting
the desired value (or "set point") of the flow parameter as a
function of the position of the load compressor inlet guide vanes.
The use of the particular flow parameter $(P_t-P_s)/P_t$, coupled
10   with the correlation of the set point value with the inlet guide
vane position, uniquely provides for optimum control system
performance, maintaining the surge valve control line essentially
parallel to the compressor surge flow line despite wide variations
in compressor through flow and ambient temperatures.

15   BRIEF DESCRIPTION OF THE DRAWINGS

Fig. 1 is a schematic diagram of a gas turbine engine
accessory power unit in which is incorporated a compressor bleed
air control system embodying principles of the present invention;

Fig. 2 is a graph which comparatively depicts the surge bleed
20   valve control characteristics of the control system of Fig. 1
and those of a conventional, proportional control system;

Fig. 3 is an enlarged, schematic illustration of the flow
sensor portion of the control system of Fig. 1;

- 5 -

HSB 401524

Fig. 4 is an enlarged schematic  diagram showing the components of the electronic controller portion of the control system of Fig. 1;

Fig. 5 is a graph depicting the relationship between the electronic controller output signal and an error signal generated by the control system of Fig. 1; and

Fig. 6 is a graph illustrating the relationship between the control system flow parameter and the position of the load compressor inlet guide vanes of the accessory power unit.

## DETAILED DESCRIPTION

A gas turbine engine accessory power unit (APU) 10 is schematically illustrated in Fig. 1 and constitutes a preferred embodiment of the present invention.  Accessory power units such as APU 10 are typically used to provide mechanical power to a driven accessory such as a generator 12, and to simultaneously supply compressed air to an accessory system such as an aircraft environmental control system 14 or to other pneumatically-operated devices such as air turbine motors and the like.

APU 10 includes a power shaft 16 drivingly coupled at its left end (through a gearbox not shown in Fig. 1) to the generator 12.  Fixedly mounted on shaft 16 for rotation therewith are, from left to right along its length, a centrifugal load compressor 18, first and second stage centrifugal power compressors 20, 22, and first, second, and third stage axial power turbines 24, 26, and 28, positioned at the right end of the shaft 16.

- 6 -

HSB 401525

During operation of the APU, ambient air 30 is drawn into the inlet of the first stage power compressor 20, compressed, and then discharged through duct 32 into the inlet of the second stage power compressor 22 where it is further compressed.
Compressor 22 discharges the further compressed air through a duct 34 into a combustor 36.  The compressed air entering combustor 36 is mixed with fuel 38 also supplied to the combustor to form a fuel-air mixture which is continuously burned therein.
Expanded gas 40 exiting the combustor is forced axially through the power turbines 24, 26, 28 to supply rotational power to the shaft 16 and is exhausted from the APU to atmosphere through a discharge passage 42 positioned immediately downstream of the power turbines.

The rotation of the shaft 16 drives the generator 12 (or other mechanically-driven accessories) and also rotationally drives the load compressor 18 which is used to supply compressed air to the pneumatically-operated accessory system 14.  Ambient air 44 is drawn through a set of adjustable inlet guide vanes (IGV) 46 into the inlet of the load compressor 18.  Compressed air exiting (or "bled" from) compressor 18 is forced through a main bleed air duct 48, and then through a branch bleed air supply duct 50 connected to main duct 48, to supply compressed air to the accessory system 14.  Branch bleed duct 50 is sized to flow to the accessory system 14 the entire volume of compressed air discharged from the load compressor 18.

The amount of compressor bleed air received by system 14 is conventionally regulated by a valve or damper 52, positioned in the branch bleed duct 50, which is controlled by a volume

- 7 -

HSB 401526

controller 54 operatively connected between the system 14 and
the valve 52. Upon sensing an increase in system compressed
air demand, the controller 54 modulates valve 52 toward a fully
open position. Conversely, upon sensing a decrease in system
5    compressed air demand, the controller 54 modulates valve 52
toward a fully closed position.

The bleed air-producing load compressor 18 is conventionally
designed for maximum efficiency at rated load. Therefore, a
certain minimum through flow of air is required to prevent com-
10   pressor surge (i.e., stall on the blades of compressor 18).
Because of the varying compressed air demand of accessory system
14, it is necessary to provide an alternate outlet flow path
(i.e., in addition to branch bleed air duct 50) for the bleed air
flowing through the main duct 48 in the event that the quantity
15   of bleed air flow through branch duct 50 falls below the minimum
required to prevent a surge condition in compressor 18. More
specifically, when the valve 52 restricts the flow of bleed air
in branch duct 50 to below the minimum surge-prevention quantity,
an additional bleed air outlet passage must be provided from the
20   main bleed duct 48.

To accomplish this relief function, a surge bleed duct 56
is connected to the main bleed duct 48 and extended therefrom
into the APU discharge passage 42. Like the branch bleed duct 50,
surge bleed duct 56 is sized to accommodate the entire flow of
25   bleed air through the main duct 48 in the event that the control
valve 52 closes completely, in which case all of the bleed air
discharged from the load compressor 18 is dumped into the dis-
charge passage 42 through the surge bleed duct 56.

- 8 -

HSB 401527

Compressed air flow through the surge bleed duct 56 is regu-
lated by variable surge flow restriction means in the form of a
surge bleed valve or damper 58 installed in the surge bleed duct
56. Surge bleed valve 58 is positioned by a torque motor 60
5      which is powered by bleed air 62 from the second stage power com-
pressor 22.

It is to the control of the surge bleed valve 58, in response
to the varying compressed air demands of the accessory system 14,
that the present invention is directed. The conventional method
10     of regulating the surge bleed valve 58 is to employ a mechanical
control system which senses the pressure within the main bleed
duct 48 (or another parameter related to the total air flow
therethrough) and generates an error signal indicative of the
magnitude of the deviation of such parameter from a desired value
15     thereof. This error signal is used to proportionally control the
surge bleed valve to thereby maintain the bleed flow in duct 48
above the minimum required to prevent compressor surge. More
specifically, conventional control systems modulate the surge bleed
valve to a degree which is simply proportional to the strength
20     of the mechanical error signal. The limitations and disadvantages
of proportional surge bleed valve control are well known and are
graphically depicted in Fig. 2.

In Fig. 2 point A represents, for a selected inlet guide
vane position, the total load compressor bleed air flow through
25     main duct 48 with surge bleed valve 58 fully closed and accessory
valve 52 fully open. The vertical dashed line 64 to the left of
point A is the surge line of the load compressor 18, a total com-
pressor bleed flow to the left of the surge line causing compressor
surge.

- 9 -

HSB 401528

With conventional proportional control of surge bleed valve 58, its control line (dashed line 66 in Fig. 2) is inclined leftwardly relative to the vertical because of the droop characteristics inherent in proportional control.  Thus, in order to

5  assure that the total compressor bleed air flow is slightly above its surge flow level (by a suitable safety margin of from 5 to 15 percent) when the surge valve is open to an extent necessary to cause full bleed flow through duct 56 (i.e., at point C, at which point the surge valve is somewhat less than fully open in accord

10  ance with customary design practice), it is necessary to initially open the surge valve at point B - a point well to the right of point C.  This very early initial opening of the surge valve causes a rather sizable excess of surge bleed air to be dumped to atmosphere to accommodate the proportional control droop.  Such

15  excess bleed air is graphically depicted in Fig. 2 by the cross-hatched area between lines 64 and 66.

The large excess surge bleed air requirement of conventional proportional control of the surge bleed valve results in increased fuel consumption of the APU, creates additional bleed air noise,

20  limits the bleed air pressure available to the pneumatically-operated accessory system 14, and reduces the total usable power output of the APU.

The present invention provides a unique electronic control system, indicated generally at 68 in Fig. 1, which inexpensively

25  solves these problems.  In a novel manner described below, control system 68 operates the surge bleed valve along a control line 70 (Fig. 2) which is substantially parallel to the surge line 64 and extends through point C just slightly to the right of the

- 10 -

HSB 401529

surge line. With the control line 70 thus shifted relative to
the conventional control line 66, an initial surge valve opening
point D is provided which, like point C, is positioned slightly
to the right of the surge line. Thus, as the accessory valve 52
5  begins to close off and the total compressor bleed air flow begins
to decrease (i.e., move leftwardly from point A) a much later
initial opening of the surge valve occurs. As can readily be
seen in Fig. 2, the clockwise rotation of the surge valve control
line (relative to the conventional control line 66) by the control
10  system 68 eliminates all of the excess surge bleed flow between
lines 66 and 70. The only excess surge bleed air flow remaining,
represented   by the cross-hatched area between lines 64 and 70,
is that necessary to maintain a predetermined margin of safety
during operation of the APU.


15        THE ELECTRONIC SURGE BLEED VALVE CONTROL SYSTEM

        Referring now to Figs. 1,3 and 4, the electronic control system
68 includes a flow sensor 72, connected to the main bleed air duct
48, which comprises a total pressure transducer 74 and a differ-
ential pressure transducer 76. A static pressure probe 78 extends
20  into the main duct 48 and is coupled to the static pressure inlet
of the differential transducer 76. Additionally, a total pressure
probe 80 extends into the duct 48 and is coupled to the inlet of the
total pressure transducer 74 and the total pressure inlet of the
differential transducer 76. The flow sensor 72 transmits an
25  output signal which comprises the combination of electric signals
82, 84 from the transducers 74, 76 respectively. Signal 82 is
indicative of the total pressure ($P_t$), and signal 84 is indicative
of the difference ($P_t - P_s$) between the total and static pressures
within main duct 48.

- 11 -

HSB 401530

Transducer output signals 82, 84 are received by an electronic controller 86 which responsively transmits an electric control signal 88 to the valve motor 60 to vary the amount of power compressor bleed air 62 it receives, and thus vary the

5    modulating force on the normally open surge bleed valve 58 in a manner achieving the very desirable surge valve control line 70 of Fig. 2.

