# EXHIBIT 16

## FULLY REDACTED

# EXHIBIT 17

## FULLY REDACTED

# EXHIBIT 18

## FULLY REDACTED

# EXHIBIT 19

## FULLY REDACTED

# Exhibit 20

No. 04-293

# In the Supreme Court of the United States

HONEYWELL INTERNATIONAL INC., ET AL.,
PETITIONERS

*v.*

HAMILTON SUNDSTRAND CORPORATION

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT*

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

PAUL D. CLEMENT
  *Acting Solicitor General
  Counsel of Record*
PETER D. KEISLER
  *Assistant Attorney General*
THOMAS G. HUNGAR
  *Deputy Solicitor General*
JAMES A. TOUPIN
  *General Counsel*
JOHN M. WHEALAN
  *Solicitor*
JEFFREY P. MINEAR
  *Assistant to the Solicitor
  General*
CYNTHIA C. LYNCH
LINDA MONCYS ISACSON
WILLIAM LAMARCA
  *Associate Solicitors
  Patent and Trademark Office
  Alexandria, Va. 22313*
ANTHONY J. STEINMEYER
MARK S. DAVIES
  *Attorneys
  Department of Justice
  Washington, D.C. 20530-0001
  (202) 514-2217*

## QUESTION PRESENTED

This Court's decision in *Festo Corp.* v. *Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002), recognizes that, if a patent applicant has amended his application to narrow the scope of the claimed subject matter, prosecution history estoppel may prevent him from invoking the doctrine of equivalents to recapture the subject matter that he surrendered. See *id.* at 736-737. The question presented in this case is whether a patent applicant who has withdrawn an independent patent claim and rewritten a formerly dependent claim as a new independent claim is subject to prosecution history estoppel.

(I)

# TABLE OF CONTENTS

Page

Statement ............................................... 1

Discussion ............................................... 8

   A.   The court of appeals correctly applied *Festo* to the facts of this case ...................... 9

      1.  *Festo* instructs that prosecution history estoppel arises when a patent applicant surrenders previously claimed subject matter to secure the patent ................................... 9

      2.  Honeywell's amendment of its patent applications narrowed Honeywell's claims and thereby surrendered subject matter ......................... 10

   B.   The court of appeals' decision is consistent with its other post-*Festo* decisions and the United States' understanding of prosecution history estoppel ........................... 13

      1.  The Federal Circuit has reached the same result in other post-*Festo* decisions ............................... 13

      2.  The Federal Circuit's decision is consistent with the United States' amicus curiae brief in *Festo* ............ 15

   C.   The court of appeals' decision will not upset reasonable expectations of patent holders or otherwise disrupt the patent system .................................. 17

      1.  The Federal Circuit's decision does not create a "new" and "unbounded" form of estoppel ........................ 17

(III)

IV

Table of Contents—Continued:                                    Page

    2.  Honeywell will have an opportunity on
        remand to rebut the presumption of
        estoppel ............................... 18
Conclusion .......................................... 20

## TABLE OF AUTHORITIES

Cases:

   *Bloom Eng'g Co.* v. *North Am. Mfg. Co.*, 129
     F.3d 1247 (Fed. Cir. 1997) ..................... 14

   *Bose Corp.* v. *JBL, Inc.*, 274 F.3d 1354 (Fed.
     Cir. 2001), cert. denied, 537 U.S. 880 (2002) ..... 14

   *Business Objects* v. *Microstrategy, Inc.*, 393
     F.3d 1366 (Fed. Cir. 2005) .................... 15

   *Deering Precision Instruments, L.L.C.* v.
     *Vector Distrib. Sys., Inc.*, 347 F.3d 1314
     (Fed. Cir. 2003), cert. denied, 540 U.S. 1184
     (2004) ...................................... 13, 20

   *Festo Corp.* v. *Shoketsu Kinzoku Kogyo*
     *Kabushiki Co.*:
        535 U.S. 722 (2002) ................... *passim*
        344 F.3d 1359 (Fed. Cir. 2003) ............ 19, 20

   *Graver Tank & Mfg. Co.* v. *Linde Air Prods.*
     *Co.*, 339 U.S. 605 (1950) ........................ 2

   *Honeywell Int'l Inc.* v. *Hamilton Sundstrand*
     *Corp.*, No. Civ. A. 99-309 GMS, 2001 WL
     66348 (D. Del. Jan. 8, 2001) .................... 16

   *Insta-Foam Prods., Inc.* v. *Universal Foam*
     *Sys., Inc.*, 906 F.2d 698 (Fed. Cir. 1990) ........ 14

V

Cases—Continued:                                      Page

    *Keith* v. *Charles E. Hires Co.*, 116 F.2d 46
      (2d Cir. 1940) ...................... 10, 11, 17, 18

    *Ranbaxy Pharms., Inc.* v. *Apotex, Inc.*, 350
      F.3d 1235 (Fed. Cir. 2003) ................. 13, 14

    *Schriber-Schroth Co.* v. *Cleveland Trust Co.*,
      311 U.S. 211 (1940) .......................... 12

    *Smithline Beecham Corp.* v. *Excel Pharm.,
      Inc.*, 356 F.3d 1357 (Fed. Cir. 2004) ........... 20

    *Vermeer Mfg. Co.* v. *Charles Mach. Works,
      Inc.*, No. 00-1119, 2000 WL 1742531 (Fed.
      Cir. Nov. 27, 2000) (251 F.3d 168) .............. 14

    *Warner-Jenkinson Co.* v. *Hilton Davis Chem.
      Co.*, 520 U.S. 17 (1997) ...................... 2

    *Winans* v. *Demead*, 56 U.S. (15 How.) 330
      (1854) ....................................... 2

Statutes:

    35 U.S.C. 112 ................................... 2
    35 U.S.C. 112 para. 4 .......................... 11
    35 U.S.C. 252 .................................. 14
    35 U.S.C. 307 .................................. 14

Miscellaneous:

    5A Donald S. Chisum, *Chisum on Patents*
      (2003) ..................................... 10, 18

    Roger E. Schechter & John R. Thomas,
      *Intellectual Property: The Law of
      Copyrights, Patents and Trademarks* (2003) .... 11

# In the Supreme Court of the United States

No. 04-293

HONEYWELL INTERNATIONAL INC., ET AL.,
PETITIONERS

*v.*

HAMILTON SUNDSTRAND CORPORATION

*ON PETITION FOR A WRIT OF CERTIORARI
TO THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT*

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE**

This brief is submitted in response to the order of this Court inviting the Acting Solicitor General to express the views of the United States. In the view of the United States, the court of appeals' decision below is correct and does not merit this Court's review.

## STATEMENT

Petitioners (collectively Honeywell) sued respondent (Sundstrand) for patent infringement. The district court entered judgment for Honeywell based on a jury finding that Sundstrand infringed Honeywell's patents under the doctrine of equivalents. Pet. App. 2a, 42a, 63a-64a. The court of appeals, sitting en banc, vacated the judgment and remanded. *Id.* at 2a. The court of appeals held that Honeywell's cancellation of an independent claim during the patent application process, coupled with Honeywell's rewriting of a related dependent claim as a new independent claim, gave rise to a presumption of prosecution history estoppel. *Ibid.* The court thus ordered a remand, in accordance with *Festo Corp.* v. *Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002),

(1)

2

to determine whether Honeywell can rebut the presumption. Pet. App. 2a-3a.

1. In exchange for the benefits conferred by a patent, and to provide notice concerning the scope of the monopoly obtained by the patentee, the patent laws require inventors to describe their inventions in "full, clear, concise, and exact terms." *Festo*, 535 U.S. at 731 (quoting 35 U.S.C. 112). Language is inherently imprecise, however, and thus "[t]he language in the patent claims may not capture every nuance of the invention or describe with complete precision the range of its novelty." *Ibid.* Consequently, the courts have long recognized that the "scope of a patent is not limited to its literal terms but instead embraces all equivalents to the claims described." *Id.* at 732 (citing *Winans* v. *Denmead*, 56 U.S. (15 How.) 330 (1854)). Accord *Warner-Jenkinson Co.* v. *Hilton Davis Chem. Co.*, 520 U.S. 17 (1997); *Graver Tank & Mfg. Co.* v. *Linde Air Prods. Co.*, 339 U.S. 605 (1950). "The doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes." *Festo*, 535 U.S. at 733.

