IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE

| | |
|---|---|
| HONEYWELL INTERNATIONAL INC., and HONEYWELL INTELLECTUAL PROPERTIES INC., <br><br> Plaintiffs, <br><br> v. <br><br> HAMILTON SUNDSTRAND CORP., <br><br> Defendant. | Civil Action No. 99-309-GMS |

**HAMILTON SUNDSTRAND CORPORATION'S MOTION *IN LIMINE*
TO PRECLUDE HONEYWELL'S PATENT LAWYER TESTIMONY**

Honeywell seeks to introduce trial testimony from two patent lawyers: its patent lawyer "expert" Melvin Garner, and the lawyer who prosecuted the patents-in-suit, Richard Konneker. HSC requests that the Court preclude this testimony, because it is improper under, and inconsistent with, the Supreme Court and Federal Circuit decisions in *Festo*, irrelevant and unnecessary, and would not aid the Court in determining the issues on remand.

Honeywell intends its patent lawyer expert, for example, to: (1) testify about the state of the patent law now and in 1982; (2) instruct the Court on how to apply the various standards set forth in *Festo*; (3) give his "opinion as to the prosecution before the U.S. Patent & Trademark Office" of the asserted claims; (4) testify about the expectations and understanding of a "reasonable patent attorney"; (5) "help the court ... in interpreting the file history"; and (6) "divine what [Honeywell's] intent was" in prosecuting the patents.

This is the very testimony Honeywell previously urged the Court to *preclude*. As Honeywell recognized (in fact argued) at the outset of this remand proceeding, the kind of patent lawyer testimony it now seeks to offer is "not going to be the sort of testimony that ... the Court

617256v1

would hear," because such testimony "falls squarely into an area that [the Court has] recognized as the purview of the Court, not the purview of witnesses." (Ex. A, 8/29/05 Hearing Tr. at 7)

Moreover, as the Federal Circuit made clear, the analysis of whether Honeywell can overcome the *Festo* presumption is an ***objective*** inquiry based on the ***intrinsic*** evidence in the prosecution history, except where testimony from ***those skilled in the art*** or extrinsic prior art may be necessary to show the state of the art at the time. Honeywell's patent lawyer expert's testimony is ***extrinsic*** evidence, his "reasonable patent attorney" analysis is ***subjective***, and he admittedly is ***not a person of skill in the art***. Accordingly, Honeywell's attempt to submit patent lawyer expert testimony should be precluded.

Finally, Honeywell's patent lawyer testimony should be precluded because it is simply an attempt to make additional lawyer argument from the witness stand. Honeywell's lawyers will have ample time to make their arguments in pre-trial briefing and in opening statement and closing argument. The standards set forth in *Daubert* and under the Federal Rules of Evidence make clear that lawyers may not use experts as "oath helpers," or credentialed advocates for a party's own factual or legal conclusions or beliefs. Fed. R. Evid. 702; *Chemipal Ltd. v. Slim-Fast Nutr. Foods Int'l*, 350 F. Supp. 2d 582, 588 (D. Del. 2004); *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 538 (S.D.N.Y. 2004); *SEC. v. Lipson*, 46 F. Supp. 2d 758, 762-63 (N.D. Ill. 1998).

For each of these reasons, the testimony of Honeywell's patent lawyers should be precluded.

I.    **Background**

The sole issue in this remand proceeding is whether Honeywell can overcome the *Festo* presumption that it surrendered all equivalents to the inlet guide vane (IGV) limitations in the asserted claims. *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1146 (Fed. Cir. 2004). In order to overcome the presumption, Honeywell "must show that at the time of the amendment ***one skilled in the art*** could not reasonably be expected to have drafted a claim that

would have literally encompassed the alleged equivalent." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 741 (2002) (emphasis added). The Supreme Court set forth three ways by which a patentee can overcome the *Festo* presumption:

    (1) where the equivalent was "unforeseeable" at the time of the narrowing amendment;

    (2) where the rationale underlying the amendment bears "no more than a tangential relation" to the equivalent in question; or

    (3) where there is some "other reason" suggesting that the patentee could not reasonably be expected to have described the equivalent in question.

*Id.* at 740-41; *see also, Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1369-70 (Fed. Cir. 2003).

