# Exhibit A

Page 1

```
                IN THE UNITED STATES DISTRICT COURT
                IN AND FOR THE DISTRICT OF DELAWARE

                            - - -

HONEYWELL INTERNATIONAL INC    :  Civil Action
and HONEYWELL INTELLECTUAL     :
PROPERTIES INC.,               :
                               :
         Plaintiffs,           :
                               :
     v                         :
                               :
HAMILTON SUNDSTRAND            :
CORPORATION,                   :
                               :
         Defendant             :  No  99-309-GMS

                            - - -

                    Wilmington, Delaware
                    Monday August 29, 2005
                         9:55 a.m.
                         In Chambers

                            - - -

BEFORE:  HONORABLE GREGORY M  SLEET, U S D C J

APPEARANCES:

         THOMAS C  GRIMM, ESQ.
         Morris, Nichols, Arsht & Tunnell
              -and-
         ROBERT KRUPKA, ESQ  (Los Angeles, CA), and
         JONATHAN F  PUTNAM, ESQ
         Kirkland & Ellis
         (New York, New York)

              Counsel for Plaintiffs
```

Page 2

APPEARANCES CONTINUED:

RICHARD D. KIRK, ESQ.
The Bayard Firm
    -and-
MARK L. LEVINE, ESQ.,
CHRIS J. LIND, ESQ., and
BRIAN SWANSON, ESQ.
Bartlit Beck Herman Palenchar & Scott LLP
(Chicago, Illinois)
    -and-
DAVID H. HERRINGTON, ESQ.
Cleary, Gottlieb, Steen & Hamilton
(New York, New York)

         Counsel for Defendant

           - - -

THE COURT: Welcome back.
Welcome to you, Mr. Krupka, it's been a while.
MR. KRUPKA: Nice to see you again, Your Honor.
THE COURT: We will let local counsel begin with introductions.
MR. GRIMM: Your Honor, it is my pleasure to be here on behalf of Honeywell again. You know well Bob Krupka and Jonathan Putnam from the firm of Kirkland & Ellis here with me today.
THE COURT: Mr. Kirk.
MR. KIRK: Your Honor, nice to be here again. Dick Kirk from The Bayard Firm. I will start with counsel from the first case, David Herrington from the Cleary Gottlieb firm. You know well the team that just finished a

Page 3

case, Mark Levine, Chris Lind and Brian Swanson.
THE COURT: Good to see you.
Okay. Well, thanks for the joint status report. As I would have expected, matters are hotly contested and there is a difference of view as to how things should play out in light of the remand.
Maybe, to help inform the discussion generally, I will offer, I do have an inclination toward one party's position, and it happens to be toward HSC. After having read actually several times the joint status report and conferring with my mighty law clerk over here, Mike Koenig, for everyone's introduction, I am going to keep an open mind somewhat, but I do have a point of view that suggests itself to me in light of what I have read. I am always prepared to be dissuaded.
So, Mr. Putnam.
MR. PUTNAM: Thank you, Your Honor.
Just to set the stage, I know Your Honor will have read the Federal Circuit opinion, as we all have to figure out what it instructs us. The question on remand is going to be whether Honeywell gave up the embodiment at issue, the Sundstrand product that the jury found as a matter of fact to be equivalent to the Honeywell patent claims, whether Honeywell gave up that embodiment during prosecution or not.

Page 4

The Supreme Court at the Federal Circuit identified three potential ways, alternate ways, that Honeywell could meet that burden, make that showing. If the equivalent was unforeseeable at the time of the prosecution, which happened back here in the '81 to '84 time period, if there was a tangential relation, or if there was some other reason.
I think we agree that at least as to the tangential relation prong of the possible test, the case law is clear that the Court should focus on the intrinsic record. So I think everyone agrees there is no further evidence on that. It would be the Court presumably guided by the parties' briefing or presentation in some form, reviewing the prosecution record and determining what it says as to that issue.
As to unforeseeability, there is some ability to bring in extrinsic evidence. Let me address head on why we think that should be resolved just on the existing record. That is, as we say in our papers, that the existing record has, both the trial record and the discovery record that led up to the trial in this case, has substantial evidence exactly on what is now the relevant question. It is a different, in some respects, legal regime, but the matters of fact that the Court as fact-finder will have to determine on remand are the same matters of fact that were at issue

