IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HONEYWELL INTERNATIONAL INC. and HONEYWELL INTELLECTUAL PROPERTIES INC., <br><br>             Plaintiffs, <br><br>      v. <br><br> HAMILTON SUNDSTRAND CORP., <br><br>             Defendant. | C.A. No. 99-309-GMS |

**HONEYWELL'S RESPONSE TO SUNDSTRAND'S**
**MOTION *IN LIMINE* TO PRECLUDE PATENT LAWYER TESTIMONY**

Hamilton Sundstrand's motion in limine rests on a false premise. Honeywell does not intend to introduce any "expert testimony on patent law," as Sundstrand misleadingly charges. Rather, Honeywell intends to introduce at the remand trial limited expert testimony from Melvin Garner to support its proof that there are "other reasons" why Honeywell could not reasonably be expected to have described literally in its patent application the equivalent used by Sundstrand, one of three ways in which Honeywell intends to rebut the *Festo* presumption. *See Festo Corp. v. Shoketsu Kinzoku Co.*, 535 U.S. 722, 740-41. Honeywell may also introduce fact testimony from Richard Konneker, the Honeywell attorney who prosecuted the patents-in-suit. Their testimony is proper and admissible under the Supreme Court and Federal Circuit decisions in *Festo* as well as the Federal Rules of Evidence.

Mr. Garner, who is the current president of the American Intellectual Property Law Association, is being offered as an expert on the reasonable practices of patent attorneys prosecuting patent applications before the U.S. Patent and Trademark Office ("PTO") in the

early 1980s, as well as on the operation, rules of practice and procedures of the PTO at the time. Courts applying the *Festo* regime have allowed and relied upon exactly this type of expert testimony in finding the *Festo* presumption rebutted under the "other reasons" criteria. *See, e.g., Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 287 F.Supp.2d 126, 156 (D.Mass. 2003) (Young, C.J.). Mr. Garner will *not* offer expert testimony regarding the requirements or state of "patent law."

Notably, Mr. Garner's proposed expert testimony covers the very same topics as testimony that Sundstrand insisted was admissible in the context of the jury trial between these same parties last summer. In that case, Sundstrand argued that a patent attorney's opinion concerning "patent practice in terms of filing patent applications" was admissible and should not be precluded. (Sundstrand's Response to Honeywell's Motion in Limine to Preclude Testimony from John Goolkasian in case no. 03-1153, Ex. A, at 2.) Indeed, Sundstrand insisted then that an "opinion as to patent practice is admissible under Federal Rule of Evidence 702." (*Id.* at 3.) And at the Pretrial Conference in that case, Sundstrand emphasized the fact that testimony concerning "the practice of typical patent attorneys prosecuting patents and patent applications" was relevant and admissible. (6/1/05 Pretrial Conference Transcript in 03-1153, Ex. B, at 26.) After extensive argument, the Court ultimately concluded that expert testimony on "patent law" was inadmissible at a jury trial, but it did ***not*** exclude expert testimony concerning the typical practices of patent attorneys prosecuting patent applications before the PTO. (*Id.* at 28-29, 35, 45.)[1]

---

[1] The Court reserved judgment at the time on the exact contours of such testimony. Ex. B. at 45. In the end, neither side in the July trial decided to call its expert on these issues, so those contours were never defined.

Expert testimony regarding the practices of patent prosecuting attorneys is even more appropriate at a bench trial where there is no risk of jury confusion or undue persuasion.  Indeed, Sundstrand noted at the August 2005 status conference in this remand proceeding that "one of the reasons … you don't usually want a patent law expert in front of a jury is because they will give some undue deference to his statement of the law, et cetera, which is not a risk when you are talking about a Bench trial." (Hearing Transcript, Ex. C, at 45.)

