IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE

| | |
|---|---|
| HONEYWELL INTERNATIONAL INC., and HONEYWELL INTELLECTUAL PROPERTIES INC., <br><br> Plaintiffs, <br><br> v. <br><br> HAMILTON SUNDSTRAND CORP., <br><br> Defendant. | Civil Action No. 99-309-GMS |

**DEFENDANT HAMILTON SUNDSTRAND CORPORATION'S
REPLY MEMORANDUM IN SUPPORT OF ITS MOTION IN LIMINE
TO PRECLUDE HONEYWELL'S PATENT LAWYER TESTIMONY**

Honeywell's answering brief largely ignores the arguments set forth in Hamilton Sundstrand Corporation's ("HSC") Motion in Limine to Preclude Honeywell's Patent Lawyer Testimony [D.I. 389](the "Motion"). However, Honeywell's brief makes three important concessions that confirm that its patent lawyers should be precluded from testifying. First, contrary to Mr. Garner's Report and deposition, Honeywell now proposes for the first time to limit Mr. Garner's testimony to only one of the *Festo* criteria – the "other reason" criterion. Honeywell thus concedes that Mr. Garner may not testify concerning the "unforeseeability" or "tangential relation" criteria. (Hon. Resp. at 1, 6, 8, 9) Accordingly, the Motion should be granted as to the other two *Festo* criteria based on Honeywell's concession alone.

Second, Honeywell confirms that the patent lawyer testimony it intends to present on the "other issue" criterion is exactly the type of testimony that it previously agreed was inadmissible, and which *Festo* does not allow. Honeywell previously agreed that the parties should not be allowed to present evidence "from a patent lawyer, which says 'I am a patent prosecutor and here is the way that I would, if I were Honeywell, have prosecuted this patent,'" because "testimony on

patent law or patent procedure [is] not going to be the sort of testimony that … the Court would hear." (Ex. A to HSC's Motion, 8/29/05 Hearing Tr. at 7) Honeywell confirms in its response brief that this is exactly the type of testimony it intends Mr. Garner and Mr. Konneker to offer. (Hon. Resp., at 1-2, 4-5, 11 (proposing that Mr. Garner testify about "practices of patent attorneys prosecuting patent applications," "the rules of practice and procedures of the PTO," "what [he] believe[s] reasonable patent attorneys have done and would do under certain circumstances," "the general climate," and what a "reasonable patent attorney" would have "felt [was] prudent"))

Third, Honeywell concedes that neither Mr. Garner nor Mr. Konneker is a person of skill in the art. Their testimony should be precluded for this reason alone. The Supreme Court held that the overarching question in this case is whether "one skilled in the art" – not a "reasonable patent lawyer" – could have drafted a claim that would have literally encompassed the asserted equivalent. *Festo v. Shoketsu Kiuzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 741 (2002). Accordingly, the only type of extrinsic testimony that *Festo* recognized may be relevant is "testimony from those skilled in the art," and expert testimony concerning "the state of the art and the understanding of a hypothetical person of ordinary skill in the art." *Festo Corp. v. Shoketsu Kiuzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1369-70 (Fed. Cir. 2003).

In light of Honeywell's concessions, and for the reasons set forth below and in the Motion, Honeywell should be precluded from presenting patent lawyer testimony in this *Festo* proceeding. The principles underlying the *Festo* analysis do not support Honeywell's position and allowing such extrinsic testimony from three additional witnesses (Honeywell's two patent lawyer witnesses and HSC's responsive patent lawyer expert) would prejudice HSC's ability to put on its case in the two days the Court has allotted for testimony and argument.

I.  **Mr. Garner Should Be Precluded From Testifying That The APS 3200 Literally Infringed The Asserted Claims**

Mr. Garner should be precluded from testifying concerning Honeywell's first "other reason" – that a "reasonable patent attorney" would have believed in 1982 that the APS 3200 literally infringed the asserted claims. Whether Honeywell characterizes Mr. Garner's expertise as "Patent Office procedures," "patent law" or "patent prosecution," he is not qualified to give any opinions on whether the APS 3200 literally infringes the asserted claims. (*See* HSC Motion at 4) He admittedly does not have that technical expertise.

