IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HONEYWELL INTERNATIONAL, INC., )
AND HONEYWELL INTELLECTUAL )
PROPERTIES, INC., )
)
       Plaintiffs, )
)   Civil Action No. 99-309 (GMS)
    v. )
)
HAMILTON SUNSTRAND CORP., )
)
       Defendant. )

---

Thomas C. Grimm, Esquire, and Leslie A. Polizoti, Esquire, of MORRIS, NICHOLS, ARSHT & TUNNELL, Wilmington, Delaware, and Robert G. Krupka, Jonathan F. Putnam, Esquire, and Lee Ann Stevenson, Esquire, of KIRKLAND & ELLIS LLP, New York, New York. Attorneys for Plaintiffs.

Richard D. Kirk, Esquire, of THE BAYARD FIRM, Wilmington, Delaware, Mark L. Levine, Esquire, Chris J. Lind, Esquire, and Brian C. Swanson, Esquire, of BARTLIT, BECK, HERMAN, PALENCHAR & SCOTT, Chicago, Illinois, and David H. Herrington, Esquire, of CLEARY, GOTTLIEB, STEEN & HAMILTON LLP. Attorneys for Defendant.

---

**OPINION**

March 22, 2006
Wilmington, Delaware

**SLEET, District Judge**

**I. INTRODUCTION**

The above-captioned action is a patent-infringement suit with a long procedural history, including a jury trial, an appeal and remand, a denied writ of certiorari, and now, a bench trial. With any luck, the end is near. Presently before the court is Defendant Hamilton Sunstrand Corp.'s ("HSC") motion *in limine* to preclude Plaintiffs Honeywell International, Inc. and Honeywell Intellectual Properties, Inc. (collectively "Honeywell") from introducing the testimony of two patent lawyers at the upcoming bench trial. (D.I. 389.) For the following reasons, the court will grant HSC's motion in part.

**II. BACKGROUND**

This case was originally filed on May 17, 1999. Before trial, HSC moved for summary judgment on the issue of prosecution history estoppel. The essence of HSC's argument was that during prosecution of the patents in suit, by converting certain dependent claims into independent claims such that the new independent claims had a so-called "inlet guide vane limitation," Honeywell surrendered equivalents to that limitation. The court disagreed and denied HSC's motion. After a ten-day trial in February of 2001, a jury found that the patents in suit were valid and infringed, but only under the doctrine of equivalents. HSC subsequently appealed the denial of its motion for summary judgment,[1] which appears to have been money well spent. After hearing the case *en banc*, the Federal Circuit held that Honeywell's amendments created "a presumptive surrender of all equivalents to the inlet guide vane limitation." Slip Op. at 18. Thus, the case was remanded to this court for a determination of whether Honeywell can rebut the presumptive

---

[1] Notably, however, Honeywell did not challenge the jury's finding of no literal infringement.

1

surrender.

## III. DISCUSSION

In rendering this determination, the court must first look to the Supreme Court's opinion in *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002) ("*Festo II*"). In that case, the Court began by explaining that because "the nature of language makes it impossible to capture the essence of a thing," "a patent is not limited to its literal terms but instead embraces all equivalents to the claims described" through the doctrine of equivalents. *Id.* at 731-32. The inherent uncertainty of this doctrine is somewhat balanced, the Court continued, by prosecution history estoppel:

> Prosecution history estoppel ensures that the doctrine of equivalents remains tied to its underlying purpose. Where the original application once embraced the purported equivalent but the patentee narrowed his claims to obtain the patent or to protect its validity, the patentee cannot assert that he lacked the words to describe the subject matter in question. The doctrine of equivalents is premised on language's inability to capture the essence of innovation, but a prior application describing the precise element at issue undercuts that premise. In that instance the prosecution history has established that the inventor turned his attention to the subject matter in question, knew the words for both the broader and narrower claim, and affirmatively chose the latter.

