# UNREPORTED CASES

Westlaw.

Not Reported in F.Supp.2d                                                                                          Page 1
Not Reported in F.Supp.2d, 2005 WL 2008020 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

**C**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
BIO-RAD LABORATORIES, INC., Plaintiff,
v.
APPLERA CORPORATION, et al., Defendants.
**No. C 02-05946JW.**

Aug. 12, 2005.

David Leon Bilsker, Howrey, Simon, Arnold &
White, San Francisco, CA, Bobby A. Ghajar,
Howrey, Simon, Arnald & White, Los Angeles, CA,
Tracy Jolles Holland, Round Rock, TX, Wallace W.
Wu, Howrey, Simon, Arnold & White LLP, Menlo
Park, CA, Thomas C. Mavrakakis, Winston &
Strawn, San Francisco, CA, for Plaintiff.
Matthew D. Powers, Vernon M. Winters, Eugene Y.
Mar, Jeffrey G. Homrig, Pat W. Costello, Weil,
Gotshal & Manges LLP, Redwood Shores, CA, Alice
Garber, Kirkland & Ellis LLP, San Francisco, CA,
for Defendants.

ORDER GRANTING PARTIAL SUMMARY
JUDGMENT
WARE, J.

*I. INTRODUCTION*

*1 This is a patent dispute. Plaintiff, Bio-Rad
Laboratories, Inc. ("Bio-Rad"), owns United States
Patent No. 5,089,111 (" '111 patent") and asserts that
certain products made by Defendant, Applera
Corporation ("Applera"), infringe one or more claims
of the '111 patent.

The motion presently before the Court is for partial
summary judgment. Applera requests partial
summary judgment that the chemical,
polyacrylamide, is not an equivalent to "a
substantially linear polymer selected from the group
consisting of methyl cellulose, hydroxypropyl methyl
cellulose, hydroxyethyl methyl cellulose, and
hydroxybutyl methyl cellulose." '111 patent, 12:22-
25. Applera argues that Bio-Rad is estopped from
asserting infringement by the doctrine of equivalents
because Bio-Rad made a narrowing amendment to its
claims in response to a rejection based on
patentability. Bio-Rad disputes Applera's Motion and

maintains that its amendment does not preclude it
from asserting infringement by the doctrine of
equivalents.

The Court held oral argument on November 29,
2004. The parties, with this Court's approval,
stipulated to multiple stays proceedings, including
staying a decision on Applera's Motion for Partial
Summary Judgment. On March 2, 2005, the Court
conducted a case management conference. The
parties then informed the Court that they were no
longer in settlement negotiations, and thus, requested
the Court to proceed with its decision on the pending
motion. Based on all of the submissions and
arguments to date, the Court GRANTS Applera's
Motion for Partial Summary Judgement.

*II. BACKGROUND*

Bio-Rad filed U.S. Patent Application No.
07/303,174 (" '174 application") with the United
States Patent and Trademark Office (the "PTO") on
January 27, 1989. The '174 application initially
contained 27 claims and was entitled,
"Electrophoretic Sieving in Gel-Free Media with
Dissolved Polymers." Initially filed claims 1 and 27
were the only independent claims. Of these 27
initially filed claims, initially filed claim 1 and
initially filed claim 27 are relevant to this discussion.

Initially filed claim 1 of the '174 application read as
follows:
1. A method of separating a mixture of sample ions
of varying molecular weights in a sample into
components, said method comprising
electrophoretically passing said sample through a
separation column containing a gel-free aqueous
solution of a substantially linear polymer having a
molecular weight of about 10,000 to about 2,000,000,
said molecular weight being within a range of about
0.1 to about 200 times the average molecular weight
of said macromolecular species in said mixture, the
concentration of said polymer in said solution being
sufficient to retard the flow of said species through
said separation column to degrees which vary with
the molecular weights of said species.

Garber Decl., Exh. 1, ABBR065864. Initially filed
claim 27 of the '174 application read as follows:27. A
method of separating a mixture of polynucleotide

Not Reported in F.Supp.2d                                                                                     Page 2
Not Reported in F.Supp.2d, 2005 WL 2008020 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

chains in a sample, said polynucleotide chains each containing from about 10 to 10,000 base pairs, said method comprising electrophoretically passing said sample through a capillary column containing a gel-free aqueous solution of a substantially linear polymer selected from the group consisting of methyl cellulose, hydroxypropyl methyl cellulose, hydroxyethyl methyl cellulose, and hydroxybutyl methyl cellulose, said polymer characterized in terms of the viscosity of a 2% aqueous solution thereof being within a range of about 1,000 centipoise to about 10,000 centipoise at 25 $^N$C, and the concentration of said polymer in said solution is from about 0.1% to about 0.5% by weight.

*2 *Id.* at ABBR065868.

The PTO examiner rejected initially filed claims 1-13 of the '174 application as obvious under 35 U.S.C. § 103 in light of the Tietz, *et al., Electrophoresis in Uncrosslinked Polyacrylamide Molecular Sieving and its Potential Applications,* Electrophoresis, 7 1986, 217-220 ("Tietz") and Bode, *SDS-Polyethyleneglycol Electrophoresis: A Possible Alternative to SDSPolyacrylamide Ge Electrophoresis,* FEBS Lettes, 65(1) (1976) at 56-58 ("Bode"). The examiner stated that because Tietz "successfully performed molecular sieving experiments using non-crosslinked linear polyacrylamide" claims 1-13 would be obvious to the person having ordinary skill in the art. *Id.* at ABBR065889. In the same office action, the examiner allowed initially filed claim 27 without comment.

In response to the office action, Bio-Rad amended initially filed claim 1 to read:
1. A method of separating a mixture of sample ions of varying molecular weights in a sample into components, said method comprising electrophoretically passing said sample through a separation column containing a gel-free aqueous solution of a substantially linear water-soluble cellulose derivative polymer having a molecular weight of about 10,000 to about 2,000,000, said molecular weight being within a range of about 0.1 to about 200 times the average molecular weight of said sample ions [macromolecular species] in said mixture, the concentration of said polymer in said solution being sufficient to retard the flow of said species through said separation column to degrees which vary with the molecular weights of said species.

*Id.* at ABBR065894-95 (double underlined text

indicates addition; bracketed text indicates deletion) (amendment indicia in original). Initially filed claim 27 was unchanged. After Bio-Rad's amendment to initially filed claim 1, the PTO examiner issued a Notice of Allowability.

Following the Notice of Allowability Bio-Rad abandoned the '174 application in favor of a Continuation-in-Part application ("CIP"). Notably, the CIP retained the title of the '174 application, an amended version of initially filed claim 1, and the original version of initially filed claim 27. The CIP issued as the '111 patent on February 18, 1992.

Amended claim 1 of the abandoned '174 application was again altered in the newly filed CIP. Claim 1 of the CIP read:
1. A method of separating a mixture of sample ions of varying molecular weights in a sample into components, said method comprising electrophoretically passing said sample through a separation column containing a gel-free aqueous solution of a water-soluble polymer selected from the group consisting of cellulose derivatives, saccharide-based and substituted saccharide-based polymers, polysilanes, polyvinylalcohol and polyvinylpyrrolidone, said polymer having a molecular weight of about 10,000 to about 2,000,000, said molecular weight being within a range of about 0.1 to about 200 times the average molecular weight of said sample ions in said mixture, the concentration of said polymer in said solution being sufficient to retard the flow of said species through said separation column to degrees which vary with the molecular weights of said species.

*3 *Id.* at ABBR065950. Initially filed claim 27 from the '174 application was retained, unchanged, as claim 16 of the CIP. The PTO issued a Notice of Allowability for the CIP without any rejections.

However, the PTO included a Statement of Reasons with its Notice of Allowability. The Statement of Reasons recognized that no prior art taught or fairly suggested practicing the method of separating a mixture of sample ions described in claim 1 or claim 16 of the CIP application. Garber Decl., Exh. 3, ABBR065974-75. The examiner recited claims 1 and 16 of the CIP application and underlined the (1) "electrophoretically passing" and (2) "said molecular weight being within a range of about 0.1 to about 200 times the average molecular weight of said sample ions in said mixture" language of claim 1. *Id.* The examiner also underlined the (1) "the group consisting of methyl cellulose, hydroxypropyl

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2008020 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

methyl, hydroxyethel methyl cellulose, and
hydroxybutyl methyl cellulose," (2) "the viscosity of
a 2% aqueous solution thereof being within a range
of about 1,000 centipoise to about 10,000 centipoise
at 25 $^N$C," and (3) "the concentration of said polymer
in said solution is from about 0.1% to about 0.5% by
weight" language of claim 16. *Id.* Bio-Rad made no
comment on the examiner's Statement of Reasons and
the '111 patent issued from the CIP application.

Bio-Rad filed the present lawsuit against Applera on
December 26, 2002. Applera manufactures various
performance optimized polymers ("POP") that are
used for molecular sieving. Applera's POP products
contain polydimethylacrylamide ("PDMA") and
combinations of PDMA and polyacrylamide. Bio-
Rad claims that the polyacrylamide and PDMA in
Applera's POP products represent equivalents to
claim 16 of the '111 patent. Thus, according to Bio-
Rad, Applera's POP products infringe claim 16 of the
'111 patent.

Applera counters that prosecution history estoppel
precludes Bio-Rad from asserting the doctrine of
equivalents against Applera's polyacrylamide-
containing POP products. Applera asserts that Bio-
Rad's amendment to initially filed claim 1 in the '174
application was to overcome a rejection related to
patentability. Applera notes that initially filed claim
27 contained the same objectionable limitation as
initially filed claim 1, that is, "a gel-free aqueous
solution of a substantially linear polymer." Applera
argues, however, that the PTO allowed initially filed
claim 27 without amendment because initially filed
claim 27 was limited on its face to a discrete group of
chemicals not including polyacrylamide. Thus,
Applera asks the Court to find that Bio-Rad's
amendment to initially filed claim 1 should also
preclude the assertion of infringement against
Applera's polyacrylamide-containing POP products
by doctrine of equivalents as to initially filed claim
27, now claim 16 of the '111 patent.

### III. STANDARDS

Summary judgment is proper "if the pleadings,
depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if
any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to
judgment as a matter of law." Fed.R.Civ.P. 56(c).
The non-moving party "must set forth specific facts
showing that there is a genuine issue for trial."
Fed.R.Civ.P. 56(e). To preclude the entry of

summary judgment, the non-moving party must bring
forth material facts, i.e., "facts that might affect the
outcome of the suit under the governing law ...
Factual disputes that are irrelevant or unnecessary
will not be counted." *Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d
202 (1986).*

*4 The construction of patent claims is a question of
law for the Court. See *Markman v. Westview
Instruments, Inc., 517 U.S. 370, 384, 116 S.Ct. 1384,
134 L.Ed.2d 577 (1996).* Likewise, the question of
whether prosecution history estoppel applies is a
matter of law for the Court to decide. *Glaxo
Wellcome, Inc. v. Impax Laboratories, Inc., 356 F.3d
1348, 1351 (Fed.Cir.2004).* As such, a question of
prosecution history estoppel is properly decided on a
motion for summary judgment. *Id.* The moving party
"is entitled to summary judgment [on prosecution
history estoppel] only if the facts and inferences,
when viewed in the light most favorable to [the non-
moving party], would not persuade a reasonable jury
to return a verdict for ... the nonmoving party." *Id.*
(citing *Anderson, 477 U.S. at 255).*

"According to the Supreme Court in *Festo,* 'a
narrowing amendment made to satisfy any
requirement of the Patent Act may give rise to an
estoppel." ' *Glaxo, 356 F.3d at 1351-52* (quoting
*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki
Co., 535 U.S. 722, 736, 122 S.Ct. 1831, 152 L.Ed.2d
944 (2002)* (*Festo VIII* )). The estoppel is
presumptive and may be rebutted if the patentee can
show "[1] that the alleged equivalent could not
reasonably have been described at the time the
amendment was made, or [2] that the alleged
equivalent was tangential to the purpose of the
amendment, or [3] that the equivalent was not
foreseeable (and thus not claimable) at the time of the
amendment." *Glaxo, 356 F.3d at 1532* (citing *Festo
VIII, 535 U.S. at 740-41).* An equivalent is
foreseeable if the patentee can "show that at the time
of the amendment one skilled in the art could not
reasonably have been expected to have drafted a
claim that would have literally encompassed the
alleged equivalent." *Festo VIII, 535 U.S. at 733.*

An amendment to one claim may "infect" another
claim with estoppel. *Glaxo, 356 F.3d at 1356.* The
Federal Circuit Court of Appeals ("FCCA") has
recognized "that subject matter surrendered via claim
amendments during prosecution is also relinquished
for other claims containing the same limitation." *Id.*
The "rule [ensures] consistent interpretation of the
same claim terms in the same patent." *Id.*

Not Reported in F.Supp.2d                                                                    Page 4
Not Reported in F.Supp.2d, 2005 WL 2008020 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.2d)**

*IV. DISCUSSION*

Applera argues that Bio-Rad's amendment to the '174
application in response to the PTO's rejection of
initially filed claims 1-13 triggers prosecution history
estoppel as to claim 16 of the '111 patent. Bio-Rad
counters that prosecution history estoppel should not
apply to claim 16 of the '111 patent for several
reasons. First, Bio-Rad argues that it overcomes any
presumptive estoppel because the use of
polyacrylamide would have been unforeseeable at the
time of the amendment. Second, Bio-Rad argues that
claim 16 of the '111 patent does not contain the same
limitation as initially filed claim 1 and thus should
not be infected by any estoppel applied to initially
filed claim 1. Finally, Bio-Rad argues that amending
initially filed claim 1, without more, does not link
claim 16 of the '111 patent to initially filed claim 1
such that claim 16 should be subject to prosecution
history estoppel.

*A. Presumptive Prosecution History Estoppel*

**\*5** Bio-Rad amended the '174 application in response
to the PTO examiner's obviousness rejection.
Obviousness, under 35 U.S.C. § 103, is a rejection
based on patentability under the Patent Act. *See Festo
VIII,* 535 U.S. at 736. Bio-Rad's amendment to
initially filed claim 1 changed the limitation "gel-free
aqueous solution of a substantially linear polymer" to
"gel-free aqueous solution of a substantially linear
*water-soluble cellulose derivative* polymer." In both
*Warner-Jenkinson* and *Festo VIII* the Supreme Court
made "clear that a narrowing amendment may occur
when either (1) a preexisting claim limitation is
narrowed by amendment or (2) a new claim
limitation is added by amendment." *Honeywell
Intern. Inc. v. Hamilton Sundstrand Corp.,* 370 F.3d
1131, 1140 (Fed.Cir.2004)(citing *Warner-Jenkinson
Co. v. Hilton Davis Chemical Co.,* 520 U.S. 17, 30,
117 S.Ct. 1040, 137 L.Ed.2d 146 (1997), and *Festo
VIII,* 535 U.S. at 728). The addition of "water-soluble
cellulose derivative" narrowed initially filed claim 1.
Thus, Bio-Rad's amendment of initially filed claim 1
was "a narrowing amendment made to satisfy [the
non-obviousness] requirement of the Patent Act [and]
may give rise to an estoppel." *Id.*

> FN1. Applera contends that the examiner
> rejected initially filed claim 1 and not
> initially filed claim 27 because claim 27 was

limited to the members of its Markush
group, none of which are polyacrylamide.
Whereas initially filed claim 1 was limited
only by a general description of the
attributes of the claimed "substantially linear
polymer." Applera cites the examiner's
Statement of Reasons that issued with the
Notice of Allowability for support of its
position. Applera notes that the examiner
drew particular attention to the Markush
group in initially filed claim 27, now claim
16 and stated that even unamended, the
claim avoided prior art references. Applera
argues that the examiner's statements imply
that the absence of polyacrylamide in the
Markush group was the reason it avoided the
prior art. The Court notes that initially filed
claim 27 appears, on its face, more specific
than initially filed claim 1.

Before determining whether Bio-Rad's amendment to
initially filed claim 1 infects claim 16 of the '111
patent with prosecution history estoppel, the Court
must determine whether prosecution history estoppel
applies to initially filed claim 1 and whether Bio-Rad
can overcome the presumption.

The effect of finding prosecution history estoppel is
that the patentee presumptively surrenders his or her
right to use the doctrine of equivalents to recapture
"subject matter conceded during prosecution."
*Honeywell,* 370 F.3d at 1141; *Glaxo,* 356 F.3d at
1351-52. Here, the PTO examiner rejected initially
filed claim 1 because of prior art that "successfully
performed molecular sieving experiments using non-
crosslinked linear polyacrylamide." Garber Decl.,
Exh. 1, ABBR065889. In response, Bio-Rad gave up
the more general limitation "gel-free aqueous
solution of a substantially linear polymer," which
includes polyacrylamide, for the more restrictive
limitation "gel-free aqueous solution of a
substantially linear water soluble cellulose derivative
polymer," that does not include polyacrylamide.
Thus, unless Bio-Rad can rebut the presumption, it is
estopped from asserting that Applera's POP products
infringe claim 1 of the '111 patent by way of the
doctrine of equivalents.

> FN2. Indeed, Bio-Rad does not assert that
> claim 1 of the '111 patent is infringed by
> Applera's polyacrylamide-containing POP
> products.

Bio-Rad argues that it overcomes any presumption of

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2008020 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

estoppel with regard to polyacrylamide because the use of polyacrylamide and PDMA, as it is used in the allegedly infringing products, was unforeseeable at the time of Bio-Rad's amendment. If an "equivalent [was] unforeseeable at the time of the application ... the patentee can overcome the presumption that prosecution history estoppel bars a finding of equivalence." *Festo VIII, 535 U.S. at 740-41.* The FCCA has explained that:

*6 if the alleged equivalent represents later-developed technology (e.g. transistors in relation to vacuum tubes, or Velcro® in relation to fasteners) or technology that was not known in the relevant art, then it would not have been foreseeable. In contrast, old technology, while not always foreseeable, would more likely have been foreseeable. Indeed, if the alleged equivalent were known in the prior art in the field of the invention, it certainly should have been foreseeable at the time of the amendment.

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 344 F.3d 1359, 1369 (Fed.Cir.2003)* (*Festo IX*).

Bio-Rad argues that PDMA and polyacrylamide were not used in combination to electrophoretically separate ions until years after the '174 application was amended. Blanch Decl. ¶ 6. Bio-Rad also argues that the possibility of foreseeability is reduced because there were "well-known problems with using [polyacrylamide] in general as well as the inability to create the proper range of molecular weights for PDMA and mixtures of PDMA and polyacrylamide." Opposition, 18. Furthermore, Bio-Rad offers a list of mechanical problems, purity problems, manufacturing problems, toxicity problems, and implementation problems that it asserts would have made the use of PDMA or a combination of PDMA and polyacrylamide unforeseeable when initially filed claim 1 was amended.

This Court disagrees, however, that the use of PDMA or a combination of PDMA and polyacrylamide was sufficiently unforeseeable at the time of the amendment to overcome the presumption of estoppel. First, Bio-Rad's recitation of "well-known" problems with the use of polyacrylamide and PDMA does not necessarily suggest that it would have been unforeseeable at the time of the amendment that PDMA could represent an equivalent to the subject matter claimed in initially filed clam 1. Indeed, the fact that a chemical is difficult to manufacture or had not yet been used for the purpose claimed does not make it unforeseeable. *Cf. Festo IX, 344 F.3d at 1369* (stating that transistors, in relation to vacuum tubes, represent an unforeseeable technology).

Second, the PTO examiner made his rejection based on prior art that used polyacrylamide in molecular sieving. Thus indicating that in drafting initially filed claim 1 with broad coverage of a "gel-free aqueous solution of a substantially linear polymer," coverage of acrylamides was not only foreseeable, but accomplished. Thus, the Court finds that "at the time of the amendment one skilled in the art could ... reasonably have been expected to have drafted a claim that would have literally encompassed the alleged equivalent." *Festo VIII, 535 U.S. at 733.* Accordingly, the amendment to initially filed claim 1 imposes a presumption of prosecution history estoppel, which Bio-Rad is unable to overcome on grounds of unforeseeability.

> FN3. The Court ordered supplemental briefing on the issue of whether the accused polymers and Tietz's polyacrylamide are different. After reviewing the parties' submissions the Court is satisfied that the accused polymers are sufficiently similar to Tietz's. Accordingly, the rejection based on Tietz suggests that at the time of the amendment the drafter of the '111 patent could have drafted a claim that would have literally encompassed the accused products.

### B. Infectious Estoppel

Applera argues that the amendment to initially filed claim 1 creates an estoppel that should be applied to initially filed claim 27, now claim 16 of the '111 patent. Bio-Rad contends that the estoppel should not be applied because the two claims do not contain the same limitation and there was no action by Bio-Rad in the course of the amendment that linked the claims in a way that requires the estoppel to be imposed on claim 16 of the '111 patent.

*7 Although Bio-Rad only amended initially filed claim 1, the same limitation, "gel-free aqueous solution of a substantially linear polymer," was contained in initially filed claim 27. Garber Decl., Exh. 1, ABBR065864, ABBR065868. Bio-Rad argues that because initially filed claim 1 and initially filed claim 27 each claim different ionic separations the amendment to "claim 1 did not add the same limitation ... that is present in unamended claim 16." Opposition, 8. This argument, however, misses the point. Infectious estoppel is a mechanism employed to maintain the consistency of terms and limitations throughout a patent. *Glaxo, 356 F.3d at 1356* (stating

that infectious estoppel is a "quest for consistency" among claim terms. Both claims as initially filed and at the time of the amendment shared identical language. Insofar as the terms shared by the claims present identical limitations, this Court sees no reason why the terms of the limitations would not have been construed alike. The two claims, although to different ionic separations, contained the same limitation. Thus, initially filed claim 27, now claim 16 of the '111 patent does "recite the amended term" and is subject to the same estoppel. *Id.*

Bio-Rad also argues that the estoppel does not apply to claim 16 of the '111 patent unless there exists "some additional basis in combination with the narrowing amendment that justifie[s] infecting the unamended claim with the same estoppel and *Festo* presumption as the [claim] that [was] amended to include the same limitation." Opposition, 12. Bio-Rad cites *Builders Concrete, Inc. v. Bremerton Concrete Prods. Co., 757 F.2d 255 (Fed.Cir.1985),* for the proposition that prosecution history estoppel is not limited to amendment based estoppel, but may arise in other ways, like argument based estoppel. Bio-Rad then argues that the court in *Glaxo* relied on *Builders* and allowed the infectious estoppel because the patentee failed to respond to the examiner's argument that the amended limitation was critical to all claims. *Id.* (citing *Glaxo, 356 F.3d at 1356.*) Thus, according to Bio-Rad, both the amendment and the argument were necessary bases for applying the infectious estoppel.

This Court does not read *Glaxo* to require an additional basis in combination with a narrowing amendment before infecting an unamended claim with estoppel. Instead, it appears that the FCCA was more concerned with the consistent interpretation of claim limitations than adding prerequisites to the doctrine of prosecution history estoppel. *See Glaxo. 356 F.3d at 1356* ("Thus, this court directs consistent interpretation of claim terms within a patent in view of the prosecution history."); *see also Am. Permahedge, Inc. v. Barcana, Inc., 105 F.3d 1441, 1446 (Fed.Cir.1997)* (stating that "identical claim terms used in different claims must be interpreted consistently" and "under the doctrine of equivalents, we see no reason to assign different ranges of equivalents for the identical term used in different claims in the same patent"). Although argument accompanying an amendment may indicate precisely what subject matter is surrendered, argument is not a necessary basis for applying estoppel to an unamended claim.

*8 The Court finds that Bio-Rad is estopped from asserting that Applera's POP products containing polyacrylamide or PDMA are equivalents to, and thereby infringe, initially filed claim 27, now claim 16 of the '111 patent. Bio-Rad may not use claim 16 of the '111 patent to recover the subject matter it surrendered by amending initially filed claim 1.

*V. CONCLUSION*

For the reasons stated above the Court GRANTS Applera's Motion for Partial Summary Judgment.

N.D.Cal.,2005.
Bio-Rad Laboratories, Inc. v. Applera Corp.
Not Reported in F.Supp.2d, 2005 WL 2008020 (N.D.Cal.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 709363 (Trial Motion, Memorandum and Affidavit) Bio-Rad Laboratories, Inc.'s Opposition to Defendants' Motion for Summary Judgment on Trademark and Related Claims (Feb. 6, 2006)
• 2006 WL 728090 (Trial Motion, Memorandum and Affidavit) Bio-Rad Laboratories, Inc.'s Opposition to Applera's Motion for Summary Judgment of Invalidity of Claims 1 and 6 of the '111 Patent under 35 U.S.C. s 102(g) (Feb. 6, 2006)
• 5:02cv05946 (Docket) (Dec. 26, 2002)

END OF DOCUMENT

LEXSEE 2001 US DIST LEXIS 2155

**HONEYWELL INTERNATIONAL INC., and HONEYWELL INTELLECTUAL PROPERTIES, INC., Plaintiffs, v. HAMILTON SUNDSTRAND CORPORATION, Defendant.**

**Civil Action No. 99-309 GMS**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2001 U.S. Dist. LEXIS 2155*

**January 8, 2001, Decided**
**January 8, 2001, Filed**

**DISPOSITION:** [*1] Hamilton Sundstrand's Motion for Summary Judgment with regard to infringement and validity of Honeywell's '893 and '194 patents (D.I. 103) DENIED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant, accused of infringing plaintiff's patents relating to technology for auxiliary power units for jet aircraft, moved for summary judgment of non-infringement and that plaintiff's patents were invalid based on grounds of anticipation, obviousness, and prosecution history estoppel.

**OVERVIEW:** Plaintiff asserted that defendant's APS 3200 auxiliary power unit literally infringed on one claim of its patent and that it infringed the remaining asserted claims of both its patents under the doctrine of equivalents. Defendant argued its unit did not infringe, and that both of plaintiff's patents were invalid, because both patents were anticipated by the prior art and were obvious. However, for summary judgment purposes, it was not clear that the articles cited anticipated the inventions, based on facts raised by plaintiff. Defendant also contended, in defense of plaintiff's doctrine of equivalents claims, that because plaintiff had been required to surrender several of elements of its original claims by the patent examiner, it had amended its patents and was estopped by that prosecution history from asserting validity. The court determined that plaintiff had never surrendered the remaining elements in issue when it resubmitted its claims, and prosecution history estoppel did not apply.

**OUTCOME:** Defendant's motion for summary judgment with regard to infringement and validity of plaintiff's patents was denied because there were material fac-

tual issues as to both the anticipation and obviousness defenses, and prosecution history estoppel did not apply because plaintiff had not amended its application or surrendered the elements of its patents at issue.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Standards > Appropriateness*
*Civil Procedure > Summary Judgment > Standards > Legal Entitlement*
*Civil Procedure > Summary Judgment > Standards > Materiality*
[HN1] Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Fed. R. Civ. P. 56(c)*.

*Civil Procedure > Summary Judgment > Appellate Review > General Overview*
*Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview*
[HN2] In reviewing a motion for summary judgment a court must draw all reasonable inferences in favor of the non-moving party.

*Patent Law > Inequitable Conduct > Burdens of Proof*
*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > General Overview*
*Patent Law > Nonobviousness > Elements & Tests > Prior Art*
[HN3] Under *35 U.S.C.S. § 382*, a patent is presumed valid, and the party attacking the validity has the burden of proving invalidity by clear and convincing evidence.

Clear and convincing evidence is evidence which proves in the mind of the trier of fact an abiding conviction that the truth of the factual contentions is highly probable.

*Patent Law > Anticipation & Novelty > Fact & Law Issues*
*Patent Law > Claims & Specifications > Enablement Requirement > General Overview*
*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > General Overview*
[HN4] A claim is anticipated if each and every limitation is found either expressly or inherently in a single prior art reference. Accordingly, invalidity by anticipation requires that the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation. The prior art need not state the elements of the claim in identical language. Anticipation is a question of fact.

*Patent Law > Claims & Specifications > Enablement Requirement > General Overview*
*Patent Law > Nonobviousness > Elements & Tests > General Overview*
[HN5] *35 U.S.C.S. § 103*(a) prohibits the granting of a patent if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. The ultimate determination of whether an invention would have been obvious under *35 U.S.C.S. § 103*(a) is a legal conclusion based on underlying findings of fact. To determine the question of obviousness, the court should look to: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims; (3) the level of ordinary skill in the art; and (4) objective evidence of nonobviousness. Such secondary considerations as commercial success, long felt but unsolved needs, and failure of others to invent are also relevant to the obviousness inquiry.

*Patent Law > Inequitable Conduct > Effect, Materiality & Scienter > General Overview*
*Patent Law > Nonobviousness > Elements & Tests > Hindsight*
*Patent Law > Nonobviousness > Evidence & Procedure > Fact & Law Issues*
[HN6] Obviousness may not be established using hindsight. In determining obviousness, the invention must be considered as a whole and the claims must be considered

in their entirety. Moreover, when obviousness is based on a combination of two or more particular prior art references, there must be a showing of a suggestion or motivation to combine the teachings of those references, though it need not be expressly stated. The ultimate determination of obviousness is a question of law based on underlying factual determinations.

*Patent Law > Infringement Actions > Doctrine of Equivalents > Fact & Law Issues*
*Patent Law > Infringement Actions > Infringing Acts > General Overview*
[HN7] Literal infringement of a claim occurs when every limitation recited in the claim appears in the accused device, that is, when the properly construed claim reads on the accused device exactly. A device that does not literally infringe a claim may nonetheless infringe under the doctrine of equivalents if every element in the claim is literally or equivalently present in the accused device. A claim element is equivalently present in an accused device if only insubstantial differences distinguish the missing claim element from the corresponding aspects of the accused device. Determination of infringement, whether literal or under the doctrine of equivalents, is a factual matter normally reserved for a fact finder.

*Patent Law > Infringement Actions > Prosecution History Estoppel > General Overview*
[HN8] When a claim amendment creates prosecution history estoppel with regard to a claim element, there is no range of equivalents available for the amended claim element. Application of the doctrine of equivalents to the claim element is completely barred.

*Patent Law > Infringement Actions > Prosecution History Estoppel > General Overview*
[HN9] Prosecution history estoppel precludes a patentee from obtaining under the doctrine of equivalents coverage of subject matter that has been relinquished during the prosecution of its patent application. In other words, the essence of prosecution history estoppel is that a patentee should not be able to obtain, through the doctrine of equivalents, coverage of subject matter that was relinquished during prosecution to procure issuance of the patent. The logic of prosecution history estoppel is that the patentee, during prosecution, has created a record that fairly notifies the public that the patentee has surrendered the right to claim particular matter as within the reach of the patent.

*Patent Law > Infringement Actions > Doctrine of Equivalents > Fact & Law Issues*
*Patent Law > Infringement Actions > Prosecution History Estoppel > General Overview*
[HN10] Whether prosecution history bars an assertion of infringement under the doctrine of equivalents is a matter of law for the court to decide. This decision can be made on a dispositive pretrial motion or at the close of evidence after a jury verdict.

*Patent Law > Infringement Actions > Prosecution History Estoppel > General Overview*
[HN11] To determine if prosecution history estoppel will apply, a court must first determine which claim elements are alleged to be met by equivalents.

*Patent Law > Infringement Actions > Prosecution History Estoppel > Prosecution-Related Arguments & Remarks*
[HN12] To determine if prosecution history estoppel will apply, a court must determine whether the elements at issue were amended during prosecution of the patent. If they were not, amendment-based estoppel will not bar the application of the doctrine of equivalents. However, the court still may need to consider whether statements made during prosecution give rise to argument-based estoppel. If the claim elements at issue were amended, the court first must determine whether the amendment narrowed the literal scope of the claim. If so, prosecution history estoppel will apply unless the patent holder establishes that the amendment was made for a purpose unrelated to patentability. If the patent holder fails to do so, prosecution history estoppel will bar the application of the doctrine of equivalents to that claim element.

*Criminal Law & Procedure > Appeals > Reviewability > General Overview*
*Patent Law > Infringement Actions > Doctrine of Equivalents > Limits on Equivalence*
*Patent Law > U.S. Patent & Trademark Office Proceedings > General Overview*
[HN13] When an accused device is the same as a disclosed embodiment, and claims covering the disclosed embodiment were rejected on appeal and cancelled, the yielded claim scope can not be recovered in order to encompass the accused device through the doctrine of equivalents.

**COUNSEL:** For HONEYWELL INTERNATIONAL INC., HONEYWELL INTELLECTUAL PROPERTIES, INC., plaintiffs: Josy W. Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For HAMILTON SUNDSTRAND CORPORATION, defendant: Richard D. Kirk, Gretchen A. Bender, Morris, James, Hitchens & Williams, Wilmington, DE.

For HAMILTON SUNDSTRAND CORPORATION, counter-claimant: Richard D. Kirk, Gretchen A. Bender, Morris, James, Hitchens & Williams, Wilmington, DE.

For HONEYWELL INTERNATIONAL INC., HONEYWELL INTELLECTUAL PROPERTIES, INC., counter-defendants: Josy W. Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION:**

### MEMORANDUM AND ORDER

Honeywell International Inc. ("Honeywell") filed this against Hamilton Sundstrand ("Sundstrand") in May of 1999 alleging that Hamilton Sundstrand Corporation ("Sundstrand") is infringing three Honeywell patents: the 4,380,893, 4,428,194 and the 4,337,615 ((the "'893 patent," "'194 patent," and the "'615 patent," respectively). [*2] n1 The lawsuit relates to technology for auxiliary power units ("APU"). An APU is a small gas turbine engine, usually placed in the tail section of an airplane, that generates electricity for use while the aircraft is on the ground or in flight. An APU also provides compressed air for both starting the aircraft's main engine and environmental control of cabin air. Presently before the court is Sundstrand's Motion for Summary Judgment with regard to infringement and validity of Honeywell's '893 and '194 patents.

n1 On January 2, 2001, Honeywell advised the court that it has decided to no longer pursue its claims under the '615 patent.

### I. FACTS

Honeywell alleges that Sundstrand's APU, the APS 3200, infringes its '893 and '194 patents. Specifically, Honeywell contends that the APS 3200 literally infringes claim 4 of the '194 patent and that it infringes the remaining asserted claims of both patents under the doctrine of equivalents. The '893 and '194 patents claim an apparatus and method for a system [*3] to control the aerodynamic

Case 1:99-cv-00309-GMS   Document 422-3   Filed 05/04/2006   Page 12 of 16

Page 4
2001 U.S. Dist. LEXIS 2155, *

phenomenon called surge in a compressor. The '893 and '194 patents were issued in 1983 and 1984, respectively, from the same original application. The '893 patent specifically claims an apparatus that embodies the control logic for the surge control system. The '194 patent specifically claims the method of using the control logic.

In its motion, Sundstrand argues that its APS 3200 does not literally infringe claim 4 of the '194 patent and that it does not infringe the remaining asserted claims of either patent under the doctrine of equivalents. Furthermore, Sundstrand contends that the '893 and '194 patents are invalid because both patents were anticipated by the prior art. Specifically, Sundstrand alleges that Claim 4 of the '194 patent and Claims 1,12, 15, 19 and 23 of the '893 patent were anticipated by two articles. Sundstrand also argues that both the '893 and '194 patents are obvious in view of the prior art.

## II. STANDARD OF REVIEW

[HN1] "Summary judgment is appropriate only when 'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.'" *Rodime v. SeagateTech. Inc., 174 F.3d 1294, 1301 (1999)* [*4] (quoting *Fed. R. Civ. P. 56(c)*). [HN2] In reviewing the motion, the court must draw all reasonable inferences in favor of the non-movant. *See id.* (citing *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*.

## III. DISCUSSION

### A. Validity

First, Sundstrand argues that the '893 and '194 patents are invalid because 1) they were anticipated by prior art and 2) they are both obvious in light of prior art. [HN3] Under *35 U.S.C. § 382*, a patent is presumed valid and the party attacking the validity has the burden of proving invalidity by clear and convincing evidence. *See 35 U.S.C. § 382 (1984)*. "Clear and convincing evidence is evidence which proves in the mind of the trier of fact an abiding conviction that the truth of [the] factual contentions [is] highly probable." *See Jack Frost Labs v. Physicians & Nurses Manu. Corp., 901 F. Supp. 718, 727 (S.D.N.Y. 1995)* (internal quotations omitted). Thus, Sundstrand must provide clear and convincing evidence that the '893 and '194 patents are invalid under either the doctrine of anticipation or obviousness before [*5] the court can grant summary judgment on these issues.

### 1. Anticipation

[HN4] A claim is anticipated if each and every limitation is found either expressly or inherently in a single prior art reference. *Celeritas Techs., Ltd. v. Rockwell Int'l Corp., 150 F.3d 1354, 1361 (Fed. Cir. 1998), cert.*

*denied, 525 U.S. 1106, 142 L. Ed. 2d 774, 119 S. Ct. 874 (1999)*. Accordingly, invalidity by anticipation requires that the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation. *Advanced Display Sys., Inc. v. Kent State Univ., 212 F.3d 1272, 1282 (Fed. Cir. 2000)*. The prior art need not state the elements of the claim in identical language. *See Proctor & Gamble Co. v. Nabisco Brands, Inc., 711 F. Supp. 759, 762 (D. Del. 1989)*. Anticipation is a question of fact. *See In re Graves, 69 F.3d 1147, 1151 (Fed. Cir.1995)*.

After reviewing the prior art references cited by Sundstrand, it is not clear that these articles anticipated the inventions [*6] at issue. Honeywell has adduced sufficient facts to show that there are genuine issue of material fact in dispute for a jury to resolve. Specifically, the parties dispute whether each and every limitation is found either expressly or inherently in the prior art references. This dispute in particular should be considered by a jury. There is also a factual dispute as to whether a person of ordinary skill in the art could practice the invention based on the prior art reference. Because there are factual issues to be determined by a jury, the court will deny Sundstrand's motion for summary judgment on the issue invalidity due to anticipation by prior art.

### 2. Obviousness

[HN5] Section 103 prohibits the granting of a patent "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." *35 U.S.C. § 103(a)* (1984). The ultimate determination of whether an invention would have been obvious under *35 U.S.C. § 103(a)* is a legal conclusion [*7] based on underlying findings of fact. *In re Kotzab, 217 F.3d 1365, 1369 (Fed. Cir. 2000)*. To determine the question of obviousness, the court should look to: (1) the scope and content of the prior art; (2) the differences between the prior art and the claims; (3) the level of ordinary skill in the art; and (4) objective evidence of nonobviousness. *Riverwood Int'l Corp. v. The Mead Corp., 212 F.3d 1365, 1366 (Fed. Cir. 2000)* (citing *Graham v. John Deere Co., 383 U.S. 1, 17, 15 L. Ed. 2d 545, 86 S. Ct. 684 (1966))*. "Such secondary considerations as commercial success, long felt but unsolved needs, [and] failure of others [to invent] are also relevant to the obviousness inquiry." *Ryko Manu. Corp. v. Nu-Star, Inc., 950 F.2d 714, 716 (Fed. Cir. 1991)* (internal quotations omitted).

[HN6] Obviousness may not be established using hindsight. *See Kahn v. General Motors Corp., 135 F.3d 1472, 1479 (Fed. Cir. 1998)*. In determining obviousness, the invention must be considered as a whole and the claims must be considered in their entirety. *Id. at 1479-80.* Moreover, when obviousness is based on a combination [*8] of two or more particular prior art references, there must be a showing of a suggestion or motivation to combine the teachings of those references, though it need not be expressly stated. *Riverwood* at 1366. The ultimate determination of obviousness is a question of law based on underlying factual determinations. *Para-Ordnance Manufacturing Inc. v. SGS Importers Int'l Inc., 73 F.3d 1085, 1088 (Fed. Cir. 1995)*.

After considering the submissions of the parties, the court will also deny summary judgment on the issue of obviousness because there are outstanding factual disputes that should be resolved by a jury. For example, Honeywell disputes Sundstrand's description of the scope and content of the prior art. Honeywell also disagrees with Sundstrand as to the differences between the prior art references cited and the claims at issue. Moreover, Sundstrand does not present sufficient evidence as to the level of ordinary skill in the art and the objective evidence of nonobviousness. Finally, Honeywell alleges that there are secondary factors that the court should consider that would render its invention non-obvious. Thus, the court will deny Sundstrand's motion for summary [*9] judgment as to the issue of the obviousness of the '893 and '194 patents because Honeywell has adduced sufficient evidence to show that there is a genuine issue of material fact for a jury.

**B. Infringement**

[HN7] Literal infringement of a claim occurs when every limitation recited in the claim appears in the accused device, i.e., when "the properly construed claim reads on the accused device exactly." *KCJ Corp. v. Kinetic Concepts, Inc., 223 F.3d 1351, 1358 (Fed. Cir. 2000)*. A device that does not literally infringe a claim may nonetheless infringe under the doctrine of equivalents if every element in the claim is literally or equivalently present in the accused device. *Sage Products, Inc. v. Devon Indus., Inc., 126 F.3d 1420, 1423 (Fed. Cir. 1997)*. A claim element is equivalently present in an accused device if only "insubstantial differences" distinguish the missing claim element from the corresponding aspects of the accused device. *Id.* Determinations of infringement, whether literal or under the doctrine of equivalents, is a factual matter normally reserved for a fact finder. *See Tate Access Floors, Inc. v. Maxcess Techs. Inc., 222 F.3d 958, 964 (Fed. Cir. 2000)*. [*10]

**1. Literal Infringement of Claim 4 of the '194 patent**

First, the court will deny summary judgment as to literal infringement of Claim 4 of the '194 patent because Honeywell has managed to adduce facts which preclude the court from ruling in Sundstrand's favor as a matter of law on this issue. In particular, Honeywell has provided evidence demonstrating that there is a genuine factual dispute as to whether every element of Claim 4 of the '194 patent is embodied in Sundstrand's APS 3200. *See Honeywell's Opposing Brief*, D.I. 129, at 10-12.

**2. The Doctrine of Equivalents and Prosecution History Estoppel Analysis**

In its submissions, n2 Sundstrand argues that Honeywell cannot maintain its claims for infringement under the doctrine of equivalents in light of the Federal Circuit's decision in *Festo Corp. v. Kinzoku Kogyo Kabushiki Co., 234 F.3d 558, 2000 WL 1753646 (Fed. Cir. 2000)(en banc)*. In *Festo*, the Federal Circuit held that:

> [HN8]
> When a claim amendment creates prosecution history estoppel with regard to a claim element, there is no range of equivalents available for the amended claim element. Application of the doctrine of equivalents to the [*11] claim element is completely barred (a "complete bar").

*Id.* at *9. In rejecting precedent, the *Festo* court reasoned that "[a] complete bar, unlike a flexible bar, thus lends certainty to the process of determining the scope of protection afforded by a patent. *Id.* at *17. Thus, "once an element of a claim is narrowed by amendment for a reason related to patentability, that element's scope of coverage will not extend beyond its literal terms." *Id.*

n2 Pursuant to Local Rule 7.1.2(c), Sundstrand sent a letter to the court advising it of new Federal Circuit case law on December 6, 2000.

Sundstrand contends that for each of the surge control patent claims at issue (other than claim 4 of the '194 patent), Honeywell is barred by prosecution history estoppel from asserting a claim for infringement under the doctrine of equivalents. Specifically, Sundstrand argues that during the prosecution of the '893 and '194 patents, the PTO Examiner rejected all of the claims that did not include the key element [*12] at issue based on the prior art and stated that he would only allow dependent claims that included this key element if rewritten into independent form. Sundstrand claims that based on this rejection, Honeywell amended its claims to incorporate the element at issue into the independent claims and canceled the

original claims that lacked this element. Thus, Sundstrand contends, when Honeywell amended its claims to rely on this key element to overcome the prior art, it created prosecution history estoppel. Thus, Sundstrand now argues that prosecution history estoppel now applies regarding the inlet guide vane position element.

Honeywell argues that the claims at issue were not rejected based on prior art. Instead, Honeywell contends that the patent examiner "objected" to these claims as written. Honeywell further claims that the patent examiner did allow these claims, however, if they were "rewritten in independent form." Thus, according to Honeywell, the key element at issue was not amended during prosecution of the patents and the *Festo* decision would not apply to this case.

"[HN9] Prosecution history estoppel precludes a patentee from obtaining under the doctrine of equivalents [*13] coverage of subject matter that has been relinquished during the prosecution of its patent application." *Festo, 2000 WL 1753646,* *3 (Fed. Cir. Nov. 29, 2000) (quoting *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc., 170 F.3d 1373, 1376 (Fed. Cir.1999)).* In other words, "the essence of prosecution history estoppel is that a patentee should not be able to obtain, through the doctrine of equivalents, coverage of subject matter that was relinquished during prosecution to procure issuance of the patent." *Hoganas AB v. Dresser Indus., Inc., 9 F.3d 948, 952 (Fed. Cir. 1993)* (citation omitted). "The logic of prosecution history estoppel is that the patentee, during prosecution, has created a record that fairly notifies the public that the patentee has surrendered the right to claim particular matter as within the reach of the patent." *Festo,* at *3. In fact, the *Festo* court describes the functions of prosecution history estoppel as preserving the notice function performed by the claims and preventing patent holders from recapturing under the doctrine of equivalents subject matter that was represented before the Patent Office. *See id.* [*14] at *6. [HN10] Whether prosecution history bars an assertion of infringement under the doctrine of equivalents is a matter of law for the court to decide. *See Festo* at *26. This decision can be made on a dispositive pretrial motion or at the close of evidence after a jury verdict. *See id.*

In order [HN11] to determine if prosecution history estoppel will apply, the court must first determine which claim elements are alleged to be met by equivalents. *See Festo, 2000 WL 1753646,* at *27 ("The first step in a prosecution history estoppel analysis is to determine which claim elements are alleged to be met by equivalents."). In this case, the claim elements at issue involve "adjusting the set point in response to variations in the position of the inlet guide vanes" and the "delta P over" flow related parameter. *See* Honeywell's Opposing Brief, D.I. 129, at 16-22.

Then, [HN12] the court must determine whether the elements at issue were amended during prosecution of the patent. *Festo, 2000 WL 1753646,* at *27. "If they were not, amendment-based estoppel will not bar the application of the doctrine of equivalents." *Id.* "However, the court still may need to consider [*15] whether statements made during prosecution give rise to argument-based estoppel." *Id.* If the claim elements at issue were amended, the court first must determine whether the amendment narrowed the literal scope of the claim. *Id.* If so, prosecution history estoppel will apply unless the patent holder establishes that the amendment was made for a purpose unrelated to patentability. *Id.* If the patent holder fails to do so, prosecution history estoppel will bar the application of the doctrine of equivalents to that claim element. *Id.*

In this case, the parties dispute whether the elements at issue were actually amended. Thus, in order to resolve the dispute, the court must engage in a detailed review of the relevant prosecution history.

### a. '893 Patent Prosecution History

When the '893 file application was filed, 52 claims were presented. *See* '893 File History, D.I. 138, at Ex. 9. The patent examiner initially determined that claims 41-52 were materially distinct from claims 1-40. Id. After an initial telephone conversation on this issue on August 27, 1982, the patentee withdrew claims 41-52 from consideration (subsequently, these claims were submitted in the [*16] application for the '194 patent). *Id.* Of the remaining claims, claims 1, 6, 11, 16, 21 and 32 were independent claims. The rest were dependent claims. *Id.*

Next, the patent examiner rejected claims 1-5, 11-15, and 21-40 for indefiniteness under *35 U.S.C. § 112.* *Id.* Claims 28, 31, 34 and 37 were deemed ambiguous. *Id.* The following claims were rejected based on the prior art: 1-3, 6, 7, 10-13, 16, 19-22, 27-29, 32, 37, 38, 39 and 40. *Id.* In rejecting these claims, the examiner made specific reference to the relevant prior art and the reason for rejection relating to each claim. *Id.* Thus, the only claims remaining were claims 8, 9, 17 and 18. All of these claims were dependent claims. Claims 8, 9, 17 and 18 involve the claim elements at issue in this case. The examiner objected to these claims because of their form, but stated that they would be "allowed if rewritten in independent form." *Id.*

### b. '194 Patent Prosecution History

As discussed above, claims 41-52 of the original '893 application were submitted to the patent office. Of these claims, only 41, 48, and 52 were independent claims. *See id.* The patent examiner rejected [*17] claims 41-43, 44, 45, 48, 49 and 52 based on the prior art. *Id.* at Ex. 11. Only claims 46, 47, 50 and 51 re-

mained. *Id.* Again, all of these claims were dependent claims and involved the claim elements at issue in this case. *Id.* Again, the examiner objected to these claims because of their form, but stated that they would be "allowed if rewritten in independent form." *Id.*

After reviewing the prosecution history, the court concludes that the elements at issue were not amended, and thus, prosecution history estoppel will not apply to this case. *See Festo,* at *27. Sundstrand argues that by cancelling broader claims that lacked the inlet guide vane position element n3 and advancing only claims that included the element, Honeywell created the "classic basis" for prosecution history estoppel. D.I. 179. Thus, Sundstrand argues that a claim need not be rejected for prosecution history estoppel to apply. To support its position, Sundstrand cites to *Diversitech Corp. v. Century Steps, Inc., 850 F.2d 675, 681 (Fed. Cir. 1988)* and *Builders Concrete, Inc. v. Bremerton Concrete Products Co., 757 F.2d 255, 260 (Fed. Cir. 1985).* Although this argument [*18] has superficial appeal, the court is not persuaded that prosecution history estoppel applies in this case.

> n3 Although there are two elements at issue in this case, the parties only argue about the inlet guide vane element in their papers. Despite this omission in their papers, the court's analysis also applies to the "delta P over" flow related parameter element.

The key distinction between the present case and the cases cited by Sundstrand is that the patentees in those cases surrendered the elements at issue when they resubmitted their claims. For example, in *Diversitech,* the claim at issue also had not been substantively amended and was initially dependent on a broader claim that was rejected. *850 F.2d at 681.* The patentee in that case, however, expressly made arguments before the PTO that surrendered the element at issue. *Id.* Thus, because "the Board rejected and [the patentee] cancelled the only claims that were broad enough to encompass his disclosed embodiment of a pad with a thin layer of cement [*19] on the bottom," the patentee could not "now contradict the representations it made in order to obtain the allowed claims." *Id.*

Again, in *Builder's Concrete,* there was also no amendment to the claim at issue during prosecution. *See id.* at 260. It was still clear, however, that arguments made for the patentability of a different claim, claim 1, relinquished the elements at issue in that case. *See id.* "The fact that the 'passage' clause of patent claim 10 was not itself amended during prosecution does not mean that it can be extended by the doctrine of equivalents to cover

the precise subject matter that was relinquished in order to obtain allowance of claim 1." *Id.*

In this case, Honeywell did not surrender the elements at issue during the prosecution of the patents at issue. "[HN13] When an accused device is the same as a disclosed embodiment, and claims covering the disclosed embodiment were rejected on appeal and cancelled, the yielded claim scope can not be recovered in order to encompass the accused device through the doctrine of equivalents." *Diversitech, 850 F.2d at 681.* Honeywell did not give up an embodiment of the invention with the inlet guide [*20] vane. In fact, this element was essentially all that was allowed. The patent examiner rejected substantially all of the original claims based on the prior art. However, the remaining dependent claims would be allowed if rewritten into independent form. Since the examiner had rejected all of the other claims, these claims had to be rewritten because they would no longer make sense as written in dependent form. In this case, the elements at issue were not surrendered at all. Prosecution history estoppel does not apply. Thus, in accordance with *Festo,* this court rules as a matter of law that Honeywell may attempt to convince the jury that Sundstrand's APU 3200 infringes under the doctrine of equivalents. *See Festo* at *26 (advising the court to rule as a matter of law on a pretrial dispositive motion whether prosecution history bars an assertion of infringement under the doctrine of equivalents).

As to the issue of infringement under the doctrine of equivalents, Honeywell has managed to adduce facts that create a genuine dispute over whether there is a substantial difference between the APS 3200 and claims 1-5, 8-15, 19, 22 and 23 of the '893 patent and claim 1 of the '194 patent. [*21] Because the court concludes that prosecution history estoppel does not apply here, and there are genuine issues of material fact in dispute, the court cannot rule as a matter of law that Sundstrand's APS 3200 does not infringe Honeywell's patents under the doctrine of equivalents.

For these reasons, IT IS HEREBY ORDERED that:

1. Hamilton Sundstrand's Motion for Summary Judgment with regard to infringement and validity of Honeywell's '893 and '194 patents (D.I. 103) is DENIED.

2. Honeywell is not barred by prosecution history estoppel from maintaining its claim of infringement of the '893 and '194 patents under the doctrine of equivalents.

Date: 1/8/01

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE