LEXSEE 2006 DIST. LEXIS 11829

**HONEYWELL INTERNATIONAL, INC., AND HONEYWELL INTELLECTUAL PROPERTIES, INC., Plaintiffs, v. HAMILTON SUNSTRAND CORP., Defendant.**

Civil Action No. 99-309 (GMS)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2006 U.S. Dist. LEXIS 11829

March 22, 2006, Decided
March 22, 2006, Filed

**PRIOR HISTORY:** *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp., 166 F. Supp. 2d 1008, 2001 U.S. Dist. LEXIS 15991 (D. Del., 2001)*

**COUNSEL:** [*1] Thomas C. Grimm, Esquire, and Leslie A. Polizoti, Esquire, of MORRIS, NICHOLS, ARSHT & TUNNELL, Wilmington, Delaware, and Robert G. Krupka, Jonathan F. Putnam, Esquire, and Lee Ann Stevenson, Esquire, of KIRKLAND & ELLIS LLP, New York, New York, for Plaintiffs.

Richard D. Kirk, Esquire, of THE BAYARD FIRM, Wilmington, Delaware, Mark L. Levine, Esquire, Chris J. Lind, Esquire, and Brian C. Swanson, Esquire, of BARTLIT, BECK, HERMAN, PALENCHAR & SCOTT, Chicago, Illinois, and David H. Herrington, Esquire, of CLEARY, GOTTLIEB, STEEN & HAMILTON LLP, for Defendant.

**JUDGES:** Gregory M Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M Sleet

**OPINION:** March 22, 2006
Wilmington, Delaware

Gregory M. Sleet
**SLEET, District Judge**

**I. INTRODUCTION**

The above-captioned action is a patent-infringement suit with a long procedural history, including a jury trial, an appeal and remand, a denied writ of certiorari, and now, a bench trial. With any luck, the end is near. Presently before the court is Defendant Hamilton Sunstrand Corp.'s ("H'SC") motion *in limine* to preclude Plaintiffs Honeywell International, Inc. and Honeywell Intellectual Properties, Inc. (collectively "Honeywell") [*2] from introducing the testimony of two patent lawyers at the Upcoming bench trial. (D.I. 389.) For the following reasons, the court will grant HSC's motion in part.

**II. BACKGROUND**

This case was originally filed on May 17, 1999. Before trial, HSC moved for summary judgment on the issue of prosecution history estoppel. The essence of HSC's argument was that during prosecution of the patents in suit, by converting certain dependent claims into independent claims such that the new independent claims had a so-called "inlet guide vanc limitation," Honeywell surrendered equivalents to that limitation. The court disagreed and denied HSC's motion. After a ten-day trial in February of 2001, a jury found that the patents insuit were valid and infringed, but only under the doctrine of equivalents. HSC subsequently appealed the denial of its motion for summary judgment, n1 which appears to have been money well spent. After hearing the case *en banc*, the Federal Circuit held that Honeywell's amendments created "a presumptive surrender of all equivalents to the inlet guide vane limitation." Slip Op. at 18. Thus, the case was remanded to this court for a determination of whether Honeywell [*3] can rebut the presumptive surrender.

n1 Notably, however, Honeywell did not challenge the jury's finding of no literal infringement. surrender.

**III. DISCUSSION**

In rendering this determination, the court must first look to the Supreme Court's opinion in *Festo Corp. v.*

Case 1:99-cv-00309-GMS   Document 422-4   Filed 05/04/2006   Page 2 of 17

Page 2
2006 U.S. Dist. LEXIS 11829, *

*Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 122 S. Ct. 1831, 152 L. Ed. 2d 944 (2002)("*Festo II*"). In that case, the Court began by explaining that because "the nature of language makes it impossible to capture the essence of a thing," "a patent is not limited to its literal terms but instead embraces all equivalents to the claims described" through the doctrine of equivalents. *Id. at 731-32*. The inherent uncertainty of this doctrine is somewhat balanced, the Court continued, by prosecution history estoppel:

> Prosecution history estoppel ensures that the doctrine of equivalents remains tied to its underlying purpose. Where the original application once embraced the purported equivalent but the patentee narrowed his claims [*4] to obtain the patent or to protect its validity, the patentee cannot assert that he lacked the words to describe the subject matter in question. The doctrine of equivalents is premised on language's inability to capture the essence of innovation, but a prior application describing the precise element at issue undercuts that premise. In that instance the prosecution history has established that the inventor turned his attention to the subject matter in question, knew the words for both the broader and narrower claim, and affirmatively chose the latter.

*Id. at 734-35*. The Court then proceeded to address "the kinds of amendments that may give rise to estoppel." *Id.* The petitioner in *Festo II* argued that certain amendments, such as those concerning "the form of the application and not the subject matter of the invention," should not give rise to an estoppel because "the applicant has no intention of surrendering subject matter." *Id. at 736*. That argument was rejected out of hand because it "conflates the patentee's reason for making the amendment with the impact the amendment has on the subject matter." *Id.* Instead, the Court held, [*5] "[a] patentee who narrows a claim as a condition for obtaining a patent disavows his claim to the broader subject matter, whether the amendment was made to avoid the prior art or to comply with [the form requirements of] § 112," and therefore, "estoppel may apply." *Id. at 737*.

The next question addressed by the Court was whether "the estoppel bar[s] the inventor from asserting infringement against any equivalent to the narrowed element," of whether "some equivalents still infringe." *Id.* The Federal Circuit, in *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co. ("Festo I")*, had answered that question by holding that "prosecution history estoppel acts as a complete bar to the application of the doctrine of equivalents when an amendment has narrowed the scope of a claim for a reason related to patentability." 234 F.3d 558, 574 (Fed. Cir. 2000). The Supreme Court disagreed, pointing out that it has "consistently applied the doctrine [of prosecution history estoppel] in a flexible way, not a rigid one." *Festo II, 535 US. at 738*. The Court further explained "that courts must be cautious before adopting changes that disrupt [*6] the settled expectations of the inventing community." *Id. at 739*. And, in the context of prosecution history estoppel, the Court determined that there is simply "no justification for applying a new and more robust estoppel to those who relied on prior doctrine." *Id.* In keeping with that prior doctrine, the Court reiterated that "the patentee should bear the burden of showing that the amendment does not surrender the equivalent in question." *Id. at 740*. Therefore, the Court held, "when the patentee has chosen to narrow a claim, courts may presume the amended text was composed with awareness of this rule and that the territory surrendered is not an equivalent of the territory claimed." *Id. at 741*.

In order to overcome the presumption of surrender, the "patentee, must show that at the time of the amendment one skilled in the art could not reasonably be expected to have drafted, a claim that would have literally encompassed the alleged equivalent." *Id. at 741*. The patentee can make that showing by demonstrating that (1) the equivalent was "unforeseeable at the time of the application," (2) "the rationale underlying [*7] the amendment . . . bear[s] no more than a tangential relation to the equivalent in question," or (3) there is "some other reason suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question." *Id. at 740-41*. Because only the third rebuttal criterion, *i.e.*, "some other reason," is at issue in HSC's motion, the court will not address the first and second criteria. Although the *Festo II* Court did not breathe much life into the phrase "some other reason," the Federal Circuit's subsequent opinion on remand in *Festo Corp., v. Shoketsu Kinzoku Kogyo Kabushiki Co., 344 F.3d 1359 (Fed. Cir. 2003) ("Festo III")*, provides some general guidance. As a threshold matter, "rebuttal of the presumption of surrender is a question of law to be determined by the court, not a jury." *Id. at 1367*. Specific to the third criteria, the court explained:

> This category, while vague, must be a narrow one; it is available in order not to totally foreclose a patentee from relying on reasons, other than unforeseeability and tangentialness, to show that it did not surrender the alleged [*8] equivalent. Thus, the third criterion may be satisfied when

there was some reason, such as the shortcomings of language, why the patentee was prevented from describing the alleged equivalent when it narrowed the claim. When at all possible, determination of the third rebuttal criterion should also be limited to the prosecution history record.

*Id. at 1370*. Importantly, this third criterion does not apply when the patentee *could have* described the equivalent, "but chose not to do so." *Id. at 1372*. Beyond those generalities, the Federal Circuit refrained from comment, opting instead to leave "discussion of the relevant factors encompassed by each of the rebuttal criteria . . . to development on a case-by-case basis." *Id. at 1368*.

Unfortunately, case-by-case development of the "some other reason" criterion has been slower than development of the other two criteria. Nevertheless, a few insightful nuggets are found scattered about the Federal Circuit's case law. For example, in a case decided after *Festo II* but before *Festo III*, the court held, where an equivalent is present "in the prior art cited against the patentee [*9] during prosecution, there can be no other reason the patentee could not have described the substitute in question." *Pioneer Magnetics, Inc. v. Micro Linear Corp., 330 F.3d 1352, 1357 (Fed. Cir. 2003)* (cited with approval by *Festo III, 344 F.3d at 1370*). In another case, *Talbert Fuel Sys. Patents Co. v. Unocal Corp.*, the Federal Circuit further delineated the contours of the third criterion by rejecting a patentee's argument that although an alleged equivalent had properties outside a numerical range disclosed in the patent's amended claims, the disclosed range was "unnecessarily exact." *347 F.3d. 1355, 1360 (Fed. Cir. 2003)*. The court explained that the "precision or generality with which [numerical ranges] are stated is not a matter of the 'imprecision of language,' . . . but a measurable property of matter in a well-studied field of engineering." *Id*. More recently, in *Bigaro Western Sales, Inc. v. Regents of the University of California*, the Federal Circuit rejected the argument that the patentee "understood the claim language to refer to [the equivalent at issue]" as "merely an attempt to reargue the claim construction [*10] issue." *423 F.3d 1296, 1307 (Fed. Cir. 2005)*.

From these cases, three principles are readily discernable. First, from *Pioneer Magnetics*, if the equivalent was describable in the prior art cited during prosecution, then it was describable in the claims. And, if it was describable in the claims, then the presumption of surrender is not rebutted by "some other reason." *See also Medtronic Navigation, Inc. v. Brainlab Medizinische Computersystems GmbH, 2006 U.S. Dist. LEXIS 10102, No. 98-01072, at *22 (D. Colo. Feb. 24, 2006)* (holding that the presumption is not rebutted under the third criterion where the alleged equivalent, although known in the prior art, was not commercially available). Second, from *Festo III* and *Talbert Fuel*, the patentee cannot rebut the presumption under the third criterion by pointing to "shortcomings" and "imprecision" of language that arise merely from the language *chosen*. Rather, the shortcomings and imprecision must arise from the language *available*. Third, from *Biaro*, a patentee's belief that the amended claim would cover the equivalent does not establish "some other reason." n2

n2 The court notes that this third principle is directly contrary to the holding in *Amgen, Inc. v. Hoechst Marion Roussel, Inc., 287 F. Supp. 2d 126 (D. Mass. Oct. 30, 2003)*. However, to the extent *Amgen* is inconsistent with *Bigaro*, this court must follow the teachings of the latter. Moreover, this court respectfully disagrees with the Massachusetts district court mainly because the *Amgen* opinion impermissibly focuses on the "reasonable expectations of the patentee." *287 F. Supp. 2d at 156*. It is true that the Supreme Court mentioned the expectations of patentees in *Festo II*, but it did so as an expression of the Court's desire to avoid the "fundamental alteration" of the rules that would result from the inflexible-bar rule created by the Federal Circuit in *Festo I*. On the other hand, the Court clearly stated that prosecution history estoppel focuses on "the impact the amendment has on the subject matter," rather than the patentee's intent in making the amendment. *535 U.S. at 736*. Thus, the expectations of the patentee, including the patentee's perhaps-reasonable belief that the amended claim covers the equivalent, is not relevant to rebuttal of the presumption.

[*11]

With those principles in mind, the court now turns to the dispute at hand. At trial, Honeywell proposes to elicit the expert testimony of Melvin Garner, president of the American Intellectual Property Law Association, to rebut the presumption of surrender by attesting to his belief that, at the time of the amendment, a reasonable patent attorney:

(1) "Would not have believed that he had surrendered the Sunstrand equivalent during prosecution;"

(2) "Would not have felt the need, and indeed would not have felt it prudent, to have drafted additional claims to describe the additional equivalents of inlet guide vane position use;" and

(3) "Would have believed, had he known of the later-developed Sunstrand APS 3200 surge control system when the amendments were made, that the claim language literally covered the infringing system."

(D.I. 392 at 11-12.) At the outset, the court notes that Garner's competence to testify that "*one skilled in the art* could not reasonably be expected to have drafted a claim that would have literally encompassed the alleged equivalent," *535 U.S. at 741* (emphasis added), is at best dubious because he is not, in fact, [*12] "one skilled in the art." Moreover, to the extent Honeywell aims to establish a change in the law between the time of the amendment and the present, Garner's testimony in that regard is plainly improper because the Supreme Court's decision in *Festo II* was geared toward avoiding "changes that disrupt the settled expectations of the inventing community." *Id. at 739.* Thus, although the stir created by the rule set forth in *Festo II* may belie the Court's implicit assertion that it was merely restating the *status quo,* this court is unable to ignore its duty to "presume the amended text was composed with awareness of this rule." *Id. at 741.*

Even if Garner's testimony were unimpeded by those two hurdles, it still cannot overcome the principles found in the Federal Circuit's decisions subsequent to *Festo II.* The First point of proposed testimony -- at the time of the amendment, a reasonable patent attorney would not have believed that he had surrendered the equivalent during prosecution -- is directly contrary to the holding of *Bigaro.* Indeed, just as in that case, this testimony appears to be no more than an attempt by Honeywell to reargue [*13] claim construction. Garner's second point, that a reasonable patent attorney would have thought it unnecessary and imprudent to draft claims to describe the equivalents, in addition to being contrary to the holding of *Bigaro,* is improper under *Festo III* and *Talbert Fuel.* In both of those cases, the Federal Circuit held that the presumption of surrender could not be rebutted if the patentee made a *choice* not to draft the claims to cover the equivalent. *Festo III, 344 F.3d at 1372* (patentee "could have described an aluminum sleeve but chose not to do so."); *Talbert Fuel, 347 F.3d at* (where prior art rejection included "an upper boiling limit" in the range of 390 degrees Fahrenheit to 420 degrees Fahrenheit, patentee chose to amend the claims to include an upper boiling limit of only 345 degrees Fahrenheit, thereby leaving a 45-degree gap). Finally, regarding Garner's third point -- a reasonable patent attorney would have believed, had he known of the equivalent when the amendments were made, that the claim language literally covered the infringing system -- is again contrary to *Bigaro,* and it is further contrary to *Pioneer Magnetics.* Supposing, [*14] as Honeywell does, that the reasonable patent attorney knew about the equivalent, but failed to describe it in the amended claims (regardless of his belief to the contrary, *Bigaro, 423 F.3d at 1307*), his failure falls squarely within the principle enunciated in *Pioneer Magnetics.* In other words, because the equivalent was (hypothetically) known in the prior art and was presumably describable in the amended claims, *see Medtronic Navigation, 2006 U.S. Dist. LEXIS 10102, at *22,* the presumption is not rebutted by "some other reason." Therefore, none of Garner's testimony is proper under the third criterion.

Honeywell also proposes to offer the testimony of Richard Konneker, who allegedly had "responsibility" for prosecuting the patents-in-suit. (D.I. 392 at 14.) If called at trial, "he would testify as a factual witness regarding his prosecution of the patents-in-suit, including the amendments at issue." (Id.) Assuming that the "drafter is one skilled in the art," *Amgen, 287 F. Supp. 2d at 157 n.40,* the court finds no reason under *Festo* and its progeny to preclude Konneker's testimony. If he has first-hand knowledge as to why [*15] he "could not reasonably be expected to have drafted a claim that would have literally encompassed the . . . equivalent," then his testimony appears relevant and admissible. Nevertheless, the court will only consider testimony from Konneker as to why he *could not* (as opposed to *would not*) have drafted the claims to encompass the equivalent.

## IV. CONCLUSION

For the aforementioned reasons, HSC's motion will be granted in part and denied in part.

**ORDER**

IT IS HEREBY ORDERED THAT:

The Defendant's motion *in limine* (D.I. 389) be GRANTED in part and DENIED in part.

Dated: March 22, 2006

UNITED STATES DISTRICT JUDGE

Gregory M Sleet

Case 1:99-cv-00309-GMS    Document 422-4    Filed 05/04/2006    Page 5 of 17

LEXSEE 2006 U.S. APP. LEXIS 9708

LAVA TRADING, INC, Plaintiff-Appellant, v. SONIC TRADING MANAGEMENT, LLC, JOSEPH CAMMARATA, and LOUIS FENG LIU, Defendants-Appellees, and ROYALBLUE GROUP PLC, ROYALBLUE FINANCIAL CORPORATION and ROYALBLUE FINANCIAL PLC, Defendants-Appellees.

05-1177, 05-1192

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

*2006 U.S. App. LEXIS 9708*

April 19, 2006, Decided

**PRIOR HISTORY:** [*1] Appealed from: United States District Court for the Southern District of New York. Judge Thomas P. Griesa. *Lava Trading, Inc. v. Sonic Trading Mgmt., LLC,* 2004 U.S. Dist. LEXIS 9169 (S.D.N.Y., May 20, 2004)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff owned U.S. Patent No. 6,278,982 (the '982 patent), which claimed software that aggregated and integrated securities trading and order placement information from various alternative trading systems. Plaintiff sued for infringement. The U.S. District Court for the Southern District of New York held a Markman hearing and issued a claim construction ruling. The parties stipulated to final judgments of noninfringement. Plaintiff appealed.

**OVERVIEW:** The parties disputed the meaning of two related limitations in the '982 patent, "distributing" and "displaying" a combined order book to a trader. The district court construed the disputed limitations during the Markman hearing without issuing a formal claim construction order. The district court's oral recitation provided a very sparse explanation of the findings and reasoning supporting the claim construction. The appellate court found that the district court's construction was flawed and had to be set aside. The specification disclosed embodiments that distributed and displayed information for only a subset of the combined order book. The customer only received a "subset" of the combined/complete order book from the system. Thus, this embodiment also had to make the system capable of "distributing" less than the whole combined order book to the customer, i.e., a subset of the combined order book. One of ordinary skill in the art would have construed the distributing and displaying limitations as covering an embodiment that distributed and displayed information for only a subset of the combined order book.

**OUTCOME:** The appellate court set aside the district court's claim construction and the final judgment orders. The case was remanded.

**LexisNexis(R) Headnotes**

*Civil Procedure > Appeals > Appellate Jurisdiction > Final Judgment Rule*
[HN1] When substantial issues remain open on appeal, the appellate court should first provide the district judge and parties the opportunity to complete the picture.

*Patent Law > Infringement Actions > Claim Interpretation > General Overview*
[HN2] While a trial court should certainly not prejudge the ultimate infringement analysis by construing claims with an aim to include or exclude an accused product or process, knowledge of that product or process provides meaningful context for the first step of the infringement analysis, claim construction.

*Civil Procedure > Judgments > Entry of Judgments > Multiple Claims & Parties*
[HN3] *Fed. R. Civ. P. 54(b)* allows a district court to act as a "dispatcher" and determine, in the first instance, the appropriate time when each "final decision" upon one or more but less than all of the claims in a multiple claims action is ready for appeal.

*Civil Procedure > Appeals > Standards of Review > General Overview*
*Patent Law > Infringement Actions > General Overview*
[HN4] An infringement analysis is a two-step process: First, the court determines the scope and meaning of the patent claims asserted, and second, the properly construed claims are compared to the allegedly infringing device. Step one, claim construction, is a question of law, that the appellate court reviews de novo. Step two, comparison of the claims to the accused device, is a question of fact, and requires a determination that every claim limitation or its equivalent be found in the accused device.

*Civil Procedure > Judgments > Preclusion & Effect of Judgments > Estoppel > Judicial Estoppel*
[HN5] Judicial estoppel does not normally apply on appeal to prevent a party from altering an unsuccessful position before the trial court. The doctrine of judicial estoppel is that where a party successfully urges a particular position in a legal proceeding, it is estopped from taking a contrary position in a subsequent proceeding where its interests have changed.

*Patent Law > Claims & Specifications > General Overview*
[HN6] A district court retains discretion to rule from the bench without issuing a formal claim construction order.

*Patent Law > Claims & Specifications > Claim Language > General Overview*
[HN7] The word "a" generally means "one or more" in open-ended claims.

*Patent Law > Claims & Specifications > General Overview*
[HN8] Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification.

**COUNSEL:** Albert L. Jacobs, Jr., Greenberg Traurig LLP, of New York, New York, argued for plaintiff-appellant. With him on the brief were Daniel A. Ladow and Barry J. Schindler.

Robert R. Brunelli, Sheridan Ross P.C., of Denver, Colorado, argued for defendants-appellees, Sonic Trading Management, LLC, et al. With him on the brief was Scott R. Bialecki. Of counsel was Bill Vaslas, Vaslas Lepowsky Hauss & Danke LLP, of Stanten Island, New York.

Claude M. Stern, Quinn Emanuel Urquhart Oliver & Hedges, LLP, of Redwood Shores, California, argued for defendants-appellees, Royalblue Group PLC, et al. With him on the brief was Michael B. Carlinsky and Edward J. DeFranco, of New York, New York.

**JUDGES:** Before MAYER, RADER, and LINN, Circuit Judges. Opinion for the court filed by Circuit Judge RADER. Dissenting opinion filed by Circuit Judge MAYER.

**OPINIONBY:** RADER

**OPINION:** RADER, Circuit Judge.

This appeal stems from two stipulated judgments of non-infringement of *U.S. Patent No. 6,278,982* (the *'982 patent*). Lava Trading, Inc. v. Sonic Trading Mgmt., LLC, 03-CV-9382 (S.D.N.Y. Dec. 8, 2004) [*2] (Royalblue Stipulation); Lava Trading, Inc. v. Sonic Trading Mgmt., LLC, 03-CV-0842 (S.D.N.Y. Dec. 8, 2004) (Sonic Stipulation). Because flaws in the district court's interpretation of claim 9 call the stipulated judgments into question, this court vacates and remands for further proceedings.

I.

Lava Trading, Inc. (Lava) owns the *'982 patent*, which claims software that aggregates and integrates securities trading and order placement information from various alternative trading systems. *'982 patent*, col. 1, ll. 7-13. Lava sued Sonic Trading Management LLC, Joseph Cammarata and Louis Feng Liu (collectively Sonic) and Royalblue group plc, Royalblue financial corporation and Royalblue financial plc (collectively Royalblue) in the United States District Court for the Southern District of New York for infringement of the *'982 patent*, among other state law claims. The defendants denied infringement and counterclaimed for a declaratory judgment that the *'982 patent* is invalid, unenforceable, and not infringed. Royalblue Stipulation, slip op. at 1; Sonic Stipulation, slip op. at 1.

On May 24-26, 2005, the district court held a Markman hearing and issued a claim construction [*3] ruling from the bench. Thereafter, the parties stipulated to final judgments of non-infringement. See Royalblue Stipulation; Sonic Stipulation. Lava appeals the stipulated final judgment orders.

II.

At the onset, the procedural posture of this appeal presents problems. For instance, this court notes that defendants' counterclaims of invalidity and unenforceability are still pending before the trial court. These pending counterclaims put this court in the awkward position of reviewing a claim construction that may implicate issues and claims beyond this court's current reach. See *Int'l Commc'n Materials, Inc. v. Ricoh Co., 108 F.3d 316, 318-19 (Fed. Cir. 1997)* (commenting that, [HN1] when substantial issues remain open on appeal, this court should first "provide the district judge and parties the opportunity to complete the picture.").

In addition, this record on appeal does not supply any meaningful comparison of the accused products to the asserted claims. Without knowledge of the accused products, this court cannot assess the accuracy of the infringement judgment under review and lacks a proper context for an accurate claim construction. [HN2] "While a trial court [*4] should certainly not prejudge the ultimate infringement analysis by construing claims with an aim to include or exclude an accused product or process, knowledge of that product or process provides meaningful context for the first step of the infringement analysis, claim construction." *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co., 2006 U.S. App. LEXIS 7169, *9, 2006 WL 722127, slip op. at 7 (Fed. Cir. 2006)* (citing *SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1118 (Fed. Cir. 1985); Scripps Clinic & Research Found. v. Genentech, Inc., 927 F.2d 1565, 1580 (Fed. Cir. 1991); Multiform Dessicants, Inc. v. Medzan, Ltd., 133 F.3d 1473, 1476-78 (Fed. Cir. 1998); Pall Corp. v. Hemasure Inc., 181 F.3d 1305, 1308 (Fed. Cir. 1999)).* Without the vital contextual knowledge of the accused products or processes, this appeal takes on the attributes of something akin to an advisory opinion on the scope of the '982 patent. The problems with such an appeal, even if within this court's jurisdiction, have been noted in many of the court's prior cases. See, e.g., id. (citing *Bayer AG. v. Biovail Corp., 279 F.3d 1340, 1349 (Fed. Cir. 2002)*; [*5] *CVI/Beta Ventures Inc. v. Tura LP, 112 F.3d 1146, 1160 n.7 (Fed. Cir. 1997))*.

Nonetheless, the court notes that the district court issued a *Rule 54(b)* certification in this case. See *Fed. R. Civ. P. 54(b)*. [HN3] *Rule 54(b)* allows a district court to act as a "dispatcher" and "determine, in the first instance, the appropriate time when each 'final decision' upon 'one or more but less than all' of the claims in a multiple claims action is ready for appeal." *Pause Tech. LLC, v. Tivo Inc., 401 F.3d 1290, 1294 n.2 (Fed. Cir. 2005)*. Thus, while troubled by the pending counterclaims and the absence of a detailed infringement analysis, this court has jurisdiction under *28 U.S.C. § 1295(a)(1) (2000)*.

III.

Turning to infringement, the *'982 patent* claims software that aggregates and integrates information from various systems for buying and selling securities (e.g., stocks, bonds, commodities and derivatives). See *'982 patent*, col. 1, ll. 7-13. The *'982 patent* specifically addresses a problem wherein a user with access to only a subset of these systems confronts substantial fluctuations in prices [*6] amongst these systems for a given security. Id. at col. 3, ll. 6-31. To illustrate, a buyer may not know of lower prices available on another system and/or a seller may not know of higher prices available on another system.

Embodiments of the *'982 patent* solve this problem by aggregating and integrating information from these various systems. One embodiment of the *'982 patent* depicted in Figure 5, for example, aggregates and integrates pricing data for a single security (e.g., DELL):

#NOIMAGE#

Id. at col. 9, ll. 9-25. As shown above, the screen 280 "provides the customer with the ability to take advantage of price variations in a rapidly changing environment." Id. at col. 9, ll. 23-25. Thus, the user is provided with considerable pricing information for a given security and, armed with this information, can make a transaction. The patent also discloses other embodiments.

With this backdrop, [HN4] an infringement analysis is a two-step process: "First, the court determines the scope and meaning of the patent claims asserted. . . [and second,] the properly construed claims are compared to the allegedly infringing device." *Cybor Corp., 138 F.3d at 1454* [*7] (citations omitted). "Step one, claim construction, is a question of law, that we review de novo. Step two, comparison of the claims to the accused device, is a question of fact, and requires a determination that every claim limitation or its equivalent be found in the accused device." *N. Am. Container, Inc. v. Plastipak Packaging, Inc., 415 F.3d 1335, 1344 (Fed. Cir. 2005)* (citations omitted).

A. Waiver/Estoppel

Before this court can construe the claims, however, it must first address a potential waiver/estoppel issue surrounding Lava's current claim construction theory. The waiver/estoppel issue relates to a change in Lava's counsel during proceedings before the district court. Before and during the district court's Markman hearing(s), Lava's initial counsel argued the term "distributing" should be construed as "providing the consolidated or composite single list of open orders for a *given security* . . . to the users of the present invention" - i.e., for only *one* security. Pl. Lava Trading Inc.'s Opening Claim Constr. Br. at 53, Lava Trading Inc. v. Sonic Mgmt.,

LLC, 03-CV-842 & 03-CV-9382 (S.D.N.Y. 2003) (emphasis in original altered). [*8] The district court, however, rejected Lava's proposed definition and adopted a construction requiring the distribution of data for *all* securities in the combined order book. *Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*, 03-CV-9382 & 03-CV-0842, slip op. at 442-43 (S.D.N.Y. Dec. 8, 2004) (Claim Construction Order). Lava then obtained new counsel who advanced Lava's current claim construction theory in a motion for reconsideration. Lava now interprets "distributing" as "providing to traders combined order book information . . . for *one security or more than one security*, as desired by the traders" - i.e., a *subset* of the combined order book. Memorandum In Support Of Lava's Motion For Reconsideration Of A Portion Of The Court's Decision On Claim Constr. at 2, *Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*, 03-CV-842 & 03-CV-9382 (S.D.N.Y. July 29, 2004) (emphasis added). The district court rejected Lava's motion for reconsideration without comment. *Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*, 03-CV-842 & 03-CV-9382 (S.D.N.Y. Aug. 10, 2004).

Seizing on this change in Lava's claim construction theory, the defendants argue that Lava has waived its current [*9] theory and should be estopped from raising it on appeal. The defendants rely on cases in which a party presented an argument on appeal that substantially changed the scope of a prior position taken before a trial court. See, e.g., *NTP, Inc. v. Research in Motion, Ltd., 418 F.3d 1282, 1296 (Fed. Cir. 2005)* (waiver applied because RIM attempted to add a pull technology limitation to the claim that it did not raise before the trial court); *Superguide Corp. v. DirecTV Enters., 358 F.3d 870, 889 (Fed. Cir. 2004)* (waiver applied because SuperGuide stipulated to construction of the term "meet" at the trial court); *Finnigan Corp. v. Int'l Trade Comm'n, 180 F.3d 1354, 1363 (Fed. Cir. 1999)* (waiver applied because Finnigan's petition to the Commission did not point out the relevance of the lack of the term "unstable" in claim 17); *Sage Prods., Inc. v. Devon Indus., Inc., 126 F.3d 1420, 1426 (Fed. Cir. 1997)* (waiver applied because Sage did not present its construction of "elongated slot" to the trial court). Upon review, the court concludes these cases do not govern the facts of this case.

At the outset, [HN5] judicial [*10] estoppel does not normally apply on appeal to prevent a party from altering an unsuccessful position before the trial court. See *RF Del., Inc. v. Pacific Keystone Tech., Inc., 326 F.3d 1255, 1262 (Fed. Cir. 2003)* (quoting *Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1565 (Fed. Cir. 1996)*) ("The doctrine of judicial estoppel is that where a party *successfully* urges a particular position in a legal proceeding, it is estopped from taking a contrary position in a subsequent proceeding where its interests have changed.") (emphasis in original). Thus, estoppel would not bar Lava from departing from a claim construction theory unsuccessfully advocated before the trial court.

Moreover, on the limited record on appeal, this court cannot discern any practical difference between Lava's two theories. In response to both theories, the defendants counter that the intrinsic record limits the claims to a system that distributes and displays information for *all* securities. Thus, the slight change in Lava's theory has not resulted in any meaningful change in the defendants' position or evidence relied upon by the defendants at the trial court or on appeal. The [*11] absence of any practical differences in the case reinforces this court's determination that Lava has not waived its current theory. See *Harris Corp. v. Ericsson Inc., 417 F.3d 1241, 1252 (Fed. Cir. 2005)* (waiver did not apply because the technical distinction in Ericsson's argument did not make any practical difference in the case).

B. The Disputed Limitations

On the merits, the parties dispute the meaning of two related limitations in the *'982 patent*, "distributing" and "displaying" a combined order book to a trader. Independent claim 9 recites both limitations:

> 9. A data processing method for providing trading information to traders in a security or commodity from two or more alternative trading systems, comprising the steps of:
>
> receiving order book information from each participating alternative trading system in order book information protocols native to the particular alternative trading system;
>
> converting the information to a common system order book protocol;
>
> integrating the order book information from each alternative trading system into a single order book;
>
> distributing the combined order book to the traders in the common [*12] system order book protocol; and
>
> displaying said combined order book to the traders.

*'982 patent*, col. 14, ll. 1-14 (emphasis added). The district court construed the disputed limitations during a

Markman hearing without issuing a formal claim construction order. Instead, the district court stated its claim construction from the bench at the close of the hearing. [HN6] A district court retains discretion to rule in this manner, but in this instance the trial court's oral recitation provides a very sparse explanation of the findings and reasoning supporting the claim construction.

Regarding the distributing limitation, the district court concluded that it "simply means distributing the combined order book -- that means in terms of the specification the consolidated order book -- pertaining to all orders from all ECN members." Claim Construction Order at 442-43. In other words, the distributing limitation requires the distribution of the whole combined order book to the trader. The district court similarly construed the displaying limitation, concluding the system must display the whole combined order book for the trader. Upon review, the district court's interpretation [*13] of the "distributing" and "displaying" limitations conflicts with the plain meaning of claim 9 and excludes embodiments disclosed in the specification.

According to its preamble, claim 9 "provides trading information to traders in a security or commodity" rather than "all" securities or commodities. '982 patent, col. 14, ll. 1-2 (emphasis added). By selecting the word "a" instead of "all," the Applicant set forth a method wherein the traders may request and receive information for only a subset of the securities (i.e., one or more). See *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000) [HN7] (the word "a" generally means "one or more" in open-ended claims). Thus, the language of the claim itself does not require the system to distribute or display the whole combined order book.

Furthermore, the specification discloses embodiments that distribute and display information for only a subset of the combined order book. As an example, the specification describes one embodiment in which

> the CCS 100 collects orders from each ECN, (ECN150 and ECN251) and electronic exchanges (NASDAQ 52), distributes a composite order book to the customers according [*14] to each customer's memberships in the ECNs and rights to use an electronic exchange. Thus customer 10 may only receive a subset of the complete order book compiled by the CCS 100 corresponding to where the customer 10 is permissioned.

'982 patent, col. 6, ll. 59-66 (emphasis added). n1 According to this embodiment the customer only receives a "subset" of the combined/complete order book from the system. Thus, this embodiment must also make the system capable of "distributing" less than the whole combined order book to the customer - i.e., a subset of the combined order book.

> n1 While NASDAQ information comes from a particular electronic exchange rather than an alternative trading system, claim 9 is an open-ended claim that encompasses more than simply information from alternative trading systems. See *U.S. Patent No. 6,278,982*, col. 2, ll. 16-29, col. 14, l. 3.

The specification also discloses an embodiment in which bid and offer prices for Dell, a single security, are displayed on a market data screen:

> Fig. 4 depicts a typical market data screen 250 of the present invention. Such screens can be customized as to data or order to conform [*15] to the customer's trading style. . . . The security under review is Dell Computer Corp. It was elected by inserting its ticker symbol DELL in space 252.

'982 patent, col. 8, ll. 47-54. This embodiment is further described in reference to Figure 5:

> FIG. 5 shows pricing data that would be available to a customer of the present invention. Here, space 251 has been checked on screen 280 and ECN information integrated into the display. Screen 280 shows not only NASDAQ Level II data but also the full order book for the following three ECNs: Instinet, Island and Strike. For these ECN's, there are multiple bids and offers available for DELL, as opposed to just the best bid and offer. . . . Screen 280, thus, offers access to a greater amount of pricing information (thus greater liquidity), consolidated in one display. Thus, the entire order books of all ECN members and the market makers' bids and offers are consolidated into a single informative screen for any particular security. This additionally provides the customer with the ability to take advan-

tage of price variations in a rapidly changing environment.

Id. at col. 9, ll. 9-25. Hence, the specification discloses [*16] embodiments that distribute and display information for only a subset of the securities (e.g., one in the embodiment of Figures 4 and 5) in the combined order book.

Reading the claim language and these embodiments in the specification, one of ordinary skill in this art would not limit the distributing and displaying limitations in the manner suggested by the district court. See *Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005)* (en banc)[HN8] ("Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."). Rather, one of ordinary skill in the art would construe the distributing and displaying limitations as covering an embodiment that distributes and displays information for only a subset of the combined order book.

For at least these reasons, this court sets aside the district court's claim construction. Because the final judgment orders are premised on the flawed claim construction, they too must be set aside. The case is remanded to the district court for further proceedings consistent [*17] with this opinion.

COSTS

Each party shall bear its own costs.

VACATED and REMANDED

**DISSENTBY:** MAYER

**DISSENT:** MAYER, Circuit Judge, dissenting.

Because there was no final judgment from which to appeal in the district court due to the interrelatedness of the infringement claim and the unresolved unenforceability counterclaim, I would dismiss this case for lack of jurisdiction. Therefore, I dissent.

The decision today is yet another example of the unfortunate consequences of *Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995)* (en banc), *Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448 (Fed. Cir. 1998)* (en banc), and *Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005)* (en banc), which cemented this court's jurisprudence with respect to claim construction as being purely a matter of law subject to de novo review. Because claim construction is treated as a matter of law chimerically devoid of underlying factual determinations, there are no "facts" on the record to prevent parties from presenting claim construction one way in the trial court and in an entirely different way in this court. By not dismissing this case, [*18] we issue a decision based on an undeveloped record. We set ourselves up to have to decide claim construction again later, which could well differ from the ruling today. Furthermore, allowance of an appeal of the trial court's perfunctory, offhand ruling from the bench, for all intents and purposes allows an interlocutory appeal of claim construction, which portends chaos in process.

LEXSEE 2006 U.S. DIST. LEXIS 10102

MEDTRONIC NAVIGATION, INC., f/k/a SURGICAL NAVIGATION TECHNOLOGIES, INC., MEDTRONIC SOFAMOR DANEK, INC., SOFAMOR DANEK HOLDINGS, INC. ST. LOUIS UNIVERSITY, and TRUSTEES OF DARTMOUTH UNIVERSITY, Plaintiffs, v. BRAINLAB MEDIZINISCHE COMPUTERSYSTEMS GMBH, BRAINLAB AG, a German corporation, BRAINLAB USA, INC., a Delaware corporation, and BRAINLAB, INC., a Delaware corporation Defendants.

Civil Action No. 98-cv-01072-RPM

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

2006 U.S. Dist. LEXIS 10102

February 24, 2006, Decided
February 24, 2006, Filed

**PRIOR HISTORY:** *Medtronic Navigation v. Brainlab Medinzinische Computersystems Gmbh,* 2005 U.S. Dist. LEXIS 38256 (D. Colo., Sept. 8, 2005)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff patent holders sued defendant competitors, alleging patent infringement regarding image-guided surgery products. A jury found infringement, found in favor of the patent holders as to invalidity challenges, and awarded reasonable royalty damages. The competitors moved for judgment as a matter of law regarding infringement. The patent holders moved for prejudgment interest and a permanent injunction.

**OVERVIEW:** The patents involved acoustic tracking systems, while the accused products involved optical tracking. The court determined that the competitors were entitled to judgment as a matter of law. The jury's finding of infringement of the 454 patent was set aside because the amendment based prosecution history precluded the application of the doctrine of equivalents (DOE) to the accused products. The court found that (1) the patent holders added the term "reference means" in response to rejections under 35 U.S.C.S. § § 102 and 112, and this narrowing amendment was a substantial one related to patentability, (2) the inventor foresaw optical tracking at the time of the amendment, (3) the amendment could not be deemed tangential, and (4) regarding equivalence, the acoustic tracking and the passive optical tracking units did not perform the function in a substantially similar way. Regarding the 101 and 318 patents, (1) there was no literal infringement, because the accused products located objects in a coordinate system that was based on camera calibration done without use of the Mayfield star, and (2) there was no infringement under the DOE.

**OUTCOME:** The court granted the competitors' motions for judgment as a matter of law. The court entered judgment that the patents were valid but not infringed by the accused products. The court did not address the remaining motions.

**LexisNexis(R) Headnotes**

*Patent Law > Infringement Actions > Prosecution History Estoppel > Fact & Law Issues*
[HN1] In the patent context, questions related to the application and scope of prosecution history estoppel are matters to be determined by the court.

*Patent Law > Infringement Actions > Prosecution History Estoppel > Abandonment & Amendment*
[HN2] The doctrine of prosecution history estoppel limits the doctrine of equivalents when an applicant makes a narrowing amendment for purposes of patentability, or clearly and unmistakably surrenders subject matter by arguments made to an examiner.

*Patent Law > Infringement Actions > Prosecution History Estoppel > Prosecution-Related Arguments & Remarks*

Case 1:99-cv-00309-GMS    Document 422-4    Filed 05/04/2006    Page 14 of 17

Page 2
2006 U.S. Dist. LEXIS 10102, *

[HN3] To invoke argument-based prosecution history estoppel, the prosecution history must evince a clear and unmistakable surrender of subject matter. The test is an objective one. The inquiry is whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter.

*Patent Law > Infringement Actions > Prosecution History Estoppel > Abandonment & Amendment*
[HN4] A narrowing amendment made to satisfy any requirement of the Patent Act gives rise to a presumption that the patentee surrendered the territory between the original claim and the amended claim. When the patentee originally claimed the subject matter alleged to infringe but then narrowed the claim in response to a rejection, he may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent. His decision to submit an amended claim is taken as a concession that the invention as patented does not reach as far as the original claim.

*Patent Law > Infringement Actions > Prosecution History Estoppel > Abandonment & Amendment*
[HN5] The first question in a prosecution history estoppel inquiry is whether an amendment filed in the Patent and Trademark Office has narrowed the literal scope of a claim. A narrowing amendment may occur when a pre-existing claim limitation is narrowed by amendment or when a new claim limitation is added by amendment.

*Patent Law > Infringement Actions > Prosecution History Estoppel > Abandonment & Amendment*
[HN6] In the context of a prosecution history estoppel inquiry, if the amendment was a narrowing one, then the second question is whether the reason for that amendment was a substantial one relating to patentability.

*Evidence > Inferences & Presumptions > Rebuttal of Presumptions*
*Patent Law > Infringement Actions > Doctrine of Equivalents > Limits on Equivalence*
*Patent Law > Infringement Actions > Prosecution History Estoppel > Abandonment & Amendment*
[HN7] In the context of a prosecution history estoppel inquiry, the third question addresses the scope of the subject matter surrendered by the narrowing amendment. There is a presumption that the patentee surrendered all territory between the original claim limitation and the amended claim limitation. The patentee may overcome the presumption by showing that at the time of the amendment one skilled in the art could not reasonably be expected to have drafted a claim that would have literally encompassed the alleged equivalent. The patentee may do so by demonstrating that the equivalent would have been unforeseeable at the time of the amendment, that the rationale underlying the amendment bore no more than a tangential relation to the equivalent in question, or that there was some other reason suggesting that the patentee could not reasonably expected to have described the insubstantial substitute in question. If the patentee fails to rebut the presumption, then prosecution history estoppel bars the patentee from relying on the doctrine of equivalents for the accused element.

*Patent Law > Infringement Actions > Doctrine of Equivalents > Limits on Equivalence*
*Patent Law > Infringement Actions > Prosecution History Estoppel > Abandonment & Amendment*
[HN8] In the context of a prosecution history estoppel inquiry, the first criterion requires a patentee to show that an alleged equivalent would have been unforeseeable at the time of the amendment and thus beyond a fair interpretation of what was surrendered. The relevant time for evaluating whether the alleged equivalent was foreseeable is when the narrowing amendment was made.

*Patent Law > Infringement Actions > Prosecution History Estoppel > Abandonment & Amendment*
[HN9] In the context of a prosecution history estoppel inquiry, a plaintiff may rebut the Festo presumption by showing that the reason for the narrowing amendment was peripheral, or not directly relevant, to the alleged equivalent. This inquiry focuses on the patentee's objectively apparent reason for the narrowing amendment.

*Civil Procedure > Trials > Judgment as Matter of Law > Postverdict Judgments*
[HN10] A movant's burden under *Fed. R. Civ. P. 50(b)* is to show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied by the jury's verdict cannot in law be supported by those findings. "Substantial" evidence is such relevant evidence from the record taken as a whole as might be acceptable by a reasonable mind as adequate to support the finding under review. In reviewing a motion under Rule 50(b), the trial court must consider all the evidence in a light most favorable to the non-mover, must draw reasonable inferences favorable to the non-mover, must not determine the credibility of witnesses, and must not substitute its choice for that of the jury between conflicting elements in the evidence. The motion should be granted only when the court is

Case 1:99-cv-00309-GMS  Document 422-4  Filed 05/04/2006  Page 15 of 17

Page 3
2006 U.S. Dist. LEXIS 10102, *

convinced that reasonable persons could not have arrived at the conclusion reached by the jury, based upon the evidence before it.

*Patent Law > Infringement Actions > Doctrine of Equivalents > Limits on Equivalence*
[HN11] In the patent context, no objective legal test separates pioneers from non-pioneers, but one indicia of a pioneer is a lack of extensive prior art to confine and cabin their claims.

*Patent Law > Infringement Actions > Doctrine of Equivalents > Elements > Equivalence*
[HN12] The doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes. Insubstantiality may be shown by the function/way/result or "triple identity" test. That test focuses on the function served by a particular claim element, the way that element serves that function, and the result obtained by that element. The doctrine of equivalence must be applied to individual elements of the claim, not to the invention as a whole.

*Patent Law > Infringement Actions > Doctrine of Equivalents > General Overview*
[HN13] The doctrine of equivalence is designed to do equity; it is not designed to permit a claim expansion that would encompass more than an insubstantial change.

*Patent Law > Infringement Actions > Doctrine of Equivalents > Elements > Equivalence*
[HN14] In the patent context, that persons skilled in the art would have known of the interchangeability of claimed with unclaimed elements is a factor in considering equivalence, yet the accused devices must still perform substantially the same way to obtain the same result.

*Patent Law > Claims & Specifications > Claim Language > General Overview*
*Patent Law > Infringement Actions > General Overview*
[HN15] Determining whether a means-plus-function claim limitation is met literally requires comparison of function and a comparison of the accused structure with the structure disclosed in the patent for performing the recited function.

*Patent Law > Claims & Specifications > Claim Language > General Overview*
*Patent Law > Infringement Actions > Doctrine of Equivalents > Elements > Equivalence*
[HN16] A means-plus-function limitation may be present in an accused product literally or under the doctrine of equivalents. Equivalence of a means-plus-function limitation is shown by proof that the accused product contains a structure that performs an equivalent function to the one recited in the claim limitation. Under 35 U.S.C.S. § 112, para. 6, the accused device must perform the identical function as recited in the claim element while the doctrine of equivalents may be satisfied when the function performed by the accused device is only substantially the same.

*Evidence > Testimony > Experts > General Overview*
*Patent Law > Infringement Actions > Doctrine of Equivalents > General Overview*
[HN17] Expert testimony is not required to prove infringement under the doctrine of equivalents. However, the United States Court of Appeals for the Federal Circuit has cautioned that: A patentee must provide particularized testimony and linking argument as to the "insubstantiality of the differences" between the claimed invention and the accused device or process, or with respect to the function, way, result test when such evidence is presented to support a finding of infringement under the doctrine of equivalents. Such evidence must be presented on a limitation-by-limitation basis. Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice.

COUNSEL: [*1] Surgical Navigation Technologies, Inc., a Delaware corporation, Plaintiff: Conor Fitzgerald Farley, Lee Frederick Johnston, James Edward Hartley, Holland & Hart, LLP-Denver CO, Denver, CO; J. James Li, Krista Leigh Vink Venegas, Vera M. Elson, McDermott, Will & Emery-Palo Alto, Palo Alto, CA.

For Sofamor Danek Group, Inc., an Indiana corporation, Plaintiff: J. James Li, McDermott, Will & Emery-Palo Alto, Palo Alto, CA; James Edward Hartley, Holland & Hart, LLP-Denver CO, Denver, CO.

For Sofamor Danek Holdings, Inc., a Delaware corporation, Plaintiff: Conor Fitzgerald Farley, John C. Tredennick, Jr., Lee Frederick Johnston, James Edward Hartley, Holland & Hart, LLP-Denver CO, Denver, CO; J. James Li, Krista Leigh Vink Venegas, Vera M. Elson, McDermott, Will & Emery-Palo Alto, Palo Alto, CA; Kurt A. Luther, Leslie I. Bookoff, Finnegan, Henderson, Farabow Garrett & Dunner-DC, Washington, DC.

Case 1:99-cv-00309-GMS    Document 422-4    Filed 05/04/2006    Page 16 of 17

Page 4
2006 U.S. Dist. LEXIS 10102, *

For Medtronic Sofamor Danek, Inc., an Indiana corporation, Plaintiff: Conor Fitzgerald Farley, Conor Fitzgerald Farley, John C. Tredennick, Jr., Lee Frederick Johnston, James Edward Hartley, Holland & Hart, LLP-Denver CO, Denver, CO; J. James Li, Vera M. Elson, McDermott, Krista Leigh [*2] Vink Venegas, Will & Emery-Palo Alto, Palo Alto, CA.

For Medtronic Navigation, Inc., formerly known as Surgical Navigation Technologies, Inc., Plaintiff: James Edward Hartley, Conor Fitzgerald Farley, Holland & Hart, LLP-Denver CO, Denver, CO; Christopher D. Bright, McDermott, Will & Emery-Irvine CA, Irvine, CA.

For Darmouth College, Trustees of, Plaintiff: James Edward Hartley, Conor Fitzgerald Farley, Holland & Hart, LLP-Denver CO, Denver, CO.

For St. Louis University, a Missouri corporation, Plaintiff: James Edward Hartley, Conor Fitzgerald Farley, Lee Frederick Johnston,Holland & Hart, LLP-Denver CO, Denver, CO; J. James Li, Krista Leigh Vink Venegas, Vera M. Elson, McDermott, Will & Emery-Palo Alto, Palo Alto, CA; David W. Harlan, Senniger Powers St. Louis, MO.

For BrainLAB Medizinishche Computersystems GmbH, a German corporation, BrainLAB USA, Inc., a Delaware corporation, Defendants: James Edward Hartley, Holland & Hart, LLP-Denver CO, Denver, CO; Jay R. Campbell, John J. Del Col, Joshua M. Ryland, Renner, Otto, Boisselle & Sklar, LLP, Cleveland, OH; Kyle B. Fleming, Electrolux, Cleveland, OH; L. Andrew Cooper, Marc David Flink, Baker & Hostetler-Colorado, [*3] Denver, CO; Thomas H. Shunk, Baker & Hostetler-Ohio, Cleveland, OH.

For BrainLAB AG, a German corporation, Defendant: James Edward Hartley, Holland & Hart, LLP-Denver CO, Denver, CO; Jay R. Campbell, John J. Del Col, Joshua M. Ryland, Renner, Otto, Boisselle & Sklar, LLP, Cleveland, OH; Kyle B. Fleming, Electrolux, Cleveland, OH; Marc David Flink, Baker & Hostetler-Colorado, Denver, CO.

For BrainLAB, Inc., a Delaware corporation, Defendant: James Edward Hartley, Holland & Hart, LLP-Denver CO, Denver, CO; Jay R. Campbell, John J. Del Col, Joshua M. Ryland, Renner, Otto, Boisselle & Sklar, LLP, Cleveland, OH; Kyle B. Fleming, Electrolux, Cleveland, OH; Marc David Flink, Baker & Hostetler-Colorado, Denver, CO; Thomas H. Shunk, Baker & Hostetler-Ohio, Cleveland, OH.

For BrainLAB Medizinishche Computersystems GmbH, BrainLAB USA, Inc., Counter Claimants: Jay R. Campbell, Renner, Otto, Boisselle & Sklar, LLP, Cleveland, OH; L. Andrew Cooper, Marc David Flink, Baker & Hostetler-Colorado, Denver, CO; Thomas H. Shunk, Baker & Hostetler-Ohio, Cleveland, OH.

For Surgical Navigation Technologies, Inc., Counter Defendant: James Edward Hartley, Holland & Hart, LLP-Denver CO, Denver, [*4] CO; John C. Tredennick, Jr., Holland & Hart, LLP-Denver Colorado, Denver, CO.

For Sofamor Danek Group, Inc., Counter Defendant: John C. Tredennick, Jr., Holland & Hart, LLP-Denver Colorado, Denver, CO.

For St. Louis University, Counter Defendant: James Edward Hartley, Holland & Hart, LLP-Denver CO, Denver, CO.

For BrainLAB, Inc., Counter Claimant: Thomas H. Shunk, Baker & Hostetler-Ohio, Cleveland, OH.

For Surgical Navigation Technologies, Inc., Counter Defendant: John C. Tredennick, Jr., Holland & Hart, LLP-Denver Colorado, Denver, CO.

For St. Louis University, Counter Defendant: John C. Tredennick, Jr., Holland & Hart, LLP-Denver Colorado, Denver, CO.

For Sofamor Danek Holdings, Inc., Counter Defendant: James Edward Hartley, Holland & Hart, LLP-Denver CO, Denver, CO; John C. Tredennick, Jr., Holland & Hart, LLP-Denver Colorado, Denver, CO; Kurt A. Luther, Leslie I. Bookoff, Finnegan, Henderson, Farabow Garrett & Dunner-DC, Washington, DC.

For Medtronic Sofamor Danek, Inc., Counter Defendant: James Edward Hartley, Holland & Hart, LLP-Denver CO, Denver, CO; John C. Tredennick, Jr., Holland & Hart, LLP-Denver Colorado, Denver, CO.

**JUDGES:** Richard P. Matsch, [*5] Senior District Judge.

**OPINIONBY:** Richard P. Matsch

**OPINION:**

MEMORANDUM OPINION AND ORDER ON POST-TRIAL MOTIONS

Senior District Judge Richard P. Matsch

Case 1:99-cv-00309-GMS    Document 422-4    Filed 05/04/2006    Page 17 of 17

Page 5
2006 U.S. Dist. LEXIS 10102, *

Trial to a jury commenced on September 12, 2005. At trial the plaintiffs (collectively "Medtronic") claimed that image-guided surgery products manufactured and sold by the defendants (collectively "BrainLAB") infringe claim 14 of *U.S. Patent No. 5,383,454* ("the Bucholz *454 patent*"), claim 1 of *U.S. Patent No. 4,722,056* ("the Roberts *056 patent*"), claim 1 of *U.S. Patent No. 5,389,101* ("the Heilbrun *101 patent*"), and claim 1 of *U.S. Patent No. 5,603,318* ("the Heilbrun *318 patent*"). On September 30, 2005, the jury returned a special verdict finding that BrainLAB's VectorVision Classic, VectorVision<2>, VectorVision Compact, VectorVision Sky, Kolibri, and BrainSuite products infringe claim 14 of the Bucholz *454 patent* under the doctrine of equivalents ("DOE"). The jury found that these same products infringe claim 1 of the Roberts *056 patent* under the DOE. The jury found that BrainLAB's VectorVision Classic, VectorVision<2>, VectorVision Compact, VectorVision Sky, Kolibri, and BrainSuite and ExacTrac products infringe claim 1 of the Heilbrun [*6] *101 patent*, both literally and under the DOE. As to claim 1 of the Heilbrun *318 patent*, the jury found infringement, both literal and under the DOE, by BrainLAB's VectorVision Classic, VectorVision<2>, VectorVision Compact, VectorVision Sky, Kolibri, and BrainSuite products, but not the ExacTrac product. n1 The jury found in favor of Medtronic and against BrainLAB on BrainLAB's invalidity challenges to the Heilbrun patents. The jury awarded reasonable royalty damages of fifty-one million dollars, allocating fifty million dollars for combined infringement of the Bucholz and Roberts patents, and one million dollars for infringement of the Heilbrun patents.

n1 At trial the term "VectorVision" was used by the parties to refer generally to BrainLAB's navigational surgery products which are the VectorVision Classic, VectorVision<2>, VectorVision Compact, VectorVision Sky, Kolibri, and BrainSuite systems, and various software applications for those products. BrainLAB's ExacTrac, a radiotherapy product, is not included within the VectorVision category. (*See* Tr. at 940:7 -- 941:4 (Taylor)).

[*7]

The following motions are now before the court: (1) the defendants' motion for judgment as a matter of law, pursuant to *Fed. R. Civ. P. 50(b)*, that defendants do not infringe the Bucholz *454 patent*; (2) the defendants' motion for judgment as a matter of law that defendants do not infringe the Roberts *056 patent*; (3) the defendants' motion for judgment as a matter of law that defendants do not infringe the Heilbrun *101* and *318 patents*; (4) the defendants' motion for a new trial; (5) the plaintiffs' motion for entry of judgment and request for prejudgment interest, and (6) the plaintiffs' motion for permanent injunction.

*Defendants' motions for non-infringement of the Bucholz 454 patent*

Before trial, BrainLAB moved for a ruling under *Fed. R. Civ. P. 56* that the Bucholz *454 patent* could not be infringed under the DOE because of argument based prosecution history. At trial, the defendants moved for judgment as a matter of law under *Rule 50(a)*, contending that the DOE was inapplicable to Bucholz because of amendment based prosecution history. The court declined ruling and submitted the claim to [*8] the jury, deciding that economy of effort would be served by proceeding to verdict on all of the factual issues. These legal issues are now ripe for decision, based on the evidentiary record made at trial and this court's Rulings on Claim Construction Issues, entered on September 29, 2004. The jury's finding of infringement of this patent must now be set aside because the prosecution history precludes the application of the DOE to the defendants' products. [HN1] Questions related to the application and scope of prosecution history estoppel are matters to be determined by the court. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 344 F.3d 1359, 1368 (Fed. Cir. 2003)*.

*Prosecution History Estoppel*

[HN2] "The doctrine of prosecution history estoppel limits the doctrine of equivalents when an applicant makes a narrowing amendment for purposes of patentability, or clearly and unmistakably surrenders subject matter by arguments made to an examiner." *Aquatex Indus., Inc. v. Techniche Solutions, 419 F.3d 1374, 1382 (Fed. Cir. 2005)* (quoting *Salazar v. Procter & Gamble Co., 414 F.3d 1342, 1344 (Fed. Cir. 2005))*. BrainLAB asserts that argument-based [*9] prosecution history estoppel limits the claimed method to one using active emitters on the patient and the probe. BrainLAB also argues that amendment-based prosecution history estoppel precludes Medtronic from claiming that surgical navigation systems having optical tracking units are equivalent to those with acoustic tracking units.

The relevant portions of the prosecution history of the Bucholz *454 patent* are found in Exhibit A-8. The filing date of the *454 patent* is October 19, 1990. On that date Dr. Bucholz' assignee, St. Louis University, submitted 25 claims in a patent application. (Ex. A-8 at 7). On November 18, 1991, the examiner rejected the claims on three separate grounds. The first ground was failure to meet the written description requirement of *35 U.S.C. § 112*, P 1. The examiner stated that the specification failed to adequately teach how to make and use the claimed invention. (*Id.* at 55). The examiner also rejected the