# HONEYWELL'S CLOSING STATEMENT

# PART 1 OF 2

Honeywell vs.
Hamilton Sundstrand
C.A. No. 99-309-GMS

Honeywell's Closing Statement
May 9, 2006

# No Dispute: Unforeseeability

- No surge control system existed in 1982-83 that had the combination of features (however they are defined) found in the APS 3200 surge control system                (HON ¶168.)

- No surge control system existed in 1982-1983 that had the APS 3200's DELPQP flow related parameter.                (HON ¶169.)

- No surge control system existed in 1982-83 that used IGV position in the same way as the APS 3200 surge control system                (HON ¶170.)

2

# No Dispute: Unforeseeability

- L1011 APU had the closest surge control system that existed in 1982-83, although it differed significantly from the equivalent APS 3200 system in that it:

  – Did not measure IGV position as an input to the surge control system

  – Was pneumatic, rather than electronic

  – Measured static pressure in different locations

  – Used a shock switch rather than a lock-out feature

(HON ¶¶176-182.)

3

# No Dispute: Unforeseeability

- L1011 APU was state-of-the-art in surge control systems in 1982-83

  – Neither Sundstrand nor its customer Lockheed saw any need to change the design all the way through 1985.

  (HON ¶ 177.)

4

# Disputed Issues

- Whether the "inlet guide vane limitation" was a shorthand term used by the Federal Circuit *(see 370 F.3d at 1131, n. 2)*

  - **Yes. The Federal Circuit did not rewrite the claim language.**

- Whether the actual claim language is what controls in this proceeding

  - **Yes. The three disputed claims all contain different language regarding the use of inlet guide vanes.**

    - Sunstrand admits each claim requires "a specific use of IGV position in the surge control system" (HSC ¶58.)

5

# Issue Before the Court on Remand

Whether Honeywell has shown

"that the amendment does not

surrender *the particular*

*equivalent in question.*"

*Festo*, 535 U.S. at 740.

# Disputed Issues

- What is the "particular equivalent" the jury found infringing?

  — **The APS 3200 surge control system's unique DELPQP flow-related parameter and particular use of IGV position as part of the high-flow logic.**

  (HON ¶66.)

  — The incorporation of IGV position in a surge control system to efficiently control surge <u>or</u> the use of IGV position so that the flow-related parameter is a direct function function of IGV position.

  (HSC ¶2.)

7

8

# The 'Particular Equivalent in Question" Is …

- The APS 3200 surge control system's

  – Unique DELPQP flow-related parameter, and

  – Novel use of inlet guide vane position (e.g., high flow logic)

- This is the particular equivalent that the 2001 jury trial was about

# Disputed Issue

- Whether the infringement issue of "particularized testimony" is before the Court on Remand?

  – **No. That issue was resolved below.**

- Even if it were, Honeywell provided such evidence at trial, as found by this Court.

  (HON ¶¶ 203-04.)

# 2001 Trial Record

- Honeywell presented evidence under both Function/Way/Result and Insubstantial Differences tests  (HON ¶¶ 67, 69.)

  – Honeywell relied on its expert Muller and also Sundstrand expert Shinskey to establish the equivalence of the APS 3200 surge control system  (HON ¶¶ 67, 69.)

- Jury charged on both Function/Way/Result and Insubstantial Differences  (Trial Tr. 2440-43.)

- Court in post-trial opinion considered both types of evidence and affirmed jury's decision  (HON ¶ 67; HSC ¶ 104.)

# Disputed Issue

- Sundstrand argues that Honeywell's equivalence evidence did not include the inverted-V/double solution characteristic of the APS 3200.

  (HSC ¶96.)

  – This is not correct.

  – Honeywell proved the equivalence of the APS 3200's high-flow/low-flow logic and its use of IGV position in response to the inverted-V/double solution.

  (HON ¶¶9-10, 56-58, 203-06.)

  – Sundstrand concedes that the focus of the 2001 trial was on the APS 3200's use of the high-flow/low-flow logic.

  (HSC ¶¶ 93-95, 97.)

11

# Muller Testimony at 2001 Trial

## Sundstrand Claims:

At the 2001 trial Muller "made no mention" of the inverted v/ double solution characteristics"

(HSC ¶96.)

## The Reality:

"Because of the way that Sundstrand has chosen to measure flow, they end up with **a curve which has kind of a funny characteristic to it.** And that characteristic is such that they have to measure what the inlet guide vane position is in order to control the surge control system, so that they can determine when it's what they term something like **high flow and low flow.**"

(2001 Trial Tr. at 629 (Muller).)

# Honeywell's JMOL Opposition Brief

## Sundstrand Claims:

Honeywell in its JMOL brief "made no mention of the use of IGV position to address the double-solution characteristic as being equivalent to the IGV limitations."

(HSC ¶102)

## The Reality:

The "way" the APS 3200 meets the DOE is that "inlet guide vane position is used to adjust the high flow/low flow set point of the control system."

(HW JMOL Opp. At 10.)

"'[I]t is by measuring the position of the inlet guide vanes that the APS 3200 surge control system insures that it does not go into low-flow mode when it actually should be in high-flow mode.'"

(HW JMOL Opp. At 12 (citing Shinskey).)

# Disputed Issues

- Whether DELPQP is "unique" or just any $\Delta P/P$

  – Sundstrand told the jury it was "unique" to avoid (1) literal infringement and (2) enhanced damages

  (HON ¶¶147-154.)

  – Sundstrand is judicially estopped

  (HON ¶¶ 144-56.)

  – In fact it is "unique"

- No prior surge control system measured static pressure in the same locations

  (HON ¶169.)

# Judicial Estoppel Doctrine

Judicial estoppel "prohibit[s] parties from deliberately changing positions according to the exigencies of the moment."

*New Hampshire v. Maine, 535 U.S. 742, 750 (2001)*

# Sundstrand Does Not Apologize for Its Inconsistency

- Sundstrand neither denies nor explains away its complete about-face.

- Rather, it wrongly claims that judicial estoppel does not apply to it because it did not prevail at the 2001 trial.

- It prevailed on (1) no literal infringement and (2) no enhanced damages.

# Disputed Issues

- Whether it is the "features" of the alleged equivalent or the "particular equivalent" that must be "readily known"

  (HSC¶ 4 vs. *Festo*, 535 U.S. at 740)

  – No case refers to the individual "features" of the equivalent

  – Every case refers to the "particular equivalent" as that combination of elements found/alleged to be the equivalent

# Only "Readily Known Equivalents" Can be Foreseeable

- The Supreme Court has held that the expectation upon the patentee is to draft claims encompassing "*readily known* equivalents."

  *Festo*, 535 U.S. at 740 (emphasis added).

- "The Supreme Court ties foreseeability to whether the applicant would have been expected *to know of*, and thus properly claim, the proposed equivalent at the time of the amendment."

  *Smithkline Beecham Corp. v. Excel Pharm. Inc.,* 356 F.3d 1357, 1364 (Fed. Cir. 2004) (emphasis added).

## Sundstrand's Use of Hindsight Improper and Unavailing

The Supreme Court and Federal Circuit have guarded against "the tempting but forbidden zone of hindsight" from entering the foreseeability analysis by specifying that the inquiry is an objective one, "asking whether the alleged equivalent would have been unforeseeable to one of ordinary skill in the art *at the time of the amendment*."

*Festo*, 344 F.3d at 1369 (emphasis added);

*see also Festo*, 535 U.S. at 740.

# Obviousness Standard Applies to Foreseeability

- "The concept of foreseeability is akin to obviousness."

*Johnson & Johnson Assoc., Inc. v. R.E. Service Co., 285 F. 3d 1046, 1063 (Fed. Cir. 2002) (Lourie, J., concurring)*