THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE

| | |
|---|---|
| HONEYWELL INTERNATIONAL INC., and HONEYWELL INTELLECTUAL PROPERTIES INC., <br><br> Plaintiffs, <br><br> v. <br><br> HAMILTON SUNDSTRAND CORPORATION, <br><br> Defendant. | Civil Action No. 99-309-GMS |

### DEFENDANT HAMILTON SUNDSTRAND CORPORATION'S BILL OF COSTS

Pursuant to Fed. R. Civ. P. 54, L.R. 54.1 and 28 U.S.C. §1924, Defendant Hamilton Sundstrand Corporation ("HSC") submits this Bill of Costs, supported by the accompanying Declarations of Richard D. Kirk, Steven Hess, and Daniel Winter. By Stipulation and Order filed June 10, 2008 (D.I. 439) and approved June 11, 2008, the parties agreed and the Court ordered that a Bill of Costs filed on or before July 21, 2008 would be timely.

1. **HSC Is Indisputably the Prevailing Party**

HSC is the prevailing party in this patent infringement case because it obtained a judgment of non-infringement from the Court that was later affirmed on appeal. Therefore, HSC is entitled to recover its taxable costs pursuant to Fed.R.Civ.P. 54(d)(1).

Local Rule 54.1(c) says, in relevant part, "The defendant is the prevailing party upon a dismissal or summary judgment or other termination of the case without judgment for the plaintiff on the merits." A recitation of the chronology of this case shows why HSC is, indeed, the prevailing party.

On May 17, 1999, Honeywell International, Inc. and Honeywell Intellectual Properties, Inc. ("Honeywell")[1] sued HSC[2] alleging that HSC infringed two of Honeywell's patents, both literally and under the doctrine of equivalents. HSC answered the complaint and counterclaimed seeking a declaratory judgment of non-infringement, invalidity and unenforceability.[3] On February 16, 2001, after a two week trial, a jury returned a verdict (D.I. 264) stating (1) that HSC did not infringe Honeywell's patent literally, (2) that HSC did infringe Honeywell's patent under the doctrine of equivalents, (3) that for its infringement HSC should pay Honeywell the sum of $46,578,064 in damages, and (4) that Honeywell's patents were not invalid. Both HSC and Honeywell filed post-trial motions. The Court affirmed the jury's verdict on September 27, 2001 (D.I. 306). HSC took an appeal (D.I. 307).

On June 2, 2004, the Court of Appeals for the Federal Circuit ("CAFC") vacated the judgment of infringement under the doctrine of equivalents and remanded for the Court to consider whether Honeywell could rebut the presumption of prosecution history estoppel under *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722 (2002), *remanded to* 344 F.3d 1359 (Fed.Cir. 2003)(*en banc*). The CAFC affirmed the judgment that the patents in suit were not invalid. Honeywell tried unsuccessfully to persuade the United States Supreme Court to accept its petition for a writ of *certiorari*. 125 S. Ct. 2928 (2005).

---

[1] At the time of suit, Honeywell International, Inc. was known as AlliedSignal, Inc. and Honeywell Intellectual Properties, Inc. was known as AlliedSignal Technologies, Inc.

[2] At the time of suit, HSC was known as Sundstrand Corp.

[3] Honeywell filed the Complaint on May 17, 1999 (D.I. 1). HSC filed its Answer and Counterclaim on July 7, 1999 (D.I. 8), and its Amended Answer and Counterclaim on October 5, 1999 (D.I. 20). Honeywell filed its First Amended Complaint as of March 3, 2000 (D.I. 50). HSC filed its Answer to the First Amended Complaint and Counterclaim on March 14, 2000 (D.I. 51).

Accordingly, the case returned to this Court in 2005 for a determination on the questions remanded by the CAFC. After a period of discovery and a bench trial, the Court concluded that Honeywell had not rebutted the presumption of prosecution history estoppel and, therefore, HSC did not infringe Honeywell's patents under the doctrine of equivalents (D.I. 435). Significantly, judgment was entered in favor of HSC and against Honeywell. Honeywell took an appeal (D.I. 436).

On April 18, 2008, the CAFC upheld the Court's decision barring Honeywell from asserting the doctrine of equivalents. On May 29, 2008, the CAFC denied Honeywell's motion for rehearing en banc. The Federal Circuit's mandate issued on June 5, 2008 and was lodged in this Court on June 10, 2008 (D.I. 440).

As a result of the Federal Circuit mandate, Honeywell is entitled to no relief on its patent infringement claims. HSC has defeated all of Honeywell's claims that HSC infringed Honeywell's patents literally and under the doctrine of equivalents.

The fact that HSC did not prevail on its defense that the patents were not valid does not affect HSC's prevailing party status. In *Brooks Furniture Manufacturing, Inc. v. Dutailier International, Inc.*, 393 F.3d 1378, 1381 (Fed.Cir. 2005), the Federal Circuit decided that a party that had succeeded in showing non-infringement was the 'prevailing party' even though it did not succeed in its invalidity arguments. After the district court granted summary judgment of non-infringement, the patent holder argued that the accused infringer was not the prevailing party because it did not achieve a finding of invalidity. The Federal Circuit disagreed:

> Brooks raised several defenses to the charge of patent infringement, any of which would have achieved Brooks' goal. *Thus when Brooks established its non-infringement of the Dutailier patent, it prevailed in the litigation. That other defenses, such as invalidity of the patent, were unsuccessful or withdrawn, does not change the outcome in Brooks' favor.* We agree with the district court that Brooks was the prevailing party.

*Id.* (emphasis added). The Court added that the "[d]etermination of the prevailing party is based on the relation of the litigation result to the overall objective of the litigation, and not on a count of the number of claims and defenses." See also *Kinzenbaw v. Case LLC*, 2006 WL 1096683 at *2-3 (Fed.Cir. April 26, 2006); and *Freeman v. Minnesota Min. and Mfg. Co.*, 1989 WL 151213 at *1 n. 4 (D. Del. Dec. 12, 1989). Honeywell's overall objective in the litigation was to recover damages on its patent infringement claims and it failed to do so as a result of HSC's successful non-infringement defense, making HSC the prevailing party.

HSC believes this to be a clear matter and asked Honeywell if it could at least agree that HSC was the prevailing party. Litigating to the end, Honeywell refused. The facts and the controlling case law are clear: HSC is the prevailing party and is entitled to recover its costs.

2.   **HSC Is Entitled to the Following Taxable Costs**

   A.   **Trial and Pretrial Transcript Costs [Local Rule 54.1(b)(1)]**

Local Rule 54.1(b)(1) provides that "costs of the originals of a trial transcript, a daily transcript and of a transcript of matters prior or subsequent to trial, furnished to the Court, are taxable when requested by the Court or prepared pursuant to stipulation." HSC is requesting reimbursement for the transcripts of significant pretrial events and the two trials. Transcription of these events was necessary for presentation of all matters to the Court, including post-trial motions, and for purposes of appeal.

The parties requested daily copy of the trial and expedited copies of other proceedings for their own convenience, not the Court's, and so HSC is requesting reimbursement only at the standard rate. By standing order dated March 31, 2003, the Court raised the official standard

transcript rate by ten percent from $3.00 per page to $3.30 per page.[4] Exhibit A. Accordingly, HSC is requesting reimbursement at the rate of $3.00 for transcripts prior to April 1, 2003 and $3.30 for transcripts thereafter.

| Event | Date of event and docket identification | Number of pages | Cost per page | Cost of transcript |
|---|---|---|---|---|
| 2001 pretrial conference | January 23, 2001 (D.I. 309) | 197 | $3.00 | $ 591.00 |
| 2001 Trial | February 5 – 16, 2001 (D.I. 278) | 2,683 | $3.00 | $ 8,049.00 |
| 2005 remand conference | August 29, 2005 (D.I. 334) | 55 | $3.30 | $ 181.50 |
| 2006 pretrial conference | March 1, 2006 (D.I. 400) | 59 | $3.30 | $ 194.70 |
| 2006 trial | March 23-24 and May 9, 2006 (D.I. 408, 409, and 428) | 574 | $3.30 | $ 1,894.20 |
| Totals | | 3,568 pages | | $10,910.40 |

**Total Costs for Pretrial and Trial Transcripts**            **$10,910.40**

### B.    Deposition Costs [Local Rule 54.1(b)(3)]

Local Rule 54.1(b)(3) provides that a prevailing party is entitled to a "reporter's reasonable charge for the original and one copy of a deposition and the reasonable cost of taking a deposition electronically or magnetically recorded" when "a substantial portion of the

---

[4] The rates were not changed again until the standing order dated November 28, 2007, when the rates rose from $3.30 to $3.65 per page.

deposition is used in the resolution of a material issue in the case." The costs listed below were associated with depositions that were used in the resolution of a material issue in the case. The first five depositions listed below for the 2001 trial (Crowe, Szillat and VanSanten (3)) were played or read at trial, and the Clark depositions (2) listed for the 2006 trial were submitted to the Court. The last three depositions listed for the 2001 trial (Honeywell's experts Muller (2), Davis and Parr) and the Muller deposition from the 2006 trial were used in the preparation of HSC's expert witnesses as well as in connection with cross-examination of those experts.[5]

2001 trial

| Deponent | Exhibit tab | Date of deposition | Cost |
|---|---|---|---|
| Lawrence Crowe | B | November 21, 2000 | $ 726.15 |
| John Szillat | C | January 22, 2001 | $ 516.20 |
| William VanSanten | D | November 16, 2000<br>November 17, 2000<br>November 21, 2000 | $ 629.80<br>$ 462.95<br>$117.50 |
| Gerard Muller | E | December 13, 2000<br>December 14, 2000 | $1,782.00<br>$1,714.50 |
| Julie Davis | F | January 4, 2001 | $2,658.80 |
| Russell Parr | G | December 18, 2000 | $2,165.00 |
| Total 2001 trial | | | $10,772.90 |

---

[5] The cost of expert depositions used in the preparation of opposing expert witnesses and / or in cross-examination of the deposed experts is properly taxed. *Chemical Bank v. Kimmel*, 68 F.R.D. 679, 684 (D.Del. 1975).


2006 trial

| Deponent | Exhibit tab | Date of deposition | Cost |
|---|---|---|---|
| Jim Clark | H | December 6, 2005 | $1,548.40 original and copy<br>380.00 transfer to CD |
|  |  | December 7, 2005 | $1,323.00 original and copy<br>380.00 transfer to CD |
| Gerard Muller | I | January 25, 2006 | $2,765.00 original and copy<br>380.00 transfer to CD |
| Total 2006 trial |  |  | $6,776.40 |

**Total Deposition Costs**     **$17,549.30**

### C.   Witness Fees and Subsistence [Local Rule 54.1(b)(4)]

Local Rule 54.1(b)(4) provides, "The rates for witness fees, mileage and subsistence are fixed by 28 U.S.C. § 1821. Such fees are taxable even though the witness does not take the stand, provided the witness attends Court. Witness fees and subsistence are taxable only for the reasonable period during which the witness is within the district." HSC is requesting reimbursement for the following witnesses:

2001 trial

| Witness | Days | Witness fees[6] | Subsistence[7] | Total |
|---|---|---|---|---|
| Francis Shinskey[8] | 9 | $360.00 | $1,197.00 | $1,557.00 |

---

[6] In 2001, the witness fee set by 28 U.S.C. §1821(b) was $40 per day.

[7] The maximum per diem rate set by the General Services Administration was $133.00. Exhibit J.

[8] Mr. Shinskey was HSC's technical expert. His attendance was required throughout the trial to observe Honeywell's testimony and to assist HSC's counsel.

| Richard Donaldson | 1 | $40.00 | $133.00 | $ 173.00 |
| Dennis Staats | 1 | $40.00 | $133.00 | $ 173.00 |
| Total 2001 | | | | $1,903.00 |

2006 trial

| Witness | Days | Witness fees[9] | Subsistence[10] | Total |
|---|---|---|---|---|
| David Japikse | 2 | $80.00 | $258.00 | $338.00 |
| Richard Brown | 1 | $40.00 | $129.00 | $169.00 |
| Total 2006 | | | | $507.00 |

**Total Witness Fees and Subsistence**                                                                  **$2,410.00**

### D.     Exhibit Costs [Local Rule 54.1(b)(5)]

Local Rule 54.1(b)(5) provides that a prevailing party is entitled to "[t]he cost of copies of an exhibit necessarily attached to a document required to be filed and served" and the cost of a document that is "admitted into evidence." As the Court will recall, during both the 2001 and 2006 trials, exhibits were for the most part presented electronically. Honeywell and HSC shared presentation technology, including a large screen, an image projector, and monitors. Both Honeywell and HSC fully utilized the best available presentation technology because they both thought that technology would aid the Court's (and in 2001, the jury's) understanding of the engineering concepts embodied in the case. The test in this District is whether a presentation

---

[9] In 2006, the witness fee set by 28 U.S.C. §1821(b) was $40 per day.

[10] The maximum per diem rate set by the General Services Administration was $129.00. Exhibit K.

materially aids the Court's understanding of the issues in the case. *Schering Corp. v. Amgen, Inc.*, 198 F.R.D. 422, 428 (D. Del. 2001).

As amplified in the accompanying declaration of Steven Hess, of Legal Images, the following costs were incurred in the preparation of demonstrative exhibits and the presentation of exhibits during the 2001 trial:

| Vendor | Service listed on February 28, 2001 invoice (Exhibit Tab L) | Invoiced amount for service | Amount requested to be taxed |
|---|---|---|---|
| Legal Images | Graphic design of exhibits and demonstratives | $32,400.00 | $27,540.00 (85%) |
| Legal Images | Creation and production of computer animation | $48,600.00 | $41,310.00 (85%) |
| Legal Images | Document imaging | $13,943.91 | $13,943.91 (100%) |
| Total for 2001 | | | $82,793.91 |

Similarly, as amplified in the accompanying declaration of Daniel Winter, the following costs were incurred in the preparation of demonstrative exhibits and the presentation of exhibits during the 2006 trial:

| Vendor | Invoice date and number | Amount invoiced for service | Amount requested to be taxed |
|---|---|---|---|
| Chicago Winter Company | February 10, 2006 #146 (Exhibit Tab M) | $18,952.50 | $18,531.87 |
| Chicago Winter Company | February 22, 2006 #152 (Exhibit Tab N) | $34,676.75 | $32,146.87 |
| Chicago Winter Company | March 29, 2006 #162 (Exhibit Tab O) | $49,940.81 | $33,447.50 |

| | | | |
|---|---|---|---|
| Chicago Winter Company | May 17, 2006 # 185 (Exhibit Tab P) | $ 8,636.30 | $ 6,935.62 |
| Total for 2006 | | | $91,061.86 |

**Total Cost for Exhibits**                                                                                                  **$173,855.77**

### E. Bond Costs [Local Rule 54.1(b)(10)]

Local Rule 54.1(b)(10) provides that "(t)he reasonable premiums or expenses paid on bonds or security stipulations shall be allowed when furnished by requirements of the law or rule of Court, by an order of the Court or where required to enable a party to receive or preserve some right accorded the party in an action or proceeding." Moreover, Rule 39(e) of the Federal Rules of Appellate Procedure states that "premiums paid for a *supersedeas* bond or other bond to preserve rights pending appeal" are "taxable in the district court for the benefit" of the prevailing party. See *U.S. v. Panhandle Eastern Corp.*, 696 F. Supp. 983, 985 (D. Del. 1988).

In this case, pursuant to a stipulation between Honeywell and HSC requiring it (D.I. 279), HSC posted a bond on May 15, 2001 (D.I. 289) in order to stay execution pending disposition of the post-trial motions. Then, pursuant to a motion (D.I. 312) and order (D.I. 314), HSC posted a *supersedeas* bond on October 25, 2001 (D.I. 313) to stay execution pending appeal. That bond was vacated on June 28, 2004 after the first appeal (D.I. 317).

The following table shows the bonds and the associated premium costs. The premium costs are indicated in Exhibit Q.

| Date bond posted | Date bond terminated | Bond amount | Bond premium |
|---|---|---|---|
| May 15, 2001 | October 25, 2001 | $46,578,065.00 | $ 36,540.00 |
| October 25, 2001 | June 28, 2004 | $46,872,530.00 | $189,931.00 |
| **Total Costs for Bonds** | | | **$226,471.00** |

-11-

**TOTAL TAXABLE COSTS**                                                                      **$431,200.47**

WHEREFORE, HSC respectfully requests the Court to grant its Bill of Costs as expressly set forth hereinabove.

July 21, 2008            BAYARD, P.A.

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk
Steven B. Brauerman
222 Delaware Avenue, Suite 900
Wilmington, DE 19899-5130
rkirk@bayardlaw.com
(302) 655-5000
Attorneys for defendant Hamilton Sundstrand Corporation

Of counsel:                                                  and

Mark L. Levine                                               David H. Herrington
Chris J. Lind                                                CLEARY, GOTTLIEB, STEEN & HAMILTON LLP
Brian C. Swanson                                             One Liberty Plaza
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP                    New York, NY 10006
54 West Hubbard Street, Suite 300                            (312) 494-4400
Chicago, IL 60610
(312) 494-4400

-12-

## SUMMARY OF COSTS REQUESTED

| Category of costs | Total for category |
|---|---|
| Transcript costs | $ 10,914.40 |
| Deposition costs | $ 17,549.30 |
| Witness fees and subsistence | $  2,410.00 |
| Exhibit costs | $173,855.77 |
| Bond costs | $ 226,471.00 |
| Total costs requested | $431,200.47 |