IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE

| | |
|---|---|
| HONEYWELL INTERNATIONAL INC., and HONEYWELL INTELLECTUAL PROPERTIES INC., <br><br> Plaintiffs, <br><br> v. <br><br> HAMILTON SUNDSTRAND CORPORATION, <br><br> Defendant. | Civil Action No. 99-309-GMS |

## DECLARATION OF RICHARD D. KIRK IN SUPPORT OF DEFENDANT HAMILTON SUNDSTRAND CORPORATION'S BILL OF COSTS

Pursuant to Fed. R. Civ. P. 54, L.R. 54.1 and 28 U.S.C. §1924, the undersigned, in support of Defendant Hamilton Sundstrand Corporation's Bill of Costs, hereby declares, under penalty of perjury, as follows;

I am a Delaware attorney, admitted to the bar of this Court, and a director of and shareholder in Bayard, P.A. I have been Delaware counsel for defendant Hamilton Sundstrand Corporation ("HSC") from the outset of the litigation. Accordingly, I was involved in both the 2001 and 2006 trials.

I am making this declaration partly on the basis of direct personal knowledge, and partly on the basis of information furnished to me on my request by my colleagues at Cleary Gottlieb Steen & Hamilton, LLP (HSC's counsel in 2001) and Bartlit Beck Herman Palenchar & Scott, LLP (HSC's counsel in 2006), by persons at HSC responsible for supervising this litigation, and by persons who consulted with Cleary Gottlieb in 2001 and Bartlit Beck in 2006.

### A. Pretrial and Trial Transcript costs

The Court's standing order dated March 31, 2003 (Exhibit A to the Bill of Costs) is available on the Court's website. I reviewed the events for which transcript reimbursement has been requested and believe I have accurately listed the number of pages for each event. To my knowledge, HSC necessarily incurred the cost of pretrial and trial transcripts for which reimbursement has been requested, inasmuch as transcripts were needed to prepare for trial and to present post-trial motions. To my knowledge, HSC did pay for all of the transcripts listed, generally at a much higher rate (i.e., daily copy or other expedited service). HSC's request is limited to the standard rate.

### B. Deposition Costs

I have reviewed the deposition costs requested in HSC's Bill of Costs. With respect to each deposition, a substantial portion of the deposition was used in the resolution of a material issue in the case. Five depositions listed for the 2001 trial (Crowe, Szillat and VanSanten (3)) and the Clark depositions (2) listed for the 2006 trial were played or read at trial. The last three depositions listed for the 2001 trial (Honeywell's experts Muller (2), Davis and Parr) and the Muller deposition from the 2006 trial were used in the preparation of HSC's expert witnesses as well as in connection with cross-examination of those experts. Attached to the Bill of Costs as Exhibits B-I are true copies of invoices from court reporting services with respect to each of those depositions. To my knowledge, HSC necessarily incurred the cost of deposition transcripts for which reimbursement has been requested, and did pay for all of the transcripts listed.

### C. Witness Fees and Subsistence

The allowable daily witness fee is set by 28 U.S.C. § 1821(b), and for both the 2001 and 2006 trials that rate was $40.00. The *per diem* subsistence rate referred to in 28 U.S.C. § 1821(d) may be found on the website of the General Services Administration, www.gsa.gov, and may be broken out by region and by fiscal year. The *per diem* rates for Delaware used in the Bill of Costs (Exhibits J for 2001 and K for 2006) were taken from that website. HSC is requesting reimbursement for its expert witnesses (Messrs. Shinskey, Donaldson, Staats, and Japiske) and one non-HSC employee (Mr. Brown). To my knowledge, HSC necessarily incurred and actually paid expenses for witness fees and witness subsistence for the witnesses listed, far in excess of the statutorily allowed maximums requested.

### D. Exhibit Costs

As the Court will recall, during both the 2001 and 2006 trials, exhibits were largely presented electronically and depositions were presented on videotape. Honeywell and HSC shared presentation technology, including a large screen, an image projector, and monitors. Both Honeywell and HSC fully utilized the best available presentation technology because they both thought that technology would aid the Court's (and in 2001, the jury's) understanding of the engineering concepts embodied in the case.

For the 2001 trial, HSC's exhibit consultant was Legal Images. True copies of Legal Images' invoices to HSC are attached to the Bill of Costs as Exhibit L. Legal Images' managing partner, Steven Hess, has submitted a declaration setting forth the basis on which HSC is requesting allowance of $82,793.91 in exhibit costs for the 2001 trial.

For the 2006 trial, HSC's exhibit consultant was Chicago Winter Company. True copies of Chicago Winter's invoices to HSC are attached to the Bill of Costs as Exhibits M – P.

Chicago Winter's president, Daniel Winter, has submitted a declaration setting forth the basis on which HSC is requesting allowance of $91,061.86 for the 2006 trial.

### E. Bond Costs

HSC incurred bond costs in this case in order to stay execution pending disposition of the post-trial motions and then to stay execution pending appeal. I asked HSC to determine the costs of those bonds. The costs were detailed in an email (a true copy of which is attached as Exhibit Q to the Bill of Costs) from Ms. Betty Calderon, who worked for Aon Risk Services, Inc. of NY, HSC's risk placement agency, to Ms. Diane Bascom of HSC, which was then forwarded to me. To my knowledge, HSC necessarily incurred the bond costs set forth in HSC's Bill of Costs and actually paid those bond costs.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 21st day of July, 2008.

_____
Richard D. Kirk