THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF DELAWARE

| | |
|---|---|
| HONEYWELL INTERNATIONAL INC., and HONEYWELL INTELLECTUAL PROPERTIES INC., <br><br> Plaintiffs, <br><br> v. <br><br> HAMILTON SUNDSTRAND CORPORATION, <br><br> Defendant. | Civil Action No. 99-309-GMS |

**DEFENDANT HAMILTON SUNDSTRAND CORPORATION'S
RESPONSE TO PLAINTIFFS' OPPOSITION TO ITS BILL OF COSTS**

Defendant Hamilton Sundstrand Corporation ("HSC") hereby responds to the Opposition to its Bill of Costs (D.I. 445) filed by Honeywell International, Inc. and Honeywell Intellectual Properties Inc. ("Honeywell").

1. **HSC Is Indisputably the Prevailing Party**

HSC is the prevailing party in this patent infringement case because it obtained a judgment of non-infringement from the Court that was later affirmed on appeal. Under the applicable case law, deciding this issue should be a matter as simple as examining the docket to see in whose favor judgment has been entered. 10 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE 3d §54.101[3](3d ed. 2008)("the prevailing party is the party in whose favor judgment was entered....") Since judgment has been entered in favor of HSC and against Honeywell, HSC is the prevailing party.

Honeywell's theory is that this case really consisted of two completely unrelated parts, the 2001 jury trial, which it claims to have won, and the 2006 bench trial, which it admits HSC

won. In fact, this was a single, integrated case, and the Court should examine the case as a whole to determine who won.[1]

At the 2001 trial, the jury rejected Honeywell's claim for literal infringement[2] but found in Honeywell's favor on its claim for infringement under the doctrine of equivalents. However, prior to trial HSC moved for summary judgment that Honeywell cannot maintain its claims for infringement under the doctrine of equivalents in light of the Federal Circuit's decision in *Festo Corp.* v. *Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558 (Fed. Cir. 2000), then a very recent precedent.[3] In essence, HSC argued that Honeywell's claim of infringement under the doctrine of equivalents should not be presented to the jury. The Court denied HSC's motion. (D.I. 187) After the jury verdict, HSC filed a motion for judgment as a matter of law and for a new trial (D.I. 270), and expressly reasserted its arguments about prosecution history estoppel and the doctrine of equivalents under *Festo* (D.I. 275). In other words, HSC argued that the jury verdict on infringement under the doctrine of equivalents was flawed and could not stand. In summary, what Honeywell now claims to have won in 2001 was always subject to HSC's arguments about prosecution history estoppel.

---

[1] Indeed, Honeywell's unusual argument would apply equally to the following simple case: A plaintiff sues a defendant and wins a money judgment even though the defendant argues unsuccessfully in the trial court that plaintiff fails to state a claim on which relief could be granted. On appeal, the reviewing court agrees with defendant and vacates the judgment. Under Honeywell's theory, plaintiff can defend against a claim by defendant for costs by saying that it (the plaintiff) actually won at trial, even though it lost on appeal, and that defendant is thus not the prevailing party.

[2] In its Opposition, Honeywell says first that it "prevailed on all critical issues after the 2001 trial," and then a few lines later that it "prevailed on all issues at the 2001 trial." (Hon. Opp. at 3) Given all that transpired after the 2001 trial, it is understandable that Honeywell might want to forget that the jury rejected its claim of literal infringement, since a judgment of literal infringement would have obviated any need to argue about the doctrine of equivalents and prosecution history estoppel. But in light of this finding, it is disingenuous, to say the least, for Honeywell to claim that it prevailed "on all issues" or even "on all critical issues" at the 2001 trial.

[3] Indeed, counsel for both sides submitted argument on the then new *Festo* case after summary judgment briefing had ended. (*See* D.I. 175, D.I. 178, and D.I. 179)

In the first appeal, the United States Court of Appeals for the Federal Circuit ("CAFC") vacated the judgment of infringement under the doctrine of equivalents and remanded for the Court to consider whether Honeywell could rebut the presumption of prosecution history estoppel under *Festo*. Then, in a continuation of the same proceedings, the Court concluded that Honeywell had not rebutted the presumption of prosecution history estoppel and, therefore, HSC did not infringe Honeywell's patents under the doctrine of equivalents (D.I. 435). On appeal, the CAFC upheld the Court's decision barring Honeywell from asserting the doctrine of equivalents. Thus, this Court's and the CAFC's decisions determined that Honeywell's claim under the doctrine of equivalents should never have been presented to the jury in 2001. It is an exercise in pure fantasy for Honeywell to argue that HSC is not the prevailing party because Honeywell "won" a judgment of infringement under the doctrine of equivalents and an associated money judgment at the 2001 trial. While Honeywell might consider itself to have "won" the 2001 trial, when the appeals and the remand proceeding had finished, absolutely nothing remained of its "victory."

Honeywell cites and relies exclusively on *Testa v. Village of Mundelin*, 89 F.3d 443 (7th Cir. 1996). In *Testa*, plaintiff sued a municipality under the federal civil rights statute for unlawful arrest and under state law for malicious prosecution. The jury found in the municipality's favor on the federal claim and awarded plaintiff $1,500 on the state claim. Plaintiff then sought costs as the prevailing party, and the trial court denied that request. On appeal, the Seventh Circuit upheld the district court's decision on costs, saying (in language notably omitted from Honeywell's discussion), "… the 'prevailing party' is the party who prevails as to the **substantial** part of the litigation." 89 F.3d at 447 (emphasis in original). Since

HSC clearly prevailed as to the substantial part of its litigation with Honeywell, *Testa* supports HSC, not Honeywell.

HSC is the prevailing party and is entitled to recover its taxable costs pursuant to Fed. R. Civ. P. 54(d)(1) and Local Rule 54.1.

2.  **HSC Is Entitled to its Requested Taxable Costs**

   A.   **Trial and Pretrial Transcript Costs [Local Rule 54.1(b)(1)]**

Local Rule 54.1(b)(1) provides that "costs of the originals of a trial transcript, a daily transcript and of a transcript of matters prior or subsequent to trial, furnished to the Court, are taxable when requested by the Court or prepared pursuant to stipulation."

In this high stakes patent case, both sides ordered 'daily copy.' As a result, a transcript was prepared for the parties' use every day, and, instead of the stenographic notes that are usually filed and held until a transcript is ordered, a copy of the transcript was contemporaneously filed with the Court. The parties' mutual decision to order daily copy is the functional equivalent of a stipulation for purposes of Local Rule 54.1.

After the jury trial, HSC and Honeywell both filed post trial motions on numerous grounds, and lengthy briefs in support thereof. In all, the parties submitted hundreds of pages of briefing. HSC is content to let the Court itself determine whether, at least by implication, it 'requested' a transcript to assist it in resolving those motions, especially given that transcripts had already been filed by the court reporter and were thus available to the Court. (Put another way, if no transcripts had yet been filed, might the Court have found it useful to request a transcript to help it resolve the post-trial motions?)

HSC requests taxation of the trial transcript pursuant to Local Rule 54.1 (b)(1).

**B.     Deposition Costs [Local Rule 54.1(b)(3)]**

Local Rule 54.1(b)(3) provides that a prevailing party is entitled to a "reporter's reasonable charge for the original and one copy of a deposition and the reasonable cost of taking a deposition electronically or magnetically recorded" when "a substantial portion of the deposition is used in the resolution of a material issue in the case."

Except for the depositions of expert witnesses, HSC has requested taxation of costs related only to those depositions that were actually submitted to the Court by the parties' designations.  Honeywell argues that those depositions did not represent a "substantial" use of those depositions, and selects three depositions in particular to criticize, Mr. Crowe and Mr. VanSanten from the 2001 trial and Mr. Clark from the 2006 trial.

It is ironic for Honeywell to argue that the testimony of Mr. Crowe and Mr. VanSanten was not important at the 2001 trial.  In his opening statement, counsel for Honeywell told the jury about the significance of that testimony in this way:

> But there are certain witnesses that we're not able to require to come to court.  And during the course of the period before you get to court, we are allowed to take depositions, just like Hamilton Sundstrand is, and I'm sure that we'll be seeing some depositions from them as well.
>
> And what this is is we go to some place near where the witness is located and the Hamilton Sundstrand lawyers are there and the Honeywell lawyers are there and a court reporter is there, just like the court reporter sitting in front of you here.  And the witness is put under oath and it's just like testifying in court, except the judge isn't there.  And what we'll do is we'll bring in some of that testimony. ...
>
> But, again, it will be the witness' testimony under oath.  And it counts just the same as live testimony.  We try to minimize this, but sometimes we can't require certain witnesses to attend.

Trial Transcript at 185:5-20.

> You'll hear their names and you will get testimony from them, I
> think, both in our case as well as well as their case. One of them
> was a Mr. Van Santen, one was a Mr. Crowe. They were outside
> lawyers who work in a law firm, and are hired by the company to
> do specific work. And you'll hear testimony from Mr. Van Santen
> and Mr. Crowe that they've been hired by Hamilton Sundstrand or
> its predecessors for many, many years. They're normal outside
> counsel and they were involved in this, so they were aware of it,
> and their names are going to become important, because they were
> involved in an opinion that Hamilton Sundstrand received in
> February of or in 1999 after they received a letter from us in
> February of 1999 accusing them of infringement.
>
> We'll talk about that in a minute, but those two names will come
> up again, Van Santen and (C)rowe.

Trial transcript at 183:8-184:3.

So, Honeywell knew all along that it intended to call Mr. VanSanten and Mr. Crowe by deposition testimony, and knew how important those witnesses were to its case. In light of the obvious importance of these depositions and the expectation that they would be submitted at trial, it plainly was appropriate for HSC to purchase a copy of those deposition transcripts in order to be ready for trial. Hence, HSC's taxation of costs for these transcripts is justified.

Honeywell next argues that, at the 2006 trial, only 10 pages of trial record came from the deposition of James Clark. Hon. Opp. at 8. That is flat out wrong. In fact, the parties submitted designations totaling 75 pages for Mr. Clark (see Exhibit A, the Deposition Designations of James Clark; see also D.I. 415, Notice of Lodging regarding those designations), and also submitted a CD containing the videotaped designations of his deposition testimony that ran for more than two and a half hours. It is beyond dispute that such use is "substantial" and fully justifies taxation of costs related to his deposition.

With respect to the depositions of expert witnesses, HSC has cited and Honeywell did not discuss *Chemical Bank v. Kimmel*, 68 F.R.D. 679, 684 (D. Del. 1975). In that case, this Court said,

> Defendant's deposition of plaintiff's expert witness…was not introduced into evidence, but it was used in the direct testimony of …defendant's own expert, as well as in connection with the cross-examination of [plaintiff's expert witness]. **Such use has been held sufficient to justify taxation for the cost of taking a deposition in favor of the prevailing party because its purpose goes beyond mere discovery.**

Id. (emphasis added)

Honeywell's cited case, *Federal Insurance Co. v. Bear Industries, Inc.*, No 03-251-SLR, 2006 WL 3334951 (D. Del. Nov. 16, 2006), involved a claim that the expert depositions were necessary for resolution of various motions *in limine*. The Court noted that all such motions *in limine* had been denied, and that because the case was archived it was impossible to tell what role the depositions actually played in any decisions on the motions. *Chemical Bank* provides more direct and applicable authority and supports taxation of costs associated with the depositions of Honeywell's expert witnesses.

HSC thus requests taxation of its requested deposition costs pursuant to Local Rule 54.1(b)(3).

### C.    Witness Fees and Subsistence [Local Rule 54.1(b)(4)]

Local Rule 54.1(b)(4) provides, "The rates for witness fees, mileage and subsistence are fixed by 28 U.S.C. § 1821. Such fees are taxable even though the witness does not take the stand, provided the witness attends Court.

Honeywell concedes HSC's claim for the 2006 trial. Hon. Opp. at 8. Honeywell disputes HSC's claim for the 2001 trial solely on the basis that Honeywell "won" the 2001 trial. As shown above, that argument lacks merit.

Therefore, HSC's entire request for witness fees and subsistence should be granted pursuant to Local Rule 54.1 (b)(4).

**D.     Exhibit Costs [Local Rule 54.1(b)(5)]**

Local Rule 54.1(b)(5) provides that a prevailing party is entitled to "[t]he cost of copies of an exhibit necessarily attached to a document required to be filed and served" and the cost of a document that is "admitted into evidence."

HSC is admittedly not at this time requesting its cost of copying paper exhibits. This case was largely presented to the Court and jury through presentation technology. Both Honeywell and HSC utilized that technology. HSC submits that, if the shoe were on the other foot here, Honeywell would be requesting its technology costs.

In fact, in litigation between Honeywell and HSC in Arizona that was contemporaneous with this case, Honeywell won on summary judgment and submitted a bill of costs in that case that included the very kinds of technology costs that HSC is requesting here. See Exhibit B, Honeywell's Memorandum of Costs from Hamilton Sundstrand Corp. v. Honeywell International, Inc., Case No. CIV 01 0901 PHX SMM, D. Ariz., in which Honeywell claims more than $12,000 for "demonstrative exhibits" used at a summary judgment hearing and a claims construction hearing; and Exhibit C, Honeywell's Reply Memorandum supporting its claim, in which it argues that "costs of demonstrative exhibits [such as the graphics and animations for which they sought recovery] ... are permitted as 'fees for exemplification and copies of papers necessarily obtained for use in the case.'" Although the parties settled that case before there was a decision on the bill of costs, Honeywell's embrace of a broad meaning of 28

U.S.C. §1920's term "exemplification" is clear.[4] It is also consistent with the view taken by this Court in *Schering Corp. v. Amgen, Inc.*, 198 F.R.D. 422, 428 (D. Del. 2001).

HSC submits that it has established a sufficient basis for taxation of its exhibit costs under Local Rule 54.1(b)(5).

### E.    Bond Costs [Local Rule 54.1(b)(10)]

Local Rule 54.1(b)(10) provides that "(t)he reasonable premiums or expenses paid on bonds or security stipulations shall be allowed when furnished by requirements of the law or rule of Court, by an order of the Court or where required to enable a party to receive or preserve some right accorded the party in an action or proceeding."

HSC is requesting taxation of bond costs under Local Rule 54.1(b)(10), which expressly makes such costs taxable by the trial court. The Advisory Committee Note to the Federal Rules of Appellate Procedure recognizes that some districts (like this District) expressly allow taxation of bond costs as a trial court cost. Fed. R. App. P. 39, Advisory Committee Note to Subdivision (e)("Provision for the taxation of the cost of premiums paid for supersedeas bonds is common in the local rules of district courts... .") The generic orders issued by the CAFC ("Each side shall bear its own costs") do not give guidance as to whether the CAFC intended to preclude this Court from taxing costs pursuant to its own Local Rule 54.1. In the absence of express guidance from the CAFC in its orders or case law, HSC submits the Court should follow Local Rule 54.1 (b)(10) and tax all of HSC's bond costs.

In the alternative, if the Court determines that the CAFC precluded it from taxing the costs of a superseadeas bond under Fed. R. App. P. 39, then the Court should still tax the cost of

---

[4] Evidently, how Honeywell feel about the issue depends on whether it is requesting or opposing taxation of such costs.

HSC's initial bond posted under Fed. R. Civ. P. 62(b), in the amount of $36,540.00. That bond was not posted in connection with the appeal. Rather, its sole purpose was to prevent execution on the $45 million judgment while the Court was considering the parties' post-trial motions. That bond was specifically replaced by the supersedeas bond when the appeal commenced. See D.I. 312 (HSC's Motion for Approval of Supersedeas Bond and for Release and Discharge of Bond Securing Stay Pending Resolution of Post Trial Motions). Therefore, it was not and could not be "a supersedeas bond or other bond to preserve rights pending appeal" within the meaning of Fed. R. App. P. 39(e), and thus could not have been addressed by the CAFC in its orders.

Therefore, HSC requests the full amount of its request for bond costs, i.e., $226,471.00, or, in the alternative, the amount of the bond it posted pursuant to Fed. R. Civ. P. 62(b), in the amount of $36,540.00.

WHEREFORE, HSC respectfully requests the Court to grant its Bill of Costs.

September 10, 2008                    BAYARD, P.A.

/s/ Richard D. Kirk (rk0922)
Richard D. Kirk
Stephen B. Brauerman
222 Delaware Avenue, Suite 900
Wilmington, DE 19899-5130
rkirk@bayardlaw.com
(302) 655-5000
Attorneys for defendant Hamilton
Sundstrand Corporation

Of counsel:                           and

Mark L. Levine                        David H. Herrington
Chris J. Lind                         CLEARY, GOTTLIEB, STEEN & HAMILTON LLP
Brian C. Swanson                      One Liberty Plaza
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP    New York, NY 10006
54 West Hubbard Street, Suite 300     (312) 494-4400
Chicago, IL 60610
(312) 494-4400