Also received by controller 86 are electric input signals 90, 92, 94 and 96, as indicated in Figs. 1 and 4, which function

10    as subsequently described to reset the controller 86. Input signal 90 is transmitted to the controller 86 by an inlet guide vane position sensor 98 and is indicative of the actual position (i.e., opening angle) of the inlet guide vanes 46. Input signal 92 is manually generated and resets controller 86 to an accessory

15    system zero demand (or "idle") mode in which, by means not shown, the inlet guide vanes are closed. Input signal 94, also manually generated, resets controller 86 to an accessory system minimum demand mode and, also by means not shown, moves the inlet guide vane to a predetermined minimum opening position. Input signal

20    96 emanates from a pressure sensor (not shown) in the load compressor inlet and is indicative of the pressure therein.

Referring now to Fig. 4, the electronic controller 86 includes a divider 100 which receives the pressure transducer output signals 82, 84 and responsively generates an electric output

25    signal 102 whose magnitude represents the value of the sensed control parameter, $(P_t - P_s)/P_t$ of the control system 68.

HSB 401531

- 12 -

Reset signals 90, 94, 96 are used to combinatively define
a desired value, or set point, of the main bleed flow-related
control parameter $(P_t + P_s)/P_t$. Signal 90, emanating from the
guide vane position sensor 98. is used to adjust such set point
as a function of the angular position of the inlet guide vanes
46. This guide vane-related adjustment is accomplished by a
function generator 104 which receives reset signal 90 and respon-
sively generates an output signal 106 related to signal 90
according to a predetermined, generally linearly increasing reset
schedule 108 as graphically illustrated in Fig. 4.

As will be seen, the use of the control parameter $(P_t - P_s)/P_t$,
and the automatic adjustment of its set point value in response
to changes in inlet guide vane position, assure that a constant
minimum load compressor bleed flow rate, between the compressor
surge rate and the maximum accessory demand flow rate, is main-
tained by the control system 68 despite wide variations in inlet
guide vane position and ambient temperatures.

Signal 94, generated when the accessory system minimum demand
mode is manually selected, is received by a signal generator 110
which transmits an output signal 112 whose magnitude is constant.

The third control point reset signal, signal 96, which is
indicative of the load compressor inlet pressure, is received
by a comparator 114 which also receives an electric reference
input signal 116 having a constant magnitude representative of
sea level atmospheric pressure. Comparator 114 generates, through
a multiplier 118, an output signal 120 which is proportional to
the difference in magnitude between signals 96 and 116, thus
being indicative of the actual altitude of APU 10.

- 13 -

HSB 401532

The three reset control signals, 106, 112, 120, and the signal 102 (which represents the actual sensed value of the flow parameter $(P_t - P_s)/P_t$ within the main bleed duct 48), are received by a comparator 122 which transmits, through a dynamic

5     compensator 124, an error signal 126 whose magnitude is indicative of the difference between the actual value of the flow control parameter and the desired value thereof - namely the sum of the magnitude of signals 106, 112 and 120. Dynamic compensator 124 functions in a conventional manner to provide lead-lag dynamic

10     compensation to error signal 126, thereby improving its transient response characteristics without affecting its steady state values.

It can be seen in Fig. 4 that the set point value of the main bleed flow parameter $(P_t - P_s)/P_t$ is increased by the con-

15     trol system 68 in three manners - (1) an increased opening of the inlet guide vanes, (2) a selection of the accessory system minimum demand mode and/or (3) an increase in the altitude of the APU. Conversely, the set point is decreased by a reduction in the magnitude of any of the signals 106, 112, 120.

20     Error signal 126 is supplied in parallel to a proportional controller 128 and an integral controller 130. Controller 128, 130, respectively, transmit electrical output control signals 132, 134 which are received by a summer 136. The magnitude of output signal 132 is a predetermined multiple of the magnitude

25     of error signal 126, while the magnitude of output signal 134 is the integral, as a function of time, of the error signal 126.

- 14 -

HSB 401533

The summer 136 combines, or superimposes, the proportional and integral control signals 132, 134 and outputs the combined control signal 88 which is used to regulate the torque motor 60 (Fig. 1) and thus modulate the surge bleed valve 58. As can be seen in Fig. 5, the output signal 88 from the electronic controller 86 has a magnitude which linearly increases relative to the magnitude of the error signal 126 as a function of the duration of such error signal, and has, at a given time t, both an integral component I and a proportional component P. The flow rate of surge bleed air exhausted through duct 56 is thus related to the magnitude of deviation of the parameter $(P_t-P_s)/P_t$, from its set point value, in both a proportional and time-integral manner.

It is this unique use of proportional and integral system control, afforded by the parallel controllers 128, 130, which imparts the characteristics to the ultimate valve - controlling signal 88 that substantially eliminate the excess surge bleed problems previously described and long-associated with conventional proportional control of surge bleed valve 58.

More specifically, it has been discovered that this addition to the valve-controlling signal 88 of the integral component I (i.e., the integrated output signal 134) makes possible the ideally positioned valve control line 70 (Fig. 2), thereby eliminating the previously unavoidable wastage of surge bleed air represented by the area between lines 66 and 70 in Fig. 2. The resulting control line 70, since it is essentially parallel to surge line 64, greatly delays the required initial opening of

HSB 401534

- 15 -

the surge valve (compared to conventional proportional valve control), as previously described, when the total compressor bleed air flow rate begins to diminish.

In sum, the illustrated control system 68 provides a constant minimum total bleed air flow rate (line 70) instead of the wasteful varying minimum flow rate (line 66) of previous surge valve control systems. Under the greatly improved control of system 68, once the surge valve 58 is initially opened the flow through main duct 48 remains essentially constant regardless of degree to which the surge valve is further opened.

Referring again to Fig. 4, the error signal 126 received by the parallel controllers 128, 130 is also transmitted to a "kicker" control 138. When error signal 126 reaches a predetermined maximum level (indicating a predetermined maximum deviation between the actual value of the flow parameter $(P_t - P_s)/P_t$ and its set point), the kicker 138 transmits a constant value output signal 140 to an OR gate 142 which also receives signal 92 (the manually selected accessory system zero demand signal). If the OR gate 142 receives either of the signals 92, 140 it immediately transmits to the integral controller 130 an electrical integrator shutoff signal 144 which interrupts current flow therethrough, thereby allowing the surge valve 58 to move, at its maximum slew rate, toward its normally open position.

Thus, for example, if the total bleed flow rate in main duct 48 experiences a very rapid diminution, the kicker 138 acts as a safety mechanism to compensate for this condition by snapping the surge valve to a more open position until the error signal

- 16 -

HSB 401535

returns to below its predetermined maximum allowable level. Selection, via signal 92, of the zero accessory system demand mode, which closes the accessory valve in a manner not shown, also de-energizes the integrator 130 and rapidly opens the surge valve to prevent compressor stall which might otherwise result from a sudden closing of the accessory valve.

As previously mentioned, the selection of the flow-related main bleed air control parameter $(P_t - P_s)/P_t$ affords the control system certain operational advantages. Such advantages will now be described with reference to Fig. 6.

In Fig. 6 two sets of constant temperature load compressor operating lines, 146a, 146b and 146c, and 148a, 148b and 148c, are plotted against the coordinates of load compressor outlet-to-inlet pressure ratio and corrected load compressor inlet air flow for two representative inlet guide vane angles, 70° and 35°. For the 70° inlet guide vane angle the load compressor surge line is represented by dashed line 150, while the surge line of the load compressor for the 35° inlet guide vane angle is represented by dashed line 152. To the right of, and substantially parallel to, the surge lines 150, 152 are plotted representative maximum accessory system flow rate demand lines 154, 156 which respectively correspond to the 70° and 35° guide vane angles.

Finally, there are plotted on the graph of Fig. 6 two control parameter lines 158, 160, each of which represents a different constant value of the main bleed duct flow parameter $(P_t - P_s)/P_t$ used in the preferred embodiment of the present invention.

HSB 401536

- 17 -

Two important characteristics of the parameter lines 158, 160 should be noted. First, each such line, as it passes through the compressor operating lines, has a constant slope, indicating that the selected parameter $(P_t - P_s)/P_t$ is insensitive to variations in compressor inlet (i.e., ambient) temperature. Secondly, each of the parameter lines 158, 160 extends between and is essentially parallel to a different one of the surge and demand line pairs 150, 154 and 152, 156. The lines 158, 160 thus respectively define ideal potential load compressor operating areas 162 (the cross-hatched area bounded by lines 146a, 156, 146c and 158) and 164 (the cross-hatched area bounded by lines 148a, 156, 148c and 160), such potential operating areas having substantially constant minimum flow rates paralleling their associated surge lines.

The achievement of these optimum compressor operating areas, defined in part by the flow parameter lines 158, 160, is, of course, made possible by the previously described novel integral and proportional surge valve control built into the control system 68.

Another reason why the use of this particular flow control parameter is operationally advantageous is that the optimum value of such parameter for each guide vane angle is essentially linearly related to the particular inlet guide vane angle. This generally linear relationship permits the use of the relatively simple linear function generator 104 (Fig. 4) to properly reset the desired value of the flow parameter as a function of the inlet guide vane position.

HSB 401537

- 18 -

The bleed air control principles of the present invention are applicable to a wide variety of compressor bleed applications and are not limited to the APU load compressor application described above. For example, the proportional-plus-integral

5    surge valve control method of the present invention is equally well adapted to the situation where partial bleed-off of the compressed air discharged from a power compressor (as distinguished from a load compressor) is used as the air source for a pneumatically-operated accessory system.

10    Additionally, while the control parameter $(P_t - P_s)/P_t$ is particularly well suited to the illustrated load compressor bleed application, other flow-related parameters (such as $P_t - P_s$) could be used if desired. Moreover, the signals used to adjust the control set point (i.e., the illustrated altitude, minimum

15   demand mode, and inlet guide vane adjustment signals) could be varied to suit the particular bleed air application. One example of such variation would be the deletion of the guide vane adjustment of the control set point in the situation where the bled-from compressor does not have adjustable guide vanes.

20    To summarize, the control system 68, with its integral-plus-proportional control feature, provides apparatus and methods for eliminating the large amount of wasted surge bleed air associated with previous surge valve control systems. This is accomplished by using relatively standard, rugged and reliable electronic

25   components. The greatly improved control provided by this invention reduces fuel consumption and surge bleed air usage and noise, yet at the same time increases the maximum air pressure available to the pneumatic accessory system 14 and the maximum shaft power available to the mechanically-driven accessory 12.

- 19 -

HSB 401538

The foregoing detailed description is to be clearly understood as given by way of illustration and example only, the spirit and scope of this invention being limited solely by the appended claims.

5    What is claimed is:

HSB 401539

- 20 -

## THE CLAIMS

1.    A system for supplying gas discharged from a compressor or the like to gas-operated apparatus having a variable supply gas flow rate demand, said system comprising:

(a)    duct means for flowing to the gas-operated apparatus gas discharged from the compressor;

(b)    means defining a surge outlet passage from said duct means;

(c)    surge flow regulating means operable to variably restrict gas flow outwardly through said surge outlet passage;

(d)    means for sensing the gas flow rate through said duct means and generating an error signal having a magnitude indicative of the deviation between the sensed flow rate and a desired value thereof; and

(e)    control means for utilizing said error signal to operate said surge flow regulating means in a manner providing an essentially constant minimum gas flow rate through said duct means despite fluctuations in the flow rate of gas received by the gas-operated apparatus.

2.    The system of Claim 1 wherein said control means include means for converting said error signal to a control signal whose magnitude, relative to the magnitude of said error signal, has both an integral component and a proportional component, and means for transmitting said control signal to said surge flow regulating means to operate the same.

- 21 -

HSB 401540

3.    The system of Claim 2 wherein said error signal converting means include a proportional controller and an integral controller, said proportional and integral controllers being coupled in parallel between said sensing and generating means and said surge flow regulating means.

4.    The system of Claim 1 wherein the compressor has an inlet opening and means for variably adjusting the area of such inlet opening, said means (d) include means for sensing the value of a predetermined flow-related parameter within said duct means, and comparator means for comparing the sensed value of said parameter to a set point value thereof and responsively generating said error signal, and said system further comprises means associated with said comparator for varying said set point value of said parameter in response to variation in the area of the compressor inlet opening.

5.    The system of Claim 4 in which said flow-related parameter is $(P_t - P_s)/P_t$, $P_t$ being the total pressure in said duct means and $P_s$ being the static pressure therein.

HSB 401541

- 22 -

6.  A control system for modulating a surge bleed valve
positioned in a surge bleed outlet passage of bleed duct means
adapted to receive air discharged from a compressor and supply
the air to pneumatically-operated apparatus having a variable
supply air demand, said control system comprising:

(a)  means for generating an error signal indicative
of the difference between the actual magnitude of a selected
flow-related parameter within the bleed duct means and a desired
value of said parameter;

(b)  first control means for receiving said error
signal and transmitting an output signal having a magnitude
proportional to the magnitude of said error signal;

(c)  second control means for receiving said error
signal and transmitting an output signal having a magnitude
representing the integral, as a function of time, of the magni-
tude of said error signal; and

(d)  means for simultaneously utilizing said output
signals from said first and second control means to modulate the
surge bleed valve in a manner assuring that the minimum air flow
rate through the bleed duct means is of a substantially constant,
predetermined magnitude regardless of the supply air demand of
the pneumatically-operated apparatus.

7.  The control system of Claim 6 wherein said error
signal-generating means include:

(1)  means for sensing the difference between the
total pressure and the static pressure within the bleed duct
means and transmitting a first output signal indicative of the
sensed pressure differential;

HSB 401542

- 23 -

7          (2)  means for sensing the total pressure within

8      the bleed duct means and transmitting a second output signal

9      indicative of the sensed total pressure;

10          (3)  means for generating a sensed parameter signal

11     having a magnitude equal to the magnitude of said first output

12     signal divided by the magnitude of said second output signal;

13     and

14          (4)  comparator means for receiving said sensed

15     parameter signal and at least one reset signal indicative of

16     said desired value of said parameter, and for responsively generat-

17     ing said error signal.


8.   The control system of Claim 7 wherein the compressor

2      is of a type having adjustable inlet guide vanes, and said

3      control system further comprises guide vane position sensor means

4      for transmitting said reset signal to said comparator means,

5      said reset signal varying as a function of the position of the

6      inlet guide vane according to a predetermined reset schedule.


9.   The control system of Claim 8 wherein said reset

2      schedule is substantially linear.


10.   The control system of Claim 6 wherein said element

2      (a) through (d) are electronic.


– 24 –

HSB 401543

11.   For use with an air supply system for pneumatically-
powered apparatus having a variable supply air demand, the
system including a supply duct interconnected between a compressor
and the pneumatically-powered apparatus, and having an outlet
passage in which is positioned a surge bleed valve, control
apparatus for modulating the valve comprising:

(a)   means, responsive to a variation in the flow
rate of air received by the pneumatically-powered apparatus, for
producing an error signal having a magnitude indicative of the
degree of deviation, from a desired minimum flow rate, of the
actual flow rate through the supply duct; and

(b)   control means for utilizing said error signal
to modulate the surge bleed valve in a manner such that, sub-
sequent to an initial opening of the valve, the flow rate
through the supply duct remains substantially constant regard-
less of the degree to which the valve is further opened, whereby
the valve is controlled along an operating line substantially
parallel to a surge line of the compressor.

12.   The control apparatus of Claim 11 wherein said con-
trol means include means for receiving said error signal and
responsively transmitting to the surge valve a control signal
whose magnitude has, relative to the magnitude to said error
signal, both a proportional component and a time-integral com-
ponent.

- 25 -

HSB 401544

13.   The control apparatus of Claim 12 wherein said means for receiving said error signal comprise a proportional controller, an integral controller and a summer, said proportional and integral controllers being coupled in parallel between said error signal-producing means (a) and said summer, said summer having an outlet coupled to the surge bleed valve.

14.   The control apparatus of Claim 13 further comprising means for automatically deleting said time-integral component from said control signal while said error signal exceeds a predetermined magnitude.

15.   The control apparatus of Claim 14 wherein said means for automatically deleting said time-integral component comprises a kicker device having inlet means for receiving said error signal, said kicker device further having means for deactivating said integral controller when said error signal reaches a predetermined magnitude.

- 26 -

HSB 401545

16.   A gas turbine engine accessory power unit for supply-
ing compressed air to pneumatically-powered apparatus having
a fluctuating compressed air supply demand, said accessory power
unit comprising:

(a)   a compressor;

(b)   duct means for receiving compressed air dis-
charged from said compressor and supplying the received air
to the pneumatically-powered apparatus;

(c)   surge bleed means operable to exhaust from said
duct means a selectively variable quantity of air to assure at
least a predetermined minimum flow rate through said duct means
and thereby prevent surge of said compressor;

(d)   sensing means for sensing the value of a pre-
determined, flow-related parameter within said duct means and
generating an output signal indicative of said value;

(e)   comparator means for receiving said sensing
means output signal and generating an error signal representing
the difference between the sensed value of said parameter and
a desired value thereof; and

(f)   control means for receiving said error signal
and transmitting to said surge bleed means a control signal to
operate said surge bleed means, the magnitude of said control
signal having, relative to the magnitude of said error signal,
a proportional component and an integral component,

whereby said minimum flow rate through said duct
means is essentially constant regardless of the
compressed air supply demand of the pneumatically-
powered apparatus.

- 27 -

HSB 401546

17.    The accessory power unit of Claim 16 wherein said compressor has adjustable inlet guide vanes, the value of said flow-related parameter is substantially independent of the temperature of the compressed air, said comparator means have an adjustable control set point representing said desired value of said parameter, and said accessory power unit further comprises means for transmitting to said comparator a reset signal for varying said set point as a function of the position of said inlet guide vanes in accordance with a predetermined reset schedule.

18.    The accessory power unit of Claim 17 wherein said parameter is $(P_t - P_s)/P_t$, $P_t$ and $P_s$ respectively being the total and static pressures within said duct means, and said reset schedule is at least approximately linear.

19.    The accessory power unit of Claim 16 wherein said control means include parallel proportional and integral controllers coupled to a summer having an outlet connected to said surge bleed means.

20.    The accessory power unit of Claim 16 wherein said sensing means include at least one pressure-to-electric transducer, and said comparator means and said control means comprise electronic components.

HSB 401547

21.   A gas turbine engine device comprising:

(a)   drivable compressor means for receiving, compressing and discharging air;

(b)   combustor means for receiving compressed air discharged by said compressor means, mixing the received air with fuel, burning the fuel-air mixture, and discharging the resultant expanded gas;

(c)   turbine means, positioned to be operated by the expanded gas discharged from said combustor means, for driving said compressor means and creating a power output from said gas turbine device; and

(d)   a bleed air system including:

(1)   main bleed duct means for receiving air discharged from said compressor means, said main bleed duct means having a branch supply portion for flowing compressed air to pneumatically-operated apparatus having a fluctuating compressed air supply demand, said main bleed duct means further having a surge bleed outlet portion for exhausting air from said main bleed duct means;

(2)   flow regulating means operable to vary the flow rate of air exhausted through said surge bleed output portion of said main bleed duct means; and

(3)   surge bleed control means for operating said flow regulating means to assure an essentially constant minimum air flow rate through said main bleed duct means despite fluctuations in the air flow rate through said branch supply portion of said main bleed duct means, said surge bleed control means being responsive to variations in air flow through said main bleed duct means and including means for integrally and proportionally controlling said flow regulating means.

- 29 -

HSB 401548

22.    The device of Claim 21 wherein said surge bleed control means include means for sensing the air flow rate through said main bleed duct means and generating an output signal indicative of the sensed flow rate, comparator means for receiving said sensing means output signal and generating an error signal indicative of the variation between the actual magnitude of said sensing means output signal and a desired set point value thereof, and wherein said means for integrally and proportionally controlling said flow regulating means include means for receiving said error signal and converting the same to a control signal whose magnitude, relative to the magnitude of said error signal, has both a proportional and a time-integral component.

23.    The device of Claim 22 wherein said compressor means include adjustable compressor inlet guide vanes, and said device further comprises means, connected between said inlet guide vanes and said comparator means, for varying said set point value as a function of the position of said inlet guide vanes.

24.    The device of Claim 23 wherein said means for sensing the air flow rate through said main bleed duct means include means for sensing therein the parameter $(P_t - P_s)/P_t$, $P_t$ being the total pressure in said main bleed duct means and $P_s$ being the static pressure therein, and wherein the degree to which said set point value is altered by said set point varying means is substantially linearly related to the position of said inlet guide vanes.

- 30 -

HSB 401549

25.   The device of Claim 24 wherein said means for sensing
the flow rate through said main bleed duct means comprise a
total pressure-to-electric transducer coupled to a differential
pressure-to-electric transducer, and a signal divider coupled to
each of said transducers.

26.   The device of Claim 23 wherein said compressor means
include a load compressor, said inlet guide vanes are associated
with said load compressor, and said main bleed duct means are
positioned to receive compressed air discharged from said load
compressor.

27.   The device of Claim 22 further comprising means for
automatically varying said set point value in response to changes
in the altitude of said device.

28.   The device of Claim 22 further comprising means for
adjusting said set point value in response to the selection of
a predetermined mode of operation of the pneumatically-operated
apparatus.

29.   The device of Claim 21 wherein said surge bleed con-
trol means include proportional controller means for receiving
said error signal and generating a first output signal, integral
controller means for receiving said error signal and generating
a second output signal, and means for simultaneously utilizing
the first and second output signals to operate said flow regu-
lating means.

- 31 -

**HSB 401550**

30.    The device of Claim 29 wherein said flow regulating means include a normally open surge bleed valve, and said surge bleed control means further include means for deactivating said integral controller means during periods when said error signal exceed a predetermined magnitude.

31.    The device of Claim 30 wherein said surge bleed control means further include means for deactivating said integral control means in response to the selection of a predetermined mode of operation of the pneumatically-operated apparatus.

32.    A control system for assuring a substantially constant minimum flow rate through a duct receiving air discharged from a compressor or the like, the duct having a supply outlet connected to pneumatically-operated apparatus having a variable supply air demand, the duct further having an exhaust outlet, said control system comprising:

(a)    a flow regulating device adapted to be positioned in the exhaust outlet and operable to selectively vary air flow outwardly therethrough;

(b)    a flow sensing device having a sensing portion adapted to be positioned in the duct, said flow sensing device further having an output portion;

(c)    an adjustable set point comparator having an input portion coupled to said output portion of said flow sensor, and an outlet adapted to generate an error signal;

(d)    a proportional controller having an inlet coupled to said outlet of said comparator and further having an outlet;

- 32 -

HSB 401551

18    (e) an integral controller having an inlet coupled

19 to said outlet of said comparator and further having an inlet;

20 and

21    (f) a summer having a first inlet coupled to said

22 outlet of said proportional controller, a second inlet coupled

23 to said outlet of said integral controller, and an outlet coupled

24 to said flow regulator.


  33. The control system of Claim 32 further comprising a

2 kicker connected between said outlet of said comparator and said

3 integral controller to deactivate said integral controller when

4 said error signal reaches a predetermined magnitude.


  34. The control system of Claim 33 further compising

2 an OR gate having a first inlet adapted to receive a signal

3 indicating the selection of a predetermined mode of operation of

4 the pneumatically-operated apparatus, a second inlet, and an

5 outlet coupled to said integral controller, and wherein said

6 kicker has an inlet coupled to said outlet of said comparator, and

7 an outlet coupled to  said second inlet of said OR gate.


  35. The control system of Claim 32 wherein the compressor

2 has adjustable inlet guide vanes, and said control system

3 further comprises a guide vane position sensor and a function

4 generator coupled in series between the inlet guide vanes and

5 said input portion of said comparator.


- 33 -

HSB 401552

36.   The control system of Claim 35 wherein the output
of said function generator is generally linearly related to
its input.

37.   The control system of Claim 32 further comprising a
signal generator having an outlet coupled to said input portion
of said comparator and an inlet adapted to receive a signal
generated when a predetermined mode of operation of the the
pneumatically-operated apparatus.

38,   The control system of Claim 32 further comprising an
additional comparator having a first inlet adapted to receive
a signal indicative of the actual altitude of said control
system, a second inlet adapted to receive a reference altitude
signal, and an outlet coupled to said input portion of first-
mentioned comparator.

39.   The control system of Claim 32 wherein said flow sensing
device comprises a total pressure transducer coupled to a differ-
ential pressure transducer, each of said transducers having an
outlet, and wherein said control system further comprises a signal
divider having a pair of inlets each coupled to one of said
transducer outlets, and an outlet coupled to said input portion of
said comparator.

40.   The control system of Claim 32 wherein said control
system is electronic.

- 34 -

HSB 401553

41.   A method of controlling a surge bleed valve, positioned
in a surge outlet passage of a compressed air supply duct inter-
connected between the outlet of a compressor and the inlet of
pneumatically-powered apparatus having a variable supply air
demand, to assure a predetermined, essentially constant minimum
flow rate through the supply duct despite fluctuations in the
supply air demand of the pneumatically-powered apparatus, said
method comprising the steps of:

      (a)   producing a first control signal having a
magnitude proportionally related to the magnitude of deviation,
from a desired flow rate, of the actual flow rate through the
supply duct;

      (b)   producing a second control signal whose magnitude
is the integral, as a function of time, of said magnitude of
flow rate deviation; and

      (c)   simultaneously utilizing said first and second
control signas to modulate the surge bleed valve.


42.   The method of Claim 41 wherein said control signal
producing steps are performed by generating an error signal
having a magnitude representing said magnitude of flow rate
deviation, providing a proportional controller, providing an
integral controller, and transmitting said error signal to each
of said controllers.


43.   The method of Claim 42 wherein said control signal
utilizing step includes the steps of superimposing said first
and second control signals to form a combined proportional and
integral control signal, providing the surge bleed valve with
a modulating motor, and transmitting said combined proportional
and integral control signal to said modulating motor.

– 35 –

HSB 401554

44.   The method of Claim 42 wherein the generating of said error signal includes the steps of sensing within the supply duct the value of the parameter $(P_t - P_s)/P_t$, $P_t$ being the total pressure within the supply duct and $P_s$ being the static pressure therein, and transmitting a signal indicating of the sensed value of said parameter to an inlet of a comparator.

45.   The method of Claim 44 wherein said steps of sensing the value of said parameter and transmitting a signal indicative of the sensed value thereof are performed by providing a total pressure sensor having an inlet and an outlet, providing a differential pressure sensor having a first inlet, a second inlet, and a outlet, providing a signal divider having a first inlet, a second inlet, and an outlet, communicating said inlet of said total pressure sensor and said first inlet of said differential pressure sensor with each other and with the interior of the supply duct, communicating said second inlet of said differential pressure sensor with the interior of the supply duct, connecting said outlet of said total pressure sensor to said first inlet of said signal divider, connecting said outlet of said differential pressure sensor to said second inlet of said signal divider, and connecting said outlet of said signal divider to said inlet of said comparator.

46.   The method of Claim 44 wherein the compressor has adjustable inlet guide vanes, said comparator has an adjustable set point, and said method further comprises the step of adjusting said set point in response to variations in the position of the inlet guide vanes.

- 36 -

HSB 401555

2 47. The method of Claim 46 wherein said set point adjust-
ing step is performed by adjusting said set point to a degree
essentially linearly related to changes in the position of the
inlet guide vanes.

48.    A method of utilizing a compressor of a gas turbine
engine to power pneumatically-operated apparatus having a
variable inlet air flow demand, said method comprising the steps
of:

   (a)   interconnecting a supply duct between the
compressor and the pneumatically-operated apparatus;

   (b)   flowing discharge air from the compressor through
said supply duct to the pneumatically-operated apparatus; and

   (c)   maintaining an essentially constant minimum
supply duct flow rate, despite fluctuations in the flow rate
of air received by the pneumatically-operated apparatus, by
exhausting air from said supply duct in response to variations
therein of the value of predetermined, flow-related parameter,
the flow rate of air exhausted from said supply duct being related
to the magnitude of said parameter value variations in both a
proportional and time-integral manner.

49.    The method of Claim 48 wherein said maintaining step
includes the steps of providing an outlet passage from said
supply duct, positioning in said outlet passage a surge bleed
valve operable to selectively vary the flow of air outwardly
through said outlet passage, generating an integral control
signal in response to said variation in said flow-related para-
meter, generating a proportional control signal in response to
said variations in said flow-related parameter, and simultaneously
utilizing said integral and proportional control signals to
operate said surge bleed valve.

- 37 -

HSB 401556

50.    The method of Claim 49 further comprising the step
of interrupting said integral control signal when the difference
between the actual value of said parameter and a desired value
thereof exceeds a predetermined level.

51.    The method of Claim 49 wherein the compressor has
adjustable inlet guide vanes, and said method further comprises
the step of adjusting the relationship between the magnitudes of
said integral and proportional control signals and the magnitudes
of said parameter variations as a function of the position of
the inlet guide vanes.

52.    A power-efficient method of preventing surge in a com-
pressor supplying compressed air through a bleed duct to pneu-
matically-powered apparatus having a fluctuating supply air demand,
the duct having a surge outlet passage in which is operatively
positioned a surge bleed valve, and the compressor having a surge
flow rate and a surge operating line, said method comprising the
steps of:

(a)    selecting a minimum flow rate through the bleed
duct which will assure that the compressor through flow rate ex-
ceeds the comprssor surge flow rate by a predetermined margin of
safety; and

(b)    simultaneously proportionally and integrally
modulating the surge bleed valve, in response to variations in
bleed duct air flow, to operate the valve along a control line
essentially parallel to the compressor surge operating line and
spaced apart therefrom by a distance representing said flow rate
margin of safety.

– 38 –

HSB 401557

COMBINED DECLARATION AND POWER OF ATTORNEY
IN ORIGINAL APPLICATION

ATTORNEY DOCKET NO
TE-4086

As a below named inventor, I hereby declare that:

my residence, post office address and citizenship are as stated below next to my name; that
I verily believe that I am the original, first and sole inventor (if only one name is listed below) or a joint
inventor (if plural inventors are named below) of the invention entitled:

COMPRESSOR BLEED AIR CONTROL APPARATUS AND METHOD

described and claimed in the attached specification, that I understand the content of the attached specification, that I
do not know and do not believe the same was ever known or used in the United States of America before my or our
invention thereof, or patented or described in any printed publication in any country before my or our invention thereof
or more than one year prior to this application, that the same was not in public use or on sale in the United States of
America more than one year prior to this application, that the invention has not been patented or made the subject of
an inventor's certificate issued before the date of this application in any country foreign to the United States of
America on an application filed by me or my legal representatives or assigns more than twelve months prior to this
application, that I acknowledge my duty to disclose information of which I am aware which is material to the
examination of this application, and that no application for patent or inventor's certificate on this invention has been
filed in any country foreign to the United States of America prior to this application by me or my legal representatives
or assigns.

I hereby appoint the following attorney(s) and/or agent(s) to prosecute this application and to transact all business
in the Patent and Trademark Office connected therewith:

| | | | |
|---|---|---|---|
| Albert J. Miller | Reg. No. 22,065 | | |
| Joel D. Talcott | Reg. No. 25,709 | J. Richard Konneker | Reg. No. 28,867 |
| James W. McFarland | Reg. No. 25,104 | Joseph A. Yanny | Reg. No. 29,459 |
| | | John H. Lynn | Reg. No. 29,235 |

Direct all telephone calls to:    J. Richard Konneker at Area Code 602,267,6662

Address all correspondence to:

The Garrett Corporation
Patent Department G4/301-1
111 South 34th Street
P.O. Box 5217
Phoenix, Arizona 85010

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on
information and belief are believed to be true; and further that these statements were made with the knowledge that
willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of
Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application
or any patent issued thereon.

| FULL NAME OF SOLE OR FIRST INVENTOR | INVENTOR'S SIGNATURE | |
|---|---|---|
| Richard F. Stokes | _Richard F. Stokes_ | DATE 2-16-81 |
| RESIDENCE (CITY, STATE) Phoenix, Arizona | CITIZENSHIP U.S.A. | |
| POST OFFICE ADDRESS 2615 E. Windsor, Phoenix, Arizona 85008 | | |
| FULL NAME OF SECOND JOINT INVENTOR IF ANY | INVENTOR'S SIGNATURE | |
| James D. Timm | _James D. Timm_ | DATE 2-16-81 |
| RESIDENCE (CITY, STATE) Tempe, Arizona | CITIZENSHIP U.S.A. | |
| POST OFFICE ADDRESS 220 E. Ellis Dr., Tempe, Arizona 85282 | | |
| FULL NAME OF THIRD JOINT INVENTOR IF ANY | INVENTOR'S SIGNATURE | |
| Stephen R. LaCroix | _Stephen R. LaCroix_ | DATE 2-16-81 |
| RESIDENCE (CITY, STATE) Scottsdale, Arizona | CITIZENSHIP USA | |
| POST OFFICE ADDRESS 7758 E. Valley Vista, Scottsdale, Arizona 85253 | | |

- 39 -

FORM 7370-1 (8-80)

HSB 401558

| COMBINED DECLARATION AND POWER OF ATTORNEY IN ORIGINAL APPLICATION | ATTORNEY DOCKET NO. TE-4086 |
|---|---|

As a below named inventor, I hereby declare that:

my residence, post office address and citizenship are as stated below next to my name; that

I verily believe that I am the original, first and sole inventor (if only one name is listed below) or a joint inventor (if plural inventors are named below) of the invention entitled:

### COMPRESSOR BLEED AIR CONTROL APPARATUS AND METHOD

described and claimed in the attached specification, that I understand the content of the attached specification, that I do not know and do not believe the same was ever known or used in the United States of America before my or our invention thereof, or patented or described in any printed publication in any country before my or our invention thereof or more than one year prior to this application, that the same was not in public use or on sale in the United States of America more than one year prior to this application, that the invention has not been patented or made the subject of an inventor's certificate issued before the date of this application in any country foreign to the United States of America on an application filed by me or my legal representatives or assigns more than twelve months prior to this application, that I acknowledge my duty to disclose information of which I am aware which is material to the examination of this application, and that no application for patent or inventor's certificate on this invention has been filed in any country foreign to the United States of America prior to this application by me or my legal representatives or assigns.

I hereby appoint the following attorney(s) and/or agent(s) to prosecute this application and to transact all business in the Patent and Trademark Office connected therewith:

| | | | |
|---|---|---|---|
| Albert J. Miller | Reg. No. 22,065 | J. Richard Konneker | Reg. No. 28,867 |
| Joel D. Talcott | Reg. No. 25,709 | Joseph A. Yanny | Reg. No. 29,459 |
| James W. McFarland | Reg. No. 25,104 | John B. Lynn | Reg. No. 29,235 |

Direct all telephone calls to:   J. Richard Konneker at Area Code 602,267,6662

Address all correspondence to:

The Garrett Corporation
Patent Department G4/301-1
111 South 34th Street
P.O. Box 5217
Phoenix, Arizona 85010

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

| FULL NAME OF SOLE OR FIRST INVENTOR Milton R. Adams | INVENTOR'S SIGNATURE | DATE 2-16-81 |
|---|---|---|
| RESIDENCE (CITY, STATE) Tempe, Arizona 85282 | | CITIZEN OF U.S.A. |
| POST OFFICE ADDRESS 4714 South Oak St., Tempe, Arizona 85282 | | |

| FULL NAME OF SECOND JOINT INVENTOR, IF ANY | INVENTOR'S SIGNATURE | DATE |
|---|---|---|
| RESIDENCE (CITY, STATE) | | CITIZEN OF |
| POST OFFICE ADDRESS | | |

| FULL NAME OF THIRD JOINT INVENTOR IF ANY | INVENTOR'S SIGNATURE | DATE |
|---|---|---|
| RESIDENCE (CITY, STATE) | | CITIZEN OF |
| POST OFFICE ADDRESS | | |

- 40 -

HSB 401559

TE-4086

## ABSTRACT

A turbine engine accessory power unit has a compressor bleed air control system in which a surge bleed valve is proportionally and integrally controlled to maintain a constant minimum compressor bleed flow rate slightly above the compressor's surge flow rate. The system control parameter is automatically reset as a function of the position of the compressor's adjustable inlet guide vanes to assure optimum control system performance throughout the air delivery range of the compressor.

- 41 -

HSB 401560

PRINT OF DRAWING AS
ORIGINALLY FILED



FIG-1

FIG-3

FIG-2

HSB 401561

PRINT OF DRAWING AS
ORIGINALLY FILED

424,474



FIG-4

FIG-5

FIG-6

HSB 401562

124674

PRIOR APPLICATION:
Examiner: L.J. Casaregola
Art Unit 343

6/37.7

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
DOCKET NO. TE-4086-D1

Hon. Commissioner of Patents          Phoenix, Arizona 85010
    & Trademarks

Washington, D. C. 20231               September 24, 1982

    Dear Sir:

    This is a request for filing a divisional application under
37 CFR 1.60 of the pending patent application, Serial No. 235,794,
filed on February 19, 1981, of Richard F. Stokes et al for
"COMPRESSOR BLEED AIR CONTROL APPARATUS AND METHODS". Please prepare
a copy of this prior application.

    The filing fee is calculated below:

    <u>Claims as Filed, Less any Claims Cancelled by Amendment</u>

| For | Number Filed | Number Extra | Rate | Basic Fee $65 |
|-----|--------------|--------------|------|---------------|
| Total Claims | 12 | 2X | $ 2.00 | $ 4.00 |
| Independent | 3 | 2X | $10.00 | $ 20.00 |
| | | | TOTAL FILING FEE | $ 89.00 |

    The Commissioner is hereby authorized to charge any
additional fees which may be required, or credit any over-payment,
to Deposit Account No. 07-0145. A duplicate copy of this sheet
is enclosed.

0048 10/01/82 124674          07-0145 1 .01      65.00CH
80049 10/01/82 434674         07-0145 1 102      24.00CH

HSB 401563

Docket No. TE-4086-D1...................................Page 2


        Cancel in this application original Claims 1-40 of the
prior application before calculating the filing fee.  By virtue of
the cancellation of these original claims, claims 41-52 remain in
this divisional application.


        Amend the specification of the prior application by inserting
before the first line, the sentence:

    --  This is a division of application Serial No. 235,794
        filed February 19, 1981 --

                                    (Patent No. 4,380,873)                    L. J. C.

        The prior application is assigned to The Garrett Corporation
by virtue of an Assignment recorded in the U.S. Patent and Trademark
Office on February 19, 1981, in Reel 3868, Frame 026.


        The power of Attorney in the prior application is to Albert
J. Miller, Joel D. Talcott, James W. McFarland, J. Richard
Konneker, Joseph A. Yanny, and John H. Lynn.  This power appears in
the original papers of the prior application.  Address all future
communication to:

                        J. Richard Konneker
                        Patent Dept. G4/301-15
                        THE GARRETT CORPORATION
                        111 South 34th Street
                        P.O. Box 5217
                        Phoenix, Arizona 85010


                                Respectfully submitted,

                                *J. Richard Konneker*

                                J. Richard Konneker
                                Patent Attorney
                                Reg. No. 28,867

JRK/dak

Tele:  (602) 267-6662


HSB 401564



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 06/426.674 | 09/27/82 | STOVER | P | TE-4086-DI |

```
┌ RICHARD HONNEKER                          ┐
  PATENT DEPT. 64/391-15
  THE GARRETT CORP.,
  111 SOUTH 34TH STREET, P. O. BOX 5217
  PHOENIX, AZ 85010
└                                           ┘
```

| EXAMINER |
|---|
| CASARESOLA, L |

| ART UNIT | PAPER NUMBER |
|---|---|
| 342 | 2 |

DATE MAILED: 08/18/83

This is a communication from the examiner in charge of your application.

COMMISSIONER OF PATENTS AND TRADEMARKS

☐ This application has been examined    ☐ Responsive to communication filed on _____    ☐ This action is made final.

A shortened statutory period for response to this action is set to expire __1__ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892.    2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.    4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.    6. ☐ _____

**Part II    SUMMARY OF ACTION**

1. ☑ Claims _____1-52_____ are pending in the application.

    Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☑ Claims __1-45, 48-51, 52__ are rejected.

5. ☑ Claims __46, 47, 53-57__ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings which are acceptable for examination purposes until such time as allowable subject matter is indicated.

8. ☐ Allowable subject matter having been indicated, formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. These drawings are ☐ acceptable; ☐ not acceptable (see explanation).

10. ☐ The ☐ proposed drawing correction and/or the ☐ proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved. ☐ disapproved (see explanation). However, the Patent and Trademark Office no longer makes drawing changes. It is now applicant's responsibility to ensure that the drawings are corrected. Corrections MUST be effected in accordance with the instructions set forth on the attached letter "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474.

12. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. _____; filed on _____

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

HSB 401565

S.N. 424,674
Art Unit 343

-2-

Claims 41-43 and 52 are rejected under 35 U.S.C. 103 as being unpatentable over Shell in view of Rateau or Metot et al. Although, the invention is not identically disclosed or described as set forth in section 102 of Title 35 U.S.C., the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

Shell discloses a compressor control system including surge control passage 9 with valve 10, P and $\Delta$P sensors 3 and 11, dividing circuit 14, and controller 15. Controller 15 compares the quotient from circuit 14 with set point 16; note that the controller in figure 2 has both proportional and integral action. Moreover, Shell's system operates according to a method generally similar to that claimed.

It is further noted that Shell's surge control outlet recycles air to the compressor inlet. Applicants' claims are not interpreted as specifically precluding this, but even if they were so interpreted, the provision for dumping instead of recycling this air is well known in the art as evidenced by Rateau and Metot.

Claims 44 and 45 are rejected like claims 41-43 and 52 above and in view of Best. The pressure difference employed in the control parameter of the Shell system is taken across an orifice, however, the use of the difference between total and static pressure would be an obvious alternative since it has been applied in other similar

HSB 401566

S.N. 424,674
Art Unit 343

-3-

systems. See for example, the embodiment of Figure 5 of Best; note pressure taps and 196 and 198, and note also that these taps may be located in the compressor discharge (column 8, lines 4-7). Furthermore, it is pointed out that Rateau provides an additional example of the use of total and static pressure; note elements l and m.

Claims 48 and 49 are rejected like claims 41-43 and 52 above and in view of Lewis. The Shell control system is obviously applicable to any dynamic compressor including gas turbine driven compressor means such as those disclosed by Lewis.

Claims 46, 47, 50, and 51 will be allowed if rewritten in independent form.

L.CASAREGOLA:klm

703-557-3464

08-03-83

J. CASAREGOLA
EXAMINER
ART UNIT 343

HSB 401567

FORM PTO-892
(REV. 3-78)

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

**NOTICE OF REFERENCES CITED**

| SERIAL NO. | GROUP/ART UNIT | ATTACHMENT TO PAPER NUMBER |
|---|---|---|
| 42/611 | 243 | 2 |

APPLICANT(S): Arkles et al

### U.S. PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|
| A | | | Halstead | 415 | 27 | |
| B | 3,494,475 | 8/11/61 | Lewis | 116 | 466 | |
| C | | 7/1/12 | Cast | 45 | 27 | |
| D | | 9/21/3 | Hefter et al | 45 | 27 | |
| E | | | | | | |
| F | | | | | | |
| G | | | | | | |
| H | | | | | | |
| I | | | | | | |
| J | | | | | | |
| K | | | | | | |

### FOREIGN PATENT DOCUMENTS

| | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG. | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|
| L | 1,121,717 | 3/9/66 | GT Brit | St. H | 45 | 27 | | |
| M | | | | | | | | |
| N | | | | | | | | |
| O | | | | | | | | |
| P | | | | | | | | |
| Q | | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | |
| S | |
| T | |
| U | |

| EXAMINER | DATE |
|---|---|
| | 7/2/13 |

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

HSB 401568

MAIL ROO
SEP
1
1983
PAT & TRADE MARK OFC
33

The Garrett Corpora…

#3

CASE DOCKET NO. ___ TE-4086-D1

THE GARRETT CORPORATION
ATTENTION: PATENT DEPARTMENT
111 SOUTH 34TH STREET
P.O. BOX 5217
PHOENIX, ARIZONA 85010

DATE: ___ August 30, 1983 ___

IN RE APPLICATION OF: RICHARD F. STOKES et al

SERIAL NO.: ___ 424,674 ___

FILED: ___ SEPTEMBER 27, 1982 ___

FOR: ___ "COMPRESSOR BLEED AIR CONTROL ___

___ APPARATUS AND METHODS" ___

THE COMMISSIONER OF PATENTS
& TRADEMARKS

Washington, D. C. 20231

Sir:

Transmitted herewith is an Amendment in the above-identified application.

The additional fee, if any, required because of claims added by this Amendment, is calculated below:

| CLAIMS AS AMENDED | | | | | |
|---|---|---|---|---|---|
| | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NO. PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE | ADDITIONAL FEE |
| TOTAL CLAIMS | | MINUS | * | = | X $10 | |
| INDEP. CLAIMS | | MINUS | ** | = | X $30 | |
| | | | TOTAL ADDITIONAL FEE FOR THIS AMENDMENT | | | –0– |

\* If this number is less than 20, enter 20 in this space.
\*\* If this number is less than 3 enter 3 in this space.

Charge the above calculated additional claim fee plus any additional fee(s) required to secure entry of this Amendment, or credit any overpayment, to The Garrett Corporation Deposit Account No. 07-0145. A duplicate copy of this sheet is provided.

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D. C. 20231, on AUGUST 30, 1983

J. Richard Konneker 8/30/83
J. Richard Konneker, Reg. 28,867     DATE

J. Richard Konneker
J. Richard Konneker
Attorney for Applicants
Registration No. 28,867
(602) 231-1882

HSB 401569

One of
The Signal
Companies

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

GROUP ART UNIT 343

EXAMINER: LOUIS J. CASAREGOLA

| | | |
|---|---|---|
| In re Application of | ) | |
| RICHARD F. STOKES et al | ) | FOR: COMPRESSOR BLEED AIR |
| | ) | CONTROL APPARATUS AND |
| Serial No. 424,674 | ) | METHODS |
| | ) | |
| Filed: September 27, 1982 | ) | |
| | ) | |
| Docket No. TE-4086-D1 | ) | |

### AMENDMENT

Hon. Commissioner of Patents         Phoenix, Arizona 85010
    & Trademarks

Washington, D. C. 20231           August 30, 1983

Dear Sir:

    Responsive to the Examiner's Action dated August 18, 1983, please amend the above-identified application as set forth below.

### IN THE SPECIFICATION:

    On page 14, line 7, delete "sume" and insert --sum-- in place thereof, and in line 8 delete "magnitude" and insert --magnitudes-- in place thereof.

### IN THE CLAIMS:

    Cancel Claims 41-45, 48, 49 and 52 without prejudice.

    Rewrite Claims 46, 50 and 51 in independent form as follows:

HSB 401570

Serial No. 424,674 . . . . . . . . . . . . . . . . . . . . . . . . Page 2

46. (Amended) [The] A method of [Claim 44] controlling a
surge bleed valve, positioned in a surge outlet passage of a com-
pressed air supply duct interconnected between the outlet of a
compressor and the inlet of pneumatically-powered apparatus having
a variable supply air demand, to assure a predetermined, essentially
constant minimum flow rate through the supply duct despite fluctu-
ations in the supply air demand of the pneumatically-powered
apparatus, [wherein] the compressor [has] having adjustable inlet
guide vanes, said method comprising the steps of:

(a)  producing a first control signal having a magnitude
proportionally related to the magnitude of deviation, from a desired
flow rate,  of the actual flow rate through the supply duct;

(b)  producing a second control signal whose magnitude is
the integral, as a function of time, of said magnitude of flow rate
deviation,

said control signal producing steps (a) and (b) being
performed by generating an error signal having a magnitude represent-
ing said magnitude of flow rate deviation; providing a proportional
controller, providing an integral controller, and transmitting said
error signal to each of said controllers,

said generating of said error signal including the
steps of sensing within the supply duct the value of the parameter
$(P_t - P_s)/P_t$, $P_t$ being the total pressure within the supply duct and
$P_s$ being the static pressure therein, and transmitting a signal
indicative of the sensed value of said parameter to an inlet of a
comparator [said comparator has] having an adjustable set point [,]; 
and

(d)  [said method further comprises the step of] adjusting
said set point in response to variations in the position of the inlet
guide vanes.--

HSB 401571

Serial No. 424,674 . . . . . . . . . . . . . . . . Page 3

3.  ~~50. (Amended)~~  [The] A method of [Claim 49] utilizing a com-
pressor of a gas turbine engine to power pneumatically-operated
apparatus having a variable inlet air flow demand, said method com-
prising the steps of:

(a)  interconnecting a supply duct between the compressor
and the pneumatically-operated apparatus;

(b)  flowing discharge air from the compressor through
said supply duct to the pneumatically-operated apparatus;

(c)  maintaining an essentially constant minimum supply
duct flow rate, despite fluctuations in the flow rate of air received
by the pneumatically-operated apparatus, by exhausting air from said
supply duct in response to variations therein of the value of a pre
determined, flow-related parameter, the flow rate of air exhausted
from said supply duct being related to the magnitude of said parameter
value variations in both a proportional and time-integral manner,

said maintaining step including the steps of provid-
ing an outlet passage from said supply duct, positioning in said
outlet passage a surge bleed valve operable to selectively vary the
flow of air outwardly through said outlet passage, generating an
integral control signal in response to said variation in said
flow-related parameter, generating a proportional control signal in
response to said variations in said flow-related parameter, and
simultaneously utilizing said integral and proportional control
signals to operate said surge bleed valve; and

(d)  [further comprising the step of] interrupting said
integral control signal when the difference between the actual value
of said parameter and a desired value thereof exceeds a predetermined
level.

HSB 401572

Serial No. 424,674 . . . . . . . . . . . . . . . . . Page 4

4. 51. (Amended) [The] A method of [Claim 49 wherein] utilizing a compressor of a gas turbine engine to power pneumatically-operated apparatus having a variable inlet air flow demand, the compressor [has] having adjustable inlet guide vanes, said method comprising the steps of:

(a)  interconnecting a supply duct between the compressor and the pneumatically-operated apparatus;

(b)  flowing discharge air from the compressor through said supply duct to the pneumatically-operated apparatus;

(c)  maintaining an essentially constant minimum supply duct flow rate, despite fluctuations in the flow rate of air received by the pneumatically-operated apparatus, by exhausting air from said supply duct in response to variations therein of the value of a pre-determined, flow-related parameter, the flow rate of air exhausted from said supply duct being related to the magnitude of said parameter value variations in both a proportional and time-integral manner, said maintaining step including the steps of providing an outlet passage from said supply duct, positioning in said outlet passage a surge bleed valve operable to selectively vary the flow of air outwardly through said outlet passage, generating an integral control signal in response to said variation in said flow-related parameter, generating a proportional control signal in response to said variations in said flow-related parameter, and simultaneously utilizing said integral and proportional control signals to operate said surge bleed valve; and

(d)  [said method further comprises the step of] adjusting the relationship between the magnitudes of said integral and proportional control signals and the magnitudes of said parameter variations as a function of the position of the inlet guide vanes.

HSB 401573

Serial No. 424,674 . . . . . . . . . . . . . . . . Page 5

<u>REMARKS</u>

Reconsideration of this application, as amended herein, is respectfully requested.

Claims 41-52 are pending in this divisional application. Claims 41-45, 48, 49 and 52 stand rejected. The Examiner has indicated that Claims 46, 47, 50 and 51 would be allowable if rewritten in independent form.

By the present amendment all the rejected claims have been cancelled without prejudice, and Claims 46, 50 and 51 have been rewritten in independent form as required by the Examiner. (Note that the objected-to Claim 47 was not amended since it depends from the now-independent Claim 46.) Further, two minor typographical errors in the specification were corrected.

The foregoing amendment is clearly seen to place this application in a condition for allowance. Accordingly, a notice of allowance of Claims 46, 47, 50 and 51 is earnestly solicited.

The Examiner is hereby authorized to telephone the undersigned Attorney collect if such would further or expedite the prosecution of this application.

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C. 20231, on AUGUST 30, 1983

J. Richard Konneker 8/30/83
J. Richard Konneker, Reg. 28,867      DATE

JRK/dak

Tele. (602) 231-1882

Respectfully submitted,

J. Richard Konneker
J. Richard Konneker
Attorney for Applicants
Reg. No. 28,867

HSB 401574



UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office

Address  COMMISSIONER OF PATENTS AND TRADEMARKS
Washington D C 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO |
|---|---|---|---|
| | | | TH-4004-01 |

|  | EXAMINER |
|---|---|
| | |
| ART UNIT | PAPER NUMBER |
| 343 | 4 |

DATE MAILED: 99/10/80

COMMISSIONER OF PATENTS AND TRADEMARKS

1. ☑ THIS IS AN ATTACHMENT TO THE NOTICE OF ALLOWANCE AND BASE ISSUE FEE DUE, PTOL 85.

2. ☐ All the claims being allowable, PROSECUTION ON THE MERITS IS CLOSED in this application. If not attached hereto, a Notice of Allowance or other appropriate communication will be sent in due course.

  A.  ☐ Note that PTO-152, Notice of Informality, which indicates that the declaration or oath is deficient and that a substitute is required. The substitute declaration or oath MUST BE SUBMITTED WITHIN THE THREE MONTH STATUTORY PERIOD SET FOR PAYMENT OF THE BASE ISSUE FEE IN THE "NOTICE OF ALLOWANCE AND BASE ISSUE FEE DUE" (PTOL-85), preferably with and attached to the base issue fee. Note that the statute does not permit extension of the three month period set for payment of the base issue fee. Failure to timely file the substitute declaration or oath will result in ABANDONMENT of the application. The transmittal letter accompanying the declaration or oath should indicate the following in the upper right hand corner:

      Issue Batch Number; Date of the Notice of Allowance, and Serial Number.

  B.  ☐ Formal drawings are now required and MUST BE SUBMITTED WITHIN THE THREE MONTH STATUTORY PERIOD SET FOR PAYMENT OF THE BASE ISSUE FEE IN THE "NOTICE OF ALLOWANCE AND BASE ISSUE FEE DUE" (PTOL-85). Note that the statute does not permit extension of the three month period set to pay the base issue fee. Failure to timely submit the drawings will result in ABANDONMENT of the application. The drawings should be submitted as a separate paper with a transmittal letter which is addressed to the Official Draftsman and which indicates the following in the upper right hand corner:

      Issue Batch Number; Date of the Notice of Allowance, and Serial Number.

  C.  ☑ The claims are allowed in view of:

      a.  ☑ Applicant's communication filed ___9/1/83___

      b.  ☐ The interview summarized on the attached EXAMINER INTERVIEW SUMMARY RECORD, PTOL-413.

      c.  ☐ The attached Examiner's Amendment.

      d.  ☐ An Examiner's Amendment which will follow in due course.

  D.  ☑ The allowed claims are ___46, 47, 50, 51___

3. ☐ Note the attached Examiner's Statement of Reasons for Allowance.

4. ☐ Note attached NOTICE OF REFERENCES CITED, PTO-892, which is part of this communication. The listed references are considered to be pertinent to the claimed invention, but the claims are deemed to be patentable thereover.

5. ☐ Note attached LIST OF ART CITED BY APPLICANT, PTO-1449.

6. ☐ The drawings filed on _____ ☐ are acceptable as filed. ☐ are acceptable subject to correction as indicated on the attached Notice re Drawings, PTO-948. In order to avoid ABANDONMENT of this application, correction is required. Corrections can only be made in accordance with the instructions set forth in the attached letter "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474.

7. ☐ The ☐ proposed drawing correction and/or the ☐ proposed additional or substitute sheet(s) of drawings filed on _____ has (have) been approved by the examiner. Applicant is reminded that in order to avoid abandonment of this application, execution of the proposed changes or submission of additional or substitute drawings MUST be made in accordance with the instructions set forth in the letter, "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474, attached to Paper No. _____

8. ☐ The proposed drawing correction, filed _____, has been approved. However, the Patent and Trademark Office no longer makes drawing changes. It is now applicant's responsibility to ensure that the drawings are corrected. Corrections are required and MUST be effected in accordance with the instructions set forth on the attached letter "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474.

9. ☐ In order to avoid ABANDONMENT, the drawing informalities noted on the Notice re Drawing, PTO-948, attached to Paper No. _____ must now be corrected. Applicant is reminded that the corrections can only be made in accordance with the instructions set forth in the letter "INFORMATION ON HOW TO EFFECT DRAWING CHANGES", PTO-1474, attached to the PTO-948.

10. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has: ☐ been received. ☐ not been received.

    ☐ been filed in parent application, Serial No. _____ ☐ filed on _____

_G. J. Casaregola_

G. J. CASAREGOLA
EXAMINER
ART UNIT 343

PTOL - 37  (Rev. 8 - 82)          NOTICE OF ALLOWABILITY

HSB 401575

PTOL-85 (Rev. 8-82)



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

## NOTICE OF ALLOWANCE
## AND ISSUE FEE DUE

All communications regarding this application should give the serial number, date of filing, name of applicant, and batch number.

Please direct all communications to the Attention of "OFFICE OF PUBLICATIONS" unless advised to the contrary.

The application identified below has been examined and found allowable for issuance of Letters Patent. PROSECUTION ON THE MERITS IS CLOSED.

| SC/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| | 09/27/87 | 009 | | 343 | 09/13/93 |

First Named Applicant

TITLE OF INVENTION

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| | | | | | $565.00 | 12/13/93 |

The amount of the issue fee is specified in 37 C.F.R. 1.18 as follows: for an original or reissue patent, except for a design or plant patent, $500; for a design patent, $175; and for a plant patent, $250. If the applicant qualifies for and has filed a verified statement of small entity status in accordance with 37 C.F.R. 1.27, the issue fee is one-half the respective amount aforementioned. The issue fee printed above reflects applicant's status as of the time of mailing this notice. A verified statement of small entity status may be filed prior to or with payment of the issue fee. However, in accordance with 37 C.F.R. 1.28, failure to establish status as a small entity prior to or with payment of the issue fee precludes payment of the issue fee in the amount so established for small entities and precludes a refund of any portion thereof paid prior to establishing status as a small entity.

THE ISSUE FEE MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE as indicated above. The application shall otherwise be regarded as ABANDONED. The issue fee will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the Patent and Trademark Office. Where an authorization to charge the issue fee to a deposit account has been filed before the mailing of the notice of allowance, the issue fee is charged to the deposit account at the time of mailing of this notice in accordance with 37 C.F.R. 1.311. If the issue fee has been so charged, it is indicated above.

In order to minimize errors in issuance of a patent based on this application, this Notice may have been mailed prior to completion of final processing. The nature and/or extent of the remaining revision or processing requirements may cause slight delays of the patent. In addition, if prosecution is to be reopened, this Notice of Allowance will be vacated and the appropriate Office action will follow in due course. If the issue fee has already been paid and prosecution is reopened, the applicant may request a refund or may wait until the application is either found allowable or held abandoned. If allowed, upon receipt of a new Notice of Allowance, applicant may request that the fee be credited to a Deposit Account. However, applicant may wait until the application is either found allowable or held abandoned. If allowed, upon receipt of a new Notice of Allowance, applicant may request that the previously submitted issue fee be applied. If abandoned, applicant may request refund or credit to a Deposit Account.

In the case of each patent issuing without an assignment, the complete post office address of the inventor(s) will be printed in the patent heading and in the Official Gazette. If the inventor's address is now different from the address which appears in the application, please fill in the information in the spaces provided on PTOL-85b enclosed. If there are address changes for more than two inventors, enter the additional addresses on the reverse side of the PTOL-85b.

The appropriate spaces in the ASSIGNMENT DATA section of PTOL-85b must be completed in all cases. If it is desired to have the patent issue to an assignee, an assignment must have been previously submitted to the Patent and Trademark Office or must be submitted no later than the date of payment of the issue fee as required by 37 C.F.R. 1.334. Where there is an assignment, the assignee's name and address must be provided on the PTOL-85b to ensure its inclusion in the printed patent.

Advance orders for 10 or more printed copies of the prospective patent can be made by completing the information in Section 4 of PTOL-85b and submitting payment therewith. If use of a Deposit Account is being authorized for payment, PTOL-85c should also be forwarded. The order must be for at least 10 copies and must accompany the issue fee. The copies ordered will be sent only to the address specified in section 1 or 1A of PTOL-85b.

☐ Note attached communication from Examiner.

☐ This notice is issued in view of applicant's communication filed _____

**IMPORTANT**

ATTENTION IS DIRECTED TO 37 C.F.R. 1.334.

THE PATENT WILL ISSUE TO APPLICANT UNLESS AN ASSIGNEE IS SHOWN IN ITEM 3 ON FORM PTOL-85b, ATTACHED

**PATENT AND TRADEMARK OFFICE COPY**

HSB 401576



**The Garrett Corporation**
111 S. 34th ST.
P.O. BOX 5217
PHOENIX
ARIZONA 85010
Tel: (602) 231-1880

November 15, 1983

Hon. Commissioner of Patents
      & Trademarks

Washington, D. C. 20231

Attention: OFFICE OF PUBLICATIONS

RE:    Serial No. 424,674
       For: "Compressor Bleed Air Control
             Apparatus and Methods"
       Inventors: Richard F. Stokes et al
       Batch No. S68

SUBJECT:    1.  Partial Blanket Deposit Account
                Authorization
            2.  Issue Fee Transmittal

Dear Sir:

     Enclosed herewith are executed ISSUE FEE Transmittal Forms PTOL-85b
and 85c for the above-identified case, including deposit account author-
ization for payment of the issue fee and for the advance order of patent
copies.

     Blanket authorization is hereby given to charge to Deposit Account
No. 07-0145 any and all unpaid fees which may be necessary to secure
issuance of the above case, whether or not previously authorized.

                              Very truly yours,

                              THE GARRETT CORPORATION

                              J. Richard Konneker
                              Attorney for Applicants
                              Reg. No. 28,867

**Certificate of Mailing**

I hereby certify that this correspondence is being
deposited with the United States Postal Service as
first class mail in an envelope addressed to:
Commissioner of Patents and Trademarks, Washing-
ton, D. C. 2023', on NOVEMBER 15, 1983

J. Richard Konneker, Reg. 28,867        11/15/83
                                        DATE

Enclosures
cc: Garrett Deposit Account Records

ONE OF
THE SIGNAL
COMPANIES

HSB 401577

PTO- 85b (Rev. 8-82)

**ISSUE FEE TRANSMITTAL**

U.S. Department of Commerce
Patent and Trademark Office

This form is provided in lieu of a formal transmittal and should be used for transmitting the Issue Fee. Sections 1A through 4 must be completed as appropriate.

INVENTOR(S) ADDRESS CHANGE | SC/SERIAL NO.

| | |
|---|---|
| INVENTOR'S NAME | **MAILING INSTRUCTIONS** |
| | All further correspondence including the Issue Fee Receipt, the Patent, and advanced orders will be mailed to the addressee entered in section 1 on PTOL-85c, unless you direct otherwise by specifying the appropriate name and address in 1A below. |
| Street Address | |
| City, State and Zip Code | 2A.  The COMMISSIONER OF PATENTS AND TRADE-MARKS is requested to apply the Issue Fee to the application identified below. |
| CO-INVENTOR'S NAME | J. RICHARD KONNEKER |
| | REG. NO. 28,867 |
| Street Address | (Signature of party in interest of record)     (Date) |
| City, State and Zip Code | J. Richard Konneker   11/15/8 |
| ☐ Check if additional changes are on reverse side. | Note:  The Issue Fee will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the Patent and Trademark Office. |

| SC/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 06/424,674 | 09/27/82 | 004 | CASAREGOLA, L | 343 | 09/13/83 |

First Named Applicant   STOKES,          RICHARD F.

TITLE OF INVENTION   COMPRESSOR BLEED AIR CONTROL APPARATUS AND METHODS

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| TE-4086-DI | 060-039.002 | S6B | UTILITY | NO | $500.00 | 12/13/83 |

A.  Further correspondence to be mailed to the following:

THE GARRETT CORPORATION
PATENT DEPT. G4/301-1RA
111 SOUTH 34TH STREET, P.O. BOX 5217
PHOENIX, ARIZONA 85010

2B.  For printing on the patent front page, list the names of not more than 3 registered patent attorneys or agents OR, alternatively, the name of a firm having as a member a registered attorney or agent. If no name is listed, no name will be printed.

1   J. RICHARD KONNEKER
2   ALBERT J. MILLER
3

**DO NOT USE THIS SPACE**

P0524 11/25/83 424674                          91-0145 3 142         500.00CH
                                                                      14.00CH

ASSIGNMENT DATA (print or type)

| (1) ☐ | This application is NOT assigned. |
|---|---|
| (2) ☒☒ | Assignment previously submitted to the Patent and Trademark Office. |
| (3) ☐ | Assignment submitted herewith. |

For Printing On The Patent: (Unless an assignee is identified below, no assignee data will appear on the patent. Inclusion of assignee data below is only appropriate when an assignment has been previously submitted to the PTO or is submitted herewith. Completion of this form is NOT a substitute for filing of an assignment as required by 37 C.F.R. 1.334).

(1) NAME OF ASSIGNEE:
THE GARRETT CORPORATION

(2) ADDRESS: (City & State or Country)
LOS ANGELES, CALIFORNIA

(3) STATE OF INCORPORATION, IF ASSIGNEE IS A CORPORATION:
CALIFORNIA

4.

The following fees are enclose:
☐ Issue fee      ☐ Advanced order      ☐ Assignment recording

The following fees should be charged to deposit acc. no.   07-0145
(PTOL-85c or additional copy of PTOL-85b must be enclosed)

☒☒ Issue fee
☒☒ Advanced order
☐ Assignment recording

Number of advanced order copies requested.   14
(must be for 10 or more copies)

**TRANSMIT THIS FORM WITH FEE**

HSB 401578

JUN 15 1987

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent No. 4,428,194)

Issued:January 31, 1984  )    FOR: COMPRESSOR BLEED AIR
                          )         CONTROL APPARATUS &
Serial No. 424,674    )            METHODS

Filed:  September 27, 1982)

Atty. Docket No. TE-4086D1)

CHANGE OF CORRESPONDENCE ADDRESS

Hon. Commissioner of Patents        Los Angeles, CA 90009
  & Trademarks

Washington, D.C. 20231              June 12, 1987

Dear Sir:

     Please address all future communications, including all notices, receipts, refunds and other communications relating to payment or refund of maintenance fees, in the above-identified U.S. patent to:

          Patent Department
          THE GARRETT CORPORATION
          9851 Sepulveda Boulevard
          P.O. Box 92248
          Los Angeles, CA  90009

     Please direct all telephone calls to Albert J. Miller at Area Code 213, 417-6550.

                              Respectfully submitted,

                              Albert J. Miller
                              Attorney for Patentee
                              Reg. No. 22,065

HSB 401579



HSB 401580

Fig-1

Fig-3

Fig-2

PH (602)267-6662

235794

42467

U.S. Patent    Jan. 31, 1984    Sheet 2 of 2    4,428,194



$FIG-4$

$FIG-5$

$FIG-6$

HSB 401581

LOAD COMPRESSOR OUTLET-TO-INLET PRESSURE RATIO

CORRECTED LOAD COMPRESSOR INLET AIR FLOW

SIGNAL STRENGTH

TIME

FORM PTO-875
(REV. 11-77)

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

**PATENT APPLICATION FEE DETERMINATION RECORD**

SERIAL NUMBER: 424,674

FILING DATE: 9|27|82

APPLICANT (First Named Only): Stokes, et al.

## CLAIMS AS FILED - PART I

| | (1) FOR | (2) NUMBER FILED | (3) NUMBER FILED | (4) RATE | (5) BASIC FEE $65.00 |
|---|---|---|---|---|---|
| TOTAL CLAIMS | | 12 -10= | = | 2 x $2.00 | 4.00 |
| INDEPENDENT CLAIMS | | 3 -1= | = | 2 x $10.00 | 20.00 |
| | | | | TOTAL FILING FEE | 89.00 |

## CLAIMS AS AMENDED - PART II

| | | (1) | (2) CLAIMS REMAINING AFTER AMENDMENT | (3) | (4) HIGHEST NO. PERVIOUSLY PAID FOR | (5) PRESENT EXTRA | (6) RATE | (7) ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|---|
| AMENDMENT | TOTAL | | * | MINUS | ** | = | x $2 | = |
| | INDEP. | | * | MINUS | | = | x $10 | = |
| | | | | | TOTAL ADDITIONAL FEE FOR THIS AMENDMENT | | | |
| AMENDMENT | TOTAL | | * | MINUS | ** | = | x $2 | = |
| | INDEP. | | * | MINUS | | = | x $10 | = |
| | | | | | TOTAL ADDITIONAL FEE FOR THIS AMENDMENT | | | |
| AMENDMENT | TOTAL | | * | MINUS | ** | = | x $2 | = |
| | INDEP. | | * | MINUS | | = | x $10 | = |
| | | | | | TOTAL ADDITIONAL FEE FOR THIS AMENDMENT | | | |
| AMENDMENT | TOTAL | | * | MINUS | ** | = | x $2 | = |
| | INDEP. | | * | MINUS | ** | = | x $10 | = |
| | | | | | TOTAL ADDITIONAL FEE FOR THIS AMENDMENT | | | |

If the entry in Column 2 is less than the entry in Column 4, write "0" in Column 5.

If the "Highest Number Previously Paid For" IN THIS SPACE is less than 10, write "10" in this space.

The "Highest Number Previously Paid For" ("Total" or "Indep.") is the highest number found in the appropriate box in Column 2.

HSB 401582

GPO : 1982 0 - 376-079