Prosecution history estoppel operates as an important limitation on the doctrine of equivalents. The estoppel principle recognizes that, in order to secure a patent, a patent applicant may elect to limit the scope of his claims and surrender subject matter. The principle accordingly "requires that the claims of a patent be interpreted in light of the proceedings in the PTO during the application process." *Festo*, 535 U.S. at 733. "Were it otherwise, the inventor might avoid the PTO's gatekeeping role and seek to recapture in an infringement action the very subject matter surrendered as a condition of receiving the patent." *Id.* at 734.

The Court has explained the operation of prosecution history estoppel as follows:

3

Where the original application once embraced the pur-
ported equivalent but the patentee narrowed his claims to
obtain the patent or to protect its validity, the patentee
cannot assert that he lacked the words to describe the
subject matter in question.

*Festo*, 535 U.S. at 734. "In that instance the prosecution
history has established that the inventor turned his attention
to the subject matter in question, knew the words for both the
broader and narrower claim, and affirmatively chose the
latter." *Id.* at 734-735. See *id.* at 735 ("Prosecution history
may rebut the inference that a thing not described was
indescribable.").

2.  Honeywell owns patents that address the design and
operation of an aircraft auxiliary power unit (APU). Pet. App.
3a. The APU, among other things, provides compressed air
to control the environment of the aircraft's cabin. The need
for compressed air may vary substantially during flight, which
can lead to "surge" conditions when the compressor produces
more air than is needed. *Ibid.* Surge conditions can cause
reversals of air flow through the compressor and can damage
the APU. *Ibid.* An APU is typically designed to counteract
surge conditions through a "surge bleed valve" that releases
the excess air. *Ibid.* The Honeywell invention at issue in this
case is, broadly speaking, a control apparatus and method
that provides a means of efficiently opening and closing the
surge bleed valve. *Ibid.*

The Honeywell control system establishes a "set point,"
which represents the minimum outlet air flow at which surge
can be safely avoided for a particular level of compressor
operation, and compares it to the actual flow conditions, which
are determined by a sensor that measures air flow out of the
compressor. Pet. App. 3a-4a. The value of the set point is a
function of the air compressor's adjustable air inlet guide
vanes. *Id.* at 4a. If the control system determines, by com-

4

paring the actual flow conditions to the set point, that the air flow out of the main duct is too low, the control system opens the surge bleed valve until the actual flow condition matches the set point.  *Ibid.*

3.   Each of Honeywell's patent claims at issue here "requires the APU to include inlet guide vanes and requires the operation of the surge bleed valve to be a function of inlet guide vane position." Pet. App. 4a. See *id.* at 4a-6a. Claim 8 of Patent No. 4,380,893 ('893 patent) is representative.[1] The claim describes a gas turbine engine APU having a fluctuating air supply demand.  The claim lists seven attributes of the power unit, including a "compressor having adjustable inlet guide vanes" and the use of a set point that "var[ies] * * * as a function of the position of said inlet guide vanes." *Id.* at 4a-5a (emphasis omitted).

Honeywell's Claim 8 (like the two other relevant claims) came into being as a result of the patent prosecution. Honeywell's initial application included an independent Claim 16, which did not contain the inlet guide valve limitation, and a dependent Claim 17, which included that limitation.  The patent examiner rejected Claim 16 as obvious based on prior art and disallowed Claim 17 because it was dependent on the rejected independent claim. See Pet. App. 8a-9a & n.4. The examiner indicated that Claim 17 would be allowable if rewritten in independent form.  In response, Honeywell cancelled Claim 16 and rewrote Claim 17 as an independent claim that ultimately issued as Claim 8.  See *id.* at 9a-10a.

4.   Honeywell filed this suit alleging that Sundstrand's APU device (APS 3200) infringes the Honeywell patents. Like Honeywell's APU, Sundstand's device controls surges by

---

[1]  This case also involves another apparatus claim in the '893 patent, issued as Claim 19,  and a method claim, issued as Claim 4 of Patent No. 4,428,194. See Pet. App. 5a-6a.  For purposes of the question presented, the principles governing the three independent claims are the same.  See *ibid.*; Pet. 6.

5

adjusting the surge bleed valve in response to a comparison between actual air flow conditions and a set point. Pet. App. 6a. But Sundstrand's device employs a more complex flow-related parameter (denominated DELPQP), and it establishes a set point based upon ambient air temperature rather than the position of the compressor's inlet guide vanes. *Id.* at 6a-7a & n.1. The Sundstrand device does take into account the position of the inlet guide vane to determine whether to override the DELPQP control signal under high air-flow conditions, when DELPQP might otherwise incorrectly describe actual flow conditions. *Ibid.*

Honeywell claimed that, even if the Sundstrand device does not literally infringe the Honeywell patents: (a) the Sundstrand device nevertheless uses the inlet guide vane position to control surge; (b) the difference in how Honeywell and Sundstrand use the inlet guide vane position is insubstantial; and (c) the Honeywell patents are therefore infringed under the doctrine of equivalents. Pet. App. 7a-8a. Sundstrand responded that, because Honeywell had amended its patent application in the PTO proceedings to narrow the subject matter that it claimed, the principle of prosecution history estoppel prevented Honeywell from invoking the doctrine of equivalents to expand the reach of its patent claims. *Id.* at 8a-10a.

The district court rejected Sundstrand's request for summary judgment based on prosecution history estoppel. Pet. App. 10a; see *id.* at 109a-111a. The court stated that Honeywell "did not surrender the elements at issue during the prosecution of the patent at issue." *Id.* at 110a. The court accordingly ruled that Honeywell "may attempt to convince the jury that Sundstrand's APU 3200 infringes under the doctrine of equivalents." *Id.* at 111a.

The jury concluded that Sundstrand's device infringed various claims, including Claim 8 and the two comparable

6

independent claims, under the doctrine of equivalents. Pet. App. 11a, 42a. The jury also found that Sundstrand wilfully infringed the patents and awarded $1,578,065 in reasonable royalty compensation and $45 million in price erosion damages. *Ibid.* The district court denied, among other post-trial motions, Sundstrand's motions for judgment as a matter of law and for a new trial on issues respecting the doctrine of equivalents. *Id.* at 11a; see *id.* at 54a-65a.

5. Both parties appealed aspects of the judgment. Pet. App. 11a. After a panel of the court of appeals received briefing and heard argument, the court, *sua sponte*, ordered en banc review. *Id.* at 12a. The en banc court, by a vote of 11 to 1, affirmed in part, vacated in part, and remanded the case for further proceedings. *Id.* at 2a-3a, 13a-26a. The court ruled, as its central holding, that "the rewriting of dependent claims into independent form coupled with the cancellation of the original independent claims creates a presumption of prosecution history estoppel." *Id.* at 2a.

The court of appeals first observed that prosecution history estoppel comes into play when a patent applicant makes a "narrowing amendment" to his patent application. Pet. App. 13a. The court concluded, on the basis of this Court's decisions in *Festo* and *Warner-Jenkinson*, that "a narrowing amendment may occur when either (1) a preexisting claim limitation is narrowed by amendment or (2) a new claim limitation is added by amendment." *Id.* at 14a. See *id.* at 14a-16a.

The court next addressed "whether rewriting a dependent claim into independent form, coupled with the cancellation of the original independent claim, constitutes a narrowing amendment when the dependent claim includes an additional claim limitation not found in the cancelled independent claim or circumscribes a limitation found in the cancelled independent claim." Pet. App. 16a. The court concluded that, when

7

a patent applicant amends a patent application in that manner, he creates a presumption that he has surrendered subject matter. *Id.* at 17a.

The court of appeals reasoned that "the proper focus is whether the amendment narrows the overall scope of the claimed subject matter." Pet. App. 17a (citing *Festo*, 535 U.S. at 736-737). It noted that the *Festo* decision stated, in discussing the rewriting of "a dependent claim into an independent one," that "[e]stoppel arises when an amendment is made to secure the patent and the amendment narrows the patent's scope." *Id.* at 18a (quoting *Festo*, 535 U.S. at 736-737). The court of appeals explained:

> Thus, the fact that the scope of the rewritten claim has remained unchanged will not preclude the application of prosecution history estoppel if, by cancelling the original independent claim and rewriting the dependent claims into independent form, the scope of the subject matter claimed in the independent claim has been narrowed to secure the patent.

*Id.* at 19a. The court noted that it had consistently applied that rule in its post-*Festo* decisions, *id.* at 19a-21a, and that its rule "is consistent not only with the language of *Festo*, but also its theory," *id.* at 21a. Under *Festo*, the question is whether an amendment surrenders subject matter, *ibid.*, and in this case "the surrendered subject matter is defined by the cancellation of independent claims that do not include a particular limitation and the rewriting into independent form of dependent claims that do include that limitation," *id.* at 22a.

The court of appeals accordingly ruled that "there is a presumptive surrender of all equivalents to the inlet guide vane limitation." Pet. App. 22a. For example, when Honeywell cancelled original Claim 16 and rewrote the new Claim 8 in independent form, Honeywell "effectively add[ed] the inlet guide vane limitation to the claimed invention" and "is pre-

8

sumptively estopped from recapturing equivalents to the inlet guide vane limitation." *Ibid.* The court remanded the case to the district court to determine whether Honeywell "can overcome the presumption." *Id.* at 23a.

Judge Newman dissented. Pet. App. 26a-40a. She reasoned that "the act of restating a dependent claim in independent form" is not a "narrowing amendment" and that no presumption of surrender should attach to the simultaneous cancellation of a broader independent claim. *Id.* at 26a. She predicted that the court's ruling would discourage the use of dependent claims and increase the cost and difficulty of patent examination. *Ibid.*

## DISCUSSION

The Federal Circuit, sitting en banc, properly applied this Court's decision in *Festo Corp.* v. *Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002), to the facts before it. The court of appeals correctly ruled that the patent applicant's recasting of a formerly dependent claim in independent form, coupled with the withdrawal of the original independent claim, amounted to a "narrowing amendment" under *Festo*. The applicant's consequent surrender of subject matter triggered a presumption that the patent prosecution history estops the applicant from using the doctrine of equivalents to extend the scope of the patent beyond its literal terms.

The court of appeals' en banc decision is consistent with its post-*Festo* decisions and with the United States' position in *Festo*. The decision, which rests on longstanding patent principles and preserves an opportunity for the patent applicant to overcome the presumption against claiming equivalents, will not upset the reasonable expectations of patent holders or otherwise disrupt the patent system. Further review by this Court is therefore not warranted.

9

## A. THE COURT OF APPEALS CORRECTLY APPLIED *FESTO* TO THE FACTS OF THIS CASE

### 1. *Festo* Instructs That Prosecution History Estoppel Arises When A Patent Applicant Surrenders Previously Claimed Subject Matter To Secure The Patent

This Court explained in *Festo* that the doctrine of equivalents "is premised on language's inability to capture the essence of innovation." 535 U.S. at 734. Prosecution history estoppel ensures that "the doctrine of equivalents remains tied to its underlying purpose" by precluding its invocation where the prosecution history shows that the applicant previously claimed the equivalent subject matter, but consciously chose to narrow his claims and surrender that subject matter to obtain the patent. *Ibid.*

Simply put, "[e]stoppel arises when an amendment is made to secure the patent and the amendment narrows the patent's scope." *Festo*, 535 U.S. at 736. Consequently, if the patent applicant amends his patent application in a way that "is truly cosmetic, then it would not narrow the patent's scope or raise an estoppel." *Id.* at 736-737. But if the patent applicant "narrows the patent's scope—even if only for the purpose of better description—estoppel may apply." *Id.* at 737. "By amending the application, the inventor is deemed to concede that the patent does not extend as far as the original claim." *Id.* at 738. The patent applicant who narrows his claims has thus acknowledged "an inability to claim the broader subject matter" and has presumptively limited his patent application to the literal terms of its claims. *Id.* at 737.

10

### 2. Honeywell's Amendment Of Its Patent Applications Narrowed Honeywell's Claims And Thereby Surrendered Subject Matter

The critical issue in this case is whether Honeywell's amendment of its patent applications, made in response to a patent examiner's rejection of the original independent claims as obvious in light of prior art, narrowed Honeywell's patent claims and thereby surrendered subject matter that Honeywell had claimed in its original patent applications. Honeywell's amendments had precisely that effect.

Honeywell's amendments essentially consisted of: (a) cancelling independent claims that the patent examiner had rejected as obvious in light of the prior art; and (b) rewriting formerly dependent and narrower claims in independent form. The court of appeals correctly concluded that those amendments narrowed the patent scope and surrendered subject matter.

*Festo* leaves no doubt that, when a patent applicant cancels an independent claim and replaces it with a narrower independent claim, in response to a patentability rejection, the applicant surrenders subject matter. See 535 U.S. at 735 (estoppel applies when "the inventor turned his attention to the subject matter in question, knew the words for both the broader and narrower claim, and affirmatively chose the latter"). The court of appeals correctly recognized that the same result would obtain if a patent applicant put forward a broad independent claim and a narrow independent claim in the same patent application, but chose, for reasons of patentability, to cancel the former and rely on the latter. Pet. App. 19a n.8. See generally 5A Donald S. Chisum, *Chisum on Patents* § 18.05[2][a][ii] (2003).[2]

---

[2]   As the court of appeals noted, the Second Circuit, in a decision authored by Judge Learned Hand, described that precise situation in *Keith* v. *Charles E. Hires Co.*, 116 F.2d 46 (1940).  The Second Circuit ruled that prosecution

11

Honeywell's patent prosecution in this case presents a materially indistinguishable situation. Honeywell's original patent applications each contained broad independent claims and a series of related dependent claims. Honeywell could have written each original application as a series of increasingly narrow independent claims, but Honeywell instead followed a common practice of employing dependent claims. Honeywell's choice was merely one of form. See 35 U.S.C. 112 para. 4 ("a claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed").[3]

When Honeywell cancelled its broad independent claims, and replaced them with narrower independent claims consisting of formerly dependent claims rewritten in independent form, the effect was the same as if Honeywell had cancelled its broad independent claims and chosen to rely solely on a series of pre-existing, but narrower, independent claims. Honeywell presumptively surrendered the territory between its original but cancelled independent claims and its new but narrower independent claims. Pet. App. 19a.

Honeywell argues that its amendments should not result in estoppel because the scope of its rewritten claims has not changed. Pet. 12-13. Honeywell points out that "[b]y statute,

history estoppel applies when "the applicant files a limited and a broader claim at the same time and then cancels the broader one when it has been rejected." *Id.* at 48. The Second Circuit explained that, by cancelling the broader claim, the "applicant has abandoned it as it stood." *Ibid.* "Certainly it cannot be necessary to this conclusion that he shall amend the cancelled claim, when he has already filed a claim which contains the necessary differentia." *Ibid.*

[3] "The possibility of dependent claims presents a drafting convenience for patent applicants. They enable drafters to express claims of increasingly diminished scope in a succinct fashion. The result is that claims drafters typically craft a series of claims in each application, forming a 'reverse pyramid' of successively narrower claims." Roger E. Schechter & John R. Thomas, *Intellectual Property: The Law of Copyrights, Patents and Trademarks* 409 (2003).

12

the newly independent claims claim exactly the same subject matter as the original dependent claims did, and they have not been narrowed at all." Pet. 13. But this is also true in the case of broad and narrow independent claims when the former are cancelled. Moreover, Honeywell overlooks that it did not merely make the formal or "cosmetic" change of rewriting dependent claims in independent form. See *Festo*, 535 U.S. at 736-737. Rather, Honeywell simultaneously cancelled its broad independent claims, for reasons of patentability, and replaced them with *narrower* independent claims. Those amendments narrowed the scope of the patents, surrendered subject matter, and presumptively estopped Honeywell from relying on the doctrine of equivalents with respect to the surrendered matter.[4]

The court of appeals was accordingly correct in stating that "the fact that the scope of the rewritten claim has remained unchanged will not preclude the application of prosecution history estoppel if, by canceling the original independent claim and rewriting the dependent claims into independent form, the scope of the subject matter claimed in the independent claim has been narrowed to secure the patent." Pet. App. 19a. The court properly applied *Festo* to the facts of this case.

---

[4] Honeywell incorrectly assumes that prosecution history estoppel applies only on a claim-by-claim basis so that narrowing or eliminating one claim in a patent application has no effect on interpretation of the remaining claims. As the court of appeals recognized, "the proper focus is whether the amendment narrows the overall scope of the claimed subject matter." Pet. App. 17a. See, *e.g.*, *Festo*, 535 U.S. at 736 ("Estoppel arises when an amendment is made to secure the patent and the amendment narrows the patent's scope."). See also *Schriber-Schroth Co.* v. *Cleveland Trust Co.*, 311 U.S. 211, 220-221 (1940) ("It is a rule of patent construction consistently observed that a claim in a patent as allowed must be read and interpreted with reference to claims that have been cancelled or rejected, and the claims allowed cannot by construction be read to cover what was thus eliminated from the patent.").

13

## B. THE COURT OF APPEALS' DECISION IS CONSISTENT WITH ITS OTHER POST-*FESTO* DECISIONS AND THE UNITED STATES' UNDERSTANDING OF PROSECUTION HISTORY ESTOPPEL

### 1. The Federal Circuit Has Reached The Same Result In Other Post-*Festo* Decisions

The en banc court of appeals accurately noted that its decision in this case adheres to "the rule we have consistently applied in our post-*Festo* decisions." Pet. App. 19a. The court of appeals pointed to two of its decisions in which a patent applicant had replaced an original independent claim with a formerly dependent claim, rewritten in independent form, and the new independent claim covered less subject matter than the original independent claim. In each case, the court of appeals held that the amendment gave rise to the *Festo* presumption. See *id.* at 19a-21a.

In *Deering Precision Instruments, L.L.C.* v. *Vector Distribution Systems, Inc.*, 347 F.3d 1314 (Fed. Cir. 2003), cert. denied, 540 U.S. 1184 (2004), the patent applicant claimed, in original independent Claim 1, "a sliding weight movably carried by said beam for movement along said scale." *Id.* at 1317. The applicant additionally claimed, in original dependent Claim 3, a "zero position" limitation. *Id.* at 1318. When the patent examiner rejected Claim 1 as obvious, the applicant withdrew that independent claim and rewrote Claim 3 as an independent claim. The court of appeals held that this amendment gave rise to the *Festo* presumption: "While [the applicant] argues that it merely rewrote an allowable original claim * * * in independent form, there is no question that the claim was narrowed by the deletion of a broad original claim in favor of a claim that contained the Zero Position Limitation." *Id.* at 1326.

Similarly, in *Ranbaxy Pharmaceuticals, Inc.* v. *Apotex, Inc.*, 350 F.3d 1235 (Fed. Cir. 2003), the patent applicant

14

claimed, in its original independent claim, a chemical process involving a highly polar organic solvent. *Id.* at 1237. The applicant further claimed, through several dependent claims, a chemical process involving particular categories of highly polar solvents. *Ibid.* When the patent examiner rejected the original independent claim on patentability grounds, the applicant withdrew the original independent claim and rewrote the dependent claims into a single new independent claim. *Id.* at 1238. The court of appeals ruled that the amendment surrendered subject matter and gave rise to prosecution history estoppel. *Id.* at 1240-1241.

Honeywell cites, as conflicting authority, a series of pre-*Festo* cases. See Pet. 13-14. At least some, if not all, of those cases present distinguishable situations.[5] But in any event, those cases were decided without the benefit of this Court's *Festo* decision. The court of appeals' pre-*Festo* panel decisions do not provide a basis for questioning the en banc court's correct application of *Festo*.

---

[5] For example, *Vermeer Manufacturing Co. v. Charles Machine Works, Inc.*, No. 00-1119, 2000 WL 1742531, at *2 (Fed. Cir. Nov. 27, 2000) (251 F.3d 168) (unpublished), involved a situation in which the rewriting of the dependent claim involved a purely formal amendment that made no change in the patent scope. Similarly, *Bose Corp. v. JBL, Inc.*, 274 F.3d 1354 (Fed. Cir. 2001), cert. denied, 537 U.S. 880 (2002), appears inapposite because the phrase added to the rewritten claim "d[id] not narrow the scope of the claim," but instead was inherent in the claim as originally filed. *Id.* at 1359. While *Insta-Foam Products., Inc. v. Universal Foam Systems, Inc.*, 906 F.2d 698 (Fed. Cir. 1990), did not involve purely formal amendments, the amendments might possibly qualify as "tangential" within the meaning of *Festo*, 535 U.S. at 740, because the allowed claim contained "the same limitation," with respect to the alleged equivalent, "as did the abandoned claim." *Insta-Foam*, 906 F.2d at 703. *Bloom Engineering Co. v. North American Manufacturing Co.*, 129 F.3d 1247 (Fed. Cir. 1997), did not involve prosecution history estoppel, but rather the analogous but distinct protections of 35 U.S.C. 252 and 307. See 129 F.3d at 1249-1251.

15

Taken collectively, the court of appeals' post-*Festo* cases manifest the understanding that the consequences of a patent applicant's rewriting of a dependent claim into independent form depends on whether that amendment in combination with any accompanying amendments, such as the cancellation of other claims, "narrows the patent's scope." *Festo*, 535 U.S. at 736. If the amendments in combination broaden the patent's scope or leave it unchanged, then no subject matter is relinquished. See *Business Objects* v. *Microstrategy, Inc.*, 393 F.3d 1366, 1374 (Fed. Cir. 2005) (no narrowing limitation where amended language broader than original term). But if the amendments in combination "narro[w] the patent's scope—even if only for the purpose of better description—estoppel may apply." *Festo*, 535 U.S. at 737.

### 2. The Federal Circuit's Decision Is Consistent With The United States' Amicus Curiae Brief In *Festo*

Honeywell incorrectly contends (Pet. 15) that the court of appeals' decision is inconsistent with the United States' view of prosecution history estoppel as set forth in the government's amicus curiae brief in *Festo*. See Brief for the United States in *Festo Corp.* v. *Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002) (No. 00-1543) (U.S. *Festo* Br.). The United States' position, then as now, is consistent with the court of appeals' decision.

Honeywell points specifically to a passage in the United States' *Festo* brief explaining that courts must engage in a "discerning analysis" when applying prosecution history estoppel. U.S. *Festo* Br. 15. The United States observed:

Patent applicants may amend their patent claims for reasons of patentability—such as to clarify an ambiguous term—that do not result in narrowing the claims and surrendering subject matter. Rather, the amendments may state the same—or broader—patent claims in more pre-

16

cise terms. For example, an applicant may amend by
rewriting a dependent claim as an independent claim. See
*Honeywell Int'l Inc.* v. *Hamilton Sundstrand Corp.*, No.
Civ. A. 99-309 GMS, 2001 WL 66348, at * 6 (D. Del. Jan. 8,
2001) (citing *Festo*). Such amendments do not give rise to
prosecution history estoppel, which has as its core func-
tions "preserving the notice function of the claims and
preventing patent holders from recapturing under the
doctrine of equivalents subject matter that was surrender-
ed before the Patent Office." Pet. App. 11a.

U.S. *Festo* Br. 16-17. Contrary to Honeywell's suggestion, the
United States did not urge that prosecution history estoppel
can never arise when an applicant rewrites a dependent claim
in independent form.

The United States' *Festo* brief simply made the point, con-
sistent with its position here, that not every patent amend-
ment will "result in narrowing claims and surrendering sub-
ject matter." U.S. *Festo* Br. 16-17. The United States noted
that an applicant who makes a purely formal amendment to
the patent application—by, for example, "rewriting a depen-
dent claim as an independent claim" without more—does not
thereby create a basis for estoppel. *Ibid.* The United States
did not urge, however, that an applicant who rewrites a
dependent claim as an independent claim in combination with
other actions that narrow the patent's scope—such as "can-
celing the original independent claims" (Pet. App. 17a)—
would be immune from estoppel.[6]

---

[6] Honeywell suggests that, because the United States cites the district
court's decision in this case, the government must have determined that
Honeywell's amendments were purely formal and did not result in a surrender
of subject matter. See Pet. Reply Br. 2. In preparing its *Festo* brief, the
United States did not, of course, conduct a de novo review of the prosecution
history in this case. Rather, it relied on the district court's statement that "the
elements at issue were not amended." *Honeywell Int'l Inc.* v. *Hamilton Sun-*

17

In short, the United States recognized in *Festo* that patent amendments do not always surrender subject matter and that a patent applicant's rewriting of a dependent claim as an independent claim without more can provide an example of a non-narrowing amendment. This Court agreed with that point. *Festo*, 535 U.S. at 736-737. The court of appeals' decision is thus consistent with the United States' position in *Festo*.

## C. THE COURT OF APPEALS' DECISION WILL NOT UPSET REASONABLE EXPECTATIONS OF PATENT HOLDERS OR OTHERWISE DISRUPT THE PATENT SYSTEM

### 1. The Federal Circuit's Decision Does Not Create A "New" And "Unbounded" Form Of Estoppel

Honeywell contends that the court of appeals' decision produces a "new" and "unbounded" form of estoppel that will disrupt the expectations of patent owners and discourage the use of dependent claims. Pet. 18-25. Those contentions are unpersuasive.

First, the court of appeals' decision does not create a "new" form of estoppel. Rather, the court of appeals simply applied *Festo*'s fundamental teaching—that a patent applicant's surrender of subject matter to obtain a patent presumptively gives rise to estoppel—to the situation in which a patent applicant overcomes a patent examiner's objection by cancelling a broad independent claim, while leaving other narrower claims in place. The case is, at bottom, indistinguishable from Judge Learned Hand's venerable decision in *Keith* v. *Charles E. Hires Co.*, 116 F.2d 46 (2d Cir. 1940), which held that estoppel applies when "the applicant files a limited and a broader claim at the same time and then cancels the broader one when it has been rejected." *Id.* at 48. See

---

*dstrand Corp.*, No. Civ. A. 99-309 GMS, 2001 WL 66348, at * 6 (D. Del. Jan. 8, 2001) (reproduced at Pet. App. 109a).

18

note 2, *supra*; see generally 5A *Chisum on Patents, supra*, § 18.05[2][a][ii].

Second, the estoppel is not "unbounded." Pet. 20. As *Festo* explains, estoppel is confined to the subject matter that the applicant surrendered. 535 U.S. at 737. In this case, "the surrendered subject matter is defined by the cancellation of independent claims that do not include a particular limitation and the rewriting into independent form of dependent claims that do include that limitation." Pet. App. 22a. Specifically, the surrendered territory consists of the difference between the scope of the original patent applications, which included an independent claim with no "inlet guide vane" limitation, *ibid.*, and the scope of the amended patent applications, which expressly incorporated that limitation as a necessary one by cancelling the claims without that limitation and retaining the claims that included it. See *ibid.*

Third, because the court of appeals' decision simply rests on the application of *Festo* to dependent claims, and is consistent with longstanding decisions such as *Keith*, it will not impair the reasonable expectations of current patent holders. Furthermore, the court's decision will not encourage patent applicants to forgo use of dependent claims in favor of independent claims. As *Keith* illustrates, the same result would obtain if Honeywell had written its original patent applications as a series of wholly independent claims and then cancelled the broader claims in favor of the narrower ones. See 116 F.2d at 48. Indeed, a contrary rule would create an artificial incentive, in light of *Keith*, for dependent claims.

### 2.  Honeywell Will Have An Opportunity On Remand To Rebut The Presumption Of Estoppel

This Court's decision in *Festo* rejected the notion that prosecution history estoppel provides a "complete bar" to application of the doctrine of equivalents. 535 U.S. at 737-741.

19

Instead, the Court ruled that the patent applicant's apparent surrender of subject matter creates only a presumptive bar, and the patent owner remains entitled to rebut the presumption. *Id.* at 738-741. The Court placed on the patent owner "the burden of showing that the amendment does not surrender the particular equivalent in question." *Id.* at 740. At the same time, the Court made clear that the patent owner must have a meaningful opportunity to overcome the presumption. The presumption of estoppel is not "just the complete bar by another name." *Id.* at 741.

The Court's *Festo* decision notes that there are "some cases" in which a seemingly narrowing amendment "cannot reasonably be viewed as surrendering a particular equivalent." 535 U.S. at 740. It cites the situations in which: "[t]he equivalent may have been unforeseeable at the time of the application; the rationale underlying the amendment may bear no more than a tangential relation to the equivalent in question; or there may be some other reason suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question." *Id.* at 740-741. The Court suggested that, in those cases, the patent owner can overcome the presumption that prosecution history estoppel bars a finding of equivalence. *Ibid.*

The Federal Circuit, sitting en banc on remand from this Court's *Festo* decision, has since provided some "general guidance" respecting application of what have become known as the "three rebuttal criteria." *Festo Corp.* v. *Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1368 (2003).[7] But

---

[7] The court stated, for example, that the inquiry whether an equivalent was foreseeable is an "objective" one. 344 F.3d at 1369. It noted that, as a general matter, if the alleged equivalent rests on "later-developed technology," it would not have been foreseeable. *Ibid.* The court declined to "anticipate the instances of mere tangentialness that may arise," but noted that "an amendment made to avoid prior art that contains the equivalent in question is not tangential." *Ibid.* The court also acknowledged this Court's observation that

20

the court of appeals has also recognized, in cases such as this one, where the district court has not had an opportunity to address the rebuttal criteria, that the district court should address specific application of the rebuttal criteria in the first instance. See Pet. App. 25a.[8]

The developing law respecting application of the rebuttal criteria accordingly remains somewhat unsettled. But this much is clear: Honeywell is entitled to a meaningful opportunity to rebut the presumption against its invocation of the doctrine of equivalents. This Court's decision in *Festo* emphatically rejected the notion that prosecution history estoppel operates as a complete bar to the invocation of the doctrine of equivalents, 535 U.S. at 737, and it specifically recognized that a patent applicant could rebut the presumption by "showing that the amendment did not surrender the particular equivalent in question," *id.* at 740. The court of appeals' order remanding the case to the district court, which places this case in an interlocutory posture, will provide Honeywell with the opportunity that *Festo* envisions.

## CONCLUSION

The petition for a writ of certiorari should be denied.

Respectfully submitted.

---

there may be "some other reason" weighing against estoppel, but the court suggested that this "category, while vague, must be a narrow one; it is available in order not to totally foreclose a patentee from relying on reasons, other than unforeseeability and tangentialness, to show that it did not surrender the alleged equivalent." *Id.* at 1370.

[8] See, *e.g.*, *Deering Precision*, 347 F.3d at 1326 (rebuttal of presumption "better addressed in the first instance by the district court"); *Smithkline Beecham Corp. v. Excel Pharm., Inc.*, 356 F.3d 1357, 1365 (Fed. Cir. 2004) (remanding for inquiry into whether equivalent was foreseeable); see also *Festo*, 344 F.3d at 1374 (remanding after providing guidance on application of the rebuttal criteria).

21

JAMES A. TOUPIN
  *General Counsel*
JOHN M. WHEALAN
  *Solicitor*
CYNTHIA C. LYNCH
LINDA MONCYS ISACSON
WILLIAM LAMARCA
  *Associate Solicitors*
  *Patent and Trademark*
  *Office*

PAUL D. CLEMENT
  *Acting Solicitor General*
PETER D. KEISLER
  *Assistant Attorney General*
THOMAS G. HUNGAR
  *Deputy Solicitor General*
JEFFREY P. MINEAR
  *Assistant to the Solicitor*
  *General*
ANTHONY J. STEINMEYER
MARK S. DAVIES
  *Attorneys*

MAY 2005

No. 04-293

IN THE SUPREME COURT OF THE UNITED STATES

———————————

HONEYWELL INTERNATIONAL INC., ET AL., PETITIONERS

v.

HAMILTON SUNDSTRAND CORPORATION

———————————

## CERTIFICATE OF SERVICE

It is hereby certified that all parties required to be served have been served with copies of the **BRIEF FOR THE UNITED STATES AS AMICUS CURIAE** via e-mail and first-class mail, postage prepaid, this **19th day of May, 2005.**

[See Attached Service List]

———————————

Paul D. Clement
Acting Solicitor General
Counsel of Record

May 19, 2005

Due to the continuing delay in receiving incoming mail at the Department of Justice, in addition to mailing your brief via first-class mail, we would appreciate a fax or email copy of your brief. If that is acceptable to you, please fax your brief to Emily C. Spadoni, Supervisor Case Management, Office of the Solicitor General, at (202) 514-8844, or email at **SupremeCtBriefs@USDOJ.gov.** Ms. Spadoni's direct dial phone number is (202) 514-2217 or 2218. Thank you for your consideration of this request.

04-0293
HONEYWELL INTERNATIONAL INC., ET AL.
HAMILTON SUNDSTRAND CORP.


LAWRENCE B. FRIEDMAN
CLEARY, GOTTLIEB, STEEN & HAMILTON
ONE LIBERTY PLAZA
NEW YORK, NY 10006
212-225-2000


ROBERT G. KRUPKA
KIRLAND & ELLIS LLP
777 SOUTH FIGUEROA STREET
LOS ANGELES, CA 90017


CHRISTOPHER LANDAU
KIRKLAND & ELLIS LLP
655 FIFTEENTH STREET, N.W.
WASHINGTON, DC 20005


JONATHAN F. PUTNAM
LEE ANN STEVENSON
KIRKLAND & ELLIS LLP
153 EAST 53RD ST.
NEW YORK , NY 10022

# Exhibit 21

## Melvin C. Garner
*PRINCIPAL*

Phone: 212.527.7717
Fax: 212.753.7701
mgarner@darbylaw.com

| | |
|---|---|
| **PRACTICE AREAS** | Electronics & Software Technologies<br>Medical & Mechanical Technologies<br>Trademark, Copyright & Unfair Competition<br>Litigation & Dispute Resolution |

**EDUCATION**

| | |
|---|---|
| Drexel University | B.S., Electrical Engineering, 1964<br>Eta Kappa Nu Honor Society<br>Technical Journal Award<br>Student Chapter, IEEE, President |
| New York University | M.S., Electrical Engineering, 1968 |
| Brooklyn Law School | J.D., 1973<br>*Brooklyn Law Review*, 1971-1973<br>Senior Editor, 1972-1973 |

**ADMISSIONS**

New York State Bar
District Court for the Southern District of New York
District Court for the Eastern District of New York
Court of Appeals for the Second Circuit
Court of Appeals for the Federal Circuit
United States Supreme Court

**PROFESSIONAL
ASSOCIATIONS**

**American Intellectual Property Law Association**
*President* (2005-present)
*President Elect* (2003-2004)
*Second Vice President* (2002-2003)
*Board of Directors* (1999-present)
*Vice Chairman, Committee on Electronics and Computer Law*
(1998-1999)

**New York Intellectual Property Association**
*Immediate Past President* (2004-2005)
*President* (2003-2004)
*President Elect* (2002-2003)
*First Vice President* (2001-2002)
*Second Vice President* (2000-2001)
*Secretary* (1998-2000)
*Board Member* (1997-1998)
*Chairman, Committee on Trade Secret Law and Practice* (1990-1996)

**American Intellectual Property Law Education Foundation**

**Melvin C. Garner**
(continued)

*Trustee* (2003-present)
*Secretary* (2002-2003)
*Vice President* (2001-2002)

**National Inventors Hall of Fame**
    *Board of Directors* (2001-present)

**American Bar Association**
    *Member, Committee on Patent, Trademark and Copyright Law*

**The Association of the Bar of the City of New York**
    *Member, Committee on Patent Law and Practice* (1989-1992)
    *Member, Committee on Trademark Law and Practice* (1986-1988)

**EXEMPLARY CASES**

***Concept Innovation v. CFM Corp.***
    Civ. Action No. 04C 3345 (N. D. Ill 2004)
    Patent infringement settled with a recovery by client

***OP Solutions, Inc. v. Intellectual Property Network, Ltd.***
    52 U.S.P.Q.2d 1818 (SDNY 1999)
    Judgment for client in computer software copyright case.

***Pitney Bowes, Inc. v. Bell & Howell Mail Processing Systems***
    Civ. Action No. 99 263 GMS (D. Del. 1999)
    Patent Infringement settled with client receiving multi-millions
    of dollars.

***Universal Gym Equip., Inc. v. ERWA Exercise Equip. Ltd.***
    229 U.S.P.Q. 335 (D Md 1985), 827 F.2d 1542 (Fed. Cir. 1987)
    Judgment for client in trade secret case.

**EXEMPLARY AUTHORSHIP**
**AND RELATED ACTIVITIES**

Author
(2003)

"Mock Argument to the Federal Circuit," *AIPLA Mid-Winter Meeting*

"Advanced Claim Drafting and Amendment Writing Workshop for
Electronics and Computer-Related Subject Matter," *14th Annual Patent
Prosecution Workshop*, Practicing Law Institute (2004)

Chapter 13, "Intellectual Property Protection of E-Commerce," *Intellectual
Property Counseling and Litigation,* (Matthew Bender) (2002)

2

**Melvin C. Garner**
*(continued)*

"Inevitable Disclosure of Trade Secrets by the Departing Employee," Selected Legal Papers, *American Intellectual Property Law Association* (April 1995)

"Report of the Committee on Trade Secret Law and Practice," *Intellectual Property Law Annual* (1995)

"Discovery and Related Motion Practice," *Anatomy of Patent Litigation*, Practising Law Institute (1994)

"Trade Secret Causes of Action and Defenses," *Intellectual Property Counseling and Litigation*, (Matthew Bender) - Chapter 58 (1988), Chapter 44 (1994)

"Trade Secrets Civil Legislation," *Legal Notes & Viewpoints Quarterly*, Vol. 7, No. 1, Practising Law Institute, pp. 59 *et seq.* (Nov. 1986)

<u>Listing</u>            Euromoney's *Guide to the World's Leading Patent Law Experts*

Who's Who Legal - Patents 2005

<u>Lecturer</u>            Practising Law Institute, "Fundamentals of Patent Prosecution" and "Advanced Claim Drafting and Amendment Workshop" (annually 1992-present)

ADDITIONAL INFORMATION     Melvin C. Garner specializes in the procurement and litigation of patent, trademark, trade secret and copyright matters involving various technologies including video circuits, cellular telephones, office products, medical products, and computer hardware and software. Mr. Garner serves a broad range of clients from *Fortune* 500 and *Forbes* International 500 corporations such as Pitney Bowes, Johnson & Johnson and Sanyo, to small and mid-sized companies.

Over the years, Mr. Garner has handled a wide range of intellectual property litigation matters, representing both plaintiffs and defendants. For example:

He successfully registered a trademark in a shape that was previously the subject of a utility patent. Then he was able to enforce that trademark in a litigation against an infringer.

After a plaintiff had successfully enforced a patent covering video equipment against several defendants, he defeated a preliminary

3

**Melvin C. Garner**
*(continued)*

injunction motion filed against his client on the same patent. The Court found that the plaintiff did not have a likelihood of success in proving infringement. The case settled favorably for Mr. Garner's client.

Working with other attorneys at Darby & Darby as well as lawyers at several other firms, he defended a major cellular phone company in a procedure brought against it for a temporary exclusion order before the International Trade Commission. Although the plaintiff won other aspects of the case, Mr. Garner was successful in defeating the motion with respect to a design patent on the cellular phone.

He represented the holder of patent and trade dress rights in a handheld labeling machine. In a litigation that involved proceedings in several states in the United States and European countries, he was able to force a favorable settlement for his client which required the defendant to change the design of its product, as well as pay past damages and a running royalty for use of the client's rights.

He also defended a major media company against charges of unfair business practices in a dispute over a computer software development contract. The plaintiff was seeking several million dollars in damages, but the case ended with a settlement of a few hundred thousand dollars after the jury trial began.

Representing the plaintiff in a case regarding infringement of copyrights in a computer software program that manages trademark portfolios, Mr. Garner was able to get a decision which upheld the copyrightability of various elements of a graphical user interface and determined that the elements had been infringed.

Mr. Garner also counsels a wide variety of clients, frequently providing infringement opinions for potential plaintiffs, non-infringement opinions for potential defendants and validity opinions for both litigants and inventors. For example, he assisted a client facing bankruptcy after a loss in a patent infringement over an electronic circuit that causes shoes to light while the user is walking. The case previously had been handled by another firm. Mr. Garner was able to find non-infringing technology for the client and have the trial court clear that technology of the injunction that had been issued. He also assisted the client in defeating a second infringement suit brought by the plaintiff with regard to the new technology. The process took nearly four years and now the client is a leader in the field. Mr. Garner also helped another company that was operating under a burdensome patent license to develop and patent its own technology. Eventually, as a result of this strategy, the client was able

4

**Melvin C. Garner**
(continued)

to avoid the patent covered by the license, and the original licensor was forced to be come a licensee of his client and to pay an even larger royalty to his client.

Mr. Garner has also appeared as an expert witness in key trials throughout the United States. He frequently lectures on a variety of technology-related legal issues. His approach is to find out the business goal of the client and their present position. Then he seeks to utilize the client's intellectual property assets, and the capabilities of Darby & Darby in terms of prosecution, litigation and negotiation, to help the client reach their business goal.

5

# Exhibit 22

Not Reported in F.Supp.2d                                                                                     **Page 1**
Not Reported in F.Supp.2d, 2002 WL 1424567 (N.D.Ill.)
**(Cite as: 2002 WL 1424567 (N.D.Ill.))**
**H**

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern
Division.
VARDON GOLF COMPANY, INC., Plaintiff,
v.
KARSTEN MANUFACTURING CORPORATION,
Defendant.
No. 99 C 2785.

June 28, 2002.

MEMORANDUM OPINION AND ORDER

COAR, District J.

*1 Before this court is plaintiff/counter-defendant's,
Vardon Golf Company, Inc. ("Vardon"), motion for
reconsideration of the doctrine of equivalents issue as
to '021 patent claims 7-8 and 14-15 in light of the
Supreme Court's May 28, 2002 decision in *Festo Corp.
v. Shoketsu Kinzoku Kogyo Kabshiki Co., Ltd., et al.,*
122 S.Ct. 1831 (2002). In addition, defendant/counter-
plaintiff, Karsten Manufacturing Corporation
("Karsten") has moved this court to hold a hearing on
claim construction. For the following reasons, Vardon's
motion to reconsider is GRANTED and Karsten's
motion for a hearing on claim construction is DENIED.

Background
On March 1, 2000, Karsten filed a "Motion for
Summary Judgement of Non-Infringement and
Invalidity of the '021 Patent," requesting a finding of
non-infringement and invalidity of the asserted claims
of the '021 Patent. On April 12, 2000, plaintiff Vardon
Golf Company, Inc. ("Vardon") filed its "Response to
Karsten's Motion for Summary Judgment and Cross
Motion for Summary Judgement of Infringement Claim
3 of the '021 Patent." On May 16, 2000, Karsten filed
its "Reply to Vardon's Response to the Motion for
Summary Judgment of Non-Infringement and
Invalidity of the '021 Patent." On September 7, 2000,
this court issued a "Memorandum Opinion and Order"
granting summary judgment on non-infringement of
Claims 3,4,5, and 12 (as to both literal infringement
and infringement under the doctrine of equivalents) and
Claims 7 and 8 (as to literal infringement). As a result
of this court's holding, only allegations of infringement
under the doctrine of equivalents of Claims 7,8,14, and
15, and of literal infringement of Claims 14 and 15 of
the '021 Patent remained in the case.

On November 29, 2000, and therefore subsequent to
this court's ruling, the Federal Circuit issued a decision
*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
234 F.3d 558 (Fed.Cir.2000). Thereafter, Karsten
submitted a motion to reconsider this court's September
7, 2000 Order in light of the Federal Circuit's ruling in
*Festo.* In response to Karsten's motion, Vardon agreed
that the Federal Circuit's decision in *Festo* materially
changed the law governing the doctrine of equivalents
and operated to preclude doctrine of equivalents
infringement for '021 Patent Claims 7-8 and 14-15.
Vardon noted, however, that the U.S. Supreme Court
had granted Festo's petition for a writ of certiorari on
June 18, 2001. Vardon stated that "[i]f the Federal
Circuit's divided decision in *Festo* is reversed and the
scope of claim amendments must in fact be examined
for estoppel purposes, then Vardon believes that the
doctrine of equivalents does indeed apply as to '021
patent Claims 7-8 and 14-15." (Vardon's Response to
Karsten's Motion For Reconsideration). This court
issued a ruling on March 12, 2002, in response to
Karsten's motion, which agreed with both parties that
"the Federal Circuit's decision in *Festo* materially
changed the law governing the doctrine of equivalents
and act[ed] to preclude doctrine of equivalents
infringement for '021 Patent Claims 7-8 and 14-15."
(Memorandum Opinion and Order, March 12, 2002).

*2 On May 28, 2002, the Supreme Court issued a
ruling in *Festo Corp. v. Shoketsu Kinzoku Kogyo
Kabushiki Co.,* 122 S.Ct 1831 (2002) ("*Festo II* ").
Vardon brings its present motion in light of the
Supreme Court's decision in *Festo II.*

Standard of Review
Motions for reconsideration serve a "limited function:
to correct manifest errors of law or fact or to present
newly discovered evidence." *Keene Corp. v.
International Fidelity Ins. Co.,* 561 F.Supp. 656,
665-66 (N.D.Ill.1982), aff'd. 736 F.2d 388 (7th
Cir.1988). Accordingly, a court will entertain a motion
for reconsideration only where "the Court has patently
misunderstood a party, or has made a decision outside
the adversarial issues presented to the Court by the
parties, or has made an error not of reasoning but of
apprehension." *Bank of Waunakee v. Rochester Cheese
Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir.1990)
(quoting *Above the Belt, Inc. v. Mel Bohannan
Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D.Va.1983)).

A further basis for a motion to reconsider would be a
controlling or significant change in the law or facts

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: 2002 WL 1424567, *2 (N.D.Ill.))

since the submission of the issue to the Court. Such problems rarely arise and the motion to reconsider should be equally rare. *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir.1990) , citing *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E .D.Va.1983). A motion for reconsideration may not be used to introduce new evidence that could have been adduced during the pendency of the summary judgment motion or as an opportunity to present new legal theories. *Rothwell Cotton Co. v. Rosenthal & Co.,* 827 F.2d 246, 251 (7th Cir.1987), citing *Keene,* 561 F.Supp. at 665-66.

## Analysis
### I. Motion To Reconsider

#### A.

Vardon argues that the Supreme Court's decision in *Festo II* materially changed the interpretation of the law governing and the application of the doctrine of equivalents, as explained in its decision in *Festo,* and therefore this court's March 12, 2002 decision, barring Vardon from bringing claims for infringement on '021 patent Claims 7-8 and 14-15 due to doctrine of equivalents, must be reconsidered. This court agrees.

At the present time, this court is unable to locate an Appellate Court or federal District Court decision employing the Supreme Court's recent holding in *Festo II.* Consequently, this court's application of the Supreme Court's holding in *Festo II* will be one of first impression.

In *Festo II.,* the Supreme Court vacated and remanded the Federal Circuit's holding in *Festo.* In *Festo,* the Federal Circuit, sitting en banc, held that prosecution history estoppel barred Festo from asserting that the accused device infringed its patents under the doctrine of equivalents. 234 F.3d 558 (2000). The court held, with one judge dissenting, that estoppel arises from any amendment that narrows a claim to comply with the Patent Act, not only amendments made to avoid prior art. *Id.* at 566. The Court of Appeals further held that when estoppel applies, it stands as a complete bar against any clam of equivalence for the element that was amended. *Id.* at 574-575. The Court acknowledged that this was a deviation from its prior case law. Previous decisions had held that prosecution history estoppel constituted a flexible bar, foreclosing some but not all, claims of equivalence, depending on the purpose of the amendment and the alterations in the text. The Court concluded, however, that its decisions applying the flexible-bar rule should be overruled because this case-by-case approach had proved

unworkable. In the court's view a complete-bar rule with respect to estoppel would promote certainty in the determination of infringement cases.

**\*3** Upon review, the Supreme Court agreed with the Court of Appeals that any narrowing amendment made to satisfy any requirement of the Patent Act may give rise to an estoppel:

> A patentee who narrows a claim as a condition for obtaining a patent disavows his claim to the broader subject matter, whether the amendment was made to avoid the prior art or to comply with § 112. We must regard the patentee as having conceded an inability to claim the broader subject matter or at least as having abandoned his right to appeal a rejection. In either case estoppel may apply.

*Festo II,* 122 S.Ct. 1831, 1840.

The Supreme Court rejected, however, the Federal Circuit's adoption of a complete-bar rule with respect to the doctrine of equivalents, explaining that such a rule is not consistent with the purpose behind prosecution history estoppel, which is to hold the inventor to the representations made during the application process and to the inferences that may reasonably drawn from the amendment:

> After amendment, as before, language remains an imperfect fit for invention. The narrowing amendment may demonstrate what the claim is not; but it may still fail to capture precisely what the claim is ... The amendment does not show that the inventor suddenly had more foresight in the drafting of claims than an inventor whose application was granted without amendments having been submitted. It shows only that he was familiar with the broader text and with the difference between the two. As a result, there is no more reason for holding the patentee to the literal terms of an amended claim than there is for abolishing the doctrine of equivalents altogether and holding every patentee to the literal terms of the patent. [ ] This view of prosecution history estoppel is consistent with our precedents and respectful of the real practice before the PTO.

*Festo Corp. II,* 122 S.Ct. at 1841.

The Supreme Court's rejection of the complete-bar rule requires that this court reconsider it's March 12, 2002 ruling.

#### B.

This court based its rejection of Vardon's claims for infringement on the principles set out by the Federal

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Circuit in *Festo,* namely that by narrowing a claim to obtain a patent, the patentee surrenders any claims of equivalence for the element that was amended. *Festo,* 234 F.3d 558. Given that Vardon had narrowed claims 7-8 and 14-15 in pursuit of the '021 patent, this court agreed with both parties that the Federal Circuit's decision barred Vardon from asserting infringement in the form of the doctrine of equivalents against Karsten. The Supreme Court's recent reinstatement of the application of a flexible bar with respect to prosecution history estoppel, however, forces this court to reconsider whether Vardon may brings claims for infringement of claims 7-8 and 14-15 under the doctrine of equivalents against Karsten.

The doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes. Claims for infringement under the doctrine of equivalents are limited, however, by prosecution history estoppel. Thus, when a patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection, he may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent. *Festo II,* 122 S.Ct. at 1838. On the contrary, "[b]y the amendment [the patentee] recognized and emphasized the difference between the two phrases [,] ... and [t]he difference which [the patentee] thus disclaimed must be regarded as material." *Exhibit Supply Co. v. Ace Patents Corp.,* 315 U.S. 126, 136-137, 62 S.Ct. 513, 86 L.Ed. 736 (1942).

*4 With respect to the types of amendments that give rise to estoppel, the Supreme Court held that any narrowing amendment made to satisfy any requirement of the Patent Act may give rise to estoppel. *Festo II,* 122 S.Ct. 1839. The Court further held, however, that the possibility of estoppel does not bar the inventor from asserting infringement against any equivalent to the narrowed element. *Id.* at 1840.

Reiterating the standards established in *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 29, 117 S.Ct. 1040, 137 L .Ed.2d 146, the Supreme Court stated that a patentee has the burden of establishing that an amendment does not surrender the particular equivalent in question. *Id.* at 1841. "The patentee must show that at the time of the amendment one skilled in the art could not reasonably be expected to have drafted a claim that would have literally encompassed the alleged equivalent." *Id.* at 1842.

If a "patentee is unable to explain the reason for amendment, estoppel not only applies, but also 'bar[s] the application of the doctrine of equivalents as to that element." ' *Id.* (citing *Warner-Jenkinson,* 520 U.S. at 33). The Court found, however, that "[t]here are some cases where the amendment cannot reasonably be viewed as surrendering a particular equivalent." *Id.* If for example the equivalent was unforseeable at the time of the application, then the patentee could not reasonably be expected to have described the insubstantial substitute in question. *Id.* In such cases, the patentee can overcome the presumption that prosecution history estoppel bars a finding of equivalence. *Id.*

C.
In the present motion before this court, Vardon argues that, given the change in law, it should once again be permitted to attempt to prove infringement under the doctrine of equivalence as to '021 patent claims 7-8 and 14-15.

In support of Vardon's contention, it argues that it could not reasonably be expected to have drafted a claim that would have literally encompassed the alleged equivalent, i.e. the ring and the dot of the ISI clubs. Further, Vardon asserts that the ring and dot have only a "peripheral or tangential" relation to the reinforcing function provided by the much greater length and mass of the five ribs in the rear cavity of the ISI clubs.

Vardon's argument is supported by the fact that an examination of claims 7 and 15, as originally filed with their amendments, demonstrates that the amendments do not implicate the ring and dot elements of the ISI irons. The amendments focus primarily on structural explanations and descriptions. In addition, the arguments made as to these claims during their prosecution did not address the distinctions now alleged between Vardon's irons and the Ping ISI irons. For example, in response to a prior art rejection, Vardon argued that the prior art (Lockwood and Antonius) did not include reinforcing elements or reinforcing elements increasing in height from the approximate center to the perimeter wall that permit the use of an enlarged hitting area. Vardon's arguments did not emphasize the more cosmetic aspects of the of irons. In making amendments, Vardon chose not to address the fact that the cited prior art Antonious had an iron with a dot in the center area of the rear cavity while the Vardon iron did not, but, nonetheless, the PTO granted the '021 patent. Such history indicates

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

**(Cite as: 2002 WL 1424567, \*4 (N.D.Ill.))**

Page 4

that even the PTO considered the distinction insubstantial.

**\*5** Karsten argues that Vardon's motion fails to overcome and rebut its presumption of estoppel. Karsten does not provide, however, any evidence to support its contention that "territory surrendered" by the Vardon amendments to claims 7 and 15 encompass the distinctions between the ISI irons and Vardon's. Instead, Karsten repeatedly states the amended text of the '021 patent claims 7 and 15. But this exercise does not provide any guidance as to why such amendments surrender Vardon's right to bring claims for infringement against clubs that have a "ring and a dot."

Karsten asserts that "Vardon cannot avoid estoppel when it effectively admits that the 'territory surrendered' is the same as the 'alleged equivalent." 'This statement by Karsten, however, is misleading. As discussed above, Vardon supported its motion, in part, by providing that it did not address the fact that Antonious iron, a cited prior art, had a dot in the center area of the rear cavity, but nonetheless was granted a patent--therefore suggesting that the PTO did not think the difference significant enough to necessitate distinction.

Consequently, Vardon has overcome the presumption of estoppel barring any claims of infringement as to the '021 patent claims 7-8 and 14-15 equivalence against Karsten. [FN1]

> FN1. Karsten has argued in the alternative that should this court reconsider prosecution history estoppel as to '021 patent claims 7-8 and 14-15, it should hold a *Markman* hearing in order to determine the scope of the estoppel in this case. In this court's opinion, however, the legal parameter's of Vardon's claims under the doctrine of equivalence have been well discussed and debated in earlier summary judgment submissions and were addressed in the Memorandum Opinion and Order issued by this court on September 7, 2000. Consequently, this court is does not see any need to hold a *Markman* hearing in order to determine the scope of estoppel as to '021 patent claims 7-8 and 14-15 for infringement under the doctrine of equivalence in this case.

II. Motion For Hearing on Claim Construction

Karsten argues that the meaning of certain terms used in Claims 14 and 15 of the '021 patent remain in dispute and requests and opportunity to be heard regarding its proposed construction of these terms. For the following reasons, Karsten's motion is denied.

Karsten's motion for a hearing on claim construction is untimely and unnecessary. This court's summary judgement motion delineating the issues for trial was available on September 7, 2000. Karsten, for a reason that has remained unexplained, has decided to wait until May 14, 2002, only two months before trial, to request a *Markman* hearing in order to clarify claim construction.

In addition, the terms that Karsten moves to further construe in this motion either have been sufficiently clarified in the process of bringing this controversy to trial or need not be further clarified for the purposes of trial. Specifically, the term "reinforcing" was addressed in this court's September 7, 2000 Memorandum and Opinion. With respect to terms "reinforcing canceled elements" and "weighting elements", these terms, as noted by Vardon, are sufficiently explained by the construction of the term "reinforcing." A separate hearing on the each of these terms in unnecessary. Lastly, the term "significantly increase" need not be construed since there is nothing in the record of the '021 patent to suggest that this term should be given anything other than its plain, ordinary meaning.

Consequently, Karsten's motion for a hearing on claim construction is denied.

Conclusion

For the foregoing reasons, Vardon's motion for reconsideration of this court's March 12, 2002 summary judgement determination with respect to U.S. Patent 5,401,021 claims 7-8 and 14-15 is GRANTED and Karsten's motion for hearing on claim construction is DENIED.

Not Reported in F.Supp.2d, 2002 WL 1424567 (N.D.Ill.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.