On remand from the Supreme Court, the Federal Circuit described these three "criterion" and set forth the type of evidence to be considered in weighing each of them. *Festo*, 344 F.3d at 1369-70. The foreseeability criterion "presents an objective inquiry, asking whether the alleged equivalent would have been unforeseeable to one of ordinary skill in the art at the time of the amendment." *Id.* at 1369. "By its very nature, objective unforeseeability depends on underlying factual issues relating to, for example, the state of the art and the understanding of a hypothetical person of ordinary skill in the art at the time of the amendment." *Id.*

Unlike the foreseeability analysis, "whether the patentee has established a merely tangential reason for a narrowing amendment is for the court to determine from the prosecution history record without the introduction of additional evidence, except, when necessary, testimony from those skilled in the art as to the interpretation of that record." *Id.* at 1370.

The third criterion "requires a patentee to establish 'some other reason suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question.'" *Id.* Like the tangential relation criterion, "[w]hen at all possible, determination of the third rebuttal criterion should also be limited to the prosecution history record." *Id.* The Federal Circuit recognized that the "other reason" criterion "must be a narrow one." *Id.*

617256v1

3

## II.     Honeywell's Prior Position On Patent Lawyer Testimony

At the initial status conference, Honeywell argued that the parties should *not* be allowed to present evidence "from a patent lawyer, which says 'I am a patent prosecutor and here is the way that I would, if I were Honeywell, have prosecuted this patent.'" (Ex. A, 8/29/05 Hearing Tr. at 7) Honeywell's position *then* was that "testimony on patent law or patent procedure [is] not going to be the sort of testimony that ... the Court would hear." (*Id.*)

Honeywell argued that such testimony "falls squarely into an area that [the Court has] recognized as the purview of the Court, not the purview of witnesses." (*Id.*) Honeywell's counsel further argued that, as to the need for a patent lawyer expert to interpret the file history, "the Court, guided by the parties' argument, can certainly interpret without having experts come in and tell you which parts of the intrinsic record they find particularly persuasive." (*Id.*) Honeywell now seeks to offer exactly the type of testimony it conceded is improper.

## III.    Mr. Garner's Opinions and Experience

### A.     Mr. Garner's Experience

Mr. Garner is a patent lawyer and litigator in New York. (Ex. B, Garner Expert Report, at ¶ 8) Mr. Garner has never worked for the United States Patent Office and he has never been a Patent Examiner. (Ex. C, Garner Deposition Tr., at 17-18) Although Mr. Garner has an electrical engineering degree, he has not been employed as an electrical engineer in over 30 years. (*Id.* at 6)

None of Mr. Garner's work experience has involved gas turbine engines. (*Id.* at 7) None of his work experience as an engineer (over 30 years ago) involved working with compressors, diffusers or surge control systems. (*Id.* at 8) Nor has any of his work as a patent lawyer involved diffusers or surge control systems. (*Id.* at 9)

Mr. Garner clearly is not a technical expert. He also concedes he is not a person of skill in the art concerning compressors or diffusers – the technology at issue on remand. (*Id.* at 15)

### B. Mr. Garner's Proposed Testimony

According to Mr. Garner, his "assignment" in this case was "[t]o review the file history and to see whether or not there was any information within the file history and some selected pleadings that I was given which would support an argument for overcoming the presumption on the three [*Festo*] bases." (Ex. C, Dep. at 45) Accordingly, Mr. Garner intends to provide "expert" opinions regarding: (1) the foreseeability of the alleged equivalent to the IGV limitation as of the date Honeywell amended its claims; (2) whether Honeywell's reason for amending the asserted claims "bore no more than a tangential relation" to the Sundstrand equivalent; and (3) whether there was "some other reason" that Honeywell could not have been expected to draft a patent claim in 1982 that would have captured the alleged equivalent to the IGV limitation. (Ex. B, Garner Report at ¶¶ 20 & 43-58)

In his Report, Mr. Garner repeatedly opines on what the patent law is, was or should be. For example, he gives opinions concerning what the estoppel law was in 1982 and how patent lawyers would have interpreted the law, whether the presumption of estoppel would have arisen in 1982 under these facts, the merits of the dissent in the Federal Circuit's en banc opinion in *Festo*, whether the *Festo* presumption was "a radical departure from the existing state of the law," and whether patent lawyers could have foreseen the outcome of the *Festo* case. (*Id.* at ¶¶ 43-45)

Mr. Garner also proposes to offer testimony concerning his "opinion as to the prosecution before the U.S. Patent & Trademark Office" of the asserted claims. (*Id.* at ¶ 20) He intends to testify "as an expert in the operations of the Patent Office [and] the way patent attorneys deal with the Patent Office." (Ex. C, Dep. at 5) He intends "to help the court ... in interpreting the file history." (*Id.* at 5-6) He also proposes to instruct the Court on how to apply the various standards set forth by the Supreme Court and the Federal Circuit in the *Festo* opinions, and provide an "expert" opinion on the rationale underlying the amendments Honeywell made to gain allowance

of the disputed claims. For example, Mr. Garner intends to "bring to the Court" his "valu[able]" ability to "divine what [Honeywell's] intent was" in prosecuting the asserted claims. (*Id.* at 129) As set forth more fully below, this is precisely the type testimony that Honeywell's counsel agreed is impermissible, that *Festo* does not allow, and that the Court should preclude.[1]

### IV. Honeywell's Patent Lawyer Expert Should Be Precluded From Testifying Concerning Each Of The Opinions And Conclusions Set Forth In His Report

Federal Rule of Evidence 702 obligates judges to ensure that purported "expert" testimony is relevant and reliable. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). The party offering the expert testimony has the burden of proving admissibility. *Id.*, at 592 n. 10. Honeywell cannot meet its burden.

#### A. Honeywell's Patent Lawyer Expert Should Be Precluded From Testifying Concerning The Foreseeability Of The Sundstrand Equivalent

Mr. Garner opines that the Sundstrand equivalent was not foreseeable (and thus that *Festo* estoppel does not apply) because the equivalent was not disclosed in the prior art that was before the examiner. (Ex. B, Garner Report at ¶ 46; Ex. C, Dep. at 75-76) Mr. Garner should be precluded from testifying concerning the foreseeability of the Sundstrand equivalent because he admittedly lacks the specialized technical expertise to assist the Court in making that determination, and because he bases his opinions on an erroneous legal standard.

##### 1. Mr. Garner Should Be Precluded From Testifying About Foreseeability Because He Is Not A Person Of Skill In The Art

The foreseeability criterion asks "whether the alleged equivalent would have been unforeseeable ***to one of ordinary skill in the art*** at the time of the amendment." *Festo*, 344 F.3d at 1369 (emphasis added). The inquiry "depends on underlying factual issues relating to, for

---

[1] HSC has retained a patent lawyer expert to rebut Mr. Garner's opinions should the Court allow Mr. Garner to testify. If Mr. Garner is not allowed to testify, HSC's patent law expert will not testify either.

example, the state of the art and the **_understanding of a hypothetical person of ordinary skill in the art_** at the time of the amendment." _Id._ (emphasis added).

Mr. Garner is a patent attorney, not a person skilled in the art competent to testify about what would have been foreseeable to one of skill in the art in 1982. As set forth above, Mr. Garner concedes that he is not a person of ordinary skill in the art of compressors or diffusers.[2] (Ex. C, Dep. at 15) Accordingly, his testimony cannot aid the Court in determining whether the Sundstrand equivalent "would have been unforeseeable _to one of ordinary skill in the art_ at the time of the amendment." Mr. Garner admittedly lacks the requisite "specialized knowledge" to "assist the trier of fact" in assessing the relevant factual issues. Fed. R. Evid. 702. For this reason alone, Mr. Garner should not be allowed to testify concerning the foreseeability of the equivalent.

### 2. Mr. Garner Should Be Precluded From Testifying About Foreseeability Because He Bases His Opinion On An Erroneous Legal Standard

The Federal Circuit "encourage[s] exercise of the trial court's gatekeeper authority when parties proffer, through purported experts, … markedly incorrect law. Incorrect statements of law are no more admissible through 'experts' than are falsifiable scientific theories." _Hebert v. Lisle Corp._, 99 F.3d 1109, 1117 (Fed. Cir. 1996).

#### a. Mr. Garner Improperly Limits The Foreseeability Analysis To Only The Prior Art In The File History

Mr. Garner based his "foreseeability" analysis on a fundamental misstatement of the law. Mr. Garner limited his analysis to determining whether the equivalent was foreseeable in light of the _intrinsic evidence_. In other words, Mr. Garner limited his review of prior art to only the references that were cited in the prosecution history. (Ex. C, Dep. at 75-76, 84-85) He made no attempt "to determine whether the Sundstrand equivalent was foreseeable to a person of skill in

---

[2] In fact, Mr. Garner did not even talk to anyone of skill in the art in connection with forming his opinions. (Ex. C, Dep. at 64) Nor did he review any of the deposition testimony of such persons in this case. (_Id._ at 62) The only people Mr. Garner talked to in coming to his opinions were Honeywell's lawyers. (_Id._)

the art at the time of the amendments in light of prior art that was not before the examiner." (*Id.* at 133-34; 136 (he does not "know whether at the time of the amendment the [equivalent] was known to others of ordinary skill in the art")) Mr. Garner took this approach based on his "understanding" of the law "that the foreseeability analysis under *Festo* is limited by ... the metes and bounds of what was in the file history." (*Id.* at 84) That is not the law.

The Federal Circuit has made clear that the courts may consider *extrinsic* evidence – i.e. evidence outside the prosecution history – in determining whether the equivalent was foreseeable to a person of ordinary skill in the art. Because the foreseeability issue depends on factual issues relating to "the state of the art" and "the understanding of a hypothetical person of ordinary skill in the art," the Federal Circuit held, "in determining whether an alleged equivalent would have been unforeseeable, a district court *may hear expert testimony and consider other extrinsic evidence relating to the relevant factual inquiries.*" 344 F.3d at 1369 (emphasis added).

Such extrinsic evidence, and the "understanding of a hypothetical person of ordinary skill in the art," includes prior art that was not in the prosecution history (i.e. art that the examiner and the applicant did not consider). *See, e.g., Glaxo Wellcome, Inc. v. Impax Laboratories, Inc.*, 356 F.3d 1348, 1355-56 (Fed. Cir. 2004) (relying on prior art outside intrinsic record in support of conclusion that equivalent was not unforeseeable); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 75 U.S.P.Q.2d 1830 (D. Mass. 2005) (finding that the equivalent was foreseeable based on prior art outside of the intrinsic record). *Cf. Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 962 (Fed. Cir. 1986) ("The person of ordinary skill is a hypothetical person who is presumed to be aware of all the pertinent prior art.") (cited for this rule by *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 444, 454 (D. Del. 2004)); *Orthopedic Equip. Co. v. United States*, 702 F.2d 1005 (Fed. Cir. 1983) (same).

In fact, Mr. Garner conceded "that in the patent law context the person of skill in the art is presumed to have a broad universe of knowledge of all of the prior art." (Ex. C, Dep. at 176; *id.* at 135-36 (agreeing that "whether or not the Sundstrand equivalent was a 'later-developed technology' in real life might depend on what was outside the prosecution history and what was known to people of skill in the art outside the prosecution history")) He also conceded that he could not "cite any case that suggests that the analysis on the foreseeability issue should be limited to prior art that was disclosed within the prosecution history." (*Id.* at 135) Mr. Garner's "foreseeability" testimony – by limiting his analysis to only the prior art considered by the examiner – is thus inconsistent with the law, misleading and irrelevant.

### b. Mr. Garner Improperly Bases His "Foreseeability" Opinion On The Understanding Of A "Reasonable Patent Attorney"

Recognizing that he is not qualified to offer any opinions concerning the understanding of a "person of ordinary skill in the art," as required by *Festo*, Mr. Garner frames his opinions in terms of the expectations and understanding of a "reasonable patent attorney." (Ex. B, Garner Report at ¶¶ 43-47) Mr. Garner's made-up "reasonable patent attorney" standard has no support in the case law and any testimony based on it should be precluded.

First, as discussed above, *Festo* allows expert testimony on foreseeability, if at all, from persons of skill in the art. Mr. Garner should not be allowed to substitute his own understanding as a "reasonable patent attorney" for the informed technical understanding of a person skilled in the art of compressors and diffusers. Neither the Supreme Court nor the Federal Circuit opinions in *Festo*, nor any other court, has adopted the "reasonable patent attorney" standard that Mr. Garner created. In fact, Mr. Garner admitted that he cannot identify any case in any jurisdiction that supports his "reasonable patent attorney" test. (Ex. C, Dep. at 201) Accordingly, Mr. Garner's testimony should be precluded.

Second, Mr. Garner's "reasonable patent attorney" testimony should be precluded because it is simply a guise through which Mr. Garner intends to testify about his views on the patent law. Mr. Garner's analysis focuses primarily on explaining what the patent law *used to be* in the eyes of a "reasonable patent attorney" in 1982, comparing it to the law under *Festo*, and suggesting that *Festo's* rules should not apply to Honeywell because of the purported difference. For example, Honeywell intends Mr. Garner to testify that it can overcome the *Festo* presumption because:

- a "reasonable patent attorney" would not have believed in 1982, under the state of the law *then*, that estoppel would have applied to Honeywell's amendments. (Ex. B, Garner Report at ¶¶ 43-45)

- "reasonable patent attorneys in 1982-83 would have presumed that any amendment to the claims to avoid prior art would have resulted in an estoppel ... only to the extent necessary to avoid the prior art in [sic] under consideration by the applicant and the examiner." (Ex. C, Dep. at 125-26; Ex. B, Garner Report at ¶ 43)

- a "reasonable patent attorney at the time" could not have conceived of the "new rule of law" under *Festo*, and thus would not have believed in 1982 that Honeywell engaged in a narrowing amendment. (Hon. Trial Br. at 28-29; Ex. B, Garner Report at ¶ 45)[3]

In short, Mr. Garner (and Honeywell) argues that the *Festo* estoppel should not apply because, in his view, the law was different at the time Honeywell amended the claims. Such testimony should be precluded because it is no more than argument about Mr. Garner's understanding of the law.[4]

The courts routinely refuse to allow "patent law experts" like Mr. Garner testify about what the law is, was or should be. *See, e.g., Ondeo Nalco Co. v. Eka Chems.*, No. 01-537-SLR, 2003 U.S. Dist. LEXIS 4437, *9-10 (D. Del. Mar. 21, 2003); 6/1/05 Pretrial Hearing in *Honeywell*

---

[3] While Mr. Garner renders these opinions in the context of his foreseeability analysis, Honeywell has suggested that it intends Mr. Garner to render these opinions in the context of the "other reason" criterion. (Honeywell Trial Brief at 28-29) Either way, Mr. Garner's testimony should be precluded.

[4] In any event, it is no excuse that "reasonable attorneys" might have thought the law was different in 1982. The *Festo* presumption applies retroactively to "all granted patents and to all pending litigation that has not been concluded with a final judgment, including appeals," regardless of the state of patent law at the time of the amendment. 344 F.3d at 1370 n.4; *see also Festo*, 535 U.S. at 741 ("courts may presume the amended text was composed with awareness of this rule").

617256v1

10

*v. Hamilton Sundstrand*, No. 03-1153-GMS at 13 (J. Sleet, stating that testimony from a "so-called patent law expert" is "anathema to this Court"). As Honeywell acknowledged at the initial status conference, "testimony on patent law or patent procedure [is] not going to be the sort of testimony that ... the Court would hear." (Ex. A, 8/29/05 Hearing Tr. at 7)

Mr. Garner's "reasonable patent attorney" testimony is simply (incorrect) legal argument. To allow such testimony would necessarily invite cross-examination on the case law. Arguments about the law, however, should be made in the briefs and oral argument, not through testimony by a patent lawyer and cross-examination. Accordingly, Mr. Garner should not be allowed to testify concerning how a "reasonable patent attorney" would have interpreted the law, the patents, or their prosecution.

In sum, Mr. Garner should not be allowed to give a "foreseeability" opinion that he is not qualified to give and that is based on a fundamental misunderstanding of the law.[5]

**B.    Honeywell's Patent Lawyer Expert Should Be Precluded From Testifying That The Equivalent Has A Only Tangential Relation To The Amendments**

Whether the amendment had more than a "tangential relation" to the equivalent "should be discernible from the prosecution history record." *Festo*, 344 F.3d at 1369; *see also, Biagro Western Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296, 1306 (Fed. Cir. 2005) ("whether the patentee has overcome the presumption on this ground [tangential relation] is determined by the court on the basis of the public record"). Accordingly, the Federal Circuit emphasized that "whether the patentee has established a merely tangential reason for a narrowing amendment is for the court to determine from the prosecution history record *without the introduction of additional evidence, except, when necessary, testimony from those skilled in the art as to the interpretation of that record.*" 344 F.3d at 1370 (emphasis added).

---

[5] Mr. Garner's "reasonable patent attorney" analysis is not limited to his "foreseeability" opinion. Each of his three substantive opinions turns on what a "reasonable patent attorney" would have thought – about the law and about Honeywell's claims. (Ex. B, Garner Report at ¶¶ 43-56) Thus, for the reasons described above, Mr. Garner should be precluded from presenting *any* opinions based on this made-up standard.

617256v1

11

Even the cases on which Honeywell relies in its Trial Brief and in Mr. Garner's Report make clear that the Federal Circuit "clearly limits the determination under the second criterion, tangentiality, to *intrinsic* evidence ...." *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 287 F. Supp. 2d 126, 143 (D. Mass. 2003) (emphasis added); *id.* at 150 (recognizing "the Federal Circuit's mandate that the Court rely only on intrinsic evidence in [the tangential relation] criterion"). As the Federal Circuit recognized, allowing a patent holder to rely on evidence not in the public record to establish a reason for an amendment would undermine the public notice function of the patent and its prosecution history. *Festo*, 344 F.3d at 1369-70.

Accordingly, as Honeywell stated at the initial status conference:

> "I think we agree that at least as to the tangential relation prong of the possible test, the case law is clear that the Court should focus on the intrinsic record. So I think ***everyone agrees there is no further evidence on that***. It would be the Court presumably guided by the parties' briefing or presentation in some form, reviewing the prosecution record and determining what it says as to that issue."

(Ex. A, 8/29/05 Hearing Tr. at 4 (emphasis added))

Mr. Garner's testimony should be precluded because it is exactly the type of evidence that the courts, and Honeywell, have recognized is irrelevant to the tangential relation analysis.

### 1. Mr. Garner's "Tangential Relation" Testimony Should Be Precluded Because It Is Extrinsic Evidence And It Will Not Aid The Court In Determining Any Relevant Issue

Mr. Garner's testimony is *extrinsic* evidence outside the prosecution history. To the extent any extrinsic evidence is allowable, the Federal Circuit has made clear that such testimony is limited to "testimony from those skilled in the art." *Festo*, 344 F.3d at 1370. Mr. Garner is not a person of ordinary skill in the art. Therefore, he is not competent to offer expert testimony relating to the "tangential relation" criterion, even if any extrinsic evidence were necessary. For this reason alone, Mr. Garner should not be allowed to testify concerning tangentiality.

Moreover, even if testimony from a lawyer not skilled in the art were allowable, the type of testimony Mr. Garner intends to give should be precluded. Especially in this case, the Court does not need "help ... in interpreting the file history," as Mr. Garner proposes to do. (Ex. C, Dep. at 5-6; Ex. B, Garner Report at ¶¶ 22-38 & 46-50 (explaining file history and what the amendments would mean to a patent lawyer)) Judges are quite capable of interpreting patent file histories without the help of patent lawyer experts. *See Ondeo*, 2003 U.S. Dist. LEXIS 4437 at *9-10 (striking patent lawyer expert's attempt to "'walk through'" prosecution history and opine as to how or why the applicant and Patent Office took or would have taken certain actions). Honeywell conceded as much at the initial status conference, where Mr. Putnam stated: "the Court, guided by the parties' argument, can certainly interpret without having experts come in and tell you which parts of the intrinsic record they find particularly persuasive." (Ex. A, 8/29/05 Hearing Tr. at 7)

Moreover, as Mr. Garner conceded, the file histories in this case are neither "complicated" nor "extensive," and contain mere "prosecution formalities." (Ex. C, Dep. at 26-27 & 88-89) In fact, the entire combined file histories are only approximately a half-inch high. Well over half of that is the text and drawings of the patents themselves. In any event, there are only two Office Actions central to the issues on remand. Thus, there is no need for patent lawyer testimony to guide the Court through the limited file history, even if patent lawyer testimony were allowable.[6]

### 2. Mr. Garner Should Be Precluded From Testifying Because He Bases His "Tangential Relation" Opinion On An Erroneous Legal Standard

Mr. Garner's "tangential relationship" opinion also should be precluded because it depends on a fundamental misstatement of the law. *See Hebert*, 99 F.3d at 1117 ("encourage[ing] exercise of the trial court's gatekeeper authority when parties proffer, through purported experts, ...

---

[6] Mr. Garner offers to "help the Court interpret the file history" in connection with each of his opinions. Accordingly, the impropriety and lack of any need for such testimony supports precluding Mr. Garner from testifying concerning "foreseeability" and "some other reason" as well as "tangential relation."

617256v1                                    13

markedly incorrect law"). Mr. Garner opines that because none of the prior art cited by the examiner disclosed the use of inlet guide vane position, Honeywell's amendments to the claims were no more than tangential to the equivalent. (Ex. B, Garner Report at ¶ 49) Mr. Garner bases his opinion on his "understanding of the law" that where the equivalent is not within the prior art in the file history, it is necessarily tangential to the amendment. (Ex. C, Dep. at 185-86; Ex. B, Garner Report at ¶ 49 (where amendment made for some reason other than "overcoming prior art that contains the equivalent ... the change is no more than tangential to that equivalent"))

The Federal Circuit, however, has expressly rejected the interpretation of the law on which Mr. Garner's testimony relies. In *Rhodia Chimie v. PPG Industries Inc.*, 402 F.3d 1371, 1383 (Fed. Cir. 2005), the Federal Circuit stated:

> Rhodia misunderstands the scope of the inquiry into the relationship between the narrowing amendment and the accused equivalent. As we have stated, 'an amendment made to avoid prior art that contains the equivalent in question is not tangential,' *Festo*, 344 F.3d at 1369. ***It does not follow, however, that equivalents not within the prior art must be tangential to the amendment.***

402 F.3d at 1383 (emphasis added); *see also Freeman v. Playtex Prods., Inc.*, 388. F. Supp. 2d 1251, 1260 (D. Kan. 2005) ("Simply because the prior art ... does not contain the precise alleged equivalent in question ... does not equate to a finding that the curved membrane at issue here is tangential to the purpose of the amendment.").

Accordingly, Mr. Garner should be precluded from testifying concerning his erroneous understanding of the law, and from giving any opinions regarding whether Honeywell can meet the "tangential relation" criterion.

### C. Honeywell's Patent Lawyer Expert Should Be Precluded From Testifying Concerning Whether There Is Some "Other Reason" Honeywell Can Overcome The Presumption That It Surrendered All Equivalents

Mr. Garner also opines that there is "another reason" that Honeywell can overcome the presumption of surrender. Mr. Garner opines that Honeywell can overcome the *Festo*

presumption because "a reasonable patent attorney would have believed that the asserted claims already literally covered the Sundstrand equivalent." (Ex. C, Dep. at 195; Ex. B, Garner Report at ¶¶ 52-56)  This is the only "other reason" on which Mr. Garner relies. (Ex. C, Dep. at 196)

As with the "tangential relation" criterion, "[w]hen at all possible, determination of the ['other reason'] criterion should also be limited to the prosecution history record." *Festo*, 344 F.3d at 1370. Again, Honeywell's own cases makes this clear. *See Amgen*, 287 F. Supp. 2d at 143 (the Federal Circuit "strongly suggests that the third criterion should be limited [to intrinsic evidence]"); *id.* at 159 (recognizing the Federal Circuit's "admonition to rely only on intrinsic evidence whenever possible").

The Court should preclude extrinsic evidence in the form of Mr. Garner's testimony concerning the "other reason" criterion for at least three independent reasons. First, as a threshold matter, Mr. Garner's testimony is extrinsic evidence outside the prosecution history record.

Second, Mr. Garner admittedly does not have the technical qualifications or expertise to determine whether the "the asserted claims already literally covered the Sundstrand equivalent," which is the foundation of his opinion on this issue. (Ex. C, Dep. at 153 & 195; *see also* Ex. B, Garner Report at ¶¶ 52-56)  Mr. Garner also admits that he did no independent analysis and has "no understanding of how the APS 3200 [equivalent] works based on study of technical documents or discussions with people." (Ex. C, Dep. at 85)  Instead, he gained his "understanding" of how the APS 3200 works from Honeywell's lawyers and Mr. Muller's earlier expert report from 2000, and then "assumed that the description of the Sundstrand lockout feature was as described." (*See id.* at 82-83, 85 & 199; Ex. B, Garner Report at ¶ 53)  Because Mr. Garner admittedly lacks the requisite "specialized knowledge" to "assist the trier of fact" in assessing the operation of the APS 3200, he should not be allowed to give such testimony. *See* Fed. R. Evid. 702.

Third, the Federal Circuit has specifically rejected Mr. Garner's "other reason." *See Biagro*, 423 F.3d at 1307. In *Biagro*, the Federal Circuit rejected the patentee's "other reason" argument that it could overcome the *Festo* presumption based on its purported belief at the time of the amendment that the claims would have literally covered the alleged equivalent. *Id.* Despite a finding that the claims did not literally cover the accused device, the patentee argued that it nevertheless would have believed at the time of the amendment that the accused device literally infringed. Therefore, based on its understanding of the scope of the claims at the time, the patentee argued that it had no reason to draft a broader claim and estoppel should not apply. *Id.* The Federal Circuit rejected this argument "as merely an attempt to reargue" the court's prior ruling against the patentee that had precluded literal infringement. *Id.*

Mr. Garner's opinion that a reasonable patent attorney would have believed at the time that Honeywell's claims literally covered the alleged equivalent is no different and should similarly be rejected. Like the patentee's argument in *Biagro*, Mr. Garner's "other reason" testimony is merely an attempt to reargue the scope of the claims and to revive a literal infringement argument that Honeywell abandoned.

Indeed, Mr. Garner's proposed testimony is even more tenuous than the argument the patentee made and the Court rejected in *Biagro*. Here, Honeywell's own "reasonable lawyers" conceded that the entire premise of Mr. Garner's "other reason" opinion – that the claims literally cover the alleged Sundstrand equivalent – is not true. As the Federal Circuit concluded, "Honeywell concedes that the inlet guide vane limitation is not literally met by the accused" APS 3200. *Honeywell*, 370 F.3d at 1136. As to the '893 patent, Honeywell's own lawyers – who Mr. Garner testified are "reasonable attorneys" (Ex. C, Dep. at 109) – did not believe the merits of a literal infringement claim were strong enough to even present to the jury. Similarly, as to the '194 patent, although Honeywell's lawyers presented a literal infringement argument at trial – which

the jury rejected and the Court denied on post-trial motions – they quickly abandoned that claim on appeal. *Honeywell*, 370 F.3d at 1136. Mr. Garner should not be allowed to testify that "reasonable attorneys" would conclude the claims literally cover the accused device while Honeywell's own attorneys concede that the claims do *not* literally cover the accused device.

Accordingly, Honeywell should not be allowed to raise or revive literal infringement arguments that it has conceded have no merit through the guise of "expert" patent lawyer testimony.

## V.    Mr. Konneker Also Should Be Precluded From Testifying

Honeywell also intends to introduce testimony from its lawyer, Richard Konneker, who prosecuted the patents-in-suit. Like Mr. Garner, Mr. Konneker is a patent attorney. He is not a person of ordinary skill in the art, and he lacks the specialized technical expertise to assist the Court in determining any relevant factual issue concerning the knowledge of persons of skill in the art. Mr. Konneker's testimony is not the type of extrinsic evidence *Festo* allows, and would not aid the Court in determining the factual or legal issues on remand. Accordingly, he should be precluded from testifying for each of the reasons set forth in Section IV above.

Similarly, while *Festo* presents an objective inquiry based on the intrinsic record, Mr. Konneker's beliefs and intentions are subjective and were not part of the public record. As Mr. Garner conceded, the *Festo* analysis should be limited to the intrinsic record, rather than allowing the prosecuting attorney to testify to an after-the-fact excuse for the amendments: "Because, for example, Honeywell could get an affidavit from the attorney prosecuting the case and say I had no intention to do this or it was a mistake or something like that. So you are more or less forced to rely upon what's in the prosecution history for your excuse." (Ex. C, Dep. at 134-35) *Cf. Competitive Tech., Inc. v. Fujitsu, Ltd.*, 333 F. Supp. 2d 858, 887 (N.D. Cal. 2004) (declarations of inventors have "little, if any, bearing on the *Festo* inquiry" because the standard is "objective").

Accordingly, Mr. Konneker should be precluded from testifying, including but not limited to any testimony concerning his understanding of what the law is now or was in 1982, his reasons for taking any action or making any arguments in the Patent Office during the prosecution of the patents-in-suit, and his beliefs about what the claims covered, what any of the words in the claims meant, and what he thought was the effect of the amendments.

## Conclusion

For the foregoing reasons, HSC requests that the Court preclude Honeywell from presenting testimony from its patent lawyers, Mr. Garner and Mr. Konneker. HSC recognizes and agrees that if the Court grants HSC's motion, HSC would also be precluded from presenting testimony from its patent lawyer expert.

February 14, 2006				THE BAYARD FIRM

						/s/ Richard D. Kirk (rk0922)
						222 Delaware Avenue, 9th floor
						P.O. Box 25130
						Wilmington, DE  19899
						rkirk@bayardfirm.com
						(302) 655-5000
						Attorneys for defendant Hamilton Sundstrand Corporation
Of counsel:

Mark L. Levine
Chris J. Lind
Brian C. Swanson
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL  60610
(312) 494-4400

and

David H. Herrington
CLEARY, GOTTLIEB, STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY  10006
(312) 494-4400

617256v1