5

1  back in 2000, 2001, and were at issue because of Hamilton
2  Sundstrand's validity contentions, invalidity contentions.
3  What was the state of the prior art? What did the prior art
4  disclose about surge systems?
5      That is going to in turn now lead to or inform
6  this question that the Court will have to address as to
7  whether the Hamilton Sundstrand equivalent would have been
8  foreseeable during 1981-'82 time frame.
9      As Mr. Krupka and I were talking about it today,
10 I think there is a very strong connection between the
11 obviousness allegations that they pursued the first time
12 that they actually took up to the Federal Circuit. This was
13 not some, you know, unintentional or inconsequential part of
14 their defense. It was part of their defense they litigated
15 up to the Federal Circuit and lost, where they argued that
16 Honeywell's patents would have been obvious in light of the
17 prior art.
18     The question about whether the equivalent was
19 foreseeable in view of the prior art is just the flip-side
20 of that same question. It's looking at the prior art from
21 the standpoint of one reasonably skilled in the art, and
22 determining what does that body of art or what would that
23 body of art at the time have suggested to that person of
24 skill in the art.
25     So there has been substantial discovery exactly

6

1  on this factual issue. And that's why we, one of the
2  reasons why we submit that the issue can and should be
3  decided on the existing factual record. There is no reason
4  to take up more of the Court's time with the Bench trial on
5  the issue. No reason to take up the parties' time with
6  discovery. Since, as the Court knows, these two parties,
7  when they get into discovery, tend to have some disputes
8  that come to Your Honor's attention, despite their best
9  efforts to work it out, I think it's realistically not just
10 the several days of Bench trial that Hamilton Sundstrand
11 proposes, but the Court obviously has to keep in mind that
12 is going to come with additional overhead for the Court.
13     The other thing I would say is that, if you look
14 at their categories, they have this list in their part of
15 the status report, Your Honor, of what they want to
16 basically adduce additional evidence on, which in turn is
17 what they think there should be discovery on. These are
18 things that I don't think the Court is going to hear
19 evidence on.
20     If you look, for example, Your Honor, at the
21 fourth bullet down, on Page 9 of the joint status report,
22 discovery relating to Honeywell's ability at the time of the
23 amendment to have drafted a claim that would have
24 encompassed, they say the alleged equivalent. The jury
25 found it was equivalent, and there is no challenge to that

7

1  right now. That is patent law testimony, as I understand
2  what they are talking about there. And I know the Court's
3  views on that.
4      As the Court may recall, we had a couple
5  go-rounds on this issue in the more recent trial.
6      What they are proposing to do there, and I think
7  in the other respect as well, is to put on evidence that is
8  going to be presumably from a patent lawyer, which says I am
9  a patent prosecutor and here is the way that I would, if I
10 were Honeywell, have prosecuted this patent. I think that
11 is testimony on patent law or patent procedure, and that's
12 not going to be the sort of testimony that, if we took
13 discovery in order to enable that to be presented to the
14 Court, that the Court would hear. The Court would be the
15 fact-finder, so you could decide. But I think that falls
16 squarely into an area that you have recognized previously,
17 this district recognized as the purview of the Court, not
18 the purview of witnesses.
19     So we have the intrinsic record, which everyone
20 agrees on, the prosecution history, that the Court, guided
21 by the parties' argument, can certainly interpret without
22 having experts come in and tell you which parts of the
23 intrinsic record they find particularly persuasive. We have
24 got the factual record created from the first trial, where
25 these precise issues were put in play because of their

8

1  invalidity contentions. Then we have got the Court's
2  knowledge of patent law and how that works.
3      It is not a subject that the Court permits
4  experts to come in and tell the Court about.
5      From that, we say the existing factual record
6  suffices, more than suffices.
7      And I would add it is our burden on this, so we
8  are coming here as the proof-burdened party and saying we
9  are content with the factual record, effectively the factual
10 record developed by Hamilton Sundstrand as they pursued
11 their validity contentions.
12     THE COURT: To what extent do you think that
13 further factual development and concomitant argument, your
14 position, their position, would help better focus the issues
15 and make for a better rulemaking or decision-making in the
16 final analysis?
17     MR. PUTNAM: Well, Your Honor, again, it is our
18 burden to come forward with the arguments. The proposal for
19 resolving the matter that we put forward is briefing. We
20 file a brief, they file a brief, we file a reply brief. The
21 Court, if it wants hears argument, fine. I would think,
22 frankly, a 40-page brief by us filed on the current record
23 will very tightly focus the argument, the contentions,
24 because there are contentions. It is our burden to set them
25 forward. And we are going to have 40 pages or however many