Moreover, the proposed testimony from Mr. Garner concerning the "other reasons" rationale for rebutting the *Festo* presumption covers issues that Sundstrand specifically acknowledged could call for expert testimony by a patent attorney.  (*Id.*)  Even more importantly, the Federal Circuit in *Festo* held that extrinsic evidence, such as expert testimony, is admissible to prove that there were "other reasons" the patentee could not reasonably have been expected to have described the equivalent literally in the patent application.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1370 (Fed. Cir. 2003).

Because Mr. Garner's testimony is admissible under the Supreme Court and Federal Circuit *Festo* decisions, the case law interpreting those decisions, and the Federal Rules of Evidence, the Court should deny Sundstrand's motion *in limine*.

**I.     MR. GARNER'S BACKGROUND PROPOSED TESTIMONY**

Melvin Garner, a Principal at the law firm of Darby & Darby P.C., is the current president of the American Intellectual Property Law Association. (Expert Report of Melvin Garner, Ex. D, at 4; *see also* Curriculum Vitae of Melvin Garner, Ex. E.)  He is also a Past President of the New York Intellectual Property Association. (*Id.*)  Mr. Garner became a Patent Agent registered before the U.S. Patent and Trademark Office in 1972 and has prosecuted patents throughout his 30-year career, prosecuting or supervising the prosecution of thousands of

patent applications during that time. (*Id.*). Mr. Garner has also lectured lawyers at the Practising Law Institute on patent prosecution topics for over 20 years. (*Id.*)

Mr. Garner also has a bachelor's and master's degree in Electrical Engineering and has completed "a significant number of mechanical engineering courses and thermodynamics courses." (Garner Deposition Transcript, Ex. F, at 10.) Mr. Garner was previously employed as an electrical engineer by IBM, CBS Laboratories and Sequential Information Systems, achieving the rank of Project Engineer. Mr. Garner has been qualified to give expert testimony on topics relating to Patent Office practice and procedure in a number of federal jurisdictions around the country. (Ex. D at ¶ 9.)

Mr. Garner is not being offered as a "patent law expert" as Sundstrand repeatedly and misleadingly asserts. Instead, as stated in his expert report and affirmed at deposition, Mr. Garner is being offered as an expert on the operation, rules of practice and procedures of the PTO and the reasonable practices of patent attorneys prosecuting patent applications before the PTO in the early 1980s, at the time of the Honeywell prosecution at issue. (Ex. D at ¶ 1.) These are the very same topics for which Sundstrand's proffered expert, John Goolkasian, testified in his deposition in this case that he has been certified to testify on numerous occasions by courts throughout the country and for which Sundstrand offered Mr. Goolkasian to testify in the jury trial held last summer. (Goolkasian Deposition Transcript, Ex. G, at 13-14; Ex. B at 25-26.) Mr. Goolkasian has submitted an expert report on those topics in this remand proceeding as well.

At trial, Honeywell intends to offer Mr. Garner's expert testimony to help establish the "other reasons" why it could not reasonably be expected to have described literally in its patent applications Sundstrand's equivalent surge control system. First, Mr. Garner will testify that based on standard prosecution practices and PTO procedures in 1982-83, a reasonable patent

4

prosecutor at the time would not have believed that he had surrendered coverage of equivalents to inlet guide vane position use during prosecution of the patents-in-suit. Mr. Garner will explain why a reasonable patent prosecutor in 1982-83 would not have believed that he had engaged in a narrowing amendment by rewriting Honeywell's original dependent application claims in independent form or that it was necessary or prudent to submit additional claims seeking coverage of other inlet guide vane variations.

In addition, Mr. Garner will testify that a reasonable patent attorney in 1982-83 would have believed that the APS 3200 surge control system (had he known about that later-developed technology at the time of the patent prosecution in the early 1980s) was literally covered by the asserted claims in the patents-in-suit. Mr. Garner will explain why, from a patent prosecution attorney's prospective, the claims would have appeared broad enough to cover the Sundstrand product, if hypothetically it had existed and had been known at the time.

Mr. Garner will not testify as an expert on patent law and will not purport to instruct the Court on how to apply the standards set forth in *Festo*. Indeed, Mr. Garner readily acknowledged at his recent deposition that he would not be "testifying as an expert in patent law. The judge will determine what the law is." (Garner Dep. Tr., Ex. F, at 6.) Instead, Mr. Garner will simply offer his "opinion about what [he] believe[s] reasonable patent attorneys have done and would do under certain circumstances in practicing before the Patent Office." (*Id.* at 26.) This is testimony that can assist the Court in determining whether there is some other reason why Honeywell could not reasonably be expected to have described literally in its patent applications the equivalent used by Sundstrand. *Festo*, 535 U.S. at 740-41; *see, e.g., Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 287 F.Supp.2d 126, 156 (D.Mass. 2003) (relying on expert testimony from a patent attorney and finding *Festo* presumption rebutted on 'other reasons' grounds).

## II.   OVERVIEW OF LAW GOVERNING PROSECUTION HISTORY ESTOPPEL

The Supreme Court in *Festo* established three alternate ways in which to rebut the presumption of surrender of equivalents: (1) by proving that "the rationale underlying the amendment [bears] no more than a tangential relation to the equivalent in question;" (2) by proving that the equivalent was "unforeseeable" at the time of the amendment; or (3) by proving that there is "'some other reason' suggesting that the patentee could not reasonably have been expected to have described the alleged equivalent." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740-41 (2002). As set forth in detail in Honeywell's trial brief, filed on January 30, 2006, Honeywell will rebut the presumption of prosecution history estoppel under each of the three criteria announced by the Supreme Court in *Festo*. Mr. Garner's expert testimony is only being offered in support of Honeywell's argument under the *Festo* third rebuttal prong, "other reasons." So as to put that testimony in context, we briefly outline here the three rebuttal criteria established by *Festo*.

### A.   Honeywell Will Establish That The Amendments Bore No More Than A Tangential Relation To The Equivalent Based On The Intrinsic Record.

The "tangential relation" prong of the *Festo* rebuttal test concerns whether "the rationale underlying the amendment [ ] bear[s] no more than a tangential relation to the equivalent in question." *Festo*, 535 U.S. at 740. The focus of the tangential relation test is on the ***reason*** for the narrowing amendment. *Festo*, 344 F.3d at 1369-70. The inquiry "focuses on the patentee's objectively apparent reason for the narrowing amendment," a reason which "should be discernible from the prosecution history record." *Festo*, 344 F.3d at 1369. On remand from the Supreme Court, the Federal Circuit explained that "whether an amendment was merely

tangential to an alleged equivalent necessarily requires focus on the context in which the amendment was made; hence the resort to the prosecution history." *Festo*, 344 F.3d at 1370.

In this case, the prior art cited by the Examiner that gave rise to the amendments at issue did not mention or relate in any way to the Sundstrand equivalent and concerned instead other features of the invention. *See* Sundstrand In Limine Brief at 14; *see also* Sundstrand's Response to Request for Admission No. 5 (admitting that "during the prosecution of the Patents-in-Suit, the Examiner did not reference any Prior Art that disclosed inlet guide vanes or the use of their position as part of a surge control system.") (Ex. H). In such instances, courts have held that the rationale underlying the amendment bears no more than a tangential relation to the equivalent in question and that the patent owner has therefore successfully rebutted the *Festo* presumption. *See, e.g., Insituform Tech., Inc. v. CAT Contr., Inc.*, 385 F.3d 1360 (Fed. Cir. 2004); *Cordis Corp. v. Medtronic Ave., Inc.*, 336 F. Supp. 2d 363 (D. Del. 2004). Inlet guide vane position was never mentioned at any point in the prosecution history, either by the Examiner or by Honeywell. Indeed, several of the claims that were allowed by the Examiner do not contain the inlet guide vane feature.

Furthermore, the three asserted independent claims were not allowed by the Examiner merely because they added use of inlet guide vane position. Rather, each of the claims was amended to add use of inlet guide vane position as well as other features. The Examiner never indicated that he attached any particular significance to the use of inlet guide vane position, and none of the claims was allowed based solely on the addition of the inlet guide vane position. Rather, the reason for the amendments that is "objectively apparent" from the prosecution (*Festo*, 344 F.3d at 1369) was to add various additional elements to the surge control system

beyond merely the flow-related parameter subjected to proportional and integral control, which the Examiner had held unpatentable standing alone.

Consistent with the Supreme Court and Federal Circuit's guidance in *Festo*, Honeywell will prove, based on the prosecution history record, that the relevant amendments bore no more than a tangential relation to the Sundstrand equivalent. Honeywell does not intend to introduce testimony from Mr. Garner concerning the "tangential relation" prong.

      **B.**    **Honeywell Will Establish That The Sundstrand Equivalent APS 3200 Surge Control System Was Unforeseeable At The Time Of The Amendments.**

The "unforeseeabilty" prong of the *Festo* rebuttal test asks whether the equivalent would have been unforeseeable to one of ordinary skill in the art at the time of the amendment. *Festo*, 344 F.3d at 1369. The Federal Circuit has explained that unforeseeability is "an objective inquiry, asking whether the alleged equivalent would have been unforeseeable to one of ordinary skill in the art at the time of the amendment." *Id.* Accordingly, "unforeseeability depends on underlying factual issues relating to, for example, the state of the art and the understanding of a hypothetical person of ordinary skill in the art at the time of the amendment. Therefore, in determining whether an alleged equivalent would have been unforeseeable, a district court may hear expert testimony and consider other extrinsic evidence relating to the relevant factual inquiries." *Id.*

Honeywell will prove at trial that the Sundstrand equivalent surge control system was later-developed technology that would have been unforeseeable to one of ordinary skill in the art at the time of the Honeywell patent application amendments in 1982-83. *Festo*, 535 U.S. at 740. It is undisputed that Sundstrand did not begin developing its infringing surge control system until 1989 and did not finalize it until 1995, long after the amendments. In addition, Sundstrand's own technical expert in the February 2001 trial, Francis Shinskey, opined that the Sundstrand

surge control system utilized a "unique" flow-related parameter that had "not [been] described elsewhere in patents or prior art." (November 10, 2000 Expert Report of Francis Shinskey, Ex. I, at 9.) Indeed, when faced with this unique parameter and the flow curve that it produced, Sundstrand struggled for four years with various experimentation and failed development work before settling upon its infringing system more than a decade after the Honeywell patent amendments. These facts compel a finding of unforeseeability. *See, e.g., BEI Tech., Inc. v. Matsushita Elec. Indus. Co.,* 268 F.Supp. 2d 782, 801-02 (E.D. Mich. 2003).[2]

In further support of its unforeseeability case, Honeywell will introduce at the remand trial the expert testimony of Gerard Muller, an expert with extensive knowledge concerning the level of ordinary skill in the art of the relevant technologies at the time of the amendments in 1982-83. The admissibility of Mr. Muller's expert testimony concerning the unforeseeability of the Sundstrand equivalent has not been challenged by Sundstrand. Honeywell does not intend to offer expert testimony from Mr. Garner concerning the unforeseeability of the Sundstrand equivalent.

> **C. Honeywell Will Establish, In Part Through The Testimony of Mr. Garner, That There Are "Other Reasons" Why Honeywell Did Not Literally Describe The Sundstrand Equivalent.**

In announcing the bases on which a patent holder could rebut the presumption of estoppel, the Supreme Court fashioned a broad third way that a patentee may rebut the *Festo* presumption: "there may be some other reason suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question." *Festo*, 535 U.S. at 740-

---

[2] Sundstrand has now replaced its trial expert, Mr. Shinskey – a member of the "Control Hall of Fame" who was described by Sundstrand's counsel in closing argument to the jury as "the Real McCoy" -- with a new would-be expert, David Japikse. Japikse – in direct contradiction with Mr. Shinskey's trial testimony – will testify that the flow-related parameter used on the Sundstrand equivalent was known to him since college and was nothing new. This complete about-face lacks all credibility.

41. *See, e.g., Amgen*, 287 F.Supp.2d at 158-59 (finding rebuttal of *Festo* presumption based on "other reasons"); *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, No. 01 C 6934, 2004 WL 2260626, at *14 (N.D. Ill. Oct. 1, 2004) (same) (Ex. J). Extrinsic evidence is admissible to evaluate rebuttal under the third criteria, particularly regarding the reasonable expectations of the patentee. *Amgen,* 287 F. Supp. 2d at 156; *see also Festo*, 344 F.3d at 1370 (declining to place any limits on the type of extrinsic evidence that "should be considered in determining if a patentee has met its burden under this third rebuttal criterion.").

In laying out this third, "other reason," category, the Supreme Court specifically incorporated consideration of the reasonable expectations of the patentee in the analysis. *Festo*, 535 U.S. at 740-41 (rebuttal is found if there is "'some other reason' suggesting that the patentee could not *reasonably* have been expected to have described the alleged equivalent.") (emphasis added); *see also Amgen*, 287 F.Supp. 2d at 156. "Thus, the Court's analysis at this stage -- as opposed to that during claim construction -- includes a reasonableness inquiry that involves questions of equity." *Amgen*, 287 F.Supp. 2d at 156. Accordingly, even though extrinsic evidence -- i.e., evidence outside the prosecution history -- is generally avoided in claim construction as a matter of policy, the "reasonableness inquiry" inherent in an "other reasons" investigation necessarily means that courts may consider, and, sometimes must consider, extrinsic evidence. *Id.* In *Amgen*, the court noted that under the Supreme Court's 2002 ruling in *Festo*, "the focus is not on what those skilled in the art reasonably would have concluded was relinquished but ***on what subject matter the patentee itself reasonably should have included in the amendment***." *Id.* (emphasis added). *See also Leading Cases*, 116 Harv. L. Rev. 402, 409 (2002) ("The [Supreme] Court's new test [in *Festo*] shifts the estoppel inquiry from the ex post perspective of a reasonable competitor to the ex ante perspective of the person drafting the

10

patent."). "Thus, even after *Festo II*, when analyzing the third criterion, the Court must make a reasonableness inquiry, but now it must ask what a reasonable patentee could be expected to have done. This reasonableness inquiry requires the Court to look into the circumstances and in some cases, like the one at hand, to consider extrinsic evidence." *Amgen*, 287 F. Supp.2d at 156.[3] In order to determine whether Honeywell "could not reasonably have been expected to have described the alleged equivalent," as *Festo* specifies, Honeywell's actions must be compared against other patent applicants similarly situated.

### III.   MR. GARNER'S PROPOSED TESTIMONY IS ADMISSIBLE IN SUPPORT OF HONEYWELL'S "OTHER REASONS" REBUTTAL.

At the remand trial, Honeywell intends to present expert testimony from Mr. Garner to help establish that compelling "other reasons" exist why it could not reasonably be expected to have described literally in the patent application the equivalent used by Sundstrand. *Festo*, 535 U.S. at 741. In particular, Mr. Garner with testify that in 1982-83, a reasonable patent attorney practicing before the Patent and Trademark Office would not have believed that he had surrendered the Sundstrand equivalent during prosecution. Mr. Garner will describe the practices and procedures of the PTO at the time, as well as the general climate surrounding patent prosecution that would have led a reasonable patent attorney to such a conclusion. Mr. Garner will also testify as to why a reasonable patent attorney in 1982-83 would not have felt the need, and indeed would not have felt it prudent, to have drafted additional claims to describe the additional equivalents of inlet guide vane position use.

---

[3] Legal scholars have also noted the importance of the reasonableness inquiry to the prosecution history estoppel analysis in light of the Supreme Court's 2002 *Festo* decision. *See, e.g.,* John S. Golian, *Without a Net: The Supreme Court Attempts to Balance Patent Protection and Public Notice in Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 36 Creighton L. Rev. 541, 599 (2003); C. Alan Fu, *Prosecution History Estoppel: Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 18 Berkeley Tech. L.J. 117, 137 (2003).

In addition, Mr. Garner will help Honeywell establish that a reasonable patent attorney practicing before the PTO in 1982-83 would have believed, had he known of the later-developed Sundstrand APS 3200 surge control system when the amendments were made, that the claim language literally covered the infringing system. *See, e.g., Amgen,* 287 F. Supp. 2d at 158-59 (finding *Festo* presumption rebutted on this basis). Because the "other reasons" prong focuses on the reasonable expectations of the patent applicant and whether or not he could reasonably be expected to have described literally in the patent application the equivalent, Mr. Garner's testimony regarding a reasonable patent attorney, practicing in 1982-83, is relevant and appropriate. *Id.* at 157 (patent owner successfully rebutted the presumption under the "other reasons" criteria based on expert testimony "suggesting that the drafter of the amendment in question -- and those skilled in the art -- interpreted the amendment to cover" the equivalent).[4]

Courts have long permitted patent attorneys to provide expert testimony to assist the trier of fact in understanding and resolving issues relating to patent procedures and prosecution. For example, Sundstrand's proferred expert, Mr. Goolkasian, has testified as an expert in six trials in the past four years on issues including prosecution history, inequitable conduct and PTO practices. (Goolkasian Dep. Tr., Ex. G, at 13, 86-91; Ex. B to Expert Report of Goolkasian, attached hereto as Ex. K.) Mr. Goolkasian explained that "walking the fact finder through the prosecution history" is something that he is often asked to do at trial, noting that "you need to get this evidence in and … you could do it with a technical expert, but it's more difficult because a technical expert doesn't necessarily understand what happened in the Patent and Trademark

---

[4] Contrary to Sundstrand's argument, the Federal Circuit did not overrule *Amgen* in *Biagro Western Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296 (Fed. Cir. 2005). The Federal Circuit there merely affirmed the conclusion of the district court that, on the particular facts present in that case, the patentee had not rebutted the *Festo* presumption under the "other reasons" inquiry. The Federal Circuit did not cite *Amgen* or purport to rule on the types of evidence that might suffice to establish an "other reason" rebuttal.

Office." (Goolkasian Dep. Tr., Ex. G., at 17.) Mr. Garner has also testified as an expert in PTO procedure in three recent trials. (Ex. D at ¶ 9.)

Such expert testimony regarding Patent Office procedures has repeatedly been held admissible despite claims that the proferred patent attorney lacks skill in the relevant art. *See Liquid Dynamics*, 2004 WL 2260626, at *7 ("A patent lawyer may testify in a patent suit. [The patent lawyer's] lack of technical expertise goes to the weight of his testimony as opposed to its admissibility. Indeed, the court has discretion to adopt the legal opinion as its own, find guidance from it, or disregard it completely.") (Ex. J); *see also Engineered Prod. Co. v. Donaldson Co., Inc.*, 313 F. Supp. 2d 951, 1006 (N.D. Iowa 2004) ("It is not improper for Donaldson to offer a patent attorney as an expert, or for that expert to testify on 'ultimate questions,' such as infringement. Moreover, the court concludes that EPC's argument that Mr. Miller is not 'a person skilled in the art' really goes to the weight, not the admissibility, of Mr. Miller's testimony."). Sundstrand's expert Mr. Goolkasian, for example, has been accepted as an expert and given testimony in patent cases involving technology and products ranging from material used in the drilling of oil wells to the pasteurization of eggs to printing machines. (Goolkasian Dep. Tr., Ex. G, at 86-91.)

Moreover, the practical concerns of confusion and undue influence that are present in a jury trial are absent here. Chief Judge Robinson has previously denied a motion in limine to preclude introduction of expert testimony from a patent attorney in a bench trial, noting that "the court will not preclude defendant from spending its time on whatever relevant issues it chooses to pursue, particularly in the context of a bench trial." *Eaton Corp. v. Parker-Hannifin Corp.*, No. Civ.A. 00-751-SLR, 2003 WL 179992, at *1 (Jan. 24, 2003) (Robinson, J.) (Ex. L); *see also Astra Aktiebolag v. Andrx Pharms., Inc.*, 22 F. Supp.2d 423, 486 (S.D.N.Y. 2002) (denying

13

motions in limine to exclude testimony of expert witnesses at patent trial because the "trial was conducted as a bench trial"); *Intermatic Inc. v. Toeppen*, No. 96 C 1982, 1998 WL 102702, at *3 (N.D. Ill. Feb. 28, 1998) ("[M]otions in limine are generally granted to prevent the risk of jury confusion or prejudice, but these risks are not present in the instant case which will be a bench trial.") (Ex. M).

Mr. Garner is offered as an experienced patent prosecutor to address the factual issues that underlie the required inquiry into the reasonableness of Honeywell's expectations and actions at the time it drafted the relevant amendments in 1982-83. Mr. Garner's testimony should be admitted by this Court.

**IV.     MR. KONNEKER'S FACT TESTIMONY IS ADMISSIBLE.**

Sundstrand's motion also half-heartedly addresses the potential fact testimony from Richard Konneker. Mr. Konneker, now a patent attorney in private practice in Texas, worked during the 1980s in Honeywell's legal department and had responsibility for prosecuting patent applications, including the patents-in-suit. If called at trial, Mr. Konneker would not offer expert testimony, nor would he opine regarding the patent law. Rather, he would testify as a factual witness regarding his prosecution of the patents-in-suit, including the amendments at issue. Such testimony from an occurrence witness would plainly be admissible.

It is not surprising that Sundstrand misstates the proposed subject matter of Mr. Konneker's testimony. After noticing his deposition in this remand for December 13, 2005, Sundstrand unexpectedly cancelled the deposition the preceding day, after Honeywell's counsel had already traveled to Texas to prepare Mr. Konneker for the deposition. Having made the tactical decision to forego Mr. Konneker's deposition, Sundstrand's effort to exclude his factual testimony based on what it falsely imagines he may testify about should be rejected.

14

## **CONCLUSION**

For the foregoing reasons, the Court should deny Sundstrand's motion in its entirety and permit the testimony of Messrs. Garner and Konneker.

                MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                */s/ Thomas C. Grimm*
                _____
                Thomas C. Grimm (#1098)
                Leslie A. Polizoti (#4299)
                1201 N. Market Street
                P.O. Box 1347
                Wilmington, DE  19899-1347
                (302) 658-9200
                tcgefiling@mnat.com
                lpolizoti@mnat.com
                *Attorneys for Plaintiffs*
                *Honeywell International Inc. and*
                *Honeywell Intellectual Properties Inc.*

OF COUNSEL:

Robert G. Krupka
Jonathan F. Putnam
Lee Ann Stevenson
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY  10022-4611
(212) 446-4800

February 21, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to Richard D. Kirk.

I also certify that on February 21, 2006, I caused to be served true and correct copies of the foregoing document on the following in the manner indicated below:

**BY HAND & E-MAIL**

Richard D. Kirk
THE BAYARD FIRM
222 Delaware Avenue, 9th Floor
P.O. Box 25130
Wilmington, DE  19899

**BY E-MAIL**

Mark L. Levine
Chris J. Lind
Brian Swanson
BARTLIT BECK HERMAN PALENCHAR & SCOTT
54 West Hubbard Street
Chicago, IL  60610

David H. Herrington
CLEARY, GOTTLIEB, STEEN
& HAMILTON LLP
One Liberty Plaza
New York, NY 10006

*/s/ Thomas C. Grimm*

Thomas C. Grimm (#1098)
tcgefiling@mnat.com

507883