Honeywell's statement that the Federal Circuit in *Festo* "held" that extrinsic "expert testimony is admissible to prove that there were 'other reasons'" is a mischaracterization of the Federal Circuit's holding. (*See* Hon. Resp. at 3) The Federal Circuit did not hold that expert testimony is admissible to prove some "other reason."[1] 344 F.3d at 1370. The only type of expert testimony the Federal Circuit discussed in the context of overcoming the presumption more generally was expert testimony *concerning the understanding of persons skilled in the art*. *Id.* at 1369-70. Mr. Garner's testimony does not meet that exception to the Federal Circuit's general mandate that the parties rely on the intrinsic record.

Honeywell also relies on the *Amgen* case for its proposition that "[c]ourts applying the *Festo* regime have allowed and relied upon exactly this type of expert testimony" in assessing the "other reason" criterion. (Hon. Resp. at 2) This is a mischaracterization of *Amgen*. In that case, the court made clear that its inquiry related to the understanding of "those skilled in the art," not patent lawyer experts. *Amgen, Inc. v. Hoechst Marion Roussel*, 287 F. Supp. 2d 126, 156-57 (D. Mass. 2003). The court considered testimony of an expert who was "one skilled in the art," *id.* at 157 n.40, and not from a patent lawyer, like Mr. Garner, who admittedly is *not* skilled in the art.

Moreover, the *Amgen* court made clear that it was not relying on its "other reason" finding, specifically because it recognized that in light of the Federal Circuit's clear intent to "cabin in the ['other reason'] criterion with respect to the use of extrinsic evidence," and its "admonition to rely only on intrinsic evidence whenever possible," the court's "analysis under the 'some other reason' category and its resort to extrinsic evidence is less certain." *Id.* at 159. Accordingly, neither the facts nor the court's conclusions in *Amgen* support Honeywell's repeated, and almost exclusive, reliance on that case in support of its attempt to introduce testimony from its patent lawyer expert.

The other cases Honeywell cites in support of its general proposition that "expert testimony regarding Patent Office procedures has repeatedly been held admissible," are equally unpersuasive. (Hon. Resp. at 13-14) None involved the issue at hand – the admissibility of patent lawyer testimony in connection with a *Festo* analysis, in light of the Federal Circuit's general admonition against extrinsic testimony in that context. Honeywell's cases are also distinguishable for a number of other reasons. For example, the court allowed expert testimony from a former patent examiner in *Liquid Dynamics* because: "As a former patent examiner, his testimony is relevant to the 'reasonable patent examiner' standard as applied to the materiality of undisclosed prior art." *Liquid Dynamics Corp. v. Vaughn Company, Inc.*, No. 01 C 6934, 2004 WL 2260626, at *7 (N.D. Ill. Oct. 1, 2004) (Ex. J to Hon. Br.). By contrast, Mr. Garner's testimony, as a patent lawyer, is not relevant to Festo's "person of skill in the art" standard or whether the APS 3200 literally infringed, as Mr. Garner intends to testify.[2] The rest of the cases on which Honeywell relies – *Eaton*, *Astra* and *Intermatic* – did not even address the admissibility of patent expert testimony and simply do not support the propositions for which Honeywell cites them. For example, the only Delaware case

---

[1] Honeywell's similarly mischaracterizes *Festo's* "other reason" criterion as creating a "broad" exception to estoppel. (Hon. Resp. at 9) The Federal Circuit said just the opposite: "This category, while vague, must be a narrow one ..." *Festo*, 344 F.3d at 1370.

[2] Tellingly, in both the *Liquid Dynamics* and the *Engineering Products* cases that Honeywell cites, there was no expert testimony offered on the *Festo* issue.

618576v1

4

Honeywell cites, *Eaton*, does not even address the preclusion of "expert testimony from a patent attorney." (Hon. Resp. at 13) Rather the court denied a broad motion to preclude *all* evidence of inequitable conduct. *Eaton Corp. v. Parker Hannafin Corp.*, No. Civ. A. 00-751-SLR, 2003 WL 179992, at *3 (D. Del. Jan. 24, 2003) (Ex. L to Hon. Br.).

Honeywell's reliance on three law review articles is even less persuasive. Each of the articles was written *before* the Federal Circuit's *Festo* decision. (Hon. Resp. at 10, 11 n.3)

Finally, as the *Amgen* court anticipated, the Federal Circuit subsequently rejected exactly the theory Honeywell intends Mr. Garner to advance. *See Biagro Western Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296, 1307 (Fed. Cir. 2005) (discussed in HSC's Motion at 16-17). In addition, the jury and this Court already rejected the premise of Mr. Garner's theory – that the APS 3200 literally infringes – and Honeywell's lawyers abandoned that argument. (*Id.*) Honeywell does not even attempt to explain how Mr. Garner's testimony could be relevant in light of the jury's rejection, and Honeywell's abandonment, of the entire premise of his opinion.

## II. Mr. Garner Should Be Precluded From Testifying About What A "Reasonable Patent Attorney" Would Have Believed In 1982 Concerning Whether Honeywell's Amendments Were Narrowing Amendments

Mr. Garner also should be precluded from testifying about Honeywell's second "other reason" – that a "reasonable patent attorney" would have believed in 1982 that Honeywell's amendments were not narrowing amendments, and thus that estoppel would not have applied. First, Mr. Garner did not disclose – and in fact denied – any intent to opine on "another reason" based on a reasonable patent attorney's belief in 1982 that Honeywell's amendment was not a narrowing amendment. The only "other reason" Mr. Garner disclosed in his Report was Honeywell's first "other reason" – that a "reasonable patent attorney" would have believed that the asserted claims literally covered the ASP 3200. (Ex. B to HSC Motion, Garner Report at ¶¶ 52-56) When asked at

his deposition what "other reason" opinions he intended to give at trial, he testified that is the only "other reason" on which he had an opinion.

> Q. In your opinion is the other reason that Honeywell should be able to overcome the presumption of surrender that a reasonable patent attorney would have believed that the asserted claims already literally covered the Sundstrand equivalent?
>
> A. Yes.
>
> Q. Is that the only other reason that you have – that you are opining on as far as why the presumption can be overcome on the other reason factor?
>
> A. I believe it is.

(Ex. C to HSC Motion, Dep. at 195-96) Mr. Garner should not be allowed to give an opinion at trial that he did not properly disclose. Fed. R. Civ. P. 26(a)(2); *Pfizer Inc. v. Ranbaxy Labs., Ltd.*, No. 03-209-JJF, 2005 U.S. Dist. LEXIS 34901 at, *4-6 (D. Del. Dec. 22, 2005) (attached as Ex. D) (excluding undisclosed opinion of expert).

Second, Honeywell's attempt to describe Mr. Garner's proposed testimony as relating to "practices of patent attorneys," or a "reasonable patent attorney's" views on the "rules and procedures of the PTO," does not render it admissible. None of these categories of testimony is appropriate under *Festo*. The only type of extrinsic testimony that *Festo* recognized may be relevant is "testimony from those skilled in the art," and expert testimony concerning "the state of the art and the understanding of a hypothetical person of ordinary skill in the art." *Festo*, 344 F.3d at 1369-70. Honeywell concedes that Mr. Garner is not a person of skill in the art, or an expert qualified to testify about the understanding of persons skilled in the art.

Moreover, no matter how Honeywell characterizes Mr. Garner's testimony, in order to testify about whether a "reasonable patent attorney" would have believed in 1982 that prosecution history estoppel applied to Honeywell's narrowing amendment – as Honeywell intends Mr. Garner to testify (Hon. Resp. at 5, 11; Hon. Trial Br. at 28-29) – Mr. Garner would necessarily have to

provide an opinion about what he thought the estoppel law was in 1982 and how it differs from estoppel law today. Whether Honeywell's amendment was a narrowing amendment and whether estoppel applied are pure legal issues – in fact the exact issues that the Federal Circuit already answered affirmatively in this case. They are not "Patent Office practice" issues. This is exactly the type of patent law expert testimony that this Court has previously recognized is not admissible.

Third, as discussed in the Motion, Mr. Garner's proposed opinion is inconsistent with the law of this case. The Federal Circuit already held that Honeywell's amendment *was* a narrowing amendment. If Mr. Honeywell were allowed to skirt the *Festo* presumption based on the legally erroneous "belief" of its paid patent lawyer expert as to whether estoppel existed, then the Federal Circuit's decision in this case would be effectively overruled and its holding moot. Honeywell did not even attempt to address this point in its brief.

### III.   Honeywell's Reliance On HSC's Retention Of A Patent Expert And Statements Made By The Parties In A Different Case Is Misleading And Unpersuasive

Contrary to Honeywell's contention, HSC's retention of a patent expert to rebut Mr. Garner's testimony does not support Honeywell's argument. (Hon. Resp. at 4, 12, 13) HSC made clear in its motion that *all* patent lawyers should be precluded from testifying at trial, and that it retained Mr. Goolkasian to rebut Mr. Garner's opinions only if Mr. Garner were allowed to testify.

Moreover, Mr. Goolkasian testified in his deposition and stated in his expert report that courts typically do *not* allow the testimony Mr. Garner proposes to give. (Goolkasian Dep. at 15-17, 19, 92-93 (attached as Ex. E) (indicating that the Delaware courts were the least likely to allow any patent lawyer testimony and that he has been precluded from testifying in Delaware more than once due to the Court's general prohibition against patent lawyer testimony); Goolkasian Report at, *e.g.*, ¶¶ 9-10, 26, 31, 38) (attached as Ex. F) In fact, Mr. Goolkasian specifically testified that in the *Festo* context, patent lawyer testimony is not appropriate:

> Q. Have you ever offered expert testimony regarding a party's ability to rebut the presumption of prosecution history estoppel?
>
> A. No, I never have. I don't think that's proper testimony for a patent law expert.

(Goolkasian Dep. at 19)

Similarly, Honeywell's reliance on the parties' debate about the admissibility of patent lawyer testimony in a *different case* does not support its argument. (Hon. Resp. at 2) That case involved different issues. It did not involve the *Festo* issue, for which the Federal Circuit has given clear guidance that the analysis should be limited to the intrinsic record, with the exception of extrinsic evidence relating to the understanding of persons skilled in the art (which Honeywell admittedly does not offer through Mr. Garner or Mr. Konneker). The "only purpose" for which HSC offered expert testimony from a patent lawyer in the July 2005 trial was to show that it may take as long as one year to file a patent application in the patent office. (6/01/05 Pretrial Conference Tr. in 03-1153, at 25, Ex. B to Hon. Br.) Even then, as Honeywell concedes, the Court did not rule that such limited testimony was admissible. Rather, the Court made clear that "if he is being asked to say anything more than that, I think I am going to have some difficulty with that," and it reserved judgment concerning whether it would allow even that limited testimony. (*Id.* at 28, 45) In fact, after receiving the Court's guidance, Honeywell's counsel conceded that "Patent Office procedures is out. That is not going to be opined on by any expert." (*Id.* at 46) Yet, such "Patent Office procedures" testimony is exactly what Honeywell intends Mr. Garner to give. (Hon, Resp. at 1-2, 4) In the end, no patent lawyer testimony was presented in the July 2005 trial. Thus, the July 2005 trial involving different issues is irrelevant to whether Honeywell should be allowed to offer patent lawyer testimony on the *Festo* issues in this case.

## IV. Mr. Konneker's Testimony Should Be Precluded

Finally, contrary to Honeywell's conclusory and unsupported statement, Mr. Konneker's testimony is not "plainly admissible." (Hon. Resp. at 14). In fact, Honeywell provides no analysis and cites no case that would support the admissibility of testimony from a patent lawyer not skilled in the art, like Mr. Konneker, in the *Festo* context. That is because *Festo* plainly does not allow such patent lawyer testimony on any criterion. While *Festo* presents an objective inquiry, Mr. Konneker's beliefs and intentions – especially expressed 25 years after the fact – are subjective and were not part of the public record. Mr. Konneker's proposed testimony "regarding his prosecution of the patents-in-suit" (Hon. Resp. at 14) is exactly the kind of testimony that Honeywell previously conceded should not be allowed in the *Festo* context. As noted above, Honeywell agreed earlier in this remand proceeding that the parties should *not* be allowed to present evidence "from a patent lawyer, which says 'I am a patent prosecutor and here is the way that I would, if I were Honeywell, have prosecuted this patent.'" (Ex. A, 8/29/05 Hearing Tr. at 7)

Honeywell's patent lawyer expert explained exactly why Mr. Konneker's extrinsic testimony should not be allowed in the *Festo* context: to allow Honeywell to present testimony "from the prosecuting attorney in the case and say I had no intention to do this or it was a mistake or something like that," defeats the public notice function of the prosecution record.[3] (Ex. C to HSC's Motion, Garner Dep. at 134-35; *Festo*, 344 F.3d at 1369-70) In light of *Festo*, as reinforced by Honeywell's own admissions, Mr. Konneker's testimony is plainly not admissible.

---

[3] Honeywell also suggests that Mr. Konneker should be allowed to testify because HSC noticed his deposition, but then cancelled it. (Hon. Resp. at 14) HSC cancelled Mr. Konneker's deposition for exactly the reason that Honeywell now tries to use it – to avoid a debate about whether putting such testimony on record would be viewed as a concession that such testimony is permissible. HSC moves to preclude Mr. Konneker's testimony because it is not permissible, by deposition or at trial. Should the Court disagree and permit Mr. Konneker to testify, HSC requests the right to take his deposition prior to trial.

## Conclusion

For the foregoing reasons and the reasons set forth in the Motion, Honeywell should be precluded from presenting testimony from its patent lawyers, Mr. Garner and Mr. Konneker.

February 24, 2006                     THE BAYARD FIRM

/s/ Richard D. Kirk

222 Delaware Avenue
Suite 900
P.O. Box 25130
Wilmington, DE 19899
(302) 655-5000
rkirk@bayardfirm.com
*Attorney for Defendant*
*Hamilton Sundstrand Corp.*

OF COUNSEL:
Mark L. Levine
Chris Lind
Brian C. Swanson
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard Street, Suite 300
Chicago, IL 60610
(312) 494-4400

and

David H. Herrington
CLARY, GOTTLIEB, STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
(212) 225-2000

## CERTFICATE OF SERVICE

I hereby certify that on February 24, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to Thomas C. Grimm and Julia Heaney.

I also certify that on February 24, 2006, I caused to be served true and correct copies of the foregoing document on the following in the manner indicated below:

BY HAND DELIVERY

Thomas C. Grimm
Julia Heaney
MORRIS, NICHOLS, ARSHT, & TUNNELL
1201 N. Market Street
Wilmington, DE 19801

BY OVERNIGHT DELIVERY

Jonathan F. Putnam
Lee Ann Stevenson
Vickie Reznik
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022

Robert Krupka
KIRKLAND & ELLIS LLP
777 South Figueroa Street
Los Angeles, CA 90017

/s/ Richard D. Kirk (rk0922)

618491v1