*Id.* at 734-35. The Court then proceeded to address "the kinds of amendments that may give rise to estoppel." *Id.* The petitioner in *Festo II* argued that certain amendments, such as those concerning "the form of the application and not the subject matter of the invention," should not give rise to an estoppel because "the applicant has no intention of surrendering subject matter." *Id.* at 736. That argument was rejected out of hand because it "conflates the patentee's reason for making the amendment with the impact the amendment has on the subject matter." *Id.* Instead, the Court held, "[a] patentee who narrows a claim as a condition for obtaining a patent disavows his claim to the

2

broader subject matter, whether the amendment was made to avoid the prior art or to comply with [the form requirements of] § 112," and therefore, "estoppel may apply." *Id.* at 737.

The next question addressed by the Court was whether "the estoppel bar[s] the inventor from asserting infringement against any equivalent to the narrowed element," or whether "some equivalents still infringe." *Id.* The Federal Circuit, in *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.* ("*Festo I*"), had answered that question by holding that "prosecution history estoppel acts as a complete bar to the application of the doctrine of equivalents when an amendment has narrowed the scope of a claim for a reason related to patentability." 234 F.3d 558, 574 (Fed. Cir. 2000). The Supreme Court disagreed, pointing out that it has "consistently applied the doctrine [of prosecution history estoppel] in a flexible way, not a rigid one." *Festo II*, 535 U.S. at 738. The Court further explained "that courts must be cautious before adopting changes that disrupt the settled expectations of the inventing community." *Id.* at 739. And, in the context of prosecution history estoppel, the Court determined that there is simply "no justification for applying a new and more robust estoppel to those who relied on prior doctrine." *Id.* In keeping with that prior doctrine, the Court reiterated that "the patentee should bear the burden of showing that the amendment does not surrender the equivalent in question." *Id.* at 740. Therefore, the Court held, "[w]hen the patentee has chosen to narrow a claim, courts may presume the amended text was composed with awareness of this rule and that the territory surrendered is not an equivalent of the territory claimed." *Id.* at 741.

In order to overcome the presumption of surrender, the "patentee must show that at the time of the amendment one skilled in the art could not reasonably be expected to have drafted a claim that would have literally encompassed the alleged equivalent." *Id.* at 741. The patentee can make that showing by demonstrating that (1) the equivalent was "unforeseeable at the time of the application,"

(2) "the rationale underlying the amendment . . . bear[s] no more than a tangential relation to the equivalent in question," or (3) there is "some other reason suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question." *Id.* at 740-41. Because only the third rebuttal criterion, *i.e.*, "some other reason," is at issue in HSC's motion, the court will not address the first and second criteria. Although the *Festo II* Court did not breathe much life into the phrase "some other reason," the Federal Circuit's subsequent opinion on remand in *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359 (Fed. Cir. 2003) ("*Festo III*"), provides some general guidance. As a threshold matter, "rebuttal of the presumption of surrender is a question of law to be determined by the court, not a jury." *Id.* at 1367. Specific to the third criteria, the court explained:

> This category, while vague, must be a narrow one; it is available in order not to totally foreclose a patentee from relying on reasons, other than unforeseeability and tangentialness, to show that it did not surrender the alleged equivalent. Thus, the third criterion may be satisfied when there was some reason, such as the shortcomings of language, why the patentee was prevented from describing the alleged equivalent when it narrowed the claim. When at all possible, determination of the third rebuttal criterion should also be limited to the prosecution history record.

*Id.* at 1370. Importantly, this third criterion does not apply when the patentee *could have* described the equivalent, "but chose not to do so." *Id.* at 1372. Beyond those generalities, the Federal Circuit refrained from comment, opting instead to leave "discussion of the relevant factors encompassed by each of the rebuttal criteria . . . to development on a case-by-case basis." *Id.* at 1368.

Unfortunately, case-by-case development of the "some other reason" criterion has been slower than development of the other two criteria. Nevertheless, a few insightful nuggets are found scattered about the Federal Circuit's case law. For example, in a case decided after *Festo II* but before *Festo III*, the court held, where an equivalent is present "in the prior art cited against the

patentee during prosecution, there can be no other reason the patentee could not have described the substitute in question." *Pioneer Magnetics, Inc. v. Micro Linear Corp.*, 330 F.3d 1352, 1357 (Fed. Cir. 2003) (cited with approval by *Festo III*, 344 F.3d at 1370). In another case, *Talbert Fuel Sys. Patents Co. v. Unocal Corp.*, the Federal Circuit further delineated the contours of the third criterion by rejecting a patentee's argument that although an alleged equivalent had properties outside a numerical range disclosed in the patent's amended claims, the disclosed range was "unnecessarily exact." 347 F.3d 1355, 1360 (Fed. Cir. 2003). The court explained that the "precision or generality with which [numerical ranges] are stated is not a matter of the 'imprecision of language,' . . . but a measurable property of matter in a well-studied field of engineering." *Id.* More recently, in *Bigaro Western Sales, Inc. v. Regents of the University of California*, the Federal Circuit rejected the argument that the patentee "understood the claim language to refer to [the equivalent at issue]" as "merely an attempt to reargue the claim construction issue." 423 F.3d 1296, 1307 (Fed. Cir. 2005).

From these cases, three principles are readily discernable. First, from *Pioneer Magnetics*, if the equivalent was describable in the prior art cited during prosecution, then it was describable in the claims. And, if it was describable in the claims, then the presumption of surrender is not rebutted by "some other reason." *See also Medtronic Navigation, Inc. v. Brainlab Medizinische Computersystems GmbH*, 2006 U.S. Dist. LEXIS 10102, No. 98-01072, at *22 (D. Colo. Feb. 24, 2006) (holding that the presumption is not rebutted under the third criterion where the alleged equivalent, although known in the prior art, was not commercially available). Second, from *Festo III* and *Talbert Fuel*, the patentee cannot rebut the presumption under the third criterion by pointing to "shortcomings" and "imprecision" of language that arise merely from the language *chosen*. Rather, the shortcomings and imprecision must arise from the language *available*. Third, from

5

*Bigaro*, a patentee's belief that the amended claim would cover the equivalent does not establish "some other reason."[2]

With those principles in mind, the court now turns to the dispute at hand. At trial, Honeywell proposes to elicit the expert testimony of Melvin Garner, president of the American Intellectual Property Law Association, to rebut the presumption of surrender by attesting to his belief that, at the time of the amendment, a reasonable patent attorney:

(1) "[W]ould not have believed that he had surrendered the Sunstrand equivalent during prosecution;"

(2) "[W]ould not have felt the need, and indeed would not have felt it prudent, to have drafted additional claims to describe the additional equivalents of inlet guide vane position use;" and

(3) "[W]ould have believed, had he known of the later-developed Sunstrand APS 3200 surge control system when the amendments were made, that the claim language literally covered the infringing system."

(D.I. 392 at 11-12.) At the outset, the court notes that Garner's competence to testify that "*one skilled in the art* could not reasonably be expected to have drafted a claim that would have literally encompassed the alleged equivalent," 535 U.S. at 741 (emphasis added), is at best dubious because he is not, in fact, "one skilled in the art." Moreover, to the extent Honeywell aims to establish a

---

[2]The court notes that this third principle is directly contrary to the holding in *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 287 F. Supp. 2d 126 (D. Mass. Oct. 30, 2003). However, to the extent *Amgen* is inconsistent with *Bigaro*, this court must follow the teachings of the latter. Moreover, this court respectfully disagrees with the Massachusetts district court mainly because the *Amgen* opinion impermissibly focuses on the "reasonable expectations of the patentee." 287 F. Supp. 2d at 156. It is true that the Supreme Court mentioned the expectations of patentees in *Festo II*, but it did so as an expression of the Court's desire to avoid the "fundamental alteration" of the rules that would result from the inflexible-bar rule created by the Federal Circuit in *Festo I*. On the other hand, the Court clearly stated that prosecution history estoppel focuses on "the impact the amendment has on the subject matter," rather than the patentee's intent in making the amendment. 535 U.S. at 736. Thus, the expectations of the patentee, including the patentee's perhaps-reasonable belief that the amended claim covers the equivalent, is not relevant to rebuttal of the presumption.

change in the law between the time of the amendment and the present, Garner's testimony in that regard is plainly improper because the Supreme Court's decision in *Festo II* was geared toward avoiding "changes that disrupt the settled expectations of the inventing community." *Id.* at 739. Thus, although the stir created by the rule set forth in *Festo II* may belie the Court's implicit assertion that it was merely restating the *status quo*, this court is unable to ignore its duty to "presume the amended text was composed with awareness of this rule." *Id.* at 741.

Even if Garner's testimony were unimpeded by those two hurdles, it still cannot overcome the principles found in the Federal Circuit's decisions subsequent to *Festo II*. The first point of proposed testimony -- at the time of the amendment, a reasonable patent attorney would not have believed that he had surrendered the equivalent during prosecution – is directly contrary to the holding of *Bigaro*. Indeed, just as in that case, this testimony appears to be no more than an attempt by Honeywell to reargue claim construction. Garner's second point, that a reasonable patent attorney would have thought it unnecessary and imprudent to draft claims to describe the equivalents, in addition to being contrary to the holding of *Bigaro*, is improper under *Festo III* and *Talbert Fuel*. In both of those cases, the Federal Circuit held that the presumption of surrender could not be rebutted if the patentee made a *choice* not to draft the claims to cover the equivalent. *Festo III*, 344 F.3d at 1372 (patentee "could have described an aluminum sleeve but chose not to do so"); *Talbert Fuel*, 347 F.3d at (where prior art rejection included "an upper boiling limit" in the range of 390 degrees Fahrenheit to 420 degrees Fahrenheit, patentee chose to amend the claims to include an upper boiling limit of only 345 degrees Fahrenheit, thereby leaving a 45-degree gap). Finally, regarding Garner's third point -- a reasonable patent attorney would have believed, had he known of the equivalent when the amendments were made, that the claim language literally covered the

infringing system – is again contrary to *Bigaro*, and it is further contrary to *Pioneer Magnetics*. Supposing, as Honeywell does, that the reasonable patent attorney knew about the equivalent, but failed to describe it in the amended claims (regardless of his belief to the contrary, *Bigaro*, 423 F.3d at 1307), his failure falls squarely within the principle enunciated in *Pioneer Magnetics*. In other words, because the equivalent was (hypothetically) known in the prior art and was presumably describable in the amended claims, *see Medtronic Navigation*, 2006 U.S. Dist. LEXIS 10102, at *22, the presumption is not rebutted by "some other reason." Therefore, none of Garner's testimony is proper under the third criterion.

Honeywell also proposes to offer the testimony of Richard Konneker, who allegedly had "responsibility" for prosecuting the patents-in-suit. (D.I. 392 at 14.) If called at trial, "he would testify as a factual witness regarding his prosecution of the patents-in-suit, including the amendments at issue." (Id.) Assuming that the "drafter is one skilled in the art," *Amgen*, 287 F. Supp. 2d at 157 n.40, the court finds no reason under *Festo* and its progeny to preclude Konneker's testimony. If he has first-hand knowledge as to why he "could not reasonably be expected to have drafted a claim that would have literally encompassed the . . . equivalent," then his testimony appears relevant and admissible. Nevertheless, the court will only consider testimony from Konneker as to why he *could not* (as opposed to *would not*) have drafted the claims to encompass the equivalent.

### IV.   CONCLUSION

For the aforementioned reasons, HSC's motion will be granted in part and denied in part.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HONEYWELL INTERNATIONAL, INC., )
AND HONEYWELL INTELLECTUAL )
PROPERTIES, INC., )
                                                                     )
        Plaintiffs, )
                                                                    )    Civil Action No. 99-309 (GMS)
v. )
                                                                    )
HAMILTON SUNSTRAND CORP., )
                                                                    )
        Defendant. )

**ORDER**

IT IS HEREBY ORDERED THAT:

The Defendant's motion *in limine* (D.I. 389) be GRANTED in part and DENIED in part.

Dated: March 22, 2006

                                                   UNITED STATES DISTRICT JUDGE



FILED
MAR